UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DR. DOROTHY NAIRNE, JARRETT LOFTON, REV. CLEE EARNEST LOWE, DR. ALICE WASHINGTON, STEVEN HARRIS, ALEXIS CALHOUN, BLACK VOTERS MATTER CAPACITY BUILDING INSTITUTE, and THE LOUISIANA STATE CONFERENCE OF THE NAACP<br><br>Plaintiffs,<br><br>v.<br><br>KYLE ARDOIN, IN HIS OFFICIAL CAPACITY AS LOUISIANA SECRETARY OF STATE,<br><br>Defendant | Case No.: 3:22-cv-000178-SDD-SDJ |

## THE STATE OF LOUISIANA'S MOTION TO INTERVENE

The State of Louisiana, by and through Attorney General Jeff Landry, moves to intervene pursuant to Federal Rule of Civil Procedure 24. The Court should grant the State's motion to intervene because it satisfies the requirements of intervention as of right and of permissive intervention under Federal Rule of Civil Procedure 24.

## BACKGROUND

Plaintiffs challenge the Louisiana House and Senate redistricting plans, enacted by the Louisiana Legislature. Amended Complaint, ECF No. 14. Plaintiffs ask the Court to declare the challenged plans to be in violation of Section 2 of the Voting Rights Act; enjoin their use in future elections; set deadlines for the Legislature to enact new redistricting plans in conformance with Plaintiffs' view of

what the VRA requires, and, if necessary, fashion redistricting plans to govern elections to the Legislature. *Id.* at 58 (Prayer for Relief).

Plaintiffs name the Louisiana Secretary of State as the sole defendant but level many of their allegations directly against the State of Louisiana. Plaintiffs allege that the redistricting plans enacted by the Legislature embody "Louisiana's legacy of discrimination, including de jure discrimination, against its Black citizens, and the ongoing, accumulated effects of that legacy." *Id.* at 4, ¶ 6. Plaintiffs allege that "[u]ntil Louisiana complies with Section 2, it is incumbent on this Court to remedy the harms to Black Louisiana caused by *the State's* manipulation of the redistricting process." *Id.* at 4, ¶ 9 (emphasis added). Plaintiffs allege that *the State's* map dilutes their voting power and denies them an equal opportunity to elect candidates of their choosing to the Louisiana Legislature. *Id.* at 5–8, ¶¶ 15–17, 19, 21, 24, 25. Plaintiffs allege that *the State of "Louisiana's* unfair and discriminatory redistricting frustrates and impedes [Plaintiff Black Voters Matter Capacity Building Institute (BVM's)] organizational priorities by diminishing the voices and diluting the voting strength of Black Louisianans . . . ." *Id.* at 11, ¶ 24 (emphasis added). Plaintiffs allege that "*the State's* maps also dilute votes of individuals who are constituents and supporters of BVM, and who are members of the organizations in BVM's network." *Id.* at 12, ¶ 36 (emphasis added). Plaintiffs maintain that "individuals have been and, if *the State's* maps are not enjoined, will continue to be harmed by *the State's* maps as *the State's* maps impermissibly dilute their votes." *Id.* at 12, ¶ 37 (emphasis added).

The Court should not entertain the serious allegations of discrimination made against the State without affording the State the opportunity to appear and respond. Under Rule 24, the State satisfies the elements of intervention as of right and of permissive intervention. The State is entitled to intervene as of right because this motion is timely, the State's interests in the challenged plans are directly implicated in this case, and no current litigant adequately represents those interests. Alternatively, the Court should grant the State permissive intervention because the State clearly raises issues in common with Plaintiffs' Complaint, the State's participation would enhance the Court's ability to resolve issues raised in this litigation, and Plaintiffs will not be prejudiced by the State's participation.

## ARGUMENT

Federal Rule of Civil Procedure 24(a) requires a federal court to permit intervention of a non-party who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Rule 24(b) permits a federal court to allow intervention of non-parties that tender "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

"Rule 24 is to be liberally construed" in favor of intervention. *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014); *accord Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016). "The inquiry is a flexible one,

and a practical analysis of the facts and circumstances of each case is appropriate." *Brumfield*, 749 F.3d at 341 (internal quotation marks omitted). "Intervention should generally be allowed where no one would be hurt and greater justice could be attained." *Ross v. Marshall*, 426 F.3d 745, 753 (5th Cir. 2005).

