UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| NAIRNE, *et al.*, | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Docket No. 3:22-cv-00178-SDD-SDJ |
| ARDOIN, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

**RESPONSE IN OPPOSITION TO THE DEFENDANTS'
MOTION TO CONVENE A THREE-JUDGE PANEL OR, IN THE
ALTERNATIVE, TO CERTIFY AN INTERLOCUTORY APPEAL**

COME NOW, Plaintiffs, by and through undersigned counsel, who respectfully request this Honorable Court deny the Secretary's motion to convene a three-judge panel or, alternatively, to certify an interlocutory appeal. *See* ECF No. 34-1.

**I.   Introduction.**

There is no controlling precedent to support the Secretary's contention that 28 U.S.C. § 2284 calls for convening a three-judge panel in the instant case. Indeed, the Secretary relies solely on dicta found in a concurrence (that it concedes is non-precedential) where, of the eleven judges sitting en banc, the majority (six) found that a three-judge panel was *not* required. And every other court that has considered the Secretary's argument—including this Court—has rejected it. *See Johnson v. Ardoin*, Civil Action 18-625-SDD-EWD, 2019 WL 2329319, at *1–3 (M.D. La. May 31, 2019) ("*Johnson I*") ("absent a constitutional challenge, a three-judge panel is not required for purely statutory challenges under Section 2"); *see also* Order, *Robinson et al.*

1

*v. Ardoin*, No. 3:22-cv-00211, (M.D. La. May 3, 2022), ECF No. 137 (denying motion for a three-judge panel because a constitutional claim was not raised in the complaint). Even if the Secretary's argument had not been soundly and repeatedly rejected, its interpretation of the statute does not make sense textually, historically, or practically. Indeed, the plain meaning of the statute, according to every case to interpret it, is that a three-judge court need not be convened for Section 2 challenges.

Given the lack of disagreement on the subject and the weight of authority rejecting the Secretary's position, there is no basis for this Court to authorize an immediate, interlocutory appeal. Doing so would not advance the case and could undermine this Court's ability to adjudicate Plaintiffs' claims in time for implementation ahead of the 2023 elections.

**II.    The Secretary's interpretation of § 2284 finds no support in its text, common canons of interpretation, other cases, or the text and history of the Voting Rights Act.**

The statute at issue provides that:

> A district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body.

28 U.S.C. § 2284(a). As an initial matter, a plain reading of this statute is at odds with the Secretary's view. Perhaps because of that, and even though § 2284 has been on the books for forty years, no one has proffered the Secretary's interpretation until recently. Indeed, in rejecting this very reading of the statute, the Fifth Circuit has referred to the Secretary's reading of the statute as "avant-garde" and "novel[]." *See Thomas v. Reeves*, 961 F.3d 800, 802 (5th Cir. 2020) (Costa, J., concurring) (en banc, per curiam) ("*Thomas III*") ("[The Secretary] offers the avant-garde view that the [VRA] requires three-judge courts for statutory-only challenges to state legislative districts. The novelty of the [Secretary]'s reading . . . shows that the ordinary meaning

2

of the statute is so clear that nobody ever bothered to ask the question.").

    A.    *The interpretation of § 2284 leads to only one conclusion.*

The Secretary asserts that "[a] straightforward reading of the statute suggests that 'constitutionality' only qualifies 'congressional districts.'" ECF No. 34-1 at 2. Such a reading amounts to nothing more than a cursory reading of the text of the statute, and fails to acknowledge (much less argue against) the cannons of statutory interpretation, all of which support a different conclusion.

