Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ALPHA PHI ALPHA FRATERNITY
INC. et al.,

    Plaintiffs,

v.

BRAD RAFFENSPERGER, in his official
capacity as Secretary of State of Georgia,

    Defendant.

CIVIL ACTION FILE

No. 1:21-CV-05337-SCJ

## ORDER

This matter is before the Court on a Motion to Dismiss filed by Defendant

Brad Raffensperger, in his official capacity as Secretary of State of Georgia

(hereinafter, "Defendant"). Doc. No. [43].[1]

## I.    BACKGROUND

Alpha Phi Alpha Fraternity, Inc., Sixth District of the African Methodist

Episcopal Church, Eric T. Woods, Katie Bailey Glen, Phil Brown, and Janice

---

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers
are those imprinted by the Court's docketing software.

Stewart (collectively, the "Plaintiffs") filed their Complaint for Declaratory and Injunctive Relief against Defendant on December 30, 2021. Doc. No. [1]. In their Complaint, Plaintiffs challenge the State of Georgia's newly adopted legislative maps, specifically Senate Bill 1EX and House Bill 1EX on the ground of dilution of the voting strength of Black Georgians. Id. at 1, 24–25. Plaintiffs' cause of action is based upon a violation of Section 2 of the Voting Rights Act of 1965 ("VRA"), 52 U.S.C. § 10301. Id. at 56–57.

On January 14, 2022, Defendant filed a Motion to Dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), in which he seeks the dismissal of all Plaintiffs' claims against him. Doc. No. [43]. He specifically argues that Plaintiffs fail to request a three-judge court for an action involving "the apportionment of congressional districts or the apportionment of any statewide legislative body," see 28 U.S.C. § 2284(a), and that this Court, therefore, lacks subject matter jurisdiction over Plaintiffs' claims against him. Doc. No. [43-1], 2. Defendant also asserts that even if this case is properly before a single-judge court, Plaintiffs' Complaint fails to state a claim against Defendant for declaratory relief because Congress has not expressed an intent to provide a private right of action under Section 2. Id. at 13. Lastly, Defendant requests certification of any denial

of his motion for immediate review to the Eleventh Circuit Court of Appeals. Id. at 15–17. Plaintiffs subsequently filed a response to the motion, to which Defendant filed a reply. Doc. Nos. [47]; [58]. Plaintiffs have also filed a Notice of Supplemental Authority in Support of Their Opposition to the Motion to Dismiss. Doc. No. [61]. This matter is now ripe for review, and the Court rules as follows.

## II. LEGAL STANDARD

### A. <u>Motion to Dismiss</u>

Defendant moves to dismiss this action for lack of subject matter jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

"Subject matter jurisdiction defines the court's authority to hear a given type of case; it represents the extent to which a court can rule on the conduct of persons or status of things." <u>Carlsbad Tech., Inc. v. HIF Bio, Inc.</u>, 556 U.S. 635, 639 (2009) (internal quotations and citations omitted). A party may therefore challenge the Court's subject matter jurisdiction by filing a motion pursuant to Federal Rule of Civil Procedure 12(b)(1). <u>See</u> Fed. R. Civ. P. 12(b)(1).

A motion to dismiss for lack of subject matter jurisdiction may be either a "facial" or "factual" attack. <u>Morrison v. Amway Corp.</u>, 323 F.3d 920, 924 n.5 (11th

3

Cir. 2003) (citation omitted). "Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion." Id. "Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings." Id. When resolving a factual challenge to subject matter jurisdiction, the Court may consider extrinsic evidence such as testimony and affidavits. Id. In this case, the challenge is based on the allegations of the Complaint and the Court deems Defendant to have brought a facial attack on subject matter jurisdiction.

"The burden for establishing federal subject matter jurisdiction rests with the party bringing the claim," here Plaintiffs. Sweet Pea Marine, Ltd. v. APJ Marine, Inc., 411 F.3d 1242, 1247 (11th Cir. 2005).

A defendant may also move to dismiss a complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

A complaint has failed to state a claim if the facts as pled, accepted as true, do not state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 555 U.S. 662, 687 (2009); Twombly, 550 U.S. at 561–62, 570. Labels, conclusions, and formulaic recitations of the elements of the cause of action "will not do."

4

<u>Twombly</u>, 550 U.S. at 555. To state a plausible claim, a plaintiff need only plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678.

**B.    <u>Interlocutory Appeal</u>**

28 U.S.C. § 1292(b) provides that a district court may certify an order for interlocutory appeal if the following three elements are met: (1) the subject order "involves a controlling question of law"; (2) there must be a "substantial ground for difference of opinion" regarding the controlling question of law; and (3) an immediate appeal from the subject order "may materially advance the ultimate termination of the litigation." However, "[t]he proper division of labor between the district courts and the court of appeals and the efficiency of judicial resolution of cases are protected by the final judgment rule, and are threatened by too expansive use of the § 1292(b) exception to it." <u>McFarlin v. Conseco Servs., LLC</u>, 381 F.3d 1251, 1259 (11th Cir. 2004). Therefore, an interlocutory appeal under 28 U.S.C. § 1292(b) is reserved for "exceptional" cases. <u>Caterpillar, Inc. v. Lewis</u>, 519 U.S. 61, 74 (1996).

