UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DR. DOROTHY NAIRNE, JARRETT LOFTON, REV. CLEE EARNEST LOWE, DR. ALICE WASHINGTON, STEVEN HARRIS, ALEXIS CALHOUN, BLACK VOTERS MATTER CAPACITY BUILDING INSTITUTE, and THE LOUISIANA STATE CONFERENCE OF THE NAACP,<br>    Plaintiffs,<br><br>v.<br><br>R. KYLE ARDOIN, in his capacity as Secretary of State of Louisiana,<br><br>    Defendant. | Case No. 3:22-cv-00178-SDD-SDJ |

**MEMORANDUM IN SUPPORT OF JOINT MOTION TO STAY PROCEEDINGS**

Defendant the State of Louisiana, by and through its Attorney General, Jeff Landry, the Secretary of State of Louisiana, and the Legislative Intervenors file this Memorandum in Support of their Motion to Stay.

**INTRODUCTION**

Plaintiffs brought this action under Section 2 of the Voting Rights Act, alleging that Louisiana's 2022 state legislative redistricting plan "unlawfully deprive[s] Louisiana's Black voters of a meaningful opportunity to elect candidates of their choice to the State Senate and House of Representatives," and seeking declaratory and injunctive relief against that plan. Compl. (ECF No. 1) at 1. But a case being heard by the Supreme Court of the United States on October 4, 2022, *Merrill v. Milligan*, Nos. 21-1086 and 21-1087 (U.S.), will inevitably impact this action—and, indeed, may be outcome-determinative. In light of *Merrill,* as well as the Supreme Court's recent

1

grant of certiorari before judgment, stay of injunction, and abeyance of a similar challenge to Louisiana's 2022 congressional district plan, *Robinson v. Ardoin*, Nos. 3:22-cv-211-SDD-SDJ and 3:22-cv-214-SDD-SDJ, pending *Merrill*, the Defendants now move to stay these proceedings pending resolution of *Merrill* at the Supreme Court of the United States.

## ARGUMENT

The power to stay a case "is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for the litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254-55. Courts have the inherent power to stay proceedings while awaiting the outcome of another matter which may have a substantial or dispositive effect. *Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 215 (1937). A court is within its discretion to grant a stay when a related case that presents substantially similar issues is pending before another court. *See Greco v. NFL*, 116 F. Supp. 3d 744, 761 (N.D. Tex. 2015).

"Whether to grant a stay pending resolution of another case is a fact-intensive question." *Alford v. Moulder*, 2016 U.S. Dist. LEXIS 143293, at *4 (S.D. Miss. Oct. 17, 2016) (citing *In re Beebe*, 1995 U.S. App. LEXIS 41303 (5th Cir. 1995)). Specifically, when considering whether to stay a matter pending resolution of a separate action, the Fifth Circuit considers multiple factors, including (1) a "balancing of the competing interests" of the parties, i.e., whether the "hardship of a stay on the plaintiffs" exceeds the "hardship or inequity [on defendants] in being required to go forward," (2) whether the length of the stay is of a reasonable duration, and (3) other "difficulties inherent in the general situation, including a potential judicial inefficiency . . . ." *Wedgeworth v. Fireboard Corp.*, 706 F.2d 541, 545-46 (5th Cir. 1983), *aff'd in part and vacated in part on other*

*grounds*, 706 F.2d 541, 548 (5th Cir. 1983). *See also Greco*, 116 F. Supp. 3d at 761 ("[I]n determining whether a stay is proper, courts consider the interests of the parties and potential conservation of judicial resources."); *Landis*, 299 U.S. at 254-55 (same). Here, these factors weigh decisively in favor of a stay.

> **I.  A Stay Should be Granted Pending the Supreme Court's Determination in *Merrill v. Milligan*.**

The Supreme Court's pending resolution of lingering questions regarding the application of Section 2 of the Voting Rights Act, and specifically questions as to when the creation of an additional majority-minority district is required, will directly impact the outcome of the present matter. There are several important reasons why Defendant's interests and the interests of judicial economy counsel in favor of a stay here. The instant case closely parallels the recent Alabama trial court decisions where the Supreme Court issued a stay of a preliminary injunction, noted probable jurisdiction in one case and granted a writ of certiorari before judgment in the other. In those cases, the plaintiffs sought to force the State to create oddly shaped districts that were drawn primarily on the basis of race, claiming that the goal of ensuring proportional representation for various racial groups justified the creation of the proposed districts, and then adjusting the resulting maps to attempt to satisfy other traditional redistricting criteria.

