IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DR. DOROTHY NAIRNE, JARRETT LOFTON, REV. CLEE EARNEST LOWE, DR. ALICE WASHINGTON, STEVEN HARRIS, ALEXIS CALHOUN, BLACK VOTERS MATTER CAPACITY BUILDING INSTITUTE, and THE LOUISIANA STATE CONFERENCE OF THE NAACP,<br><br>*Plaintiffs*,<br><br>v.<br><br>R. KYLE ARDOIN, in his official capacity as Secretary of State of Louisiana<br><br>*Defendant*. | CIVIL ACTION NO. 3:22-cv-00178 SDD-SDJ |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'**
**MOTION TO STAY PROCEEDINGS**

Plaintiffs, Dr. Dorothy Nairne, Jarrett Lofton, Rev. Clee Earnest Lowe, Dr. Alice Washington, Steven Harris, Alexis Calhoun, Black Voters Matter Capacity Building Institute, and the Louisiana State Conference of the NAACP, by and through undersigned counsel, write in opposition to the joint motion to stay proceedings filed by Defendants R. Kyle Ardoin, in his official capacity as Secretary of State of Louisiana, Clay Schexnayder, Patrick Page Cortez, and the State of Louisiana, by and through Attorney General Jeff Landry, (the "State" or "Defendants"), ECF No. 61, ("Mot."). The Defendants' motion amounts to nothing more than an untimely effort to distract this Court from their glaring violations of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, and should be denied.

The sole justification for the Defendants' motion is the Supreme Court's upcoming deliberations in and consideration of *Merrill v. Milligan*, 142 S. Ct. 879 (2022) ("*Merrill*"), and

the Supreme Court's recent grant of certiorari before judgment and stay of injunction in *Robinson v. Ardoin*, Nos. 22-cv-211 and 22-cv-214. There is no reason to stay this case pending the Supreme Court's resolution of those cases. It is "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). The Defendants have failed to meet their burden to demonstrate that these rare circumstances exist here.

**I.    The Defendants have failed to meet their burden of establishing that the balance of equities favors a stay.**

The Defendants have failed to establish, and cannot establish, that the balance of equities supports a stay. Ultimately the Defendants have the burden of "mak[ing] out a clear case of hardship or inequity in being required to go forward[.]" *Landis*, 299 U.S. at 255. "[I]f there is even a fair possibility that the stay for which he prays will work damage to some one else" then a stay should not issue. *Id.* The Defendants cannot meet this high burden.

The Defendants waited to file their motion until four months after Plaintiffs' initial complaint was filed on March 14, 2022, which itself was filed *over a month* after the Supreme Court granted leave to review the questions presented in *Merrill* on February 7, 2022. Had the Defendants believed that the questions presented in *Merrill* were so inextricably linked to the instant matter and that they would be prejudiced by having to litigate prior to the resolution of *Merrill*, they should have filed a motion immediately after Plaintiffs filed the initial complaint. But they did not.[1] Instead, the Defendants waited until *after* Plaintiffs filed their initial discovery requests, *after* the parties conducted their initial conference pursuant to Rule 26(f) in which the

---

[1] However, Defendants Clay Schexnayder and Patrick Page Cortez waited three (3) weeks to intervene, ECF No. 13, and the State of Louisiana, through Attorney General Jeff Landry, waited seven (7) weeks to move to intervene, ECF No. 33. Both sets of intervenors waited an additional ten (10) weeks after the Court granted their motion to intervene to file the instant motion. (*See* ECF No. 42, ECF No. 61.)

2

Defendants agreed to the discovery schedule, *after* Plaintiffs served initial expert disclosures, and filed *on the very day* Plaintiffs served their expert reports. Even assuming arguendo that the Defendants thought the Supreme Court's stay in *Robinson* on June 28, 2022 had changed the legal landscape, surely, they could have filed their motion to stay in the three (3) weeks prior to the deadline for Plaintiffs' expert reports. The timing of the Defendants' request evidences its true aim: to forestall adjudication of Plaintiffs' claims in order to deny Louisiana's Black voters full, unfettered access to their fundamental right to vote.

