UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DR. DOROTHY NAIRNE, *et al.*, *Plaintiffs,* <br><br> v. <br><br> R. KYLE ARDOIN, in his official capacity as Secretary of State of Louisiana, <br><br> *Defendant.* | Civil Action No. 3:22-cv-00178-SDD-SDJ <br><br> Chief Judge Shelly D. Dick <br><br> Magistrate Judge Scott D. Johnson |

**REPLY IN SUPPORT OF JOINT MOTION TO STAY PROCEEDINGS**

Defendants, R. Kyle Ardoin, in his official capacity as Secretary of State, the State of Louisiana, and Clay Schexnayder and Patrick Page Cortez (hereinafter "Legislative Intervenors"), respectfully submit the following joint reply in support of their Joint Motion to Stay Proceedings pending resolution of *Merrill v. Milligan*, Nos. 21-1086 and 21-1087, 2022 U.S. LEXIS 1626 (U.S., Feb. 7, 2022) at the Supreme Court of the United States.[1]

**ARGUMENT**

**I.   The Forthcoming *Merrill* Decision Will Impact This Case.**

In response to the injunction this Court issued against Louisiana's congressional redistricting plan, the Supreme Court took three *distinct* steps. *Ardoin v. Robinson*, No. 21-1596, 2022 WL 2312680, at *1 (U.S. June 28, 2022). First, it "stayed" the injunction. *Id.* Second, it granted "certiorari before judgment." *Id.* Third, it ordered that case "held in abeyance pending

---

[1] On April 22, 2022, the Secretary filed a motion to convene a three-judge court pursuant to 28 U.S.C. § 2284. ECF No. 34. That motion remains outstanding. A stay in this matter will also permit this Court time to rule on that motion and request a three-judge court be convened, or allow any appeal therefrom if necessary.

[that] Court's decision in" *Merrill*. *Id.* A little over two weeks later, the three groups of Defendants jointly approached this Court—principally citing that *third* element of the *Robinson* order—with an obvious proposal: if the Supreme Court deemed abeyance pending *Merrill* appropriate in the Louisiana congressional case, then this Court should deem abeyance pending *Merrill* appropriate in this case, a similar Section 2 challenge against Louisiana's legislative plans. ECF No. 61-1.

Plaintiffs say *nothing* of the premise of Defendants' motion. They call the request "galling," ECF No. 64 at 3, but fail either to justify that outburst against the Supreme Court's case-management decision or explain why this Court should reject its decision in this case. Instead, Plaintiffs divert the Court's attention to "the Supreme Court's *stay* in *Robinson*," *id.* (emphasis added), which they attribute to "the *Purcell* principle," *id.* at 5. Their failure to distinguish the *three* actions the Supreme Court took undermines this argument: the Supreme Court could easily have stayed this Court's injunction *without* holding the case in abeyance, which is not inherent in a stay of an injunction. Without the abeyance, the Supreme Court would have either permitted the Fifth Circuit to proceed with the appeal taken from the injunction or set the case for briefing and argument in the Supreme Court itself. It chose, instead, to hold the case in abeyance pending *Merrill*. That choice cannot have been founded in the *Purcell* principle, since it had nothing to do with election administration.

Instead, the point of holding one Voting Rights Act case in abeyance pending resolution of another Voting Rights Act case is that the articulation of principles in the first is the predicate to deciding the second. Plaintiffs' resist this premise. *See, e.g.*, ECF No. 64 at 6. But they offer no alternative explanation for the abeyance—which, again, they ignore. And this principle is hardly novel. The Fifth Circuit has repeatedly affirmed courts' "power to stay one case pending the outcome of another case with different parties," *In re Air Crash Disaster at Fla. Everglades*, 549

