IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DR. DOROTHY NAIRNE, JARRETT LOFTON, REV. CLEE EARNEST LOWE, DR. ALICE WASHINGTON, STEVEN HARRIS, ALEXIS CALHOUN, BLACK VOTERS MATTER CAPACITY BUILDING INSTITUTE, and THE LOUISIANA STATE CONFERENCE OF THE NAACP,<br><br>*Plaintiffs*,<br><br>v.<br><br>R. KYLE ARDOIN, in his official capacity as Secretary of State of Louisiana,<br><br>*Defendant*. | Civil Action No. 3:22-cv-00178 SDD-SDJ |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
JOINT MOTION FOR CONTINUANCE OF THE NOVEMBER 27, 2023 TRIAL DATE**

Plaintiffs, Dr. Dorothy Nairne, Jarrett Lofton, Rev. Clee Earnest Lowe, Dr. Alice Washington, Steven Harris, Alexis Calhoun, Black Voters Matter Capacity Building Institute, and the Louisiana State Conference of the NAACP, by and through undersigned counsel, respectfully submit this Opposition to *Defendants' Joint Supplemental Motion for Continuance of the November 27, 2023 Trial Date.* (ECF 107).

Defendants seek a continuance of the trial that is currently set for November 27, 2023, because Plaintiffs oppose Defendants' request to construe the discovery deadlines to enable the parties to supplement their expert opinions with analysis of the elections scheduled this year on

October 14, 2023 and November 18, 2023. Defendants' request to continue the trial is plainly premature. At this point in the proceedings, this Court has not issued any ruling on the supplementation of expert reports to include data from this fall's elections. Further, as detailed below, the evidence in question would have little, if any effect, on the resolution of the matter before this Court and a continuance of the trial date would be highly prejudicial to Plaintiffs.

### A.     Defendants' request to continue the trial is premature.

Defendants raised the issue of supplementation in advance of and during Magistrate Judge Johnson's June 29, 2023, scheduling conference. Judge Johnson, however, was clear that the issue was not properly before him and would need to be decided by this Court when determining what evidence was appropriate for trial. Rather than filing a motion before this Court on the evidentiary issue, Defendants filed a motion for continuance. This Court has not had an opportunity to indicate whether or not the 2023 election data may be presented at the November 27, 2023 hearing. If this Court finds that the 2023 election data may be used at trial, then moving the trial date is unnecessary. Because Defendants have failed to even raise this issue directly with this Court, it is premature to ask this Court to continue the current trial date on this basis.

Plaintiffs opposed at the status conference and continue to oppose construing the discovery deadlines to permit supplementation of the record to include data from the elections to be held on October 14, 2023 and November 18, 2023. The November 18, 2023 election is just nine days (one of which is the Thanksgiving holiday) before trial is currently set to begin on November 27, 2023. The October 14, 2023 election will occur after the close of discovery and the start of the pre-trial briefing period. As Defendants have noted, under the standard created in *Thornburg v. Gingles*, *analysis* of election data to determine if there is racially polarized voting is required. 478 U.S. 30 (1986). This is not just evaluation of raw election results, but also requires access to precinct level voter turn-out data, which must be collected, made public, processed and then evaluated using

sophisticated statistical analysis like ecological inference. This will take time and, very likely, it will not be possible for either party to complete that work in time to allow for disclosure to opposing party before the November 27, 2023 trial.

> **B.    Analysis of these additional elections is neither legally required nor factually necessary, and does not warrant moving the trial.**

The trial date does not need to be moved to accommodate the supplementation of expert reports regarding this data because analysis of these additional elections is not legally required or factually necessary.

Defendants suggest that the results of elections that occur while a voting case is pending can be useful in reaching the correct legal decision. *See Purcell v. Gonzalez*, 549 U.S. 1, 6 (2006) (Stevens, J. concurring).[1] Even if results from current elections can be useful, there is no requirement that courts wait to evaluate the merits of redistricting cases because results of impending future elections *might* be useful. Defendants have not cited any case suggesting that courts must wait for the next election's data. It is difficult to see how voting rights cases would ever be resolved if such a requirement existed, because the next election on the horizon could always yield additional evidence for consideration. Adopting such a rigid test could result in a scenario when there would never be a prudent time to conduct a trial of a voting record, because plaintiffs would be sandwiched between waiting for the election data from the most recent election and trying a case well enough in advanced of the next election, making it nearly impossible to find a trial date.

Nor is there any magic number of elections that must be available before a voting rights case may go to trial. *Gingles* itself acknowledges that "[t]he number of elections that must be

---

[1] While Justice Stevens's concurrence noted that such election results might be useful, the *per curiam* majority does not address this subject of what elections might be useful.

