UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DR. DOROTHY NAIRNE, JARRETT LOFTON, REV. CLEE EARNEST LOWE, DR. ALICE WASHINGTON, STEVEN HARRIS, ALEXIS CALHOUN, BLACK VOTERS MATTER CAPACITY BUILDING INSTITUTE, and THE LOUISIANA STATE CONFERENCE OF THE NAACP,<br><br>    *Plaintiffs,*<br><br>v.<br><br>R. KYLE ARDOIN, in his official capacity as Secretary of State of Louisiana, *et al.*<br><br>    *Defendants.* | Case No. 3:22-cv-00178-SDD-SDJ<br><br>Chief Judge Shelly D. Dick<br><br>Magistrate Judge Scott D. Johnson |

### LEGISLATIVE INTERVENORS' MEMORANDUM IN RESPONSE TO PLAINIFFS' MOTION FOR PROTECTIVE ORDER

Legislative Intervenors respect the First Amendment rights of Plaintiff NAACP Louisiana State Conference (the "NAACP") and do not object if the NAACP asserts First Amendment privilege to keep information concerning its members out of this case. But Legislative Intervenors object to the NAACP's use of the privilege as both sword and shield. Unlike in *NAACP v. Alabama*, 357 U.S. 449 (1958), the NAACP in this case is on offense, not defense. Legislative Intervenors would have no interest in learning about the NAACP's members, except that it is challenging the State's duly enacted legislative redistricting plans, and it claims alleged Voting Rights Act injuries to its members as the basis to bring suit. By placing its members at issue, it cannot now bar discovery into the subject matter of its members, even as it selectively introduces evidence on the same subject. Its motion should be denied at least to the extent the NAACP seeks to use the privilege as both sword and shield. The Court would be justified in granting a protective

order that prevents all parties from introducing evidence concerning the NAACP's members and provides a symmetric bar on discovery.

## ARGUMENT

1. The NAACP asserts the "associational privilege under the First Amendment." Pls.' Br., Dkt. No. 119-1, at 5. Assuming the NAACP has established that discovery concerning its members would burden its First Amendment rights, a disclosure obligation nevertheless satisfies the First Amendment if there is "a substantial relation between the disclosure requirement and a sufficiently important governmental interest, and . . . the disclosure requirement [is] narrowly tailored to the interest it promotes." *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2385 (2021) (citations omitted).

Without question, the Court has a compelling interest—indeed, obligation—in ensuring that litigants before it do not "employ [a] privilege as both a sword and a shield." *Nguyen v. Excel Corp.*, 197 F.3d 200, 207 n.18 (5th Cir. 1999). "A defendant may not use the privilege to prejudice his opponent's case or to disclose some selected [privileged information] for self-serving purposes." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) (cited in *Nguyen*, 197 F.3d at 207 n.18). A litigant who places privileged information at issue "waives the privilege as to the subject matter" of that information. *Indus. Clearinghouse, Inc. v. Browning Mfg. Div. of Emerson Elec. Co.*, 953 F.2d 1004, 1007 (5th Cir. 1992).

Privileges based in the Constitution are no exception. For example, those courts that recognize a First Amendment privilege for journalists hold that it "may be waived," *Michael v. Est. of Kovarbasich*, No. 15-00275-MWF, 2015 WL 8750643, at *4 (C.D. Cal. Dec. 11, 2015), or else litigants could "strategically withhold[] information" after having "placed" some of it "at issue," *Driscoll v. Morris*, 111 F.R.D. 459, 464 (D. Conn. 1986); *see also Anderson v. Nixon*, 444

F. Supp. 1195, 1200 (D.D.C. 1978) ("Any contrary rule upholding the privilege in this instance would provide a vast and unfair litigation advantage to the newsman-plaintiff, who could preserve inviolate information obviously relevant to an adequate defense of the lawsuit he has precipitated."); *Indep. Prods. Corp v. Loew's, Inc*, 22 F.R.D. 266, 276 (S.D.N.Y. 1958) (same holding as to First Amendment testimonial privilege). Likewise, the Fifth Amendment privilege against self-incrimination is waived when a criminal defendant "takes the stand," *United States v. Beechum*, 582 F.2d 898, 907 (5th Cir. 1978), and a member of Congress waives the Speech or Debate Clause privilege by offering "evidence of his own legislative acts at trial." *United States v. Renzi*, 769 F.3d 731, 747 (9th Cir. 2014).

That rule applies here. The Court must apply anticipatory waiver principles so that "the plaintiff[] cannot 'eat his cake and have it too', 'have it both ways,' or 'stack the deck' against the defending party." *Driscoll*, 111 F.R.D. at 464 (internal citations omitted). The NAACP may not both assert First Amendment privilege to protect "personally identifiable information about Plaintiff's members," Pls.' Br. 4, and yet introduce information about its members on a selective basis.

