IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DR. DOROTHY NAIRNE, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> R. KYLE ARDOIN, in his official capacity as Secretary of State of Louisiana, <br><br> *Defendant*. | CIVIL ACTION NO. 3:22-cv-00178 SDD-SDJ <br><br> Chief Judge Shelly D. Dick <br> Magistrate Judge Scott D. Johnson |

## **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL**

Plaintiffs submit this response in opposition to Defendant's Motion to Compel. Mot., ECF No. 132. Defendant's Motion seeks the confidential, personally identifiable information of Plaintiff's members, who are non-parties to the litigation. For the reasons set forth below, Defendant's Motion should be denied.

### FACTUAL BACKGROUND

Plaintiffs refer to the factual background set forth in Plaintiffs' Motion for Protective Order, Pls.' Br., ECF No. 119-1, as if fully set forth herein.

Since the filing of the Motion for Protective Order, Plaintiffs have attempted in good faith over several weeks to resolve this issue—including exchanging numerous emails with opposing counsel, drafting a proposed stipulated agreement, as well as participating in three meet and confers and two status conferences. Throughout this process, Plaintiff has offered several alternative options in lieu of revealing its members' protected information, including the sworn testimony of

Michael McClanahan, President of the Louisiana NAACP. These options were all rejected by Defendants.

Later on September 1, 2023, Plaintiff provided supplemental responses to Defendant Ardoin's First Set of Interrogatories, attached to this motion as Exhibit A. Louisiana NAACP's Supp. Resps. & Objs. to Def. Ardoin's First Set of Interrogs. at 1-2, Sept. 1, 2023 [hereinafter "Ex. A"]. These supplemental responses identified, with greater specificity, districts in which NAACP members reside in the parts of the state in which the challenged 2022 redistricting dilutes the votes of Black Louisianans and where new majority-Black districts would be created in the illustrative plan prepared by Plaintiffs' expert Bill Cooper. This supplemental response, which was originally disclosed as part of a proposed stipulation, is an effort to satisfy Defendant's stated concerns with the Louisiana NAACP's original responses without compromising NAACP members' First Amendment rights. In its supplemental response to Interrogatory No. 3, Plaintiff Louisiana NAACP stated, in relevant part, as follows:

> Plaintiff has identified at least one member who resides in, among others, each of the following Louisiana Senate Districts: 2, 5, 7, 8, 10, 14, 15, 17, 19, 31, 36, 38 and 39.
>
> Plaintiff has identified at least one member who resides in, among others, each of the following Louisiana House Districts: 1, 2, 3, 4, 5, 6, 7, 8, 9, 13, 22, 25, 29, 34, 35, 36, 37, 47, 57, 58, 59, 60, 61, 62, 63, 65, 66, 67, 68, 69, 70, 81, 88, and 101.

Plaintiff has identified at least one member who would reside in each of the newly created majority-Black districts or the districts or the newly unpacked majority-Black districts in Bill Cooper's June 2023 illustrative plans, including, among others, illustrative House Districts 1, 3, 4, 29, 34, 38, 57, 58, 60, 61, 63, 65, 68, 69, and 101, and illustrative Senate

2

Districts 2, 7, 15, 17, 19, 38, 39.[1]

## ARGUMENT

Rule 26(b)(1) of the Federal Rules of Civil Procedure authorizes discovery regarding nonprivileged information relevant to the subject matter in the pending action, considering, among other things, whether the discovery sought is "proportional to the needs of the case" and the "importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1). The party filing the motion to compel "bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence." *Tingle v. Hebert*, No. 15-626, 2016 WL 7230499, at *2 (M.D. La. Dec. 14, 2016) (quoting *Mirror Worlds Techs., LLC v. Apple Inc.*, No. 13-419, 2016 WL 4265758, at *1 (E.D. Tex. Mar. 17, 2016)). "Once a party moving to compel discovery establishes that the materials and information it seeks are relevant or will lead to the discovery of admissible evidence, the burden rests upon the party resisting discovery to substantiate its objections." *Wymore v. Nail*, No. 14-3493, 2016 WL 1452437, at *1 (W.D. La. Apr. 13, 2016) (citing *McLeod, Alexander, Powel and Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)). While relevancy is construed broadly, discovery must be "proportional to the needs of the case," and the court must limit the extent of discovery if it determines that "the discovery sought […] can be obtained by some other source that is more

