IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **DR. DOROTHY NAIRNE,** *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> **R. KYLE ARDOIN, in his official capacity as Secretary of State of Louisiana,** <br><br> *Defendant.* | **Civil Action No. 3:22-cv-00178-SDD-SDJ** <br><br><br> **Chief Judge Shelly D. Dick** <br><br><br> **Magistrate Judge Scott D. Johnson** |

### MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO REVIEW AND OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER DENYING DEFENDANT'S MOTION TO COMPEL

Defendant R. Kyle Ardoin, in his official capacity as Secretary of State of Louisiana ("Defendant"), pursuant to Rule 72(a) of the Federal Rules of Civil Procedure and Local Civil Rule 72(a), files this Memorandum in Support of Defendant's Motion to Review and Objections to the Magistrate's Order Denying Defendant's Motion to Compel (the "Motion and Objections"). As set forth in Defendant's Motion and Objections and detailed herein, the magistrate judge's order denying Defendant's Motion to Compel entered on September 8, 2023, Rec. Doc. 136 (hereinafter, the "Order"), is clearly erroneous, contrary to law, and should be vacated in its entirety.

### BACKGROUND

On July 22, 2022[1], Defendant served his First Set of Interrogatories and Requests for Production of Documents ("Defendant's First Set of Discovery") on Plaintiff the National

---

[1] This matter was stayed before the original discovery deadline was due. Once the stay was lifted, the parties agreed to a short extension of time for Plaintiffs to respond to Defendant Ardoin's First Set of Discovery up to and including July 2, 2023.

Association for the Advancement of Colored People Louisiana State Conference ("Louisiana NAACP"). (Rec. Doc. 119-3). Defendant's written interrogatories propounded on the organizational Plaintiffs included an interrogatory seeking identification of certain membership information that Louisiana NAACP intends to affirmatively rely upon to establish associational standing in this matter. That interrogatory provides in pertinent part:

> **Interrogatory No. 3:**
>
> As to each Louisiana State House and State Senate District at issue in the Complaint, and for each Organizational Plaintiff, state the following identifying to which district the response relates:
>
> (a)    Identify the members of your organization living in each challenged district . . . .

(Rec. Doc. 119-3 at 12). Louisiana NAACP's sworn interrogatory responses served on July 3, 2023, objected to Interrogatory No. 3 on several grounds, including that it sought "information protected by Plaintiff's and its members' First Amendment rights[.]" (Rec. Doc. 119-4 at 9). The responses specifically provided that Louisiana NAACP had "identified members who reside in each of the districts challenged in this litigation" and affirmatively stated that Louisiana NAACP asserts associational standing on behalf of its members who purportedly "reside in the challenged districts resulting from the enacted maps and their votes are diluted." (Rec. Doc. 119-4 at 10–11).

On Wednesday, August 9, 2023, Plaintiff Louisiana NAACP filed a Motion for Protective Order seeking to prevent the disclosure of the organization's membership information during discovery. (Rec. Doc. 119). Louisiana NAACP's Motion was denied on August 17, 2023, as "Plaintiff failed to sufficiently confer with its opponents in good faith." (Rec. Doc. 123). In the order denying the Motion for Protective Order, the magistrate judge required the parties to confer more completely by 5:00 p.m. CST on Monday, August 21, 2023. (*Id.*).

After a full conference failed to resolve the issue, the parties requested a status conference with the magistrate judge to seek guidance on how to proceed. (Rec. Doc. 126). The magistrate judge set a status conference for August 30, 2023, and again ordered the parties to meet and confer before the status conference. (Rec. Doc. 127). The night before the status conference, on August 29, 2023, Louisiana NAACP sent a proposed compromise: in exchange for Defendant and Intervenor Defendants' agreement to forego discovery into Louisiana NAACP's district-specific membership information, the Louisiana NAACP would supplement its response to Interrogatory No. 3 and "stipulate not to submit any other evidence than the supplemented interrogatory response to establish that their members would have standing…" (Rec. Doc. 132-2 – Exhibit 1, Aug. 29 Email Correspondence). In reliance on Louisiana NAACP's representation that it would not use its membership information as both a sword and a shield, Defendant accepted the framework of this compromise.