I. **LOUISIANA SATISFIES THE REQUIREMENTS FOR INTERVENTION AS OF RIGHT.**

Under Rule 24(a), "[a] party seeking to intervene as of right must satisfy four requirements:

> (1) The application must be timely; (2) the applicant must have an interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit."

*Brumfield*, 749 F.3d at 341 (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1204–05 (5th Cir. 1994)). The State of Louisiana satisfies each of those elements.

### A. The State's Application Is Timely.

This intervention motion is timely. The Amended Complaint was filed on April 4, 2022, and no meaningful case events have occurred. As a result, "timeliness is not at issue." *Id.* at 342; *see also Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996) (finding that delays of "only 37 and 47 days . . . are not unreasonable"); *Ross*, 426 F.3d at 755 (permitting post-judgment intervention); *Mullins v. De Soto Securities Co.*, 3 F.R.D. 432, 433 (W.D. La. 1944) (finding motion to intervene timely during the initial pleading stage); *United States v. Virginia*, 282 F.R.D. 403, 405 (E.D. Va. 2012) ("Where a case has not progressed beyond the initial pleading stage, a motion to intervene is timely.").

## B. The State Has the Requisite Interest in the Subject of this Case.

The State "has a 'direct, substantial, legally protectable interest in the proceedings.'" *Edwards*, 78 F.3d at 1004 (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984)). "A 'legally protectable' right" for intervention purposes "is not identical to a 'legally enforceable' right, such that 'an interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor . . . would not have standing to pursue her own claim.'" *DeOtte v. Nevada*, 20 F.4th 1055, 1068 (5th Cir. 2021) (quoting *Texas v. United States*, 805 F.3d 653, 659 (5th Cir. 2015)); *accord Wal-Mart Stores*, 834 F.3d at 566. Rather, "[a] movant found to be a 'real party in interest' generally establishes sufficient interest." *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 187 (5th Cir. 1989) (LULAC). "[A] 'real party in interest' may be ascertained by determining whether that party caused the injury and, if so, whether it has the power to comply with a remedial order of the court." *Id.* at 187.

Jeff Landry is the duly elected Attorney General for the State of Louisiana. As the State's "chief legal officer," he is charged with "the assertion and protection of the rights and interests" of the State and its taxpayers and citizens, and he has a sworn duty to uphold the State's Constitution and laws. La. Const. art. IV., § 8. The Louisiana Constitution gives him authority "to institute, prosecute, or *intervene* in any civil action or proceeding." *Id.* (emphasis added). The State's intervention is necessary here as a matter of right, through its constitutionally designated officer, Attorney General Jeff Landry, to defend the State's legislative plan.

5

The Attorney General also has a right under state and federal law to defend the legality and constitutionality of state laws. When a state statute has been challenged, article 1880 of the Louisiana Code of Civil Procedure requires certification of the issue to the state attorney general. The Federal Rules of Civil Procedure require the same. *See* Fed. R. Civ. P. 5.1(B)(2) (requiring parties to "serve the notice and paper on . . .the state attorney general if a state statute is questioned"). Here, Plaintiffs' complaint calls into question the legality of state law.

Additionally, the Louisiana Attorney General maintains a longstanding history of defending the State in Voting Rights litigation in Louisiana.[1] *See, e.g.*, *Chisom v. Edwards*, No. 2:86-cv-4075 (E.D. La. 1986); *Clark v. Edwards*, No. 86-cv-435 (M.D. La. 1986); *Prejean v. Foster*, No. 99-30360 (M.D. La. 1999); *Hall v. Louisiana*, No. 3:12-cv-0657 (M.D. La. 2012); *Terrebonne Par. Branch NAACP v. Jindal*, No. 3:14-cv-0069 (M.D. La. 2014); *La. State Conf. of the NAACP v. Louisiana*, No. 3:19-cv-00479 (M.D. La. 2019).