The first and "most fundamental semantic rule" of statutory interpretation is that words should be understood according to their "ordinary, everyday meaning." *Thomas III*, at 803 (Costa, J., concurring) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 69 (2012)). Furthermore, congressional enactments providing for the convening of three-judge courts should be strictly construed. *See, e.g., Allen v. State Bd. of Elections*, 393 U.S. 544, 561 (1969); *Phillips v. United States*, 312 U.S. 246, 249–50 (1941). The ordinary, everyday, and strictly construed meaning of § 2284 (a) clearly supports the conclusion that the term "constitutionality" qualifies *both* "congressional district" *and* the "apportionment of any statewide legislative body." Numerous courts have reached that same conclusion. *See Chestnut v. Merril*, 356 F. Supp. 3d 1351, 1355 (N.D. Ala. 2019) (finding "no ambiguity on the face of § 2284 [hence] [b]ecause the statue is unambiguous, the court sees no reason to go beyond the text."); *see also* Order*, Alpha Phi Alpha Fraternity, Inc. v. Raffensperger*, No. 1:21-cv-05337-SCJ, (N.D. Ga Jan. 28, 2022), ECF No. 65, attached here as Ex. 1 at 12 (concluding that "under a plain-language reading of the statute, 'constitutionality of'' modifies both 'the apportionment of congressional districts' and 'the apportionment of any statewide legislative body.'"). Put differently, "[t]o put it simply, . . . most readers of the statute would readily

interpret 'constitutionality of' to modify both subsequent phrases." Ex. 1 at 12.

Other courts have referenced another, similarly well-established canon of statutory interpretation: the series qualifier canon of construction (*i.e.*, "a fancy label for describing how a normal person would understand section 2284(a)"). *Thomas III*, at 803 (Costa, J., concurring). Like the plain meaning of the statute, the series qualifier canon of construction indicates that the modifier "constitutionality of" should apply to both of the parallel terms that follow, namely "the apportionment of congressional districts" and "the apportionment of any statewide legislative body." *Thomas III*, at 803 (Costa, J., concurring); *see also* Ex. 1 at 12 (reaching the same conclusion using the series-qualifier canon of construction). Moreover, in applying a textual analysis of § 2284, Judge Costa found support for the series qualifier interpretive canon in similar readings by the Supreme Court. *Thomas III*, at 803 (Costa, J., concurring) (citing *Harris v. Ariz. Indep. Redistricting Comm'n*, 136 S. Ct. 1301, 1306 (2016). Accordingly, based on the plain language of the statute and the application of the canons of statutory construction, the Secretary's novel reading of the statute must be rejected.

> B.    *The legislative history of § 2284 confirms that a three-judge panel is not warranted in cases involving only a Section 2 challenge to state legislative apportionment.*

>> 1.    Page v. Bartels *is Distinguishable.*

The Secretary boldly asserts that "[t]he history surrounding Section 2284's enactment further supports the statutory interpretation that *any . . . statutory challenge* to the apportionment of a stateside legislative body must be resolved by a three-judge court." ECF No. 34-1 at 3 (emphasis added). In support, the Secretary relies on just one case—*Page v. Bartels*, 248 F.3d 175 (3d Cir. 2001)—which is both not controlling and squarely distinguishable here.

First, unlike here, *Page* involved "'an action involving *both* statutory Voting Rights Act and constitutional challenges to the apportionment of a statewide legislative body.'" *Johnson I*,

4

2019 WL 2329319, at *5 (quoting *Page*, 248 F.3d at 194) (emphasis added). And more importantly, *Page* did *not* "hold that a single-judge court lacks jurisdiction to hear challenges to the apportionment of statewide legislative bodies brought pursuant to Section 2 of the VRA alone." Ex. 1 at 21–22. As Plaintiffs' claims assert challenges to the State's legislative maps under only Section 2 of the Voting Rights Act, *Page* does nothing to support the Secretary's argument.

        2.    *Section 2284's Legislative History is at odds with the Secretary's interpretation.*

Section 2284's legislative history confirms that a three-judge court is authorized only when a party challenges either the constitutionality of the apportionment of congressional districts or the constitutionality of the apportionment of statewide legislative bodies. *See Johnson I*, 2019 WL 2329319, at *2–3.