## III.   ANALYSIS

The Court first addresses Defendant's Motion to Dismiss and then turns to his request for an interlocutory appeal.

### A.   <u>Defendant's Motion to Dismiss Is Due to Be Denied</u>

The Court finds that Defendant's Motion to Dismiss is due to be denied. First, Section 2284 does not require a plaintiff to request a three-judge court to hear purely statutory challenges to the apportionment of a statewide legislative body. Second, Plaintiffs can assert these claims because for the past forty-five years the Supreme Court and lower courts have allowed private individuals to assert challenges under Section 2 of the VRA. <u>See</u> <u>Thornburg v. Gingles</u>, 478 U.S. 30 (1986).

#### 1.   *Three-Judge Court*

##### a)   <u>The statutory text does not require a three-judge court</u>

Defendant asks the Court to dismiss this action because Plaintiffs did not seek a three-judge court under 28 U.S.C. § 2284(a). Doc. No. [43-1], 2.[2] Defendant

---

[2]  The statute reads: "A district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." 28 U.S.C. § 2284(a).

6

argues that Section 2284(a) requires plaintiffs challenging the apportionment of a statewide legislative body to request a three-judge court. <u>Id.</u> at 3–12. First, Defendant argues that the Court must read the statute's "shall" language to require referral to a three-judge court whenever Section 2284(a) is triggered. <u>Id.</u> at 3–4. Defendant then contends that Plaintiffs' lawsuit triggers Section 2284(a), arguing that the statute requires a three-judge court to be convened when any action challenges "the apportionment of any statewide legislative body," regardless of whether that challenge is constitutional or statutory. <u>Id.</u> at 5–7. Defendant points to the statute's text to support his argument, stating that "the prepositive modifier requiring a challenge be 'constitutional' in nature before triggering the three-judge panel is interrupted by a determiner, which means the 'constitutionality' requirement only applies to challenges to congressional districts." <u>Id.</u> at 6. In Section 2284(a), Defendant argues, the determiner is the word "the," following the word "or," which means that the "constitutional" element required in congressional districting challenges is not required for actions challenging statewide legislative apportionment, which is the type of challenge Plaintiffs bring. <u>Id.</u> at 6–7.

7

Plaintiffs oppose the Motion to Dismiss. Doc. No. [47].[3] Plaintiffs argue that Section 2284(a) does not require a three-judge court for purely non-constitutional claims. Id. at 7–8. They contend that under a plain reading of the statutory text, "constitutionality of" modifies "the apportionment of any statewide legislative body" in Section 2284(a), which means that an action must challenge the constitutionality of the apportionment of a statewide legislative body to allow referral to a three-judge court. Id. at 10–16. Plaintiffs undertake their own textual analysis, noting that "[a] prepositive modifier generally applies to all items in a parallel series" and arguing that Section 2284(a) contains a "straightforward, parallel construction" that should be construed as mandating three-judge courts only for constitutional challenges. Id. at 12. Plaintiffs argue that a textual analysis using the "series-qualifier" canon of construction shows that Congress employed a parallel structure or series such that "constitutionality of" modifies both "the apportionment of congressional districts" and "the apportionment of any statewide legislative body." Id. at 12–14. Plaintiffs argue that their textual analysis produces "the more natural parallel reading of the

---

[3] Plaintiffs originally filed their opposition at Doc. No. [46] but later filed their corrected brief at Doc. No. [47]. The Court refers only to Doc. No. [47].

statute," whereas Defendant's analysis results in "an unparallel and unnatural" reading of the statute. Id. at 14. Further, Plaintiffs reject Defendant's argument that the use of "the" before "apportionment of" is a "determiner" that interrupts the series in Section 2284(a) in a way that limits the "constitutional" modifier to challenges to congressional districts because both subsequent phrases are parallel in that they start with "the apportionment of." Id. at 14–16. Thus, Plaintiffs argue, the repeated use of "the" does not interrupt the phrase in a way that cabins the modifying power of "constitutionality"; instead, the repeated use of "the apportionment of" "merely emphasizes the parallel structure of the sentence." Id. at 15–16. Moreover, Plaintiffs argue that the exception to the series-qualifier canon on which Defendant relies "is not a hard and fast rule" and is especially "susceptible to context." Id. at 16. According to Plaintiffs, context here shows that their parallel-structure interpretation of the statute is the correct reading. See id.

In reply, Defendant rejects Plaintiffs' "parallel structure" reasoning, arguing instead that the additional language required to achieve this parallel structure only "muddies the interpretative waters." Doc. No. [58], 3. Defendant contends that Congress would have known about and accounted for the series-qualifier canon when deciding how to word this statute, and interpretation under

9

that canon compels a finding that "constitutionality of" does not modify "the apportionment of any statewide legislative body." See id. at 3–4. Further, Defendant contends that the statute's wording is not as parallel as Plaintiffs suggest, noting that Congress could have added "of" after "or" to enhance the parallel nature of the phrases. Id. at 4–5. Additionally, Defendant argues that Plaintiffs' interpretation renders the additional "the" redundant, which violates the interpretative "surplusage canon" that requires every word to be given effect if possible. Id. at 5–6.