The Supreme Court itself has signaled that *Merrill* warrants a litigation stay in Section 2 vote-dilution litigation. On June 6, 2022, this Court issued a preliminary injunction enjoining the State's enacted congressional plan and ordering the creation of a remedial plan with two majority-Black districts. *Robinson, et al. v. Ardoin*, Nos. 3:22-cv-211-SDD-SDJ (M.D. La.) and 3:22-cv-214-SDD-SDJ (M.D. La.). On June 12, 2022, the Fifth Circuit denied the Defendants' emergency motions for stay pending appeal. 2022 U.S. App. LEXIS 16126 (June 12, 2022). On June 28, 2022, however, the Supreme Court granted the State and Secretary of State's emergency application,

3

stayed the Court's injunction, granted certiorari before judgment, and held the matter in abeyance pending *Merrill*. *See Ardoin, et al. v. Robinson, et al.*, No. 21-1596 (U.S., June 28, 2022). By holding the *Robinson* case in abeyance pending *Merrill*, the Supreme Court indicated that resolution of the Section 2 matters in *Robinson* is likely to be impacted by *Merrill* and therefore adjudication should await *Merrill*. If that course of action suits the Supreme Court, it should suit this Court.

This case stands in materially similar shoes as *Robinson* and should be held in abeyance pending *Merrill*. As a result of these parallels, the issues currently under consideration by the Supreme Court in *Merrill* are likely to substantially affect or be fully dispositive of the issues presented in this case. The judicial inefficiency (and hardship to the Parties) that could result from a liability finding from this Court pre-dating the Supreme Court's final decision in *Merrill* puts the Defendants—and by extension the State's more than 4.6 million residents—at a grave risk that this Court may decide the case under a legal theory or standard that may no longer be applicable law. There is little point in shepherding this case through expensive discovery and trial only to learn later what legal standards govern Plaintiffs' claim.

The principles and standards that shape expert opinion and guide discovery in the case are likely to be modified to a degree that considerable effort and expense will be wasted on issues that may well have no relevance post-*Merrill*. Additionally, should this case be allowed to proceed, the litigants could be placed in a position that would require them to relitigate this case in its entirety following the disposition of *Merrill*. These concerns clearly demonstrate the risk of wasted time and resources for both the Court and the Parties if these proceedings are not stayed.

Accordingly, this Court should also stay proceedings in this case pending resolution of *Merrill*.

4

**A. The Possibility of Prejudice to the Defendants Weighs in Favor of Granting a Stay.**

In determining whether a stay in a given case is proper, courts must weigh, *inter alia*, the similarity of issues and the consequent likelihood that the related case will impact the case at bar, *see Greco*, 116 F. Supp. 3d at 761, the balance of the equities, *see Alford*, 2016 U.S. Dist. LEXIS 143293, at *6, and the "interests of judicial economy," *Labouliere v. Our Lady of the Lake Found.*, No. 16-00785-JJB-EWD, 2017 U.S. Dist. LEXIS 160853, at *25 (M.D. La., Sept. 29, 2017). Accordingly, courts frequently stay proceedings pending the outcome of a separate case pending before the Supreme Court of the United States when the Supreme Court's decision may substantially affect, or other prove dispositive of, the instant matter. *See, e.g.*, *Kamal v. J. Crew Grp., Inc.*, Civil Action No. 15-0190 (WJM), 2015 U.S. Dist. LEXIS 172578, at *4 (D.N.J. Dec. 9, 2015) (staying action pending the Supreme Court's decision in a separate but related action, and citing decision of nine federal district courts staying similar cases); *see also Tel. Sci. Corp. v. Asset Recovery Sols., LLC*, No. 15 C 5182, 2016 U.S. Dist. LEXIS 581, at *8 (N.D. Ill. Jan. 5, 2016) (same).