The primary prejudice cited by the Defendants—the potential need to relitigate these issues—is speculative and pales in comparison to the inextricable, irreparable harm that Plaintiffs and Black Louisianans will face if the elections for Louisiana's state legislature are conducted under a map that violates Section 2. Indeed, the Defendants' position that it would be a waste of time and resources to apply the law as it exists today is galling: ensuring that the fundamental voting rights of Louisianans are protected by the maps governing the upcoming election of its state legislature is essential, regardless of any future change in governing law.[2] The Supreme Court's election to review the questions presented in *Merrill v. Milligan* does not warrant freezing all vote dilution claims arising under the Voting Rights Act.

Additionally, staying this case pending the Supreme Court's consideration of *Merrill* would significantly prejudice Plaintiffs by impairing this Court's ability to issue effective relief in its wake. The next election for the Louisiana state legislature is slated to take place in November 2023. If the Supreme Court does not issue its decision in *Merrill* until the end of its upcoming

---

[2]    Moreover any "hardship" alleged by the Defendants Clay Schexnayder, Patrick Page Cortez, and the State of Louisiana rings hollow given their *choice* to participate in this lawsuit by intervening in it. These Defendants cannot now complain about being "compelled to defend itself against Plaintiffs' claims," ECF No. 61-1 at 7, given that the Secretary of State is the only named defendant in this lawsuit.

3

term in June 2023, Plaintiffs would have only a matter of months to conduct discovery, pretrial briefing, and conduct a trial prior to the November election. In order to prevent the Defendants from leveraging the stay they now seek into a future bar on relief under the *Purcell* principle, it is important that this case proceed on its current trajectory. The Defendants admit that they would likely assert that *Purcell* bars resolution in time for 2023 election after the decision in *Merrill*. See ECF No. 61-1 at 8 n.1. The balance of hardship clearly mitigates against staying this case, and the Defendants' motion should be denied.

**II.      *Purcell* does not require that the court stay the case.**

The Defendants claim, based on the statements of individual justices in concurring and dissenting opinions on a motion to stay in *Merrill*, that the Supreme Court's decision in *Merrill* "will inevitably impact this proceeding (and could very well be outcome determinative of the ultimate issue)" and argue that this *possible outcome* is sufficient to stay proceedings and delay adjudication of Plaintiffs' claims. Mot. ¶ 3. It is not.

There was no majority opinion in the *Merrill* stay decision, and the basis for the Court's decision remains unknown. However, Justice Kavanaugh, in an opinion which only Justice Alito joined, cited the *Purcell* principle as a reason to stay *Merrill* pending a decision by the Supreme Court on the merits of the Section 2 claims at issue there. As an initial matter, a *Purcell* stay is a stay of *relief* and is not a tool to stay discovery, let alone a litigation in its entirety. *See Merrill*, 142 S. Ct. at 879 (Kavanaugh, J., concurring) (Purcell says that "that federal appellate courts should stay ***injunctions***" (emphasis added)). The *Purcell* principle instructs "that federal district courts ordinarily should not enjoin state election laws in the period close to an election," particularly where the merits are "close" and such changes would impose "significant cost, confusion, or hardship." *Id.* at 881. In *Merrill,* the Court held that a stay was appropriate under *Purcell* because the election was only *seven (7) weeks* away and "the plaintiffs have not established

4

that [election] changes are feasible without significant cost, confusion, or hardship." *Id.* at 881–82.

Similarly, the Supreme Court failed to provide any reasoning for its stay of the preliminary injunction issued in *Robinson*. However, as Alabama had in *Merrill*, the State in *Robinson* argued that the *Purcell* principle precluded interlocutory relief, and the Supreme Court granted that motion, staying an injunction issued approximately *five (5) months* prior to the election at issue.