2

F.2d 1006, 1012 n.7 (5th Cir. 1977), and stayed cases pending resolution of similar issues in the Supreme Court. *See, e.g.*, *Johnson v. McCotter*, 794 F.2d 1011, 1012 (5th Cir. 1986) (granting a stay of execution because Supreme Court's grant of certiorari, though "opaque" in import, was "sufficient to create a question as to the continued viability" of governing Fifth Circuit precedent); *Castro-Guerrero v. Immigration and Naturalization Service*, 515 F.2d 615, 618 (5th Cir. 1975) (noting stay of mandate pending Supreme Court's decision in another case, observing that "[t]he Supreme Court has spoken and we must listen"). So too have district courts within the Fifth Circuit's footprint. *See, e.g.*, *Johnson v. Ardoin*, No. 3:18-cv-625 (M.D. La. Oct. 17, 2019) (ECF No. 133) (granting stay pending en banc consideration of a Voting Rights Act issue); *McGregory v. 21st Century Ins. & Fin. Servs., Inc.*, No. 1:15-cv-98, 2016 WL 11643678 at *4 (N.D. Miss. Feb. 2, 2016) (staying action pending resolution of similar issue by the Supreme Court); *Fernandez v. United States*, No. 4:16-CV-409-Y, 2016 U.S. Dist. LEXIS 140192, at *2 (N.D. Tex. July 15, 2016) (similar); *Bozeman v. United States*, No. 3:16-cv-1817-N-BN, 2016 U.S. Dist. LEXIS 140672 (N.D. Tx. July 11, 2016) (similar); *Alford v. Moulder*, No. 3:16-CV-350-CWR-LRA, 2016 U.S. Dist. LEXIS 143292, at *7 (S.D. Miss. Oct. 17, 2016) (similar); *Equal Employment Opportunity Comm'n v. Bell Helicopter Co.*, 426 F. Supp. 785, 788, 794 (N.D. Tex. 1976), *abrogated on other grounds by United States v. Popovich*, 820 F.2d 134 (5th Cir. 1987) (similar).

Other circuits have likewise held that "await[ing] a federal appellate decision that is likely to have a substantial or controlling effect on the claims and issues in" a case is "at least a good . . . if not an excellent" reason to stay that case. *Miccosukee Tribe of Indians of Florida v. S. Florida Water Mgmt. Dist.*, 559 F.3d 1191, 1198 (11th Cir. 2009); *United States v. Macon*, No. 1:14-CR-71, 2016 WL 7117468, at *5 (M.D. Pa. Dec. 7, 2016) (staying case pending Supreme Court resolution of similar issues); *Couick v. Actavis, Inc.*, No. 3:09-CV-210-RJC-DSC, 2011 WL

3

248008, at 1 (W.D.N.C. Jan. 25, 2011) (similar); *Homa v. Am. Express Co.*, No. CIV.A. 06-2985 JAP, 2010 WL 4116481, at *9 (D.N.J. Oct. 18, 2010) (similar); *Michael v. Ghee*, 325 F.Supp.2d 829, 831-33 (N.D. Ohio 2004) (similar). Plaintiffs say "this Court and others have repeatedly rejected identical requests" to stay Section 2 cases pending *Merrill*, ECF No. 64 at 7, but their lead case is *this Court's* decision not to stay *Robinson v. Ardoin*, which was in all relevant respects reversed: the Supreme Court granted the precise relief this Court denied by holding the very same case in abeyance. The other cases Plaintiffs cited were decided without the benefit of the Supreme Court's *Robinson* order.[2]

There is no dispute that the legal standards under active consideration by the Supreme Court in *Merrill* are directly relevant to the legal issues under consideration by this Court, just as they are directly relevant to *Robinson* (as the Supreme Court has signaled). *Compare Merrill*, 2022 U.S. LEXIS 1626, at *1 (noting that the question presented is "[w]hether the State of Alabama's 2021 redistricting plan for its seven seats in the United States House of Representatives violated Section 2 of the Voting Rights Act, 52 U.S.C. §10301" (emphasis added)) *with* Compl., ECF No. 1, at 1 (challenging Louisiana's recently enacted state legislative district plans because they allege the plans "violate the mandates of Section 2 of the Voting Rights Act of 1965, as amended 52 U.S.C. §10301"). Importantly, the Section 2 legal standards applied in congressional (*Merrill*) and state (*Nairne*) redistricting cases are the same. *See Covington v. North Carolina*, 316 F.R.D. 117, 124, 166-74 (M.D.N.C. 2016) (three-judge court), *summarily aff'd*, 137 S. Ct. 2211 (2017) (applying the factors from *Thornburg v. Gingles*, 478 U.S. 30, 51 (1986) to determine whether the

---

[2] In accusing Defendants of delay in bringing the instant motion, Plaintiffs erroneously count from the Supreme Court's *Merrill* decision. ECF No. 64 at 5. But, because this Court declined to stay *Robinson* despite *Merrill*, Defendants had no reason to move for a stay in this case until the Supreme Court effectively overruled this Court's choice by granting the abeyance in *Robinson*. That occurred on June 28, 2002, and the instant motion was filed a few weeks—not "*five (5) months*"—later. *Id.*

4

use of race in *state legislative* redistricting plans was necessary to remedy a violation of Section 2). Consequently, beyond presenting substantially similar issues, resolution of the issues in *Merrill* will likely directly impact the governing legal standards and outcome of this action.