3

studied in order to determine whether voting is polarized will vary according to pertinent circumstances." *Gingles*, 478 U.S. at 57, n.25. Furthermore, Fifth Circuit precedent confirms no such legal requirement exists. In applying this passage from *Gingles*, the Fifth Circuit has credited expert testimony on vote dilution that considers far fewer endogenous elections than we have available and will present to the Court in this case. "How many elections must be studied to make this determination depends on the particular circumstances of the locale." *Teague v. Attala Cnty, Miss*, 92 F.3d 283, 289 (5th Cir. 1996). In *Teague*, the Fifth Circuit favorably cited experts who analyzed eight and six elections, respectively. *Id.* at 289-90. It rejected a district court's analysis of "two precincts in two elections," however. *Id.* at 289. Additionally, the Southern District of Texas, applying *Teague*, credited expert testimony that was based on "13 relevant electoral contests." *Lopez v. Abbott*, 339 F. Supp. 3d 589, 609 (S.D. Tex. 2018).

The question of whether additional election data is necessary should be assessed based on the overall strength of the evidence. For instance, the Eastern District of Missouri discarded exogenous election data where the endogenous election data from only five elections was "sufficient . . . to discern typical voting behavior and usual results." *Mo. State Conf. of the NAACP v. Ferguson-Florissant Sch. Dist.*, 201 F. Supp. 3d 1006, 1041 (E.D. Mo. 2016).

Here, there is no reason to think the inclusion of additional election data will have any impact on the analysis of voting patterns in this case. The existing record and the racially polarized voting analysis already conducted using available election data demonstrate that additional election data from the upcoming elections would be superfluous. Plaintiffs' expert, Dr. Lisa Handley, originally conducted analysis to evaluate whether Louisiana has racially polarized voting by looking at 15 interracial statewide elections, and 19 endogenous interracial state legislative elections. And then in her most recent report of June 29, 2023, she updated this analysis to include

4

three additional elections that have occurred in the last year. Therefore, Dr. Handley has now analyzed a total of 16 statewide racially contested elections and 21 racially contested endogenous state legislative elections—far more than courts have considered sufficient in the cases discussed above.

As expressed in her reports, in Dr. Handley's expert opinion, this is a sufficient number of elections for her to reach a reliable conclusion that voting in Louisiana is consistently racially polarized and that this racially polarized voting substantially impedes the ability of Black voters to elect candidates of their choice. A copy of Dr. Handley's most recent report is attached here as Exhibit A. The Court, therefore, will have the benefit of a substantial volume of relevant evidence from recent elections when reaching its decision on Plaintiffs' Section 2 claims.[2]

Defendants cite *Westwego Citizens for Better Gov't v. City of Westwego*, for the proposition that failure to consider certain election data might constitute reversable error. 906 F.2d 1042, 1045 (5th Cir. 1990). (ECF 107, at 5). *Westwego* is inapposite here. In *Westwego*, the Fifth Circuit remanded the matter back to the District Court and instructed the Court consider a new endogenous election. 906 F.2d 1042. But there, the new election that the district court was instructed to consider was an endogenous election involving a Black candidate, while the initial evidence before the district court did not include even one endogenous election involving a Black candidate. *Id.* at 1043. The appellate court concluded that the evidence from the new endogenous election was necessary and highly probative given that the only other election data presented involving Black

---

[2] Moreover, factually speaking, it is especially unclear how probative the data from the October 14, 2023 election would be, even if it could be collected and analyzed before the trial. It is Dr. Handley's opinion that final election results are the most probative. The October election is a primary election and unless a candidate wins more than 50% of the vote, the results of those primary elections are not final. There will likely only be a few, if any, elections conducted on October 14, 2023 that will actually be final elections, and therefore, relevant for analysis and inclusion in any expert's opinion about racially polarized voting in Louisiana.

candidates was from exogenous elections. *Id*. Unlike *Westwego*, here, there is analysis of a fulsome record of election data from 21 endogenous elections involving Black candidates. *See* Exhibit A. *Westwego* does not require consideration of the 2023 election results.

Further, Defendants also cite *Uno v. City of Holyoke*, which likewise is inapposite to the current matter. 72 F.3d 973, 990 (1st Cir. 1995). That case does not even address the question of whether a Section 2 record must be reopened to consider new election evidence. In *Uno*, the district court's error was a failure to consider all the evidence presented to the court, and relying solely on election data from exogenous elections in reaching its conclusion, even when evidence from endogenous elections was available. *Id.* at 984-85. The issue in *Uno* was that when considering a Section 2 claim a court should not cherry pick the election data that it considers. No one is proposing cherry picking data in the current case—the issue here is just a matter of the timing and feasibility to consider additional data. Defendants have cited no case for the proposition that a district court must delay a Section 2 trial to wait for an additional election.[3] This is clearly not law, particularly in a circumstance like the current matter when a fulsome record is already available.