2. The NAACP's motion for a protective order contravenes these fundamental principles.

The NAACP has placed its members at issue and introduced evidence concerning them, as it acknowledges, *see* Pls.' Br. 8-9. In discovery responses, the NAACP states that the "testimony" of its president "will include information about the Louisiana NAACP's . . . *members* . . . ." Resp. to Interrog. #2 (6/30/23), Dkt. 119-4 at 7 (emphasis added). It also asserts that "[m]embers of the Louisiana NAACP live in nearly every region of the state, including all the disputed areas in this matter" and that it "has identified members who reside in each of the districts challenged in this

3

litigation." Resp. to Interrog. #3 (6/30/23), Dkt. 119-4 at 8–9. Likewise, the Complaint repeatedly references harms to NAACP members and claims the NAACP's standing to obtain relief on their behalf. *See, e.g.*, Amend. Compl. ¶ 42 ("The State's maps dilute votes of members of the Louisiana NAACP."), ¶ 43 ("These members have been and, if the State Maps are not enjoined, will continue to be harmed by the State Maps as the State Maps impermissibly dilute their votes."); Claim for Relief ¶ 6 ("S.B. 1 denies or abridges the Plaintiffs' and/or their members' right to vote on account of their race and color"), ¶ 8 ("H.B. 14 denies or abridges the Plaintiffs' and/or their members' right to vote on account of their race and color").

The NAACP claims a prerogative to present selective information about its members in the future, without limitation and for any purpose. As noted, the NAACP says its president will testify in the future about "members," Resp. to Interrog. #2 (6/30/23), Dkt. 119-4 at 7, and its proposed order limits only what information *Defendants* may obtain, not on what evidence *Plaintiffs* may present, *see* Proposed Order 1–2, Dkt. 119-9; *see also* Resp. to Interrog. #3 (6/30/23), Dkt. 119-4 at 10 ("The Louisiana NAACP intends to establish . . . associational standing by demonstrating that . . . members of the Louisiana NAACP reside in the challenged districts resulting from the enacted maps and their votes are diluted."). This is a classic "sword and a shield" scenario. *Nguyen*, 197 F.3d at 207 n.18.[1]

Having placed its members at issue and submitted evidence about them, the NAACP cannot resist discovery into its members. Discovery is essential because it might show, *inter alia*, that NAACP members do not reside in all legislative districts challenged as dilutive, which would defeat the NAACP's assertion of standing in those districts. *See Gill v. Whitford*, 138 S. Ct. 1916,

---

[1] The NAACP's brief states that its members will not be involved at trial. Pls.' Br. 9. But that text did not make it into their proposed order, and both the brief and proposed order are carefully worded so as not to prevent evidence about members in many forms.

1931–32 (2018) (plaintiff must reside in challenged district to have standing to challenge it as dilutive). Or else, discovery might reveal that those members the NAACP secretly relies upon generally prefer the candidates who have prevailed in their districts and thus do not suffer vote dilution.[2] The NAACP gets things backwards in asserting that the attestations of its president about members "under penalty of perjury" forecloses discovery into these topics. *See* Pls.' Br. 8. It is those very assertions, and others like them, that entitle the Defendants to discovery, just as it is a criminal defendant's testifying under oath that opens the witness to cross examination.[3]

3. The NAACP also asks the Court to prematurely rule now, as a matter of law, that the NAACP's privilege assertion has no consequences on its case. It asks the Court to hold "that the NAACP need not disclose personally identifiable information of individual members, including names, to establish its associational standing." Proposed Order 1; *see also* Pls.' Br. 8–9. But that question is not before the Court, and it is a litigant's job—not the Court's—to ascertain the risks of a privilege assertion. The requested ruling is no more reasonable than a request by a party asserting attorney-client privilege that the court rule in advance that it can prove its claim without information within the scope of that privilege.

The request is particularly problematic because the proposed ruling would be legally infirm. Contrary to the NAACP's assertions, *see* Pls.' Br. 8-9, courts must not "accept[] the organizations' self-descriptions of their membership." *Summers v. Earth Island Inst.*, 555 U.S.

---

[2] The NAACP acknowledges its members "have not consented" to participate in this suit. Pls.' Br. 8. Discovery could reveal that members in fact oppose it.

[3] This fundamental unfairness is the basis for Legislative Intervenors' involvement in this discovery motion, notwithstanding that Legislative Intervenors did not propound the discovery at issue. Material produced in discovery is, of course, available to all litigants, and the NAACP's proposed use of privilege as both a sword and shield prejudices all Defendants. This is made clear by Plaintiffs' proposed order, which limits discovery by all Defendants, not just the Secretary of State. Indeed, had the Secretary of State not propounded the discovery at issue, Legislative Intervenors likely would have.

5

488, 498 (2009). Because only "identified" members support associational standing, *id.* at 498, courts apply an "identification requirement" in these cases, *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013); *see also, e.g.*, *NAACP v. City of Kyle, Tex.*, 626 F.3d 233, 237 (5th Cir. 2010); *Ga. Republican Party v. SEC*, 888 F.3d 1198, 1203–04 (11th Cir. 2018). Even if there were plausibility in the NAACP's contrary position that it need not "name names," Pls.' Br. 8, it cannot be assumed to prevail before the Court adjudicates the question.