---

[1] Although Plaintiffs dispute that the Louisiana NAACP is required to show individual members in each district that might be indirectly impacted by remedying the vote dilution Plaintiffs allege in order to establish associational standing, Plaintiff's supplemental discovery responses provided a list of districts that would be directly impacted by the reconfiguration of districts in Plaintiffs' June 2023 illustrative plans to create additional majority-Black districts in the House and Senate. Plaintiffs believe the supplemental responses comport with the Court's order on September 5, 2023, requiring identification with specificity of the districts at issue in this litigation. Notice, ECF No. 134.

3

convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(1)-(2).

## I. Personally Identifiable Information Is Neither Relevant Nor Proportional to the Needs of the Litigation.

Defendant's Motion to Compel must be denied because he has failed to demonstrate that the personally identifiable information of Louisiana NAACP's members—who are not themselves parties to the lawsuit—is relevant, proportional to the needs of the case, or important to resolving the issues as required by Fed. R. Civ. P. 26(b). Where a party seeks discovery of information that is shielded from disclosure by the Constitution, a heightened showing of relevance is required. *E.g.*, *Associations of Community Organizations for Reform Now v. Fowler*, No. CIV.A. 97-0287, 1997 WL 781280 (E.D. La. 1997) ("Moreover, the information sought is protected from disclosure by the United States Constitution and need not be produced absent at least a stronger showing of relevance than defendants have made here.").

In this case, Plaintiff asserts associational standing on behalf of its members. "An association has standing to bring suit on behalf of its members when its members would have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the individual members' participation in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Environ. Servs. (TOC), Inc.*, 528 U.S. 167, 1871 (2000). Here, Defendant asserts that to show that it has members that would have standing in their own right, Plaintiff must establish that it has a member in every district Plaintiff challenges. Mem., ECF No. 132-1, at 5. Whether or not that is a correct statement of the law, it does not establish that the personally identifiable information

4

of those members must be disclosed or offered into evidence. On the contrary, Plaintiff is only required to proffer sufficient evidence to establish that "at least one identified member had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). Plaintiff has done so: Plaintiff's Supplemental Interrogatory Response states that there *are* specific, identified members in specific districts that are reconfigured in Mr. Cooper's illustrative map to create additional majority-Black districts. Ex. A. That is information the Louisiana NAACP President, Michael McClanahan, who signed the interrogatory responses under penalty of perjury, could testify to at trial. There is no need for individual members to testify or otherwise participate in the lawsuit.

Defendant cites no case that requires that, in order to prove associational standing, an organization must name individual members by name. On the contrary, *Alabama Legis. Black Caucus v. Alabama* ("*ALBC*") sets forth exactly the opposite rule. *Alabama Legis. Black Caucus v. Alabama,* 575 U.S. 254, 255 (2015). In *ALBC*, the plaintiff's representative testified that the organization "ha[d] members in almost every county" and in its post-trial brief, the organization asserted that it was a "statewide political caucus". *Id.* at 269-70. The district court entered judgment for the defendants on standing grounds, holding that the plaintiff "offered no testimony or evidence that it has members in all of the [challenged] districts." *Id.* at 269 (cleaned up). The Supreme Court reversed, holding that it was clear error for the district court to fail to draw a "common sense inference" that the organization had members based on the plaintiff's general statements about its membership. *Id.* at 270.

5

Defendants contend that some language in *Summers* suggests that a plaintiff must name names to establish associational standing, but *Summers* does not actually go so far. The issue in *Summers* was not whether the members with sufficiently concrete harms had been named, but whether such members could be identified at all beyond a mere *probability* that they existed. *Summers v. Earth Island Inst.,* 555 U.S. at 497-99 (rejecting a test that would rely on a statistical probability that at least one member would be harmed by the challenged activity). Here, Plaintiff does not rely on the *probability* that one or more of their members reside in the challenged districts. The sworn interrogatory responses of President McClanahan stating that the organization had identified specific members who reside in each of the identified is sufficient to establish that Plaintiff has real, identified members who have suffered an injury-in-fact for standing purposes from residing in districts that dilute their right to vote. While naming names might be another way of establishing that such members exist, nothing in *Summers* requires a particular type or quantum of evidence to establish that an identifiable member has been harmed. Moreover, *ALBC*, decided after *Summers*, dispels any uncertainty: testimony from an organizational representative about where members live is sufficient to establish standing; there is no need to name names. *Alabama Legis. Black Caucus v. Alabama,* 575 U.S. at 270.