In further reliance on Louisiana NAACP's representations, at the status conference on August 30, 2023, the parties informed the magistrate judge that the framework of an agreement had been reached as outlined in the email correspondence and that the parties intended to memorialize that agreement in a stipulation. (Rec. Doc. 130). Later that evening, counsel for the Louisiana NAACP circulated a proposed written stipulation, to which counsel for Defendant and Intervenor-Defendants provided proposed redlines the next day. In response, counsel for Louisiana NAACP stated that the redlines were "non-starters" and without revealing any specific issues, demanded a phone call conference to discuss the issues.

At 9:15 a.m. EST on Friday, September 1, 2023, the parties again met and conferred. In that conference, counsel for Louisiana NAACP demanded a carve-out for the President of the Louisiana NAACP, Michael McClanahan, to be able to testify at trial regarding the harm suffered

3

by any Louisiana NAACP member who chose to waive his or her First Amendment privilege after the close of fact discovery. While Defendant respects Louisiana NAACP's First Amendment associational rights, Louisiana NAACP cannot shield its membership information from disclosure during discovery to later use that same information at trial through Mr. McClanahan. This eleventh-hour change by Louisiana NAACP gutted the agreement between the parties. As it was the last day of fact discovery and Mr. McClanahan's deposition was forthcoming[2], the parties again sought guidance from the court.

At the September 1, 2023 status conference, the parties stated their positions to the magistrate judge. At the outset, Plaintiffs reiterated that the parties were at a standstill because Plaintiffs "requested a reservation that if a member waives the [First Amendment associational] privilege, that that information then becomes fair game for [Plaintiffs] to rely on" at trial. (Sept. 1, 2023, Status Conference Tr.[3] 12:2-5). Defendant maintained that "plaintiffs cannot use this information as both a sword and a shield[,]" and that because all indications pointed towards Plaintiffs using Louisiana NAACP's membership information as a sword at trial, then Defendant "should be permitted to have discovery into that." (Status Conference Tr. 24:14-:19). The magistrate judge understood the parties' positions and the inherent issues with Louisiana NAACP's position and expressed concerns regarding the disparity between the parties' access to factual information to determine whether Louisiana NAACP's members were "adversely impacted by the current districting scheme in a way that allegedly dilutes their votes." (Status Conference

---

[2] The parties originally agreed to depose Mr. McClanahan on September 1, 2023; however, after scheduling conflicts, the parties mutually agreed to re-notice Mr. McClanahan's deposition after the close of fact discovery on September 8, 2023.

[3] The transcript from the September 1, 2023, Status Conference before Magistrate Judge Johnson will hereinafter be referred to as "Status Conference Tr."

Tr. 13:1-:7).⁴ However, after a lengthy status conference, the magistrate judge declined to rule on the issue⁵ and again ordered the parties to confer. (Rec. Doc. 131).

At 4:30 p.m. EST on Friday, September 1, 2023, the parties again met and conferred pursuant to the latest order. Unsurprisingly, no agreement was reached. Shortly thereafter, Defendant filed a Motion to Compel seeking an order compelling Louisiana NAACP to supplement its responses to Interrogatory No. 3 and identify the members which the Louisiana NAACP intends to rely upon to prove associational standing in this case.⁶ (Rec. Doc. 132). Later that same evening, at approximately 11:18 p.m. EST, Louisiana NAACP served its Supplemental Response to Interrogatory No. 3 claiming it identified members in some of the enacted state Senate and state House districts, as well as several of the illustrative districts drawn by Plaintiffs' expert Mr. Bill Cooper, but did not disclose the names of the purported members. (Rec. Doc. 135-1 at 1-2).