In short, the State of Louisiana, through Attorney General Jeff Landry, has the requisite interest in the subject of this case, and so has a right to intervene to protect the interests of the State.

### C. The Disposition of this Case May Substantially Impair or Impede the State's Interests.

---

[1] Attorneys general routinely defend their states against challenges to electoral methods for judicial and non-judicial offices. *See Houston Lawyers Ass'n v. Att'y Gen. of Tex.*, 501 U.S. 149 (1991) (Texas attorney general); *Thornburg v. Gingles*, 478 U.S. 30 (1986) (North Carolina attorney general); *S. Christian Leadership Conf. of Ala. v. Sessions*, 56 F.3d 1281 (11th Cir. 1995) (en banc) (Alabama attorney general); *LULAC v. Clements*, 999 F.2d 831 (5th Cir. 1993) (en banc) (Texas attorney general).

6

Without intervention, disposition of this case will impair the State of Louisiana's ability to protect its interests, it will impair and impede the Attorney General from carrying out his constitutional duties to defend and uphold the laws of the State of Louisiana, and the Court's determination could have long lasting impacts on the State. As discussed above, Plaintiffs mount serious allegations against the State that the State cannot defend without intervening. The State has both a right and obligation to defend against them.

Moreover, the State of Louisiana provides the Attorney General of Louisiana with an active role in elections, which warrants intervention as a matter of right. The Attorney General is required by state law to approve election forms prepared by the Louisiana Secretary of State, *see* La. R.S. 18:18(A)(3); he is statutory counsel for each parish's Registrar of Voters, *see La*. R.S. 18:64; and he is statutory counsel for each Parish Board of Election Supervisors, *see La*. R.S. 18:423(G). Additionally, he serves as a member on the State's Board of Election Supervisors. *See* La. R.S. 18:23(A)(3).

The Attorney General also carries out other election responsibilities for the State of Louisiana as established in the Louisiana Election Code, including approving summaries of constitutional amendments, *see La*. R.S. 18:431(C); standing to initiate actions against convicted felons from running for office, *see La*. R.S. 18:495; authority to enforce laws regarding the establishment of precincts and precinct boundaries, *see La*. R.S. 18:537; authority to initiate actions to declare an office vacant, *see La*. R.S. 18:671(C); making appointments to the Voting System Commission, *see La*. R.S. 18:1362.1; collections for election expenses, *see La*. R.S. 18:1400.6; receiving

7

allegations of election fraud, *see La.* R.S. 18:1412; preparing the election offense packet for candidates, *see La.* R.S. 18:1472; and authority to initiate criminal actions for campaign finance violations, *see* La. R.S. 18:1511.6.

Disposing of this case without intervention will impair the State's interests in providing a defense to Plaintiffs' challenge to the method of electing members to the State Legislature. Further, the Court's determination could have long lasting impacts on the State.

**D. The State's Interests are Inadequately Represented by the Existing Parties.**

The State's interests are inadequately represented by the existing parties to the suit. The Attorney General has an interest in defending the injury to the State itself that would result from an injunction against or changes to the challenged plans, and/or a determination that the current plan passed by the State Legislature is unlawful.

In *Miller v. Vilsack,* the Fifth Circuit established two presumptions that must be considered when determining if representation by the current parties is inadequate. No. 21-11271, 2022 WL 851782 (5th Cir. Mar. 22, 2022). The burden by the proposed intervenor is minimal. *Id.* (citing *Espy*, 18 F.3d at 1207). The burden, however, "cannot be treated as so minimal as to write the requirement completely out of the rule." *Id.* The first presumption applies "when the would-be intervenor has the same ultimate objective as a party to the lawsuit." *Id.* The second presumption applies in cases where a party "is presumed to represent the interests of all of its citizens," *Hopwood v. Texas*, 21 F.3d 603, 605 (5th Cir. 1994) (per curiam), such as

8

"when the putative representative is a governmental body or officer charged by law with representing the interests of the [intervenor]," *Texas v. United States*, 805 F.3d at 661 quoting *Edwards*, 78 F.3d at 1005). This presumption is limited, however, to "suits involving matters of sovereign interest." *Edwards*, 78 F.3d at 1005.