The Senate Report for § 2284 begins by stating that "[t]his bill eliminates the requirement for three-judge courts in cases seeking to enjoin the enforcement of State or Federal laws on the grounds that they are unconstitutional, except in reapportionment cases." Ex. 1 at 24 (quoting S. Rep. No. 94-204 (1976), 1–2, reprinted in 1976 U.S.C.C.A.N. 1988). It then goes on to state that three-judge courts are warranted in challenges to the constitutionality of reapportionment. *Id.* at 24–25. Moreover, in its section-by-section analysis of the statute, the Senate Report makes clear that "[s]ubsection (a) would also *continue* the requirement for a three-judge court in cases challenging the constitutionality of any statute apportioning congressional district or apportioning any statewide legislative bodies." Ex. 1 at 26 (citing S. Rep. No. 94-204, 12) (emphasis added).

Critically, the Senate Report clarifies that the 1976 amendments *do not* create new grounds for a three-judge court to hear apportionment challenges. Rather, those amendments "continue"

5

the previous iteration's clear call for three-judge panels *only* in cases hearing constitutional challenges.

> C. The text of the VRA indicates that Congress made a specific choice in light of it granting three-judge panel status to other sections of the act.

While other provisions of the VRA explicitly require three-judge panels, the VRA itself excludes challenges brought under Section 2 from the jurisdiction of a three-judge panel. Ex. 1 at 16–17; *Chestnut*, 356 F. Supp. at 1351, 1354–55. Specifically, the VRA requires a three-judge panel to hear challenges brought under Sections 4 and 5 of the statute. *See* Voting Rights Act of 1965, 52 U.S.C. §§ 10303(a)(5), 10304(a) (2014) (requiring a three-judge panel to hear Section 4 challenges and Section 5 challenges). "But no provision of the Voting Rights Act requires a violation of Section 2 to go to a three-judge panel." *Chestnut*, 356 F. Supp. 3d at 1354.

> D. Courts' interpretation of the VRA support the view that challenges brought under Section 2 do not invoke a three-judge panel.

Courts have consistently found that three-judge panels are inappropriate for cases brought under only Section 2 of the VRA. For instance, in the Sixth Circuit, a three-judge panel was disbanded after plaintiffs dropped their constitutional challenge to the apportionment scheme for the Tennessee House of Representatives, and proceeded on a Section 2 theory. *Rural W. Tenn. African-American Affairs Council v. Sundquist*, 209 F.3d 835, 838 (6th Cir. 2000); *see also Armour v. State of Ohio*, 925 F.2d 987, 989 (6th Cir. 1991) (en banc) (describing the test for section § 2284(a) as whether "there exists a non-frivolous constitutional challenge to the apportionment of a statewide legislative body"). In this current redistricting cycle, one judge has heard Section 2 claims regarding state legislative districts in Georgia, and Arkansas. *See, e.g.*, *Alpha Phi Alpha Fraternity, Inc., v. Raffensperger*, No. 1:21-cv-05337-SCJ (N.D. Ga. 2022); *Ark. State Conf. of NAACP v. Ark. Bd. of Apportionment*, 4:21-cv-01239-LPR (8th Cir. 2022); *cf. Balt. Cnty. Branch of the NAACP v. Balt. Cnty., Md.*, No. 1:21-cv-03232-LKG (D.Md. 2021)

6

(one judge hearing a county Section 2 case). Just one judge heard a Section 2 challenge to the North Dakota legislature after a three-judge panel heard the Section 5 claim. *Bone Shirt v. Hazeltine*, 336 F. Supp. 2d 976, 980 (D.S.D. 2004) (citing *Bone Shirt v. Hazeltine*, 200 F. Supp. 2d 1150, (D.S.D. 2002)). Similarly, one judge heard a Section 2 challenge to the Montana House and Senate legislative districts. *Old Person v. Brown*, 182 F. Supp. 2d 1002 (D. Mont. 2002); *Langsdon v. Darnell*, 9 F. Supp. 2d 880, 882 n.3 (W.D. Tenn. 1998) (the three-judge court disbanded because the second amended complaint contained no constitutional claims).