As always, when interpreting a statute, the Court looks first to the statutory text. CSX Corp. v. United States, 18 F.4th 672, 679 (11th Cir. 2021). Section 2284(a) provides that "[a] district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." To start, the Court agrees with Defendant that Section 2284(a)'s use of "shall" is mandatory and requires the Court to refer a matter to a three-judge court when Section 2284(a) is triggered. The Court does not agree, however, that the three-judge-court requirement is triggered when a party brings a solely statutory claim.

10

The Court starts its analysis by acknowledging that when presenting and applying their preferred canons of statutory construction, both Defendant and Plaintiffs cite <u>Reading Law: The Interpretation of Legal Texts</u> by Antonin Scalia and Bryan Garner (2012) ("<u>Reading Law</u>").[4] Of course, the canons of construction are "interpretative tools" that should be used as "rules of thumb" to help determine the meaning of legislation. <u>CBS Inc. v. PrimeTime 24 Joint Venture</u>, 245 F.3d 1217, 1225 (11th Cir. 2001) (citation omitted). "The canons assist the Court in determining the meaning of a particular statutory provision by focusing on the broader, statutory context." <u>Id.</u> The Court keeps in mind, however, that "statutory interpretation is not a rigid mathematical exercise," <u>DaVita Inc. v. Virginia Mason Mem'l Hosp.</u>, 981 F.3d 679, 690 (9th Cir. 2020), and treating the

---

[4] The Court recognizes that <u>Reading Law</u> is a popular reference used often by the Supreme Court, <u>see, e.g.</u>, <u>Facebook, Inc. v. Duguid</u>, --- U.S. ----, 141 S. Ct. 1163, 1169 (2021), and courts in the Eleventh Circuit, <u>see, e.g.</u>, <u>Hincapie-Zapata v. U.S. Att'y Gen.</u>, 977 F.3d 1197, 1201 (11th Cir. 2020). Indeed, this Court's research shows that courts in the Eleventh Circuit have cited this text in over two hundred published decisions. Of course, as a secondary authority, <u>Reading Law</u> is not binding on this Court and thus should be employed only for its persuasive value and to help expound upon the principles of statutory interpretation it details. <u>Cf.</u> <u>Johnson v. United States</u>, 576 U.S. 591, 635 (2015) (Alito, J., dissenting) (citing <u>Reading Law</u> as a secondary authority); <u>Sanchez v. Launch Tech. Workforce Sols., LLC</u>, 297 F. Supp. 3d 1360, 1366 n.7 (N.D. Ga. 2018) (noting that a secondary authority written by a former jurist provided "at best, only persuasive authority"). Thus, this Court relies on <u>Reading Law</u> for what persuasive authority it provides.

11

canons of statutory interpretation "like rigid rules" can "lead [a court] astray," Facebook, Inc. v. Duguid, --- U.S. ----, 141 S. Ct. 1163, 1175 (2021) (Alito, J., concurring).

After careful review and consideration, the Court determines that Plaintiffs' interpretation of the statute comports with the plain meaning of the text as well as applicable canons of construction. First, the Court agrees with Plaintiffs that under a plain-language reading of the statute, "constitutionality of" modifies both "the apportionment of congressional districts" and "the apportionment of any statewide legislative body." To put it simply, the Court believes that most readers of the statute would readily interpret "constitutionality of" to modify both subsequent phrases.[5] See Levin v. United States, 568 U.S. 503, 513 (2013) (stating that when courts construe statutes, they must "giv[e] the words used their ordinary meaning"). Because the parties present textual arguments, however, the Court will also wrestle with the canons of construction.

The parties' dispute comes down to whether "constitutionality," as a prepositive modifier, modifies only "the apportionment of congressional districts"

---

[5] Indeed, the case treatment discussed below bolsters this view, as the vast majority of courts have adopted this plain-language interpretation for decades.

12

or that phrase *and* the subsequent "the apportionment of any statewide legislative body." The parties appear to agree that the most applicable canon of construction is the series-qualifier canon, but even though they both rely heavily on Reading Law, they disagree as to how it should be employed here. On its own review, the Court finds that while Reading Law provides helpful examples to explain the series-qualifier canon,[6] it does not provide an example on point with the wording found in Section 2284(a). Thus, looking to the statutory text, the Court agrees with Plaintiffs' contention that Section 2284(a) contains a parallel

---

[6] For instance, Reading Law provides simple constructions in which a prepositive adjective modifies multiple subsequent nouns or phrases. One example is "[c]haritable institutions or societies," in which "[c]haritable" modifies both "institutions" and "societies." Reading Law at 147. Another example is "[i]nternal personnel rules and practices of an agency," in which "[i]nternal personnel" should be read to modify both "rules" and "practices." Id. at 148. The Court fully agrees with the interpretations of those straightforward examples. The treatise goes on to note that "[t]he typical way in which syntax would suggest no carryover modification is that a determiner (*a*, *the*, *some*, etc.) will be repeated before the second element," providing the example "[t]he charitable institutions or the societies," in which "the presence of the second *the* suggests that the societies need not be charitable." Id. (emphases in original). Although that last example gets closer to the language at issue here because it contains two terms separated by distinct determiners, it is simpler than the lengthier excerpt in Section 2284(a) providing that a three-judge court must be convened "when otherwise required by an Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." As discussed above, that additional language provides context that helps the reader arrive at the statute's meaning. Thus, while the examples in Reading Law are helpful to introduce and explain the basics of the series-qualifier canon, the examples do not control the outcome here.