The legal issues currently under active consideration by the Supreme Court in *Merrill* go the heart of the elements of a Section 2 vote-dilution claim and are directly relevant to those presented here, merely arising in the congressional rather than the state legislative context. The question presented in *Merrill* is "[w]hether the State of Alabama's 2021 redistricting plan for its seven seats in the United States House of Representatives violated Section 2 of the Voting Rights Act, 52 U.S.C. §10301." 2022 U.S. LEXIS 1626, at *1. Specifically, that case arises from a dispute over Alabama's newly enacted congressional district map, in which a three-judge federal district court concluded that Alabama's new map likely violated Section 2 of the Voting Rights Act, and thus entered an injunction ordering that the map be completely redrawn. *See Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (Kavanaugh, J., concurring) (describing procedural background).

The Supreme Court in *Merrill* will address the nature of Section 2 vote-dilution claims to, *inter alia*, clarify how its standard interacts with the fast-evolving principles governing racial-gerrymandering claims. This intention is acknowledged in separate opinions by Justice Kavanaugh, Chief Justice Roberts, and Justice Kagan. *See Merrill*, 142 S. Ct. at 881 (Kavanaugh, J., concurring) ("The Court's case law" with respect to "whether an additional majority-minority congressional district . . . is required by the Voting Rights Act and not prohibited by the Equal Protection Clause . . . is notoriously unclear and confusing."); *id.* at 882-83 (Roberts, C.J., dissenting) ("*Gingles* and its progeny have engendered considerable disagreement and uncertainty regarding the nature and contours of a vote dilution claim."); *id.* at 889 (Kagan, J., dissenting) (noting that the Court believes "that the law needs to change"). When a higher court has signaled that it will readdress binding precedent in a pending case, a lower court should exercise its inherent power to stay related proceedings. *See Greco*, 116 F. Supp. 3d at 761; *Wedgeworth*, 706 F.2d at 545-46. The possibility that "a federal appellate decision [] is likely to have a substantial or controlling effect on the claims and issues" in a given case is "at least a good" reason, "if not an excellent one," for granting a stay. *Miccosukee Tribe of Indians v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1198 (11th Cir. 2009).

The Supreme Court further signaled *Merrill*'s significance to pending Section 2 cases when it stayed this Court's preliminary injunction in *Robinson v. Ardoin* and held the case in abeyance pending *Merrill*. *See Ardoin, et al. v. Robinson, et al.*, No. 21-1596 (U.S., June 28, 2022). The Supreme Court clearly viewed its forthcoming *Merrill* decision as the predicate to resolving cases like *Robinson* that involving challenges seeking additional majority-minority districts. Indeed, the vote in *Robinson* was six-to-three, whereas the vote in *Merrill* was five-to-four, signaling that (whatever the Court will ultimately decide in *Merrill*) the very pendency of *Merrill* provides a

strong basis to stay pending Section 2 matters. *See Ardoin, et al. v. Robinson, et al.*, No. 21-1596 (U.S., June 28, 2022). Because the same Section 2 legal standards used in the congressional redistricting context also apply to state legislative maps, *see Covington v. North Carolina*, 316 F.R.D. 117, 124 (M.D.N.C. 2016) (three-judge court), *summarily aff'd*, 137 S. Ct. 2211 (2017), there is no reason for this case to progress when the Supreme Court has concluded that *Robinson* should be held in abeyance pending *Merrill*.

After all, the Plaintiffs here—some of whom are also plaintiffs in *Robinson* and represented by some of the same lawyers—challenge Louisiana's newly enacted state legislative district plans because they allege the plans "violate the mandates of Section 2 of the Voting Rights Act of 1965, as amended 52 U.S.C. §10301" by allegedly diluting the votes of Black Louisiana voters. Compl., ECF No. 1, at 1. There is, therefore, considerable overlap between this case and *Robinson,* as well as *Merrill*, despite the fact this action challenges a state legislative plan and *Robinson* and *Merrill* challenge a congressional plan. That overlap creates a substantial likelihood that the resolution of *Merrill* will directly impact this case, implicating concerns about judicial economy and conservation of resources given the risk that this case would have to be relitigated under the new standards that will likely be announced by the Court in *Merrill*.