The distinctions between this action and both *Merrill* and *Robinson* demonstrate that *Purcell* does not apply here. First, this case is distinct from both *Merrill* and *Robinson* procedurally. Both *Merrill* and *Robinson* were stayed only after courts had entered preliminary injunctions. In contrast, no injunction that would require the State to take any action impacting the 2023 election has been issued here, and Plaintiffs have not sought a preliminary injunction in this action. After trial, the court will enter a final judgment on the merits and, based on those findings, may or may not issue a permanent injunction. At that point, Defendants may seek a stay of any such injunction if they believe they have grounds.[3]

Second, this case is distinct from both *Merrill* and *Robinson* with respect to timing. This case was filed *a year and half* prior to the next state legislative election in October 2023 (as opposed to weeks prior or even a handful of months prior, as in the cases described above). Because of that, discovery will conclude *a full year* prior to the election and trial is set nearly nine months prior to the election. Accordingly, if Plaintiffs are ultimately successful on the merits of

---

[3] The fact that there has been no decision on the merits in this matter—preliminary or otherwise—further counsels against a stay on *Purcell* grounds. In his concurrence in the *Merrill* stay order, Justice Kavanaugh based his decision in part on his assessment that "the underlying merits appear to be close." *Merrill*, 142 S. Ct. at 881 (Kavanaugh, J., concurring). No such assessment can be made here, where the evidentiary record remains undeveloped and there has been no decision on the underlying merits.

their claims, implementing an injunction would be feasible without undue burden or confusion. Indeed, the State has yet to even set a calendar for the 2023 Legislative elections. *See* 2023 Elections, https://www.sos.la.gov/ElectionsAndVoting/PublishedDocuments/ElectionsCalendar2023.pdf (last visited Aug. 3, 2022) (listing the only 2023 available election calendar available for municipal and gubernatorial elections); *see also* Exhibit A (Secretary of State's response to Plaintiffs' Interrogatory No. 12 directing Plaintiffs to the Secretary of State's website for information on "relevant election dates for the 2023 Louisiana Senate and Louisiana House elections"). It is difficult to see how the adjudication of this case would (or even could) disrupt a calendar that has yet to be set. In fact, the *Purcell* principle militates in favor of allowing the case to proceed on the current schedule because it allows maximum time for an injunction to be implemented prior to the November 2023 election.

**III.     The mere possibility of a change in the standard is not a reason to stay the case.**

While the Defendants would have this Court stay this litigation based on the *mere possibility* that the Supreme Court *might* change the standard applicable to Section 2 vote dilution claims, the Supreme Court has made clear that lower courts are bound by existing precedent. *Ramos v. Louisiana*, 140 S. Ct. 1390, 1416 n.5 (2020) (Kavanaugh, concurring in part) ("[V]ertical stare decisis is absolute, as it must be in a hierarchical system with 'one supreme Court.' In other words, the state courts and the other federal courts have a constitutional obligation to follow a precedent of this Court unless and until it is overruled by this Court." (citations omitted)). In support of this principle, the Supreme Court has directed courts to refrain from taking it upon themselves to exercise the Supreme Court's prerogatives. *See Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("[I]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [court] should *follow the case which directly*

6

*controls*, leaving to this Court the prerogative of overruling its own decisions." (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989))) (emphasis added); *see also U.S. v. Coil,* 442 F.3d 912, 916 (5th Cir. 2006) ("The Fifth Circuit has consistently followed the Supreme Court's admonition in *Rodriguez de Quijas* and *Agostini*." (citations omitted)).

Indeed, this Court and others have repeatedly rejected identical requests filed by state defendants across the country on this basis, some before receiving opposition briefing. *See Robinson, et al. v. Ardoin*, No. 3:22-CV-00211-SDD-SDJ (M.D. La. May 4, 2022), ECF No. 135 (order denying motion to stay proceedings pending *Merrill*); *see also United States v. Galveston County, Texas, et al.*, No. 3:22-CV-93 (S.D. Tex. May 24, 2022), ECF No. 28 (denying motion to stay proceedings pending *Merrill*); *LULAC v. Abbott*, No. 3:21-CV-00259-DCG-JES-JVB (W.D. Tex. April 22, 2022), ECF No. 246 (summary order denying motion to stay case pending *Merrill* before receipt of opposition briefing); *cf. Guardian Techs., LLC v. X10 Wireless Tech., Inc.*, No. 3:09-CV-0649, 2011 WL 308658, at *2 (N.D. Tex. Jan. 25, 2011) ("Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." (quoting *Landis*, 299 U.S. at 255)).