While Plaintiffs attempt to divert this Court's attention by focusing on factual and procedural distinctions between this case and *Merrill*, *see* ECF No. 64 at 4-6, their failure to counter this fundamental point entirely undermines their opposition. Whether Plaintiffs' claims are "identical to the claims asserted in *Robinson* and *Merrill*," or involve different procedural postures, election calendars, or maps, *id.* at 8-9, is ultimately irrelevant. The factual distinctions between the cases do not change the fact that these redistricting cases are governed by the same legal precedents that the Supreme Court has indicated it will revisit, *see supra* at 1-2, 4. Indeed, there are factual differences between *Robinson* and *Merrill*, but the Supreme Court held the former in abeyance pending the latter to await whatever legal standard it announces. Plaintiffs' suggestion that a preliminary injunction is a necessary precondition to obtaining a stay here is likewise erroneous, baseless under the demanding preliminary-injunction standard, and at odds with the Supreme Court's two recent preliminary-injunction stays. *See* ECF No. 64 at 5. Instead, the relevant inquiry is whether the case presents substantially similar legal issues to those under consideration in *Merrill*. *Greco*, 116 F. Supp. 3d at 761. This case plainly does.

**II.     The Likelihood that Defendants Will Be Forced to Defend Themselves Twice in This Action Outweighs Any Prejudice Plaintiffs Will Suffer From a Stay.**

Contrary to Plaintiffs' arguments, the balance of the equities tips decisively in Defendants' favor. The pendency of the Supreme Court's consideration of *Merrill* again looms large over this inquiry. If this Court requires the State to defend itself once under the current *Gingles* standard, and then requires it to turn around and start the litigation process over anew under clarified guidance from *Merrill*, Defendants will suffer substantial harm, particularly considering the

5

tremendous time and resources that are necessary to defend against fact-intensive Section 2 claims in one case, let alone repeating it twice.

By contrast, Plaintiffs fail to demonstrate a likelihood of experiencing any prejudice from a stay in this case. While Plaintiffs focus extensively on the threat of future harm they may suffer at the hands of the *Purcell* principle, *see* ECF No. 64 at 3-6, this misses the point entirely. Even if they were to prevail under the *Gingles* standard in its current state, that victory would likely be short lived. Any judgment entering an injunction in their favor would be doomed to a fate of vacatur and remand for re-litigation under the Supreme Court's new guidance after *Merrill* is issued. Allowing "maximum time for an injunction to be implemented," *id.* at 6, is of no benefit to Plaintiffs if that injunction is founded on outdated law.

Indeed, modification of the legal standards that inform the discovery process in these cases, including expert opinions and testimony regarding the *Gingles* factors, would mean that much of the time and resources originally spent on discovery under the *Gingles* standard would have to be entirely redone. Such waste of time and resources is harmful to all parties, Plaintiffs included. In other words, allowing the case to proceed is only likely to put Plaintiffs in a worse position than staying the case would—not only will they likely end up in the same posture as if the stay been granted up front, including having to litigate under the same elections calendar in 2023, but they will also have accumulated additional unnecessary legal fees from litigating the case the first time under a defunct (or revised) legal standard.

Finally, contrary to Plaintiffs' forebodings, a stay will not unduly delay resolution of these proceedings. The Supreme Court has already scheduled its quickly approaching oral argument in this case for October 4, 2022,[3] meaning its decision will very likely be released before June 2023.

---

[3] *See* U.S. Supreme Court, *For the Session Beginning October 3, 2022*, https://www.supremecourt.gov/oral_arguments/argument_calendars/MonthlyArgumentCalOctober2022.pdf (noting

A temporary delay of this kind until that time is not only reasonable, but necessary to avoid the likely harms both Defendants and Plaintiffs are likely to suffer if this case is litigated twice.

Simply put, there is no "effective relief," *id.* at 3, to be afforded to Plaintiffs under a governing standard that is likely to be revised. Accordingly, the balance of the equities also weighs in favor of staying this case.

### III. Staying This Action is Necessary to Prevent Unnecessary Waste of Judicial Time and Resources.

The fact that *Merrill* will likely revisit controlling law directly impacting this litigation also has serious implications for the interests of judicial economy. For the same reasons that Defendants will be harmed absent a stay in this case, continuing to press forward with this litigation when it is likely to be futile in the end would be an extraordinary waste of judicial time and resources. Only a stay of this case pending the Supreme Court's determination of *Merrill* can effectively protect the Court from such waste and inefficiency.

Plaintiffs offer no rebuttal to this point, but instead fall back on the same arguments about *Merrill* and *Robinson* having different procedural postures, elections calendars, and redistricting maps than the instant case. *See* ECF No. 64 at 8-9. For the reasons discussed *supra* at 5, these distinctions have no bearing on this motion, and would certainly not protect the Court from the extreme redundancy that would likely result from the wasteful exercise Plaintiffs seek to engage in.