---

[3] The other cases cited by Defendants are also inapposite to their position. *Levy v. Lexington Cnty. S.C.*, involved an unusual procedural posture, which makes the appellate court's ruling not relevant to the current case. 589 F.3d 708, 714–15 (4th Cir. 2009). In that matter, the district court heard a Section 2 case in 2006 but did not issue a ruling for three years. While the district court was holding the case, several additional elections occurred. The case was remanded for consideration of the additional election data, but the district court's prejudicial three-year delay was the relevant factor, *Levy*, 589 F.3d at 712, as opposed to any determination that the most recent election results were required for the Court to reach a meaningful Section 2 ruling.

Further, Defendants also cite to *Bone Shirt v. Hazeltine*, which actually supports moving forward with this trial as currently scheduled. 461 F.3d 1011, 1020–21 (8th Cir. 2006). The trial was held in April of 2004 and the most recent election results considered by the Court were from 2002, nearly two years before the commencement of trial—there is no indication in the *Bone Shirt* opinion that this election data was not sufficiently current.

### C. Any benefit of delaying the trial is outweighed by the attendant risks of foreclosing relief.

Any benefit of awaiting additional election results is strongly outweighed by the risk that deferring resolution of Plaintiffs' claims may preclude relief prior to the next scheduled election or may require a special election to be conducted on a date other than the date of a regularly scheduled election, increasing the costs and burdens for voters and election officials. As this Court explained in setting the expedited trial schedule in the first instance—the existing schedule best ensures that the fundamental right to vote is protected and avoids the risk that *Purcell* concerns will require Plaintiffs and similarly situated voters to live with unlawful districts for years.[4]

For the foregoing reasons, the Court should deny Defendants' Joint Motion for Continuance of the November 27, 2023 Trial Date, and allow this matter to proceed with trial in on November 27, 2023 as currently set.

Date: July 14, 2023

Sarah Brannon*
Megan C. Keenan*
American Civil Liberties Union Foundation
915 15th St. NW
Washington, DC 20005
sbrannon@aclu.org
mkeenan@aclu.org

Sophia Lin Lakin*
Dayton Campbell-Harris*
Luis Manuel Rico Román*

Respectfully submitted,

/s/ John Adcock
John Adcock (La. Bar No. 30372)
Adcock Law LLC
Louisiana Bar No. 30372
3110 Canal Street
New Orleans, LA 701119
jnadcock@gmail.com

Ron Wilson (La. Bar No. 13575)
701 Poydras Street, Suite 4100
New Orleans, LA 70139
Tel: (504) 525-4361

---

[4] In their filing, Defendants again assert that a special election will not be available as a remedy. (ECF 107, at 2). This point also is premature as there has been no ruling, let alone any briefing, on the issue of special election. The Court has been clear that the goal of the November 27, 2023 trial is to obtain a ruling on the merits in this matter so that there is time for the inevitable appeals and to consider whatever remedies the Court might determine are appropriate at a later time if Plaintiffs prevail on their Section 2 claims.

American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
slakin@aclu.org
dcampbell-harris@aclu.org
lroman@aclu.org

T. Alora Thomas-Lundborg
Election Law Clinic
Harvard Law School
6 Everett Street, Ste. 4105
Cambridge, MA 02138
tthomaslundborg@law.harvard.edu

Nora Ahmed (N.Y. Bar. No. 5092374)
ACLU Foundation of Louisiana
1340 Poydras St., Suite 2160
New Orleans, LA 70112
NAhmed@laaclu.org

Michael de Leeuw*
Amanda Giglio*
Cozen O'Connor
3 WTC, 175 Greenwich St.,
55th Floor
New York, NY 10007
MdeLeeuw@cozen.com
AGiglio@cozen.com

Fax: (504) 525-4380
cabral2@aol.com

Leah Aden*
Stuart Naifeh*
Victoria Wenger*
NAACP Legal Defense & Educational Fund
40 Rector Street, 5th Floor
New York, NY 10006
laden@naacpldf.org
snaifeh@naacpldf.org
vwenger@naacpldf.org

I. Sara Rohani*
NAACP Legal Defense & Educational Fund
700 14th Street, Suite 600
Washington, DC 20005
(929) 536-3943
srohani@naacpldf.org

Josephine Bahn**
Cozen O'Connor
1200 19th Street NW
Washington, D.C. 20036
JBahn@cozen.com

*Attorneys for Plaintiffs*

*Admitted Pro Hac Vice
**Pro Hac Vice Motion Pending

## CERTIFICATE OF SERVICE

I certify that on July 14, 2023 this document was filed electronically on the Court's electronic case filing system. Notice of the filing will be served on all counsel of record through the Court's system.

/s/ Sarah Brannon