To be clear, it would be improper for the Court to rule on the NAACP's standing at this time, and Legislative Intervenors do not request such a ruling. That matter will be addressed at later "stages of the litigation," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992), and the NAACP can make its arguments then. The question is not presently the subject of adequate briefing, and it has not become ripe through a motion challenging the NAACP's standing. This is a discovery dispute. The question now is whether the NAACP can introduce information about membership, resist discovery into the subject matter of membership, and obtain an insurance policy from the Court that its choice will not impact its case down the road. The answer is no.

4. The foregoing principles would not foreclose an appropriate protective order that honors a proper assertion of First Amendment privilege, protects the rights of all litigants to discovery into subject matters that will be addressed at trial, and ensures fairness. The operative principle is symmetry. A lawful order would both prohibit discovery into the NAACP's members and preclude the NAACP from introducing evidence concerning its members. And such an order would take no position on the consequences to any party of that arrangement on future disputes in this case. Legislative Defendants submit with this memorandum a proposed order that satisfies these criteria.

Notably, that is in all material respects like the agreement in principle[4] the parties recently achieved concerning some non-party State legislators' assertion of legislative privilege. After those legislators asserted privilege, Plaintiffs objected that denying discovery would permit Defendants to use the privilege as both sword and shield by later introducing evidence within the scope of privilege on a selective basis. The parties resolved that objection with an agreement that runs both ways: Defendants would not introduce information within the scope of those legislators' privilege, and Plaintiffs would not seek it.

Unfortunately, the NAACP rejects the principle that "what is sauce for the goose is normally sauce for the gander," *Heffernan v. City of Paterson, N.J.*, 578 U.S. 266, 272 (2016), and has declined a similar compromise offer here. Initially, the NAACP did not offer to meet and confer before coming to the Court, *see* Dkt No. 119-7 at 6–7, and it filed the motion even after being informed that counsel for Legislative Intervenors did not have an adequate opportunity to take a position, *see id.* at 6, and that counsel for the Secretary of State would provide correspondence concerning the matter after a trial occupying most of the Secretary's legal team ended, *see id.* at 5. Since then, counsel for the Secretary of State offered to meet and confer—even though the duty to initiate negotiations rests on the NAACP, *see* Fed. R. Civ. P. 26(c)(1); Dkt No. 66 at 3—and counsel for the NAACP stated during that conference that its proposed order represents the only compromise it will accept. As shown, that order is nothing but a license to use the privilege as both sword and shield and is wholly improper.

---

[4] The parties met and conferred on August 9, 2023 and reached this agreement in principle, and are working to memorialize the agreement in writing.

## CONCLUSION

The motion should be denied, at least in part. If the Court does not deny the motion outright, it should enter the proposed protective order submitted by Legislative Intervenors as the proper vehicle to protect that privilege and the rights of all litigants to a fair proceeding.

Respectfully submitted,

/s/ Michael W. Mengis
Michael W. Mengis, LA Bar No. 17994
**BAKERHOSTETLER LLP**
811 Main Street, Suite 1100
Houston, Texas 77002
Phone: (713) 751-1600
Fax: (713) 751-1717
Email: mmengis@bakerlaw.com

E. Mark Braden*
Katherine L. McKnight*
Richard B. Raile*
**BAKERHOSTETLER LLP**
1050 Connecticut Ave., N.W., Ste. 1100
Washington, D.C. 20036
(202) 861-1500
mbraden@bakerlaw.com
kmcknight@bakerlaw.com
rraile@bakerlaw.com

Patrick T. Lewis*
**BAKERHOSTETLER LLP**
127 Public Square, Ste. 2000
Cleveland, Ohio 44114
(216) 621-0200
plewis@bakerlaw.com

* *Admitted pro hac vice*

/s/ Erika Dackin Prouty
Erika Dackin Prouty*
**BAKERHOSTETLER LLP**
200 Civic Center Dr., Ste. 1200
Columbus, Ohio 43215
(614) 228-1541
eprouty@bakerlaw.com

*Counsel for Legislative Intervenors, Clay Schexnayder, in his Official Capacity as Speaker of the Louisiana House of Representatives, and of Patrick Page Cortez, in his Official Capacity as President of the Louisiana Senate*

## CERTIFICATE OF SERVICE

I certify that on August 16, 2023, this document was filed electronically on the Court's electronic case filing system. Notice of the filing will be served on all counsel of record through the Court's system. Copies of the filing are available on the Court's system.

/s/ *Erika Dackin Prouty*
Erika Dackin Prouty (admitted pro hac vice)
**BAKERHOSTETLER LLP**

*Counsel for Legislative Intervenors, Clay Schexnayder, in his Official Capacity as Speaker of the Louisiana House of Representatives, and of Patrick Page Cortez, in his Official Capacity as President of the Louisiana Senate*