Nevertheless, Defendant insists that the personally identifying information of NAACP members is "vital to Defendant's defense." But he fails to explain how having the names, addresses, and birthdates of individual members who reside in challenged districts will better enable him to mount a defense on standing grounds than having

6

the testimony of the organization's president that such members exist. He offers no suggestion for how the information might be used or how it might lead to other discoverable evidence. He does not propose deposing them. He does not propose any means by which he would verify that they exist or that reside at the address they ask Plaintiff to provide, or that they are, in fact, members of the NAACP. Indeed, it appears the request is nothing but harassment.

The personally identifiable information of NAACP members is not relevant or important to any issue that must be resolved in this case, and the motion to compel must be denied.

## II.    Plaintiff's Membership Information Is Protected by Associational Privilege

Even if Defendant could establish the relevance of the personally identifying information of individual NAACP members, his motion fails because the information he seeks to compel is protected under the privilege rooted in the First Amendment right to freedom of association. As courts have repeatedly recognized, the identity of Plaintiff's members is protected by the "associational and privacy rights guaranteed by the First and Fourteenth Amendments." *Hastings v. N.E. Indep. Sch. Dist.*, 615 F.2d 628, 631-33 (5th Cir. 1980) (holding that compelled disclosure exposed members to economic reprisal, loss of employment, threats of physical coercion, [or] other manifestations of public hostility and abridged plaintiffs' associational and privacy rights under the First and Fourteenth Amendments); *see NAACP v. Alabama*, 357 U.S. 449, 462 (1958) ("compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association").

7

In *NAACP v. Alabama,* the Supreme Court recognized an associational privilege under the First Amendment because public disclosure of membership lists "entail[s] the likelihood of a substantial restraint upon the exercise by [a party's] members of their right to freedom of association." *NAACP v. Alabama*, 357 U.S. at 462. Based on this associational privilege, courts in this circuit have routinely granted protection to membership lists of advocacy organizations. *See, e.g., Young Conservatives of Texas Found. v. Univ. of N. Texas*, No. 4:20-CV-973-SDJ, 2022 WL 2901007, at *4 (E.D. Tex. Jan. 11, 2022) (recognizing the First Amendment right to the confidentiality of membership lists); *League of United Latin Am. Citizens v. Abbott*, No. EP-21-CV-00259-DCG-JES-JVB, 2022 WL 2806850, at *9 (W.D. Tex. July 18, 2022) (granting plaintiffs leave to pseudonymously identify members of their organizations that they allege have suffered the requisite harm); *Hastings*, 615 F.2d at 633 (reversing discovery sanctions for failure to disclose labor union membership lists); *cf. Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539, 543 (1963) (denying state legislative committee subpoena for NAACP branch's membership list on First and Fourteenth Amendment grounds where a representative of the NAACP had answered questions based on his own personal knowledge of branch's members).

To show that the First Amendment privilege against disclosure of membership lists applies, a party "need only demonstrate an objectively reasonable probability that disclosure of the information may expose its 'members to economic reprisal, loss of employment, threat of physical coercion, [or] other manifestations of public hostility.'" *Young Conservatives of Texas Found.*, 2022 WL 2901007, at *2 (citations

8

omitted). The threatened harm need not rise to any particular level of severity. For example, in *Bright Response v. Google*, the court found the privilege applied to prevent disclosure of Google's lobbying activities because disclosure of those activities threatened to chill the company's First Amendment rights. *Bright Response v. Google,* No. 2:07CV371, 2009 WL 10741629, at * 1 (E.D. Tex. Sept. 29, 2009).