---

⁴ Specifically, the magistrate judge stated that it was "difficult" for him to "imagine that [he was] going to disallow a party to conduct discovery about an issue that is, for, for which there will be evidence directly presented at trial. . . . [I]f you're gonna put on evidence about members of the NAACP at trial, it's hard for me to understand why the defendants wouldn't be able to have discovery on, on those members. On the other hand, if you're not going to, then that seems to be a better argument for limiting the defendants' ability to conduct discovery on those issues and about those facts. And as I'm reacting to it now, and again hearing these issues for the first time, it does sound like you are sort of getting the best of both worlds, denying the defendants the ability to conduct discovery about the individual members based upon their, their privilege and their constitutional associational rights and then being able to introduce, either directly or through hearsay testimony, information about the very identities you're seeking to protect." (Status Conference Tr. 21:22-22:19). The magistrate judge repeated these concerns throughout the call. (*See* Status Conference Tr. 29:25-30:3 ("On the other hand, if you're gonna present evidence about their identities, then it also strikes me as logical that they would be able to conduct some relevant discovery to do that.")).

⁵ Counsel for Defendant even offered to make an oral motion to compel to help quickly resolve the issue, which was declined. (Status Conference Tr. 24:23-25:2).

⁶ As was originally offered to Plaintiffs, Defendant informed the magistrate judge that Defendant was willing to accept membership information under "an attorneys' eyes only" designation "and to have anything filed under seal" to mirror the compromise reached by the Western District of Texas in *League of United Latin American Citizens v. Abbott*, No. 21-CV-00259, 2022 WL 2806850 (July 18, 2022). (Status Conference Tr. 15:18-:24). Plaintiffs and the magistrate judge rejected Defendant's proposals.

On Friday, September 8, 2023, shortly before the 30(b)(6) deposition of Louisiana NAACP was set to begin, the magistrate judge entered an order denying Defendant's Motion to Compel. (Rec. Doc. 136). Defendant attempted to inquire as to the identities of the Louisiana NAACP members in the districts identified in Louisiana NAACP's Supplemental Response to Interrogatory No. 3 in Mr. McClanahan's 30(b)(6) deposition; however, each time, counsel objected on First Amendment grounds and instructed the witness not to answer.

Defendant now seeks review of and files his objections to the Order so that all parties may have equal access to Louisiana NAACP's membership information about which Mr. McClanahan intends to testify at trial in order for Louisiana NAACP to prove associational standing.

## ARGUMENT

The magistrate judge's September 8, 2023 Order is clearly erroneous and contrary to law for several reasons: (1) first, the Order contains incorrect factual findings; (2) the Order misinterprets and misapplies well-established precedent that requires disclosure of membership information to assess associational standing in racial gerrymandering cases under an attorneys' eyes only designation; and (3) the Order completely fails to weigh the interests in disclosure against Louisiana NAACP's First Amendment showing. For these reasons, this Court should vacate the Order and compel Louisiana NAACP to identify the specific members that Louisiana NAACP intends to rely upon at trial to establish associational standing.

**I.  Legal standard.**

Rule 72(a) of the Federal Rules of Civil Procedure provides that the "district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *See* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is

6

clearly erroneous or contrary to law."). While the clearly erroneous standard is deferential to the magistrate judge's findings, the magistrate judge's decision must be overturned when "on the entire evidence [the court] is left with a definite and firm conviction that a mistake has been committed." *Blackmon v. Bracken Const. Co., Inc.*, No. 18-00142, 2021 WL 3824819, at *1 (M.D. La. Aug. 26, 2021) (quoting *Ordermann v. Unidentified Party*, No. 06-4796, 2008 WL 695253, at *1 (E.D. La. Mar. 12, 2008)). "Similarly, a magistrate judge's order is 'contrary to law' only if it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Id.* (quotation omitted).

## II. The Order contains incorrect factual findings that render it clearly erroneous and contrary to law.

The Order contains several incorrect factual statements that render it clearly erroneous and contrary to the law, including: (1) that "there has been no challenge to the NAACP's associational standing by any of its opponents[;]" (2) that "[t]he NAACP also maintains that it has produced all evidence it intends to rely on for associational standing[;]" and (3) that "Defendant has not provided any reason to justify its request for the name, address, age, phone number, and occupation of every single member in every challenged district[.]" (Rec. Doc. 136 at 2–3). When considering the evidence on the record, these factual errors show "that a mistake has been committed" and that the Order is clearly erroneous and contrary to law. *See id.* (internal quotation omitted).

### A. Defendant has continuously challenged the factual underpinnings of Louisiana NAACP's associational standing during fact discovery.