There is no reason to believe that the State's sovereign interests will be represented by existing parties for two reasons. First, this is not a case where "the would-be intervenor has the same ultimate objective as a party to the lawsuit." *See Entergy Gulf States La., L.L.C. v. EPA*, 817 F.3d 198, 203 (5th Cir. 2016) (quoting *Brumfield*, 749 F.3d at 345). The State has unique sovereign interests not shared by the other parties. Any proposed judgment involving injunctive relief or federal oversight would have future consequences for the State and necessarily involve the State's sovereign interests. As pointed out recently by the United States Supreme Court, it is one thing for a State to change its election laws close to its own elections. But it is different for a federal court to swoop in and redo a state's election laws in the period close to an election. *See Merrill v. Milligan,* 595 U.S. \_\_\_\_ (2022).

Second, the Attorney General and the Secretary of State are separate constitutional offices with separate interests. The State of Louisiana has "a substantial legal interest" in this case "that sounds in deeper, constitutional considerations." *See Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 142 S. Ct. 1002, 1011 (2022). After all, the State of Louisiana, not its officers like the Secretary of State, shares a dual sovereign relationship with the federal government. *See Gregory v. Ashcroft*, 501 U.S. 452, 457–58 (1991) ("As every schoolchild learns, our

9

Constitution establishes a system of dual sovereignty between the States and the Federal Government" in which their power is "balance[d]." (quoting *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 242 (1985))). "Paramount among" Louisiana's "retained sovereign powers is the power to enact and enforce any [of its] laws that do not conflict with federal law." *Id.* (citing U.S. Const., Art. VI, § 2). For this reason, Louisiana "clearly has a legitimate interest in the continued enforceability of its own statutes, and a federal court must respect the place of [Louisiana] in our federal system." *Id.* (cleaned up). "This means that [Louisiana's] opportunity to defend its laws in federal court should not be lightly cut off." *Id.*

The Louisiana Constitution deems the Attorney General "the chief legal officer of the state" with authority to "intervene" in this case and represent the rights and interests of the State *as a whole*. La. Const. art. 4 § 8. This Court's "[r]espect for state sovereignty must . . . take into account the authority of [Louisiana] to structure its executive branch in a way that empowers multiple officials to defend its sovereign interests in federal court." *See Cameron*, 142 S. Ct. at 1011. The Attorney General should not be forced to "make whatever arguments in defense of" the Louisiana Legislature's voting districts that the Attorney General "sees fit . . . from the position" of counsel for the Secretary. *See Hoffman v. Jindal*, No. 12-CV-796, 2021 WL 2333628, at *3 (M.D. La. June 8, 2021).

Congress has also recognized the "importance of ensuring that [Louisiana has] a fair opportunity to defend [its] laws in federal court." *See Cameron*, 142 S. Ct. at 1011. Although the requirement that federal courts notify the state attorney general

10

"when a state law 'affecting the public interest is drawn in question' and neither the State nor any state agency or officer is a party . . .is not directly applicable in this case because [the Secretary of State] was a party when the [State filed its intervention motion], it nevertheless reflects the weighty interest that [Louisiana] has in protecting its own laws." *See id.* "The way in which [Louisiana] divides executive authority . . . should not obscure the important constitutional consideration at stake." *See id.*

And unique to redistricting cases, the State has a sovereign interest in avoiding a preclearance "bail in" under Section 3(c) of the Voting Rights Act, an interest shared by neither the Secretary nor the Legislature. Plaintiffs' Complaints are replete with allegations that the State passed discriminatory election laws. While the risk of a Section 3(c) bail-in may be minimal, the State has a legitimate interest in protecting against that concern. The State should be allowed to intervene to protect that interest if no other.