In *Chestnut v. Merrill*, the "court refuse[d] to write into § 2284 or into Section 2 a provision requiring complaints alleging Section 2 violations to be heard by a three-judge panel—or alternatively striking 'constitutional' from § 2284—so that all apportionment challenges, statutory and constitutional, must be heard by a three-judge panel." 356 F. Supp. 3d at 1357.

Leading treatises on federal jurisprudence are in accord with this view. *See*, *e.g.*, James W. Moore, et al., 22 *Moore's Federal Practice – Civil § 404.03[2]* 404–30 to –31 (3d ed. 2019) (Section 2284(a) "is limited to federal constitutional claims"); Charles Alan Wright, et al., 17A *Federal Practice and Procedure § 4235* n.2 (3d ed. 2007) (describing the limited circumstance in which a three-judge panel is required under the VRA). And the courts of appeal have repeatedly affirmed single-judge Section 2 determinations in cases involving state legislative redistricting. *See*, *e.g.*, *NAACP, Inc. v. S.C. Democratic Party*, 898 F.2d 146 (4th Cir. 1990); *Old Person v. Cooney*, 230 F.3d 1113, 1117 (9th Cir. 2000); *Emery v. Hunt*, 272 F.3d 1042, 1045 (8th Cir. 2001).

**III.   The Court should deny the Secretary's request for an interlocutory appeal.**

This case does not warrant an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The Fifth Circuit has made clear that an interlocutory appeal should be granted only in exceptional

cases that meet the statutory criteria laid out in § 1292(b).  *United States v. Garner*, 749 F.2d 281, 286 (5th Cir. 1985), *opinion supplemented*, 752 F.2d 116 (5th Cir. 1985).  Specifically, the statute "permits a court to certify an interlocutory appeal where (1) a controlling question of law is involved, (2) there is substantial ground for difference of opinion about the question of law, and (3) immediate appeal will materially advance the ultimate termination of the litigation." *Rico v. Flores*, 481 F.3d 234, 238 (5th Cir. 2007) (citing 28 U.S.C § 1292(b)).  "A district court cannot certify an order for interlocutory appeal unless *all three criteria are present*."  *La. State Conf. of NAACP v. Louisiana*, 495 F. Supp. 3d 400, 410 (M.D. La. 2020) (citation omitted) (emphasis added).

The Secretary cannot meet these criteria because he cannot show that there is substantial ground for differences of opinion about the question of law.  Simply put, there is no dispute because, as discussed, *no court* has adopted the Secretary's view that § 2284(a) requires three-judge district courts for actions raising purely statutory claims challenging the reapportionment of statewide legislative bodies.

 A. *There is no substantial ground for a difference of opinion about the construction of § 2284.*

No courts disagree about the meaning, construction, or import of § 2284(b) in cases involving Section 2 challenges to state legislative maps.  *Chestnut*, 356 F.Supp.3d at 1357 (citing cases).  Indeed, despite § 2284 being on the books for "more than forty years," *Thomas III*, 961 F.3d, at 802 n.1 (Costa, J., concurring), the Secretary cannot point to a single Court ruling that supports its view.

The Secretary makes much of this Court's statement in *Johnson* that there is substantial ground for differences of opinion regarding whether a three-judge panel is required for challenges to legislative apportionment.  ECF No. 34-1. at 8 (citing *Page v. Bartels*).  However,

8

as this Court noted, that potential difference of opinion reflected in *Page* is merely dicta because its holding was inapposite to the issue at hand. *Johnson v. Ardoin*, Civil Action 18-625-SDD-EWD, 2019 WL 4318487, at *3 (M.D. La. Sept. 12, 2019) *("Johnson II")*. Moreover, the dicta from *Page* was rejected in *Raffensperger*. *See* Ex. 1 at 21–22.