13

construction in which "constitutionality of" should be read to modify both subsequent phrases. First, the statute uses "when" twice in a parallel series to separate the triggering of the three-judge-court rule into two overarching camps: (1) "when otherwise required by Act of Congress" and (2) "when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." The Court finds that the second of those two phrases presents yet another parallel series in which "the constitutionality of" is followed by two phrases worded in parallel fashion: "the apportionment of congressional districts" and "the apportionment of any statewide legislative body." Under this reading, the allegedly redundant "the," which Defendant argues is an interrupting determiner, becomes a necessary part of the statute's parallel structure. As a result, "constitutionality of" should be read to modify both "the apportionment of congressional districts" and "the apportionment of any statewide legislative body."

The Court rejects Defendant's narrower interpretation that abandons any attempt at a plain reading of the statute and focuses more on the immediate phrases than the broader statute to arrive at the statute's meaning. Defendant's briefing starts with making passing references to how "clear" the statute is but

14

then jumps straight to discussing the allegedly critical role a "prepositive modifier" plays in dictating the meaning of Section 2284(a). See Doc. No. [43-1], 6. Again, this Court must look first to a statute's plain and ordinary meaning, Mike Smith Pontiac, GMC, Inc. v. Mercedes-Benz of N. Am., Inc., 32 F.3d 528, 531 (11th Cir. 1994), and the Court does not believe that an analysis that starts in earnest with contemplation of prepositive modifiers is an analysis that adequately considers the plain reading of the statute. While the canons of construction can be helpful tools, the Court is not persuaded by Defendant's attempt to start his analysis with a surgical deconstruction of the statutory text that all but ignores what meaning a plain reading of that text would yield.

And turning to Defendant's mode of analysis, as Reading Law concedes, the series-qualifier canon is "highly sensitive to context," and "[o]ften the sense of the matter prevails." Reading Law at 150. Here, the Court finds that the plain-language reading is the prevailing sense of the matter, and a broader review of the statute provides the context necessary to construe the statute properly. Also, given the plain meaning of the statute, the Court is not persuaded by Defendant's argument that Congress would have added yet more language if it had intended to make the phrases truly parallel—indeed, the Court finds it more likely that

15

Congress would have rearranged the statute's language if it had not intended "constitutionality of" to modify "the apportionment of any statewide legislative body."[7]

For these reasons, the Court finds that under a plain reading and textual analysis of Section 2284(a), the statute provides that a three-judge court shall be convened when the constitutionality of (1) the apportionment of congressional districts or (2) the apportionment of any statewide legislative body is challenged. And as shown below, the caselaw only bolsters this finding.

      **b)**   <u>**Courts find that three-judge courts do not hear challenges under Section 2 of the Voting Rights Act**</u>

Prior to 2013, following the decennial census, various states and counties (the "covered jurisdictions"), including Georgia, were required to submit their proposed legislative maps to the United States Attorney General before they

---

[7] For example, simply switching the relevant phrases after "challenging" would have made such an interpretation imminently clear: "A district court of three judges shall be convened . . . when an action is filed challenging the apportionment of any statewide legislative body or the constitutionality of the apportionment of congressional districts." That Congress did not use such a construction is telling. And just as this Court must recognize that "Congress legislates with knowledge of our basic rules of statutory construction," <u>McNary v. Haitian Refugee Ctr., Inc.</u>, 498 U.S. 479, 496 (1991), the Court must assume that Congress would not mire its meaning in ambiguity when much clearer wording is well within its grasp.

could enact them into law ("preclearance").[8] 52 U.S.C. § 10303(a)(1) ("Section 4").

A three-judge court was required to hear the action when a party brought a challenge under Section 4. 52 U.S.C. §§ 10303(a)(5); 10304(a). However, in 2013, the United States Supreme Court held that the coverage formula, which determined which states had to undergo preclearance, was unconstitutional. Shelby Cnty., 570 U.S. at 556–57. Accordingly, this is the first decennial census since the passage of the VRA where Georgia was not required to submit its proposed legislative maps for preclearance. As Defendant notes, plaintiffs are bringing purely statutory challenges to state legislative maps for the first time in earnest because pre-Shelby County, these claims accompanied either a claim under Section 5 of the VRA or a constitutional challenge to state legislative maps. Doc. No. [58], 6–7.

---

[8] "Section 4 of the [VRA] provides the 'coverage formula,' defining the 'covered jurisdictions' as States or political subdivisions that maintained tests or devices as prerequisites to voting, and had lower voter turnout, in the 1960s and early 1970s." Shelby Cnty. v. Holder, 570 U.S. 529, 529 (2013). The covered jurisdictions included: Alabama, Alaska, Arizona, Georgia, Louisiana, Mississippi, South Carolina, Texas, Virginia, four counties in California, five counties in Florida, two counties in Michigan, seven counties in New Hampshire, three counties in New York, thirty-nine counties in North Carolina, and two counties in South Dakota. 28 C.F.R. pt. 51, App. (2012).