Should this case proceed without the benefit of *Merrill*'s forthcoming clarity, the hardship to the Defendants will be immense. The State could potentially be compelled to defend itself twice against Plaintiffs' claims, once in the current confusion and unclarity prevalent in Section 2 claims and yet again after *Merrill* answers critical questions. No party can reasonably contest that Section 2 claims are fact- and resource-intensive inquiries. *See NAACP v. Fordice*, 252 F.3d 361, 367 (5th Cir. 2001) (explaining that Section 2 cases require "an intensely local appraisal of the design and

7

impact of the contested electoral mechanisms, a searching practical evaluation of the past and present reality and a functional view of political life").

Meanwhile, Plaintiffs are unlikely to suffer prejudice from a stay. To be sure, Plaintiffs are likely to argue that a delay in the case will result in a delay of a final judgment and injunction to which they believe they are entitled. But that is short-sighted. When the *Robinson* Plaintiffs obtained a similar injunction, it was stayed, their case held in abeyance pending *Merrill*, and they will have to fight for the injunction again in some forum (or many) when the abeyance is lifted. So too here. Until *Merrill* is resolved, Plaintiffs in this action will have no basis for assurance that, even if they prevail in this Court, that success would not be equally short lived. As soon as *Merrill* is issued, an appellate tribunal (whether the Fifth Circuit or the Supreme Court) would surely vacate such a judgment and injunction and remand for further consideration in light of *Merrill*. That means Plaintiffs have little prospect of being differently situated without a stay as with one—except that, without one, they will be down an enormous quantity of money in legal fees. Either way, the path to any lasting victory for them must be *through* whatever standard *Merrill* sets, not around it.[1] In this way, a stay would help Plaintiffs, not hurt them. And, likewise, this Court's valuable time and resources would be best spent on one adjudication of this case, not two.

Furthermore, this Court will not have long to wait for Supreme Court guidance. The Supreme Court has scheduled *Merrill* for oral argument on the second day of its October 2022 term,[2] less than three months from the date of filing of this motion, making it very likely that the case will be decided before June 2023 (*i.e.*, in less than one year and months before Louisiana's

---

[1] For similar reasons, the *Purcell* doctrine does not cut against a stay. When *Merrill* issues, litigation will need to begin anew in this case in all events, and if that occurs too late to impact the 2023 elections, the *Purcell* doctrine will bar an injunction. Whether the parties and the Court have burned through time, resources, and money in the prior months will have little bearing on that outcome.

[2] *See* U.S. Supreme Court, *For the Session Beginning October 3, 2022*, https://www.supremecourt.gov/oral_arguments/argument_calendars/MonthlyArgumentCalOctober2022.pdf (noting that *Merrill* will be argued on Tuesday, October 4, 2022).

8

next state legislative elections). Thus, any delay occasioned by this stay will be reasonable and proportional to the needs of the case. *See, e.g., White v. J.P. Morgan Chase Bank, N.A.*, Civ. No. 10-3811, 2011 WL 13213618, *2 (E.D. La. Mar. 15, 2011) (staying action pending en banc decision from Fifth Circuit in another case, and acknowledging the oral argument was tentatively scheduled for May 23, 2011, just over two months from entry of the stay); *McGregory v. 21st Century Ins. & Fin. Servs., Inc.*, No. 1:15-cv-98, 2016 WL 11643678, *4 (N.D. Miss. Feb. 2, 2016) (staying action under TCPA pending the Supreme Court's decision in *Robins v. Spokeo*, addressing similar standing question to that raised in the case, which had been argued in November 2015).

### B. Conservation of Judicial Resources Also Counsels in Favor of a Stay.

As demonstrated, the issues before the Supreme Court in *Merrill* could be dispositive of this litigation. *See Merrill*, 142 S. Ct. at 881. At the very least, the Supreme Court's disposition of that case will be informative to the Parties' claims and defenses in the instant case. The risk of wasting party and judicial resources can hardly be understated where, as here, some if not all of discovery, summary judgment, and trial may need to be relitigated in their entirety of light of new controlling law. Forcing both the Parties and the Court to undertake this endeavor when in all likelihood it will prove fruitless is an extraordinary waste of judicial time and resources. For this reason alone, this Court should stay this case pending the resolution of *Merrill*.