There is good reason to follow these courts' lead, given it is completely unknown what the Supreme Court will do in the *Merrill* decision. The Defendants claim that it would necessarily mean starting the litigation "anew," but that result is not inevitable. All options are currently open to the Supreme Court, including not changing the standard at all or adjusting parts of the standard that would have no implication on the final result in this case. The fact that the Defendants think the *Merrill* might be "informative," ECF No. 61-1 at 9, is not a sufficient reason to stay the case. And the Supreme Court has directed lower courts in the past not to speculate on what may come, but instead to follow existing law. *See Agostini*, 521 U.S. at 237.

7

Perhaps because of this, the cases cited by the Defendants do not compel the result they seek. The Defendants rely on *Greco v. NFL*, 116 F. Supp. 3d 744 (N.D. Tex. 2015) and *Wedgeworth v. Fireboard Corp.*, 706 F.2d 541 (5th Cir. 1983), *aff'd in part and vacated in part on other grounds on rehearing*, 706 F.2d at 548, for the proposition that "[w]hen a higher court has signaled that it will readdress binding precedent in a pending case, a lower court should exercise its inherent power to stay related proceedings." (ECF No. 61-1 at 6.) But *Wedgeworth* does not stand for that principle. Instead, it set out a balancing test that requires consideration of several factors, not an absolute rule that every pending appeal requires an automatic stay of every lower court case involving an overlapping legal issue. *Wedgeworth*, 706 F.2d at 545.

To the extent it bears on Defendants' motion at all, *Greco* bears no resemblance to the facts or circumstances here, and serves only to highlight that this is not a case in which a stay is appropriate. In *Greco*, two hundred individual plaintiffs asserted damages claims raising "nearly identical factual and legal issues" to a case pending at the Fifth Circuit. 116 F. Supp. 3d at 761. The court determined that conserving the substantial judicial resources that would be required to try 200 individual cases, or even 40 "bell-weather" cases, outweighed the harm to the defendants of awaiting a decision in the related appeal.

In stark contrast, Plaintiffs' claims are not identical to the claims asserted in *Robinson* and *Merrill*, and allowing the instant case to proceed would *not* conserve the same significant judicial resources at issue in *Greco*. First, as outlined *supra*, *Merrill* and *Robinson* have both different procedural postures *and* elections calendars than those at play the instant action. Second, and critically, the redistricting maps at issue are entirely different. In contrast to *Robinson*, which sought one additional majority-Black *congressional* district based in Baton Rouge, Plaintiffs in this case challenge *state* legislative districts throughout the state. Moreover, the state legislative

maps were introduced, debated, and adopted separately from the congressional map, and were animated by different policy and political considerations. In other words, even if there is some overlap with the *Robinson* case, this case will involve different evidence, facts, and legal issues, unlike the two cases at issue in *Greco*.

The Defendants also cite *Landis v. N. Am. Co.*, a case in which the Supreme Court reversed a lower court stay finding that the lower court had exceeded its discretion in staying one case to allow a parallel case to be tried and appealed to the Circuit and then the Supreme Court. 299 U.S. at 256. But, as stated above, the Supreme Court specifically cautioned in *Landis* that "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id*. at 255.

The Defendants also rely on *Miccosukee Tribe of Indians v. S. Fla. Water Mgmt. Dist.*, which involved the Eleventh Circuit's ruling upholding a stay imposed by the district court. 559 F.3d 1191, 1198 (11th Cir. 2009). As an initial matter, this case is an out of circuit decision and is not binding on this Court (and is, in fact, in tension with the Fifth Circuit's balancing test articulated in *Wedgeworth*). Additionally, *Miccosukee* was decided on jurisdictional grounds, and did not involve a review of the district court's stay on its merits. *Miccosukee Tribe of Indians,* 559 F.3d at 1193 ("The first, and as it turns out, the last issue we need to address is whether we have jurisdiction to review the stay order"). Finally, there was substantially more overlap in the factual predicates for the cases at issue in *Miccosukee* than there is between the instant matter and *Merrill* or *Robinson*. In *Miccosukee*, the cases at issue involved whether *the same type of pumps* used by *the same defendants* had to have a permit under the Clean Water Act, meaning that resolution of one case would *dictate* the outcome of the other, not just *possibly* affect the applicable legal principles. *Id.* at 1198.