### CONCLUSION

For the above stated reasons, this Court should grant Defendants' Motion for Stay.

---

that *Merrill* will be argued on Tuesday, October 4, 2022).

| | |
|---|---|
| Dated: August 15, 2022 | RESPECTFULLY SUBMITTED, |
| | JEFF LANDRY<br>ATTORNEY GENERAL |
| | /s/ *Angelique Duhon Freel* |
| Jason B. Torchinsky *(admitted pro hac vice)* | Jeffrey M. Landry (La. Bar Roll #29942) |
| Phillip Gordon *(admitted pro hac vice)* | Angelique D. Freel (La. Bar #28561) |
| Andrew B. Pardue *(admitted pro hac vice)* | Jeffrey Wale (La. Bar #36070) |
| HOLTZMAN VOGEL BARAN TORCHINSKY JOSEFIAK PLLC | Assistant Attorneys General<br>LOUISIANA DEPARTMENT OF JUSTICE |
| 15405 John Marshall Hwy. | 1885 North Third Street |
| Haymarket, VA 20169 | Post Office Box 94005 |
| Telephone: (540) 341-8808 | Baton Rouge, Louisiana 70804-9005 |
| Facsimile: (540) 341-8809 | Telephone No. 225-326-6766 |
| E-Mail Address: | Facsimile No. 225-326-6793 |
| jtorchinsky@holtzmanvogel.com | E-Mail Address: |
| pgordon@holtzmanvogel.com | landryj@ag.louisiana.gov |
| apardue@holtzmanvogel.com | freela@ag.louisiana.gov |
| | walej@ag.louisiana.gov |
| | *Counsel for the State of Louisiana* |
| Michael W. Mengis (La. Bar #17994) | E. Mark Braden (*admitted pro hac vice*) |
| BAKERHOSTETLER LLP | Katherine McKnight (*admitted pro hac vice*) |
| 811 Main Street, Suite 1100 | Richard B. Raile (*admitted pro hac vice*) |
| Houston, Texas 77002 | BAKERHOSTETLER LLP |
| Telephone No.: 713-751-1600 | 1050 Connecticut Ave., N.W., Ste. 1100 |
| Facsimile No.: 713-751-1717 | Washington, D.C. 20036 |
| mmengis@bakerlaw.com | Telephone No.: 202-861-1500 |
| | mbraden@bakerlaw.com |
| | kmcknight@bakerlaw.com |
| | rraile@bakerlaw.com |
| Patrick T. Lewis (*admitted pro hac vice*) | *Counsel for Legislative Intervenors Clay Schexnayder, in his Official Capacity as Speaker of the Louisiana House of Representatives, and of Patrick Page, Cortez, in his Official Capacity as President of the Louisiana Senate* |
| BAKERHOSTETLER LLP | |
| 127 Public Square, Suite 2000 | |
| Cleveland, Ohio 44114 | |
| Telephone No.: 216-621-0200 | |
| plewis@bakerlaw.com | |
| Erika Dackin Prouty (*admitted pro hac vice*) | |
| BAKERHOSTETLER LLP | |
| 200 Civic Center Drive, Suite 1200 | |

Columbus, Ohio 43215
Telephone No.: 614-228-1541
eprouty@bakerlaw.com

/s/ Phillip J. Strach
Phillip J. Strach (*admitted pro hac vice*)
Thomas A. Farr (*admitted pro hac vice*)
John E. Branch, III (*admitted pro hac vice*)
Alyssa M. Riggins (*admitted pro hac vice*)
Cassie A. Holt (*admitted pro hac vice*)
NELSON MULLINS RILEY & SCARBOROUGH LLP
4140 Parklake Avenue, Suite 200
Raleigh, North Carolina 27612
Telephone No.: 919-329-3800
Phillip.strach@nelsonmullins.com
Tom.farr@nelsonmullins.com
Alyssa.riggins@nelsonmullins.com
Cassie.holt@nelsonmullins.com

/s/ John C. Walsh
John C. Walsh (La. Bar # 24903)
SHOWS, CALI & WALSH, LLP
Baton Rouge, Louisiana 70821
Telephone No.: (225) 346-1461
Facsimile No.: (225) 346-5561

*Counsel for Defendant R. Kyle Ardoin, in his Official Capacity as Secretary of State of Louisiana*

## **CERTIFICATE OF SERVICE**

I CERTIFY I have served the foregoing was filed electronically and served on counsel for the parties by electronic notification by CM/ECF on August 15, 2022.

*/s/ Jason B. Torchinsky*
Jason Torchinsky