Here, Plaintiff Louisiana NAACP's interest in the confidentiality of its membership is at minimum as strong as in the many other contexts where this First Amendment right has been protected. As explained in the declaration of Louisiana NAACP President Michael McClanahan, attached to this motion as Exhibit B, Louisiana NAACP leadership and members have been harassed, threatened, and retaliated against due to their affiliations with the NAACP. McClanahan Decl., ¶¶ 4-11. Mr. McClanahan has received hate mail and intimidating letters that threaten the membership broadly due to their affiliation with a racial justice organization. *Id.* ¶¶ 8-11. As a public-facing leader of the Louisiana NAACP, Mr. McClanahan travels alone out of concern that traveling with others would put them in harm's way. *Id.* ¶ 9. There are areas of the state where members and volunteers are not sent to canvas out of fear for their safety. *Id.* ¶ 10

Disclosure of members' identities and private information could induce them to withdraw from their membership in the organization and discourage others from joining. *Id.* ¶ 12. Subjecting Louisiana NAACP members to the risk of such reprisals through the public disclosure of their personally identifiable information would

9

impede the Louisiana NAACP's work, including advocacy efforts on sensitive issues. *Id.*

Mr. McClanahan's experience is consistent with the long, well-documented history of reprisals and retaliation against NAACP members that continues into the modern day. These types of retaliatory actions extend far beyond Louisiana and pervade NAACP chapters across the country, and involve harassment, retaliation, and reprisals by private and governmental actors. There are recent instances of NAACP leaders and members being targeted for police surveillance in Minnesota,[2] harassed by both law enforcement and members of the general public in Florida[3] and Mississippi,[4] attacked with hate mail for encouraging activism in Arizona,[5] and arrested and barred from public legislative buildings for peacefully protesting in North Carolina.[6] Within the last five years across Louisiana alone, a Black mayor

---

[2] *NAACP Lawsuit Claims Minneapolis Police Spied on its Members*, KSTP (Apr. 26, 2023), https://kstp.com/kstp-news/local-news/naacp-lawsuit-claims-minneapolis-police-spied-on-its-members/.

[3] Isabel Mascareñas, *Manatee NAACP President Claims He's Being Harassed by Bradenton Police*, WTSP (May 10, 2019), https://www.wtsp.com/article/news/manatee-naacp-president-claims-hes-being-harassed-by-bradenton-police/67-60e6b807-0ae4-40a3-9d28-c4c64041d6cd; *Lee NAACP President Says He's Getting Violent Threats After Confederate Statue Comments*, WINK News (May 3, 2018), https://winknews.com/2018/05/03/lee-county-naacp-president-says-hes-getting-death-threats-confederate-statue-comments/.

[4] Justin Victory, *Jackson NAACP Head Pulled Over, Threatened for Forest Hill Comments, He Says*, Mississippi Clarion Ledger (Oct. 26, 2018), https://www.clarionledger.com/story/news/local/2018/10/26/jackson-ms-naacp-head-pulled-over-threatened-forest-hill-comments-fbi/1773988002/.

[5] John Genovese, *Local NAACP President Receives Racist Letter Following Call for Boycott*, ABC 15 (Dec. 20, 2018), https://www.abc15.com/news/state/local-naacp-president-receives-racist-letter-following-call-for-boycott.

[6] *Barber Banned From Legislative Building After Arrest*, Fayetteville Observer (June 19, 2017), https://www.fayobserver.com/story/news/state/2017/06/19/barber-banned-from-legislative-building-after-arrest/20528048007/; Chris Seward, *NAACP Activists Threatened With Arrest While Delivering Letter to House Speaker's Office*, The News & Observer (Mar. 3, 2018), https://www.newsobserver.com/news/politics-government/politics-columns-blogs/under-the-dome/article156146389.html#storylink=cpy.

received racially motivated threats alluding to the lynching and dumping of Black bodies,[7] three Black churches were the targets of arson attacks,[8] Black fifth grade students received virtual threats in the middle of class,[9] and Black university students were the targets of bomb threats.[10]

Furthermore, Plaintiff's members are not themselves party to this lawsuit and therefore have not consented to public disclosure of their personally identifying information or their affiliation with the NAACP. Compelled disclosure here will harm Plaintiff's ability to engage in advocacy, as involuntary disclosure of member information will discourage current and prospective members from engaging with the Louisiana NAACP.