First, the Order claims that "there has been no challenge to the NAACP's associational standing by any of its opponents." (Rec. Doc. 136 at 2). This is both factually incorrect and, as explained *infra*, misapplies applicable law. Plaintiff Louisiana NAACP has affirmatively put the factual information underlying its claim of associational standing at issue by filing a Motion for

7

Protective Order. (Rec. Doc. 119). Though the Motion for Protective Order was summarily denied for Plaintiffs' failure to properly meet and confer prior to filing, Rec. Doc. 123, the underlying discovery dispute remains the same. Defendant has continuously challenged and attempted to probe Plaintiffs' representations that Louisiana NAACP has identified members in each challenged district in the Amended Complaint—first in the Answer, Rec. Doc. 32, and most recently at the 30(b)(6) deposition of Mr. McClanahan.[7] (*See, e.g.*, Status Conference Tr. 24:14-:19). Defendant is entitled to fact discovery exploring the veracity of Louisiana NAACP's allegations and the Motion to Compel itself specifically challenged the factual underpinnings of Louisiana NAACP's alleged associational standing. Though Defendant maintains that a formal "challenge" to standing is not a prerequisite under the law for the compelled production of Louisiana NAACP's membership information, *see infra* Part IV, the record shows that a Defendant has and continues to challenge Louisiana NAACP's associational standing.

    B.    <u>Louisiana NAACP maintains that it intends to put on testimony regarding harm to its members at trial—including those members who choose to waive their First Amendment associational privilege after the close of fact discovery.</u>

Similarly, the Order's statement that "[t]he NAACP also maintains that it has produced all evidence it intends to rely on for associational standing" is factually incorrect. (Rec. Doc. 136 at 3). While Louisiana NAACP had at one time agreed to limit its presentation of evidence at trial in the context of a consent stipulation between the parties limiting the scope of discovery, those negotiations failed. Since the failed negotiations, Plaintiffs have maintained that President McClanahan will testify at trial regarding the purported harm suffered by Louisiana NAACP's members—including information identifying members who choose to waive their First

---

[7] In response to questions regarding the names and other personally identifiable information of the members that Mr. McClanahan testified that he personally identified who lived in each challenged district, counsel for Louisiana NAACP objected and instructed the witness not to answer.

8

Amendment associational privilege after the close of fact discovery. (Status Conference Tr. 11:22–12:5; 21:22–22:19, 29:25–30:3).

Furthermore, Louisiana NAACP's Supplemental Response to Interrogatory No. 3 does not alleviate Defendant's concerns of trial by ambush because Louisiana NAACP's responses to other interrogatories remain unchanged. For example, Louisiana NAACP's sworn response to Interrogatory No. 2[8] provides in pertinent part:

> In addition, Plaintiff intends to call a number of fact witnesses. The specific fact witnesses Plaintiff will call have not yet been determined but will likely include Louisiana NAACP President Michael McClanahan. ***Mr. McClanahan's testimony will include*** information about the NAACP's activities and mission, ***the harm to the organization, its members, and Black communities in Louisiana caused by the enacted maps***, the lack of responsiveness of elected officials in addressing the issues faced by Black Louisianians, and other topics relevant to Plaintiffs' claims.

(Rec. Doc. 119-3 at 11–12 (emphasis added)). At the September 1, 2023 status conference, the magistrate judge acknowledged the inherent inequities in Louisiana NAACP's position, but still entered an Order allowing Louisiana NAACP to have "the best of both worlds, denying the defendants the ability to conduct discovery about the individual members based upon their, their privilege and their constitutional associational rights and then [allowing Plaintiffs] to introduce, either directly or through hearsay testimony, information about the very identities [Louisiana NAACP is] seeking to protect." (Status Conference Tr. 21:22-22:19). The record shows that Louisiana NAACP intends to put forth additional, undisclosed evidence at trial relating to its members' identities and the alleged harm those individuals purportedly suffered. The Order's finding to the contrary is clearly erroneous.

    C.    <u>Defendant has provided justification for the specific identifying information requested in Interrogatory No. 3.</u>

---

[8] Interrogatory No. 2 subpart (b) asks Louisiana NAACP to, *inter alia*, identify fact witnesses it intends to call at trial to show a particular district violates Section 2 and "provide a detailed summary of the substance and scope of their anticipated testimony . . . ." (Rec. Doc. 119-3).