The Secretary of State's interests, on the other hand, are much narrower. "The Secretary of State's duties with regard to election laws are . . . ministerial" and "are established by the legislature, and he carries out election laws without regard to how election districts are formed or election methods are established." *Terrebonne Par. NAACP v. Jindal,* 154 F. Supp. 3d 354, 363 (M.D. La. 2015). Specifically, "the Secretary of [S]tate shall administer the laws relating to custody of voting machines and voter registration" with nine sub-responsibilities to carry out that "purpose." La. Rev. Stat. § 18:18(A).

11

To protect those interests, the Secretary has a fundamental right to choose his own lawyer. *See McCuin v. Tex. Power & Light Co.*, 714 F.2d 1255, 1262 (5th Cir. 1983); *Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1117 (5th Cir. 1980); *Woods v. Covington Cty. Bank*, 537 F.2d 804, 810 (5th Cir. 1976). Under Louisiana law, the Secretary chooses his own representation in non-risk covered cases like this one, and submits his contract to the Attorney General for approval. La. R.S. 49:257, La. R.S. 49:258. *See also*, La. R.S. 42:261, 42:262.

In short, the State of Louisiana and its officer, the Secretary of State, are different parties with different interests in this case and different relationships with the federal courts. The Attorney General's representation of those two very different parties does not automatically merge their distinct interests. If the State is denied intervention, the Attorney General cannot commandeer the interests of the Secretary, to represent those of the *entire* State. Plaintiffs have alleged that the House and Senate redistricting plan for Louisiana is invalid and unlawful and that the Court should enjoin the Secretary of State from enforcing or giving effect to boundaries of the House and Senate districts and from conducting elections. It is necessary that Louisiana's Chief Legal Officer be allowed to intervene to make sure that the State's interests are adequately protected.

## II.   IN THE ALTERNATIVE, THE STATE SHOULD BE GRANTED PERMISSIVE INTERVENTION.

Federal Rule of Civil Procedure 24(b)(1) provides that "[o]n timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the

12

main action a common question of law or fact." "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Permissive intervention under Rule 24(b) "is wholly discretionary with the [district] court . . . even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied." *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987). Intervention is appropriate when: "(1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." *See Frazier v. Wireline Solutions, LLC*, 2010 WL 2352058, at *4 (S.D. Tex. June 10, 2010) (citation omitted); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 229 F.R.D. 126, 131 (S.D. Tex. 2005).

As discussed above, the intervention is timely; the Attorney General's claims or defense and the main action have a question of law or fact in common; and the intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. Moreover, the Attorney General's intervention will facilitate an equitable result. The Attorney General can provide a crucial perspective on the important issues implicated by the Complaint. This case has significant implications; therefore, it is essential that all arguments in attack of the continued viability of the Legislature's plan receive full attention. For the reasons stated above, this Court should grant this motion permissively, if it does not grant it as of right.

## CONCLUSION

The Court should grant the State of Louisiana's Motion to Intervene, and Attorney General Jeff Landry should be allowed to fulfill his constitutional duty to represent the State's interests.

Dated: April 19, 2022               Respectfully Submitted,


           Jeff Landry
           Louisiana Attorney General

           */s/ Angelique Duhon Freel*
           Elizabeth B. Murrill (LSBA No. 20685)
           Solicitor General
           Shae McPhee's (LSBA No. 38565)
           Angelique Duhon Freel (LSBA No. 28561)
           Carey Tom Jones (LSBA No. 07474)
           Jeffery M. Wale (LSBA No. 36070)
           OFFICE OF THE ATTORNEY GENERAL
           LOUISIANA DEPARTMENT OF JUSTICE
           1885 N. Third St.
           Baton Rouge, LA 70804
           (225) 326-6000 phone
           (225) 326-6098 fax
           murrille@ag.louisiana.gov
           freela@ag.louisiana.gov
           walej@ag.louisiana.gov
           jonescar@ag.louisiana.gov
           mcphees@ag.louisiana.gov

## **CERTIFICATE OF SERVICE**

I do hereby certify that, on this 19th day of April 2022, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which gives notice of filing to all counsel of record.

*/s/ Angelique Duhon Freel*
*Angelique Duhon Freel*