Because there is no binding support for its position, the Secretary can only point to further dicta, citing the non-binding concurring opinions of the *Thomas III* case. 961 F.3d, at 801–10. But those concurrences underscore that Plaintiffs' position is likely to prevail (and, accordingly, there is no conflict). Moreover, in the earlier opinion of the three-judge panel in *Thomas*, the Fifth Circuit concluded that Section 2 standing alone does not warrant a three-judge panel in a state legislative apportionment challenge. *See Thomas v. Bryant*, 938 F.3d 134 (5th Cir. 2019). Although this early *Thomas* opinion is not binding precedent, this Court has found similar opinions persuasive. *Johnson II*, 2019 WL 4318487, at *2.

"A substantial ground for difference of opinion usually only arises out of a genuine doubt as to the correct applicable legal standard relied on in the order." *La. State Conf. of NAACP*, 495 F. Supp. 3d at 414 (quoting *United States v. La. Generating LLC*, No. 09-100, 2012 WL 4588437, at *2 (M.D. La. Oct. 2, 2012) (quoting *Prop. One, Inc. v. USAgencies, L.L.C.*, 830 F. Supp. 2d 170, 182–83 (M.D. La. 2011))). As demonstrated above, this is not the case here as there is no conflicting authority on the issue. *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Secs. LLC*, 454 B.R. 317 (S.D.N.Y. 2011); *see also Couch v. Telescope, Inc.*, 611 F.3d 629, 633 (9 Cir. 2010) ("[A] substantial ground for difference of opinion exists where 'the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point[.]"). Finally, given the weight of authority against the Secretary's position, the "strength of the arguments in opposition to the challenged ruling" mitigate against a substantial

9

ground for difference of opinion. *Max Daetwyler Corp. v. Meyer*, 575 F. Supp. 280, 283 (E.D. Pa. 1983) (mem).

> B. *An immediate appeal will not materially advance the ultimate termination of the litigation.*

This Court recently found that "[a]n immediate appeal for interlocutory review of the three-judge issue will not materially advance the ultimate termination of the litigation." *Johnson II*, 2019 WL 4318487, at *4. Indeed, should an appellate court rule in the Secretary's favor, it would merely change the manner of hearing this dispute, not *terminate* the litigation. As laid out in *Johnson*:

> Defendant argues that '[a]voiding post-trial appeals on a topic is sufficient to satisfy the 'materially advance the ultimate termination threshold.' On interlocutory review however, either this Court is without jurisdiction to hear purely statutory challenges to congressional apportionments, in which case this case would have to be relitigated before a three-judge panel, or an interlocutory appeal would needlessly delay this litigation if jurisdiction is found proper. In either case, an interlocutory appeal would delay, not advance, the ultimate termination of this litigation.

*Johnson II*, 2019 WL 4318487, at *4.[1]

The deadlines for upcoming elections that will be impacted by this litigation underscores this point. Contrary to the Secretary's assertion that "there is no urgency for any ruling on the merits of Plaintiff's claims" due to the timing of the legislative elections, ECF No. 34-1. At 7, the timeline for adjudicating this case through trial, the likelihood of appeal, and the deadlines preceding the 2023 elections call for this case to be handled as expeditiously as possible. Even assuming that this case is tried and judgment is reached by early 2023, adjudication of the (likely) appeal of such judgment would take months. Filing deadlines for the 2023 state

---

[1] In light of the subsequent dismissal on mootness grounds, *Thomas III*, 961 F.3d at 801, this Court's text entry in *Johnson* in light of the Fifth Circuit's grant of rehearing en banc is unavailing. *See* ECF No. at 8 n.3 (citing to *Johnson v. Ardoin*, No. 3:18-cv-00625-BAJ-EWD, D.E. 133 M.D. La. (Oct. 17, 2019)).

10

legislative elections are August 8–10, 2023, and the elections themselves will take place on October 14, 2023. *See* Elections Calendar 2023, La. Sec'y of State (last revised Feb. 2022), https://www.sos.la.gov/ElectionsAndVoting/PublishedDocuments/ElectionsCalendar2023.pdf. Accordingly, any additional delay caused by an interlocutory appeal and stay would greatly prejudice Plaintiffs' ability to obtain actionable relief before the 2023 elections proceed.