Given the recent change in law, there is a lack of binding authority concerning whether Section 2284 requires a three-judge court to hear challenges to the apportionment of statewide legislative bodies brought solely under Section 2 of the VRA. However, this Court is not alone in grappling with this issue. See Thomas v. Reeves, 961 F.3d 800 (5th Cir. 2020); Singleton v. Merrill, Case No. 2:21-cv-1291-AMM, 2:21-cv-01530-AMM, 2021 WL 5979497, at *3 (N.D. Ala. Nov. 23, 2021). In Thomas, the en banc court ruled that it did not have jurisdiction to hear an action challenging the apportionment of statewide legislative districts pursuant to Section 2 of the VRA because these maps would not be used in any future elections.[9] Thomas, 961 F.3d at 801. However, all eleven judges agreed that Section 2284 can plausibly be read as only requiring a three-judge court when a plaintiff brings a constitutional challenge to apportionment. See id. at 802 (Costa, J., concurring) ("A person on the street would read [Section

_____

[9] In *dicta*, the Fifth Circuit issued two concurring opinions "to explain . . . [the] plain [language] of the three-judge statute as well as its ancestry." Thomas, 961 F.3d at 802. One concurrence, joined by six of the judges, agreed with this Court that the plain language of the statute does not require a three-judge court to hear purely statutory challenges to the apportionment of a statewide legislative body. Id. at 801 (Costa, J., concurring). The second concurrence, joined by five judges, found that the statute requires a three-judge court to hear statutory challenges to the apportionment of a statewide legislative body. Thomas, 961 F.3d at 827 (Willett, J., concurring) (emphasis in original).

18

2284] as requiring a three-judge court only for constitutional challenges."); id. at 827 (Willett, J., concurring) ("Requiring only a single judge to decide section 2-only challenges . . . . is *a* plausible reading of the statute . . . .").

In <u>Singleton</u>, four separate actions were filed challenging Alabama's legislative maps. <u>Singleton</u>, 2021 WL 5979497, at *1. There, two of the cases challenged either the statewide legislative maps or the congressional maps solely on constitutional grounds, one case challenged the congressional maps on statutory and congressional grounds, and one challenged the congressional maps on purely statutory grounds. <u>Id.</u> The single-judge court did not consolidate the statutory case with the constitutional cases because "plaintiffs intentionally have not asserted a claim that independently supports the jurisdiction of a three-judge [court] under Section 2284 . . . to include those plaintiffs in this consolidated action could exceed the limited jurisdiction of this [three-judge] court under that statute." <u>Id.</u> at *3. These cases support the reading that Section 2284 is limited to actions asserting constitutional challenges to the apportionment of congressional districts and constitutional challenges to the apportionment of statewide legislative bodies. While instructive, these cases do not definitively answer the

19

question of whether a single judge lacks jurisdiction to hear statutory challenges to the apportionment of a statewide legislative body.

Before Shelby County, three-judge courts routinely disbanded once a claim brought pursuant to Section 5 of the VRA, which invoked a three-judge court, was terminated, and only claims brought pursuant to Section 2 of the VRA remained. See, e.g., Rural West Tenn. African-American Affairs Council v. Sunquist, 209 F.3d 835, 838 (6th Cir. 2000) ("Because the amended complaint contained no constitutional claims [and only the Section 2 claim remained], the three-judge court disbanded itself."); Bone Shirt v. Hazeltine, 336 F. Supp. 2d 976, 980 (D.S.D. 2004) (a single-judge court decided a challenge to a statewide legislative plan brought pursuant to Section 2 of the VRA after a three-judge court resolved the plaintiffs' Section 5 claim); Langsdon v. Darnell, 9 F. Supp. 2d 880, 882 n.3 (W.D. Tenn. 1998) (the three-judge court disbanded because the second amended complaint contained no constitutional claims). These cases suggest that three-judge courts are generally not invoked where only challenges to Section 2 of the VRA remain before the Court.

In support of reading Section 2284 as requiring a three-judge court to hear statutory challenges to the apportionment of statewide legislative bodies,

Defendant points to a 2001 case out of the Third Circuit Court of Appeals, which found that "Congress was concerned less with the source of law on which an apportionment challenge was based than on the unique importance of apportionment cases generally." Doc. No. [43-1], 8 (quoting Page v. Bartels, 248 F.3d 175, 190 (3d Cir. 2001)). Upon closer examination of Page, this Court finds that the Third Circuit was confronted with the issue of whether a single-judge court had jurisdiction to issue a preliminary injunction when the plaintiffs challenged the statewide legislative districts under Section 2 of the VRA and the Fourteenth and Fifteenth Amendments to the Constitution. Id. at 184, 187–88. The Supreme Court had already decided this issue and had held that a three-judge court "could properly consider the [statutory] question and grant relief in the exercise of jurisdiction ancillary to that conferred by the constitutional attack on the state statutes which plainly required a three-judge court." Allee v. Medrano, 416 U.S. 802, 812 (1974). The Third Circuit held that when an "'action' . . . includes a challenge brought under § 2 of the Voting Rights Act, the § 2 challenge, as well as the Fourteenth and Fifteenth Amendment challenges, are subject to § 2284(a)'s requirement that they be heard by a three-judge district court." Page, 248 F.3d at 188. The Court does not read Page to hold that a single-judge court lacks

21

jurisdiction to hear challenges to the apportionment of statewide legislative bodies brought pursuant to Section 2 of the VRA alone. Thus, this Court will not expand the Third Circuit's reading of the statute to encompass actions that do not contain a constitutional claim.