Dated: July 18, 2022                                               Respectfully submitted,

                                                                   JEFF LANDRY
                                                                   ATTORNEY GENERAL

                                                                   /s/ Angelique Duhon Freel
Jason B. Torchinsky (*admitted pro hac vice*)                      Jeffrey M. Landry (La. Bar Roll #29942)
Phillip Gordon (*admitted pro hac vice*)                           Angelique D. Freel (La. Bar #28561)
Andrew B. Pardue (*admitted pro hac vice*)                         Jeffrey Wale (La. Bar #36070)
HOLTZMAN VOGEL BARAN                                               Assistant Attorneys General
TORCHINSKY JOSEFIAK PLLC                                           LOUISIANA DEPARTMENT OF JUSTICE
15405 John Marshall Hwy.                                           1885 North Third Street

9

Haymarket, VA 20169
Telephone No. 540-341-8808
Facsimile No. 540-341-8809
E-Mail Address:
jtorchinsky@holtzmanvogel.com
pgordon@holtzmanvogel.com
apardue@holtzmanvogel.com

Michael W. Mengis (La. Bar #17994)
BAKERHOSTETLER LLP
811 Main Street, Suite 1100
Houston, Texas 77002
Telephone No.: 713-751-1600
Facsimile No.: 713-751-1717
mmengis@bakerlaw.com

Patrick T. Lewis (*admitted pro hac vice*)
BAKERHOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Telephone No.: 216-621-0200
plewis@bakerlaw.com

Erika Dackin Prouty (*admitted pro hac vice*)
BAKERHOSTETLER LLP
200 Civic Center Drive, Suite 1200
Columbus, Ohio 43215
Telephone No.: 614-228-1541
eprouty@bakerlaw.com

Phillip J. Strach (*admitted pro hac vice*)
Thomas A. Farr (*admitted pro hac vice*)
John E. Branch, III (*admitted pro hac vice*)
Alyssa M. Riggins (*admitted pro hac vice*)
Cassie A. Holt (*admitted pro hac vice*)
NELSON MULLINS RILEY & SCARBOROUGH LLP
4140 Parklake Avenue, Suite 200
Raleigh, North Carolina 27612
Telephone No.: 919-329-3800
Phillip.strach@nelsonmullins.com
Tom.far@nelsonmullins.com

Post Office Box 94005
Baton Rouge, Louisiana 70804-9005
Telephone No. 225-326-6766
Facsimile No. 225-326-6793
E-Mail Address:
landryj@ag.louisiana.gov
freela@ag.louisiana.gov
walej@ag.louisiana.gov

E. Mark Braden (*admitted pro hac vice*)
Katherine McKnight (*admitted pro hac vice*)
Richard B. Raile (*admitted pro hac vice*)
BAKERHOSTETLER LLP
1050 Connecticut Ave., N.W., Ste. 1100
Washington, D.C. 20036
Telephone No.: 202-861-1500
mbraden@bakerlaw.com
kmcknight@bakerlaw.com
rraile@bakerlaw.com

*Counsel for Legislative Intervenors Clay Schexnayder, in his Official Capacity as Speaker of the Louisiana House of Representatives, and of Patrick Page, Cortez, in his Official Capacity as President of the Louisiana Senate*

John C. Walsh (La. Bar #24903)
SHOWS, CALL & WALSH LLP
Baton Rouge, Louisiana
Telephone No.: 225-383-1461
Facsimile No.: 225-346-5561

*Counsel for Defendant R. Kyle Ardoin, in his Official Capacity as Secretary of State of Louisiana*

10

Alyssa.riggins@nelsonmullins.com
Cassie.holt@nelsonmullins.com

## CERTIFICATE OF SERVICE

I certify that on July 18, 2022, the foregoing was filed using the Court's CM/ECF system, which constitutes service on all counsel having appeared of record in this proceeding.

*/s/ Jason Torchinsky*
Jason Torchinsky