The other cases cited by the Defendants are similarly unavailing. *Am. Life Ins. Co. v. Stewar*t, 300 U.S. 203, 215 (1937) (identical parties and issues in an insurance payout case); *Labouliere v. Our Lady of the Lake Found.*, No. 16-00785-JJB-EWD, 2017 WL 4365989 (M.D. La., Sept. 29, 2017) (staying a federal case where the same plaintiffs had asserted the same claim in a state administrative forum); *Alford v. Moulder*, Cause No. 3:16-CV-350-CWR-LRA, 2016 WL 6088489, at *4 (S.D. Miss. Oct. 17, 2016) (staying a challenge to a religious exemption statute where challenged law had already been enjoined in a related case obviating harm to plaintiff from a stay pending the appeal of the related case); *McGregory v. 21st Century Ins. & Fin. Servs., Inc.*, No. 1:15-cv-98, 2016 WL 11643678, *4 (N.D. Miss. Feb. 2, 2016) (staying the underlying case pending the Supreme Court resolution of a controlling question implicating the court's jurisdiction); *Tel. Sci. Corp. v. Asset Recovery Sols., LLC*, No. 15 C 5182, 2016 WL 47916 (N.D. Ill. Jan. 5, 2016) (same); *Kamal v. J. Crew Grp., Inc.*, Civil Action No. 15-0190 (WJM), 2015 WL 9480017 (D.N.J. Dec. 29, 2015) (same); *White v. J.P. Morgan Chase Bank, N.A.*, Civ. No. 10-3811, 2011 WL 13213618, *2 (E.D. La. Mar. 15, 2011) (two conflicting Fifth Circuit precedents compelled opposing dispositions of the case, a panel of the Fifth Circuit had recently recognized the conflict, and *en banc* rehearing had been granted to resolve the conflict).

For the foregoing reasons, Plaintiffs respectfully request that this Court deny the Defendants' motion for stay.

Dated: August 8, 2022

Respectfully submitted,

*/s/ John Adcock*
JOHN ADCOCK
Adcock Law LLC
Louisiana Bar No. 30372
3110 Canal Street, New Orleans, LA 701119
Tel: (504) 233-3125
Fax: (504) 308-1266
Email: jnadcock@gmail.com


*/s/ Ron Wilson*
Louisiana Bar No. 13575
701 Poydras Street, Ste. 4100, New Orleans, LA 70139
Tel: (504) 525-4361
Fax: (504) 525-4380
Email: cabral2@aol.com

*/s/ T. Alora Thomas-Lundborg*
Sophia Lin Lakin*
T. Alora Thomas*
Samantha Osaki*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
slakin@aclu.org
athomas@aclu.org
sosaki@aclu.org

Sarah Brannon*
American Civil Liberties Union Foundation
915 15th St., NW
Washington, DC 20005
sbrannon@aclu.org

*/s/ Nora Ahmed*
Nora Ahmed*

*/s/ Michael de Leeuw*
Michael de Leeuw*

11

N.Y. Bar. No. 5092374
ACLU Foundation of Louisiana
1340 Poydras St.
Suite 2160
New Orleans, LA 70112
Tel: (504) 522-0628
NAhmed@laaclu.org

*/s/ Leah Aden*
Leah Aden*
Stuart Naifeh**
Victoria Wenger*
NAACP LEGAL DEFENSE &.
EDUCATIONAL FUND, INC.
40 Rector Street
5th Floor
New York, NY 10006
(212) 965-2200
laden@naacpldf.org
snaifeh@naacpldf.org
vwenger@naacpldf.org

Amanda Giglio*
Cozen O'Connor
3 WTC, 175 Greenwich St.
55th Floor
New York, NY 10007
MdeLeeuw@cozen.com
AGiglio@cozen.com

Andrew H. Stanko**
Daniel Brobst**
Cozen O'Connor
Liberty Place, 1650 Market St.
Suite 2800
Philadelphia, PA 19103
AStanko@cozen.com
DBrobst@cozen.com


*Admitted *Pro Hac Vice*
***Pro Hac Vice* Forthcoming

***Attorneys for Plaintiffs***

12