### III. Plaintiff's Responses Do Not Waive Its or Its Members' Associational Privilege

Defendants have repeatedly misrepresented Plaintiff's responses as a "selective" waiver, claiming that Plaintiffs protect some privileged information while revealing others, using privilege as a "sword and shield." Mem. At 6-7. Here, Plaintiff is providing *non-privileged* evidence that is sufficient to meet the burden of proof for associational standing. Defendants claim that Plaintiffs protect some information

---

[7] Zach Labbé & Kylee Bond *"Gone Too Far" Bogalusa Mayor Speaks Out After Racially-Motivated Social Media Threat*, CBS 42 (Mar. 2023), https://www.cbs42.com/regional/louisiana-news/gone-too-far-bogalusa-mayor-speaks-out-after-racially-motivated-social-media-threat/amp/.

[8] Bill Hutchinson, *NAACP President Calls Series of Church Fires in Louisiana "Domestic Terrorism,"* ABC News (Apr. 9, 2019), https://abcnews.go.com/US/naacp-president-calls-series-church-fires-louisiana-domestic/story?id=62231554.

[9] Kasey Bubnash, *Racist "Zoombombing" of Harvey Fifth-Grade Class Leads to Federal Indictment*, Nola (Jul. 6, 2022), https://www.nola.com/news/courts/racist-zoombombing-of-harvey-fifth-grade-class-leads-to-federal-indictment/article_29896f5e-fcc6-11ec-bea0-4f93f1867884.html.

[10] Caroline Kollath Wells, *Xavier, HBCUs Targeted With Bomb Threats: "Most Primitive Form of Racism,"* Nola (Feb. 1, 2022), https://www.nola.com/news/crime_police/xavier-hbcus-targeted-with-bomb-threats-most-primitive-form-of-racism/article_9ba233b6-8375-11ec-8724-172f9ed27262.html.

while revealing "other privileged information," which is not at issue here. Selective or anticipatory waiver does not apply when a party chooses to rely on non-privileged information, rather than waive the privilege. In asserting associational standing, Plaintiff describes non-privileged information concerning the *existence* of members in the challenged districts at issue, not their protected personally identifying information.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully asks that the Court deny Defendant's Motion to Compel and protect Plaintiff from being required to disclose personally identifying information of its members.

DATED: September 6, 2023                    Respectfully submitted,

/s/ I. Sara Rohani

John Adcock (La. Bar No. 30372)            I. Sara Rohani*
Adcock Law LLC                              NAACP Legal Defense & Educational
Louisiana Bar No. 30372                     Fund
3110 Canal Street                           700 14th Street, Suite 600
New Orleans, LA 701119                      Washington, DC 20005
jnadcock@gmail.com                          srohani@naacpldf.org

Ron Wilson (La. Bar No. 13575)             Leah Aden*
701 Poydras Street, Suite 4100             Stuart Naifeh*
New Orleans, LA 70139                       Victoria Wenger*
cabral2@aol.com                             NAACP Legal Defense & Educational
                                            Fund
Nora Ahmed (N.Y. Bar. No. 5092374)         40 Rector Street, 5th Floor
ACLU Foundation of Louisiana                New York, NY 10006
1340 Poydras St., Suite 2160                laden@naacpldf.org
New Orleans, LA 70112                       snaifeh@naacpldf.org
NAhmed@laaclu.org                           vwenger@naacpldf.org

Sarah Brannon*                              Sophia Lin Lakin*
Megan C. Keenan**                           Dayton Campbell-Harris**
American Civil Liberties Union              Luis Manuel Rico Román**
Foundation                                  American Civil Liberties Union
915 15th St. NW                             Foundation
Washington, DC 20005                        125 Broad Street, 18th Floor
sbrannon@aclu.org                           New York, NY 10004
mkeenan@aclu.org                            slakin@aclu.org
                                            dcampbell-harris@aclu.org
Michael de Leeuw*                           lroman@aclu.org
Amanda Giglio*
Cozen O'Connor                              T. Alora Thomas-Lundborg*
3 WTC, 175 Greenwich St.,                   Election Law Clinic
55th Floor                                  Harvard Law School
New York, NY 10007                          6 Everett Street, Ste. 4105
MdeLeeuw@cozen.com                          Cambridge, MA 02138
AGiglio@cozen.com                           tthomaslundborg@law.harvard.edu

Josephine Bahn**
Cozen O'Connor
1200 19th Street NW                         *Attorneys for Plaintiffs*
Washington, D.C. 20036                      *Admitted Pro Hac Vice
JBahn@cozen.com                             **Pro Hac Vice Motion Forthcoming

13