Lastly, the statement that "Defendant has not provided any reason to justify its request for the name, address, age, phone number, and occupation of every single member in every challenged district" is also an incorrect factual finding. (Rec. Doc. 136 at 3). At the September 1, 2023 status conference, Defendant specifically explained to the parties and the magistrate judge that the reason Defendant sought additional identifying information beyond member names was "because you get a lot of the same you know, John Smith and you might have a Jr. and a Sr.  It helps to verify that you've got the right person that you're talking about." (Status Conference Tr. 15:13-:17; *see also* Tr. 11:22-12:5).   Defendant has also explained in numerous briefings why the identities of Louisiana NAACPs members is highly relevant to vote dilution claims and Defendant's ability to defend this action.  (*See, e.g.*, Rec. Docs. 121, 132, 132-1). The evidence on the record shows these findings are factually incorrect and renders the Order clearly erroneous and contrary to law.

**III.   The Order misinterprets and misapplies well-established precedent that requires disclosure of Louisiana NAACP's members' information that it intends to rely upon to establish standing under an attorneys'-eyes-only designation.**

The Order is also clearly erroneous and contrary to law because it misinterprets and misapplies well-established precedent that requires disclosure of an organizations membership information to assess associational standing in vote dilution claims under an attorneys'-eyes-only designation.

Generally, in order to assert associational standing on behalf of its members, an organization has the burden to prove three things: (1) "its members would have standing to sue in their own right[;]" (2) "the interests at stake are germane to the organization's purpose[;]" and (3) "neither the claim asserted nor the relief requested requires the individual members' participation in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Environ. Servs. (TOC), Inc.*, 528 U.S. 167, 1871 (2000). The first prong is at issue here. To have standing to bring a vote dilution claim, well-

10

established United States Supreme Court precedent requires an individual voter to actually reside in the alleged racially gerrymandered district such that the voters suffer the harm of vote dilution. *See United States v. Hays*, 515 U.S. 737, 745 (1995) (a plaintiff who lives outside of a challenged district does not incur "the injury our standing doctrine requires"); *Shaw v. Hunt*, 517 U.S. 899, 904–05 (1996); *see also Miller v. Johnson*, 515 U.S. 900 (1995); *Shaw v. Reno*, 509 U.S. 630 (1993).

Plaintiffs' Amended Complaint alleges that Louisiana's legislative maps "dilute votes of members of the Louisiana NAACP[;]" that Louisiana NAACP's "members have been and, if the State Maps are not enjoined, will continue to be harmed by the State Maps as the State Maps impermissibly dilute their votes[;]" and that S.B. 1 and H.B. 14 "den[y] or abridge[] the Plaintiffs' and/or their members' right to vote on account of their race and color[.]" (D.E. 14, ¶¶ 42–45). Given the claims in this case, Louisiana NAACP has an affirmative duty to prove that its members actually reside in each challenged district to establish associational standing on behalf of its members. *See United States v. Hays*, 515 U.S. 737, 744–745 (1995); *N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233, 237 (5th Cir. 2010). The burden of proof is very different at the motion to dismiss stage than at trial. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (1981) (describing a "facial" versus a "factual" attack to subject matter jurisdiction, and describing a motion to dismiss as the former). The "discovery provisions of the Federal Rules of Civil Procedure allow the parties to develop fully and crystalize concise factual issues for trial. Properly used, they prevent prejudicial surprises and conserve precious judicial energies." *Burns v. Thiokol Chemical Corp.*, 483 F.2d 300, 304 (1973).

The Order fails to realize the interests at stake in this discovery dispute and, in the process, misinterprets and misapplies *LULAC v. Abbott*, 2022 WL 2806850 (W.D. Tex. July 18, 2022)

11

(hereinafter, "*LULAC*") and *Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254, 268–71 (2015) (hereinafter, "*ALBC*").