Even if this Court were to grant the State's request to authorize an interlocutory appeal (it should not), Plaintiffs respectfully request that this Court not stay the instant proceedings. *See* 28 U.S.C. § 1292(b) ("[A]pplication for an appeal [under § 1292(b)] shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order."); *see also La. State Conf. of NAACP*, 495 F. Supp. 3d at 419 (denying request to stay challenge under Section 2 of the Voting Rights Act pending interlocutory appeal of motion to dismiss as allowing the case to progress benefitted the public interest). Plaintiffs are prepared to proceed on parallel tracks in both the Fifth Circuit and this Court to ensure that VRA-compliant maps are implemented without running the risk that *Purcell v. Gonzalez*, 549 U.S. 1 (2006), will bar relief in time for the 2023 elections.

### III. Conclusion.

WHEREFORE, Plaintiffs respectfully request that this Court deny the Secretary's motion in all respects.

Respectfully submitted,

 /s/ John Adcock
JOHN ADCOCK
Adcock Law LLC
Louisiana Bar No. 30372
3110 Canal Street, New Orleans, LA
701119 Tel: (504) 233-3125
Fax: (504) 308-1266
Email: jnadcock@gmail.com

11

/s/ Ron Wilson
Louisiana Bar No. 13575
701 Poydras Street, Ste. 4100, New Orleans, LA 70139
Tel: (504) 525-4361
Fax: (504) 525-4380
Email: cabral2@aol.com

/s/ Sarah Brannon
Sarah Brannon*
American Civil Liberties Union Foundation
915 15th St., NW
Washington, DC 20005
sbrannon@aclu.org

Sophia Lin Lakin*
T. Alora Thomas*
Samantha Osaki*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
slakin@aclu.org
athomas@aclu.org
sosaki@aclu.org

/s/ Nora Ahmed
Nora Ahmed*
N.Y. Bar. No. 5092374
Megan E. Snider
LA. Bar No. 33392
ACLU Foundation of Louisiana
St. 1340 Poydras St.
St. 2160
New Orleans, LA 70112
Tel: (504) 522-0628
NAhmed@laaclu.org
msnider@laaclu.org

/s/ Michael de Leeuw
Michael de Leeuw**
Amanda Giglio**
Jacqueline Green***
Cozen O'Connor
3 WTC, 175 Greenwich
55th Floor
New York, NY 10007
MdeLeeuw@cozen.com
AGiglio@cozen.com
JGreen@cozen.com

/s/ Leah Aden
Leah Aden*
Stuart Naifeh*
Victoria Wenger*
NAACP LEGAL DEFENSE
& EDUCATIONAL FUND, INC.
40 Rector Street
5th Floor

Andrew H. Stanko**
Daniel Brobst**
Cozen O'Connor
Liberty Place, 1650 Market St.
Suite 2800.
Philadelphia, PA 19103
AStanko@cozen.com
DBrobst@cozen.com

New York, NY 10006
(212) 965-2200
laden@naacpldf.org
snaifeh@naacpldf.org
vwenger@naacpldf.org

*Counsel for Plaintiff*

Janette Louard**
Anthony Ashton**
Anna Kathryn
Barnes**
NATIONAL ASSOCIATION FOR
THE ADVANCEMENT OF COLORED PEOPLE (NAACP)
4805 Mount Hope Drive Baltimore,
 MD 21215
(410) 580-5777
jlouard@naacpnet.org
aashton@naacpnet.org
barnes@naacpnet.org

*Counsel for Plaintiff Louisiana State Conference of the NAACP*

*Admitted Pro Hac Vice
**Pro hac vice motions forthcoming
**Bar admission forthcoming

**CERTIFICATE OF SERVICE**

I hereby certify that on May 8, 2022, a copy of Plaintiffs' Response in Opposition to the Defendants' Motion to Convene a Three-Judge Panel or, in the Alternative, to Certify an Interlocutory Appeal was filed electronically with the Clerk of Court via the CM/ECF system and served on opposing counsel by electronic mail at tom.farr@nelsonmullins.com.

*/s/ John Adcock*
John Adcock