Finally, limiting Section 2284 to constitutional challenges to apportionment is consistent with the narrow construction that the Supreme Court has given to Section 2284. The Supreme Court has "stressed that the three-judge-court procedure is not 'a measure of broad social policy to be construed with great liberality.'" Gonzalez v. Automatic Emp. Credit Union, 419 U.S. 90, 98 (1974) (quoting Phillips v. United States, 312 U.S. 246, 251 (1941)). In fact, "Congress established the three-judge-court apparatus for one reason: to save state and federal statutes from improvident doom, on constitutional grounds, at the hands of a single federal district judge." Id. at 97. Following Supreme Court precedent and applying Section 2284 narrowly, Plaintiffs were not required to request a three-judge court. Section 2284 applies only to constitutional claims concerning the apportionment of statewide legislative bodies; it does not apply to purely statutory claims concerning the apportionment of statewide legislative bodies.

Dismissing Plaintiffs' claims would result in this Court splitting from the other courts (discussed above) where three-judge courts do not hear challenges brought solely under Section 2 of the VRA. Thus, the Court does not find that Plaintiffs were required to request a three-judge court to hear their claims.

### c) Legislative history

Section 2284's legislative history confirms that three-judge courts are convened to hear constitutional claims concerning the apportionment of congressional districts and constitutional claims concerning the apportionment of any statewide legislative body, not purely statutory claims. Courts can evaluate legislative history to confirm the plain meaning of a statute and to understand Congress's intent behind the statute.

> As for the propriety of using legislative history at all, common sense suggests that inquiry benefits from reviewing additional information rather than ignoring it. As Chief Justice Marshall put it, "[w]here the mind labours to discover the design of the legislature, it seizes every thing from which aid can be derived."

Wisconsin Pub. Intervenor v. Mortier, 501 U.S. 597, 612 n.4 (1991) (quoting United States v. Fisher, 2 Cranch 358, 386, 2 L.Ed. 304 (1805)); see also Carr v. U.S., 560 U.S. 438, 457–58 (2010) (evaluating the correspondence between the committee to confirm the plain meaning of the statutory text); United States v. Florida, 938 F.3d

23

1221, 1245 (11th Cir. 2019) ("[W]e are mindful that courts need not examine legislative history if the meaning of the statute is plain, but it may do so, particularly if a party's interpretation is based on a misreading or misapplication of legislative history."); Harris v. Garner, 216 F.3d 970, 977 n.4 (11th Cir. 2000) ("[W]e see no inconsistency in pointing out that both the statutory language and legislative history lead to the same interpretive result.").

As discussed above, the plain language only requires a three-judge court to hear cases challenging the constitutionality of a statewide legislative body, not purely statutory challenges to the apportionment of a statewide legislative body. See supra III. A. The legislative history confirms this reading. The Senate Report begins by stating that "[t]his bill eliminates the requirement for three-judge courts in cases seeking to enjoin the enforcement of State or Federal laws on the grounds that they are unconstitutional, except in reapportionment cases." S. Rep. No. 94-204 (1976), 1–2, reprinted in 1976 U.S.C.C.A.N. 1988. When discussing the purpose of the amendment, the Senate did not distinguish between constitutional challenges to congressional districts and all challenges—constitutional and statutory—to statewide legislative bodies. Rather, the Senate Report states that

three-judge courts apply to challenges to the constitutionality of reapportionment. Id. at 1–2.

Section 2284 was originally enacted in response to the Supreme Court's decision in Ex Parte Young, 209 U.S. 123 (1908), and "prohibited a single Federal district court judge from issuing interlocutory injunctions against allegedly unconstitutional State statutes and required that cases seeking such injunctive relief be heard by a district court made up of three judges." S. Rep. No. 94–204, 2.[10] In response to the growing backlog of cases produced by this statute, Congress amended the law and removed constitutional challenges to State laws generally from the purview of a three-judge court. However, "[t]he bill *preserves* three-judge courts for cases involving congressional reapportionment or the

---

[10] The original statute read:

> An interlocutory or permanent injunction restraining the enforcement, operation of execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judges thereof upon the grounds of unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges.

28 U.S.C. § 2281 (1948), 62 Stat. 968.

reapportionment of a statewide legislative body." Id. at 9 (emphasis added). Because the original statute only authorized three-judge courts to hear challenges "upon the grounds of unconstitutionality of such statute" (28 U.S.C. § 2281 (1948), 62 Stat. 968), the "preservation" discussed is to a three-judge court's jurisdiction to hear constitutional challenges to the apportionment of statewide legislative bodies. Reading Section 2284 to encompass statutory challenges would be an expansion, not a preservation, of the three-judge court's jurisdiction.

The Senate Report highlights this in the "Section-by-Section Analysis" where it states, "[s]ubsection (a) would also *continue* the requirement for a three-judge court in cases challenging the constitutionality of any statute apportioning congressional district or apportioning any statewide legislative bodies." S. Rep. No. 94-204, 12 (emphasis added). Again, the Senate Report clarifies that the 1976 amendments do not create new grounds for a three-judge court to hear apportionment challenges. Rather, it "continues" the requirement from the previous statute—a statute that only authorized three-judge courts to hear constitutional challenges. It also explicitly states that the statute applies to constitutional challenges and is silent about statutory challenges.