Neither *LULAC* nor *ALBC* requires some formal "challenge" to standing as a prerequisite for a court to compel the production of membership information. In *LULAC,* the issue before the court was whether the Texas NAACP could file an amended complaint under seal after the Texas NAACP's previous complaint was dismissed and the court granted leave for the Texas NAACP to amend. 2022 WL 2806850, at *1. The court in *LULAC* did not state that a motion to dismiss was a prerequisite for the court to rule on the membership list issue—it just happened to be the procedural course of the case. *See id.*

The Order also misconstrues the posture and holding in *ALBC*. In *ALBC*, the Supreme Court reviewed a trial court's *sua sponte* dismissal of the Alabama Democratic Conference's complaint due to lack of standing. 575 U.S. at 268–71. No party had actually requested any specific membership information to assess the Alabama Democratic Conference's alleged associational standing in discovery or at trial. *Id.* The Supreme Court ultimately found fault with the trial court's failure to give the organization an opportunity to substantiate its standing before dismissing the case *sua sponte*. *Id.* Within that context, the Alabama Democratic Conference's testimony at trial that the organization had "members in almost every county in Alabama" was sufficient in the first instance for the court to inquire further. *Id.* at 270–71. However, the trial court did not, so the Supreme Court remanded the case and ordered the trial court to reassess the organization's associational standing "by permitting the Conference to file its list of members and permitting the state to respond, as appropriate." *Id.* at 271. *ALBC* does not require a court to first request information to compel membership information. The defendants in *ALBC* simply had not asked

12

for the Alabama Democratic Conference's membership information and did not inquire into the organization's blanket statement that it had members in almost every county.

The opposite is true here. Defendant has specifically and continuously requested membership information in discovery that Louisiana NAACP intends to rely on to establish associational standing on behalf of its members. The Motion to Compel was the most recent version of that request.

Defendant is unaware of any case that requires a motion to dismiss as a prerequisite for production of membership information to assess associational standing over a First Amendment privilege objection. In fact, other courts have found such discovery motions to be a sufficient means of seeking court intervention to determine whether disclosure of membership information is required in similar contexts. *See Young Conservatives of Texas Found. v. Univ. of N. Texas*, No. 4:20-CV-973-SDJ, 2022 WL 2901007, *3 (E.D. Tex. Jan. 11, 2022) (allowing discovery into plaintiffs' membership over First Amendment objections under an attorneys'-eyes-only designation upon a motion for protective order). Because the Order held otherwise and found that no "challenge" to Louisiana NAACP's standing had been made, the Order is clearly erroneous and contrary to law.

IV. **The Order is clearly erroneous and contrary to law as it wholly fails to weigh the interests of disclosure against the Louisiana NAACP's First Amendment showing.**

The Order erroneously fails to conduct any balancing test to determine whether Louisiana NAACP or its members would suffer a substantial restraint on their First Amendment associational rights if the motion to compel were granted. The First Amendment associational privilege is not absolute. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984). Courts have found "good cause" to protect First Amendment associational rights only in certain fact-specific scenarios when a

discovery order "entail[s] the likelihood of a substantial restraint upon the . . . right to freedom of association." *NAACP v. Alabama*, 357 U.S. 449, 462 (1958). Determining whether a substantial restraint exists to prevent disclosure requires a balancing of certain factors, including "(1) the importance of the information sought to the issues in the case, (2) the availability of the information from alternative sources, (3) the substantiality of the First Amendment interests at stake, and (4) whether the request is carefully tailored to avoid unnecessary interference with protected activities." *Young Conservatives of Texas Found. v. Univ. of N. Texas*, No. 4:20-CV-973-SDJ, 2022 WL 2901007, *3 (E.D. Tex. Jan. 11, 2022) (internal citations omitted). A balancing of the interests here shows that the need for the information sought outweighs the alleged restraint on the Louisiana NAACP or its members' rights if the information is shared under an attorneys'-eyes-only designation and otherwise filed under seal.

First, as described *supra*, the membership information sought is highly relevant to vote dilution cases. The types of claims asserted by Louisiana NAACP matter here. Additionally the identities of the members that Louisiana NAACP intends to rely upon to establish standing at trial are not available through alternative sources. The State Conference and local branches of the Louisiana NAACP are separate entities[9]. The State Conference, not the individual branches, decided to bring this affirmative litigation. As such, only the State Conference entity, by and through Mr. McClanahan, purportedly identified members in good standing in each challenged district. Outside of counsel for Plaintiffs, Mr. McClanahan is the only person with personal knowledge of which members were actually identified that Louisiana NAACP intends to rely upon to establish associational standing at trial. As such, the first two factors weigh in favor of disclosure.