Additionally, the Senate Report notes explicitly that three-judge courts can hear claims that are expressly authorized by an act of Congress. "A three-judge court is mandatory without request by anyone in suits under sections 4(a), 5(a), and 10 of the Voting Rights Act of 1965." Id. When Congress amended Section 2284, it was careful to note that three-judge courts have jurisdiction over particular statutory challenges; however, absent from that list are challenges brought pursuant to Section 2 of the VRA. Because Section 2284, as amended, "preserved" or "continued" the jurisdictional requirements from Section 2281, it only applies to constitutional challenges to the apportionment of districts and particular statutory challenges authorized by Congress. Because Congress did not expressly authorize a three-judge court to hear Section 2 claims, a three-judge court cannot exercise jurisdiction over Plaintiffs' claims. Accordingly, the legislative history confirms that constitutional challenges to a congressional district and constitutional challenges to a statewide legislative body are properly determined by a three-judge court. However, statutory challenges, unless specifically authorized by congressional act (i.e., sections 4(a), 5(a), and 10 of the Voting Rights Act of 1965), are properly decided by a single-judge court.

27

Accordingly, Section 2284's legislative history confirms that a three-judge court is authorized when a party challenges either the constitutionality of the apportionment of congressional districts or the constitutionality of the apportionment of statewide legislative bodies. Section 2284 is silent as to its application with respect to challenges to the apportionment of statewide legislative bodies brought pursuant to Section 2 of the VRA. Thus, the Court will not dismiss Plaintiffs' claims because they did not ask for a three-judge court.

### d) Federalism

Defendant argues that federalism weighs in favor of requiring a three-judge court. Specifically, Defendant argues that "[i]t is entirely plausible that Congress wanted federal courts to show more deference to state reapportionment plans that only affect state interests than to state reapportionment plans which affect a national interest." Doc. No. [58], 10 (quoting Thomas v. Bryant, 919 F.3d 298, 323 (5th Cir. 2019) (Clement, J., dissenting)). Plaintiffs, in turn, argue that the concerns of overburdening the judiciary weigh against referring purely statutory claims to a three-judge court. Doc. No. [47], 16-17. The Supreme Court, in Allen v. State Board of Elections, 393 U.S. 544, 562–63 (1969), abrogated by Ziglar v. Abbasi, --- U.S. ----, 137 S. Ct. 1843

28

(2017)[11] addressed these two competing arguments. The Supreme Court began by noting that "congressional enactments providing for the convening of three-judge courts must be strictly construed." Allen, 393 U.S. at 561 (citing Phillips, 312 U.S. at 251). The Court also observed that "[c]onvening a three-judge court places a burden on our federal court system, and may often result in a delay in a matter needing swift initial adjudication." Id. When discussing the need for a three-judge court in claims brought under Section 5 of the VRA, the Supreme Court noted, "[t]he clash between federal and state power and the potential disruption to state government are apparent. There is no less a clash and potential for disruption when the disagreement concerns whether a state enactment is subject to § 5." Id. at 562. The Supreme Court ultimately concluded, "in light of the extraordinary nature of the Act in general, and the unique approval requirements of § 5, Congress intended that disputes involving the coverage of § 5 be determined by a district court of three judges." Id. at 563.

---

[11] The Supreme Court noted after discussing Allen that later "the arguments for recognizing implied causes of action for damages began to lose their force." Ziglar, 137 S. Ct. at 1855–86.

The Supreme Court in <u>Allen</u> analyzed the dual concerns of the burden on the courts by convening a three-judge court and the unique federalism concerns imposed by a three-judge court. As the Supreme Court ultimately found, Congress grappled with those concerns when it enacted Section 5 of the VRA and expressly required a three-judge court to hear those actions. That is not the case with respect to Section 2 of the VRA. First, Section 2 of the VRA does not expressly invoke the jurisdiction of a three-judge court, like Sections 4, 5, and 10 of the VRA do. Second, after Congress amended the three-judge court statute in 1976, it "preserved" and "continued" the jurisdiction of the three-judge court with respect to apportionment cases. S. Rep. No. 94–204, 9, 12. Defendant's reading does not "preserve" and "continue" the jurisdiction under Section 2281; it expands the three-judge court's jurisdiction. If this Court adopted Defendant's reading, it would circumvent Congress's careful weighing of the clash between federal and state power. <u>Allen</u>, 393 U.S. at 563.

Given the Supreme Court's instruction that "congressional enactments providing for the convening of three-judge courts must be strictly construed," <u>Phillips</u>, 312 U.S. at 251, the Court finds that the federalism concerns that weigh

30

in favor of a three-judge court hearing this case are not outweighed by the plain language of Section 2284.