---

[9] This information is publicly available on the Louisiana Secretary of State website under the business search feature.

14

As to the third factor, the personally identifiable information regarding Louisiana NAACP's membership is not closely held. For example, the Louisiana NAACP's website publicly lists names, pictures, and contact information for members of the organization's Executive Committee and the District Vice Presidents. *See Executive Committee*, NAACP Louisiana State Conference (last visited Sept. 17, 2023), https://www.naacplastate.org/blank-3. Additionally, the Louisiana NAACP's 2023 Annual Conference web page contains personally identifiable information for several members, including group pictures of past attendees and what appears to be home addresses of some members in the Unit Membership Registration Package. *See LA State Convention*, NAACP Louisiana State Conference (last visited Sept. 17, 2023), https://www.naacplastateconference.org/. Furthermore, any concerns relating to the fourth factor can be alleviated through an attorneys'-eyes-only designation and requiring the filing of any Louisiana NAACP membership information to be under seal.

A recent decision by the United States District Court for the Eastern District of Texas is instructive. In *Young Conservatives of Texas Foundation*, the court required disclosure of membership information to outside counsel under a protective order as a "sensible balance" between the defendant's "need to defend this lawsuit" and the plaintiff's desire to "protect the associational rights at stake." *Young Conservatives of Texas Found.*, 2022 WL 2901007, at *4 (*citing Christ Covenant Church v. Town of Southwest Ranches*, No. 07-60516-CIV, 2008 WL 2686860, at *12 (S.D. Fla. June 29, 2008) (requiring that disclosure of membership information be limited to counsel eyes only); *Bright Response LLC v. Google, Inc.*, No. 2:07CV371, 2009 WL 10741629, at *2 (E.D. Tex. Sept. 29, 2009) (concluding that Google's lobbying activities were protected under the First Amendment and ordering that such information "shall be disclosed only to outside counsel for the plaintiff"). Similarly, a balancing of the interests here shows that

15

production of membership information of the Louisiana NAACP under an attorneys'-eyes-only designation—at the very least, sufficient identification of members residing in each state House and state Senate district challenged by Louisiana NAACP—would properly balance Defendant's "need to defend this lawsuit" with Louisiana NAACP's desire to "protect the associational rights at stake." *See id.* Because it failed to properly balance these interests, the Order is clearly erroneous and contrary to law.

## CONCLUSION

Defendant R. Kyle Ardoin, in his official capacity as Louisiana Secretary of State, respectfully requests that the Order denying Defendant's Motion to Compel be vacated in its entirety and that Plaintiffs be compelled to produce the membership information that Louisiana NAACP intends to rely on to assert associational standing in this case.

Respectfully submitted, this the 22nd day of September, 2023.

/s/ Phillip J. Strach
Phillip J. Strach*
  *Lead Counsel*
Thomas A. Farr*
John E. Branch, III*
Alyssa M. Riggins*
Cassie A. Holt*
**NELSON MULLINS RILEY & SCARBOROUGH LLP**
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Ph: (919) 329-3800
phil.strach@nelsonmullins.com
tom.farr@nelsonmullins.com
john.branch@nelsonmullins.com
alyssa.riggins@nelsonmullins.com
cassie.holt@nelsonmullins.com

/s/ *John C. Walsh*
John C. Walsh, LA Bar Roll No. 24903
John C. Conine, Jr., LA Bar Roll No. 36834
**SHOWS, CALL & WALSH, L.L.P.**

        628 St. Louis St. (70802)
        P.O. Box 4425
        Baton Rouge, LA 70821
        Ph: (225) 346-1461
        Fax: (225) 346-1467
        john@scwllp.com
        coninej@scwllp.com

        *Admitted pro hac vice*

        *Counsel for Defendant R. Kyle Ardoin, in his official capacity as Secretary of State of Louisiana*