For the above reasons, the Court finds that Defendant's Motion to Dismiss is due to be denied because Section 2284(a) does not require or authorize a three-judge court to hear this purely statutory challenge to the apportionment of a statewide legislative body.[12]

### 2.    Private Right of Action

In his Motion, Defendant asserts that the Complaint should be dismissed because there is no private right of action conferred by Section 2 of the VRA. Doc. No. [43-1], 12. In support of his motion, Defendant relies upon a recent concurring opinion by Justice Neil Gorsuch in the case of Brnovich v. Democratic National Committee, --- U.S. ----, 141 S. Ct. 2321 (2021), in which he noted that Supreme Court jurisprudence has "assumed—without deciding—that the Voting Rights Act of 1965 furnishes an implied cause of action under" Section 2. Id. at 2350 (Gorsuch, J., concurring). Justice Gorsuch also indicated that "[l]ower courts

---

[12]  Because the Court finds that this action should not be heard by a three-judge court, the Court also finds that Defendant's Motion to Dismiss is due to be denied insofar as it argues that Plaintiffs failed to request a three-judge court pursuant to this District's Local Rules. See Doc. No. [43-1], 11–12.

31

have treated this as an open question." Id. Also in his motion, Defendant examines the statutory language of Section 2 and states that one cannot find any "rights-creating language in Section 2," as compared to other parts of the VRA. Doc. No. [43-1], 13 (quotations omitted). Defendant further relies upon Supreme Court and Eleventh Circuit precedent which indicates that courts may not create causes of action where there is no clear and affirmative manifestation of Congress's intent to create one. Id. at 13–14; see also Alexander v. Sandoval, 532 U.S. 275, 286-87 (2001); In re Wild, 994 F.3d 1244, 1255 (11th Cir. 2021) (en banc)).

The Court begins by acknowledging that it is correct that lower courts have treated the question of whether the VRA furnishes an implied right of action under Section 2 as an open question. However, in a recent trend, the lower courts that have answered the open question have all answered the question in the affirmative. See Singleton v. Merrill, Case Nos. 2:21-cv-1291-AMM, 2:21-cv-01530-AMM at 209–10 (N.D. Ala. Jan. 24, 2022), ECF No. 107 ("Holding that Section [2] does not provide a private right of action would work a major upheaval in the law, and we are not prepared to step down that road today."); League of United Latin Am. Citizens v. Abbott, No. EP21CV00259DCGJESJVB, 2021 WL 5762035, at *1 (W.D. Tex. Dec. 3, 2021) ("[I]t would be ambitious indeed

for a district court—even a three-judge court—to deny a [Section 2] private right of action in the light of precedent and history."); <u>Ga. State Conf. of NAACP v. State</u>, 269 F. Supp. 3d 1266, 1275 (N.D. Ga. 2017) ("Even though the statute does not explicitly provide a private right of action, it is clear from the text that if the statute offers a right of action to an individual, then that right must be one that is enforceable against a 'State or political subdivision.' Given that Section 2 contains an implied private right of action . . . .") (citations omitted).

While not binding, the Court accepts these holdings as persuasive authority and draws guidance from them. The Court also derives guidance from the Supreme Court's opinion in <u>Morse v. Republican Party of Virginia</u>, 517 U.S. 186, 232 (1996) in which the Court stated: "Although § 2, like § 5, provides no right to sue on its face, 'the existence of the private right of action under Section 2 . . . has been clearly intended by Congress since 1965.'" <u>Id.</u> (citing S. Rep. No. 97–417, at 30). In his briefing, Defendant appears to characterize the <u>Morse</u> opinion as non-binding dicta because the Court was not addressing an express challenge to private Section 2 enforcement. Doc. No. [58], 2. "Even so, dicta from the Supreme Court is not something to be lightly cast aside." <u>Peterson v. BMI Refractories</u>, 124 F.3d 1386, 1392 n.4 (11th Cir. 1997).

33

Like the court in <u>Abbott</u>, this Court agrees with the statement that "although the Supreme Court has not addressed an express challenge to private Section 2 enforcement, the Court's precedent permits no other holding." <u>Abbott</u>, 2021 WL 5762035, at *1. This is because there is no reason to ignore or refute the decades of Section 2 litigation challenging redistricting plans in which courts (including the Supreme Court) have never denied a private plaintiff the ability to bring a Section 2 claim. <u>Id.</u>

As aptly stated by the <u>Abbott</u> court, "[a]bsent contrary direction from a higher court," this Court declines to "break new ground on this particular issue." <u>Id.</u>

## B.     Immediate Appeal of this Court's Ruling is Not Authorized

Defendant asserts that this Court should authorize an immediate appeal if it rules against Defendant on the issues presented in his motion.

After review, the Court denies Defendant's request as none of the questions for which Defendant seeks certification are issues involving a

"controlling question of law as to which there is substantial ground for difference of opinion." 28 U.S.C. §1292(b).[13]

## IV.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss Plaintiffs' Complaint (Doc. No. [43]). Defendant's request for certification of this ruling for immediate appeal under 28 U.S.C. § 1292(b) is **DENIED**.

IT IS SO ORDERED this _2 7th_ day of January, 2022.

_Steve C. Jones_

HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

---

[13]  The Court recognizes that in his brief Defendant quotes appellate dissenting opinions concerning the lack of statutory provisions in Sections 2 and 10 of the VRA under which private plaintiffs may sue. See Doc. No. [44], 8–9. However, "no federal court anywhere ever has held that Section [2] does not provide a private right of action." Singleton, Case Nos. 2:21-cv-1291-AMM, 2:21-cv-01530-AMM at 230, ECF No. 107. In the absence of such a ruling, the Court does not think that the Section 2/private right of action issue is a question that is appropriate for immediate appeal.

35