IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DR. DOROTHY NAIRNE, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> R. KYLE ARDOIN, in his official capacity as Secretary of State of Louisiana, <br><br> *Defendant.* | Civil Action No. 3:22-cv-00178-SDD-SDJ <br><br> Chief Judge Shelly D. Dick <br><br> Magistrate Judge Scott D. Johnson |

**JOINT MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Redistricting cases like this one are governed by the familiar Article III standing framework for federal civil actions. The law is clear that electoral districts may be challenged only by individual residents of those districts. Plaintiffs include four individuals (the "Individual Plaintiffs") and two entities (the "Entity Plaintiffs"). The Individual Plaintiffs challenge, at most, the four house and four senate districts where they, respectively, reside. Yet Plaintiffs challenge Louisiana's house and senate redistricting plans in their entirety. As no Plaintiff has any claim of standing as to most districts, summary judgment is required as to all but—at most—those districts in which Individual Plaintiffs reside.

Plaintiffs argue that the Entity Plaintiffs have standing to challenge the remaining districts. But they cannot satisfy either pathway to standing for organizations (associational or organizational standing). First, neither Entity Plaintiff may establish associational standing by asserting the standing of members because neither has members, and the one Entity Plaintiff seeking to assert rights of affiliate-branch members has named no such members, refused discovery concerning them, and cannot prove their standing. Second, neither Entity Plaintiff has

organizational standing (i.e., standing in its own right). To claim a cognizable injury-in-fact in its own right, an entity must demonstrate that the challenged government action imposes specific, cost-related burdens on it, but the Entity Plaintiffs have not made this showing. Even if they had, the Entity Plaintiffs do not fall within any private right of action under Section 2 of the Voting Rights Act, because it affords—if anything—an action to minority voters to secure an equal right to vote, not to entities to minimize expenditures for their activities.

Because the Entity Plaintiffs do not have standing, the claims could only proceed against those challenged districts as to which Plaintiffs present sufficient evidence for a triable fact question of standing of the four Individual Plaintiffs. The Court should dismiss the challenge as to all other districts.

## BACKGROUND

1. This is a Section 2 Voting Rights Act challenge to the Louisiana house and senate redistricting plans the Legislature enacted in 2022. Plaintiffs allege that "a number of new additional majority-minority opportunity districts" could be configured in both plans. SUMF[1] ¶ 1. They ask the Court to declare both house and senate redistricting plans invalid in their entirety and enjoin them in full. *See id.* at ¶ 9. That would appear to mean they challenge all 105 state house and 39 state senate districts.

The operative complaint lists six individuals as Plaintiffs: Dr. Dorothy Nairne, Jarrett Lofton, Rev. Clee Earnest Lowe, Dr. Alice Washington, Steven Harris, and Alexis Calhoun. *Id.* at ¶ 2. But Plaintiffs Lofton and Calhoun have since voluntarily dismissed their claims. *See id.* at ¶ 3. Thus, the Individual Plaintiffs are four individuals, and they list themselves as residing, respectively, in HD25, HD60, HD66, and HD69. *Id.* at ¶¶ 3–4. In subsequent discovery, they have

---

[1] "SUMF" refers to the Joint Statement of Undisputed Material Facts filed contemporaneously herewith.

attested that they reside in SD2, SD5, SD16, and SD29. *Id.* at ¶ 5. SD2, SD5, and SD29 are majority-minority districts with respective black voting-age populations (BVAPs) of 57.75%, 50.24%, and 56.56%. *Id.* at ¶ 6.

The Amended Complaint lists two Entity Plaintiffs, Black Voters Matter Capacity Building Institute ("BVM") and the Louisiana State Conference of the National Association for the Advancement of Colored People (the "Louisiana NAACP"). *Id.* at ¶ 7. The Entity Plaintiffs are both non-profit corporations. *See id.* at SUMF ¶ 8.

2.      BVM is based in Atlanta, Georgia, and maintains an office in Shreveport, Louisiana. *Id.* at ¶ 10. A "majority of the work" of BVM "is capacity building," *id.*, which means "working with" and supporting BVM's "partners." *Id.* BVM partners are organizations and entities that BVM "work[s] with" toward the goal of "increasing voter participation," *id.* at ¶ 12. BVM does not have "members," just "partners." *Id.* at ¶ 11. Partners are not members of BVM; they are entities BVM "support[s]" with financing or assistance "with the planning process" of "partner initiatives." *Id.* at ¶ 13.

BVM asserts injury from the challenged redistricting plan on the basis that it "had to spend a lot of time that [it] did not foresee on redistricting," by mobilizing a "redistricting takeover" as the State Legislature deliberated over redistricting plans. *Id.* at ¶ 16. BVM also claims the redistricting process created an "increasing sentiment" in some communities that their votes do not count, which BVM asserts requires a "nuanced approach" to initiatives and events. *Id.* at ¶ 17. BVM, however, has continued funding its partners, even after the challenged plans became law, and it can identify no grant or application that did not receive funding as a result of the challenged plans. *Id.* at ¶ 18.

3

3.      The Louisiana NAACP is a volunteer-based 501(c)(4) organization, *id.* at ¶ 19. There are eight NAACP districts within the State. *Id.* The Louisiana NAACP neither has individual members nor maintains member lists. *Id.* at ¶ 20. Instead, individual NAACP members belong to their local chapters, or branches, which are separate 501(c)(4) organizations, and are monitored by the national NAACP, the Louisiana NAACP's parent. *Id.* at ¶¶ 20–22. The Louisiana NAACP estimates it has roughly 40 branches across Louisiana. *Id.* at ¶ 20. Membership in an NAACP branch requires only dues payments. *Id.* at ¶ 23. There are no age or race requirements and one need not be a registered voter. *Id.* at ¶ 20. Even "a baby" could join. *Id.*

The Louisiana NAACP has indicated that it intends to assert the standing of members of local branches, but it has resisted discovery concerning branch members. *Id.* at ¶ 25. The Louisiana NAACP bases its claim to standing on the assertion of its president, Michael McClanahan, that he has identified branch members in each challenged district.[2] *Id.* at ¶ 24. Mr. McClanahan refuses to identify those individuals. *Id.* at ¶ 24. He does not know how many senate or house districts exist in Louisiana. *Id.* at ¶¶ 26–27. He admits he does not have a list identifying branch members and did not review or reference a list prior to asserting that the Louisiana NAACP has members in every challenged district. *Id.* at ¶ 28. Mr. McClanahan does not know whether the members he claims to have identified in certain districts have moved away, and he does not know if they are Black or are even registered to vote. *Id.* at ¶ 29.

---

[2] The Louisiana NAACP initially attested that branch members reside in all legislative districts. Rec. Doc. 119-4 at 10–11. Subsequently, it has attested that members reside in, "among others," SD2, SD5, SD7, SD8, SD10, SD14, SD15, SD17, SD19, SD31, SD36, SD38 and SD39, and HD1, HD2, HD3, HD4, HD5, HD6, HD7, HD8, HD9, HD13, HD22, HD25, HD29, HD34, HD35, HD36, HD37, HD47, HD57, HD58, HD59, HD60, HD61, HD62, HD63, HD65, HD66, HD67, HD68, HD69, HD70, HD81, HD88, and HD101. SUMF ¶ 24. The Louisiana NAACP has not named members or addresses that can be vetted in discovery, and many of these districts are performing majority-minority districts. *See id.* at ¶¶ 24-25.

4

As noted, the Louisiana NAACP has resisted discovery into the membership of its branches, and this Court has denied Defendants discovery into that entire subject matter. *See* Rec. Doc. 136. Defendant Secretary of State has filed objections to that order, which remain pending. Rec. Doc. 144.

## LEGAL STANDARD

Summary judgment is required where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant's burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once that occurs, "the nonmoving party [must] go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted).

## ARGUMENT

The Entity Plaintiffs lack standing, and this case can proceed to trial—at most—as to districts where the Individual Plaintiffs may create a triable question as to their standing. "The doctrine of standing" insists "that a litigant 'prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision.'" *Carney v. Adams*, 141 S. Ct. 493, 498 (2020) (citation omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)

"[W]here the plaintiff is an organization, the standing requirements of Article III can be satisfied in two ways. Either the organization can claim that it suffered an injury in its own right

5

or, alternatively, it can assert 'standing solely as the representative of its members.'" *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 143 S. Ct. 2141, 2157 (2023) (*SFFA*) (citation omitted). Where an organization asserts members' standing, it must "make specific allegations establishing that at least one identified member" would have standing in that member's own right. *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). "An organization has standing to sue on its own behalf if it meets the same standing test that applies to individuals." *Ass'n of Cmty. Organizations for Reform Now v. Fowler*, 178 F.3d 350, 356 (5th Cir. 1999) (*ACORN*). The Entity Plaintiffs cannot create a triable question under either test.

      **A.**      **The Entity Plaintiffs Cannot Assert Member Rights**

The Entity Plaintiffs cannot establish "a genuine issue for trial," *Celotex*, 477 U.S. at 324 (citation omitted), as to whether one "identified member" would have standing to challenge each district alleged to be dilutive, *Summers*, 555 U.S. at 498. To establish standing on behalf of members, each Entity Plaintiff "must demonstrate that (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *SFFA*, 143 S. Ct. at 2141 (quotation marks omitted). Defendants put the Entity Plaintiffs to their proof on each of these elements, and all "must be supported adequately by the evidence adduced at trial." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quotation marks omitted). But for present purposes, it is sufficient that Plaintiffs cannot meet the first factor because no evidence demonstrates that at least one identified member can claim vote dilution in each challenged district. *See Summers*, 555 U.S. at 498.

      **1.**      **The Entity Plaintiffs Do Not Have Individual Members**

Neither Entity Plaintiff has individual members who could establish standing in a voting-rights case in their own right. BVM does not have "individual members"; it has "partners," SUMF

6

¶¶ 11–12, which are organizations, not individuals, SUMF ¶ 12. The Louisiana NAACP also does not have "members . . . per se. Not individually." SUMF ¶ 20. Its members are local NAACP branches, which are separate legal entities. SUMF ¶ 20. Because voting rights—and alleged injuries to those rights—are "individual and personal in nature," *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018), the members of the Entity Plaintiffs do not themselves have standing to claim a Section 2 injury. *See infra* §§ A.3 and B.2. Consequently, these organizations have no viable claim to associational standing for any members. *See, e.g.*, *Am. Legal Found. v. F.C.C.*, 808 F.2d 84, 90 (D.C. Cir. 1987) (finding no standing of organization whose "relationship to its 'supporters' bears none of the indicia of a traditional membership organization"); *Coal. for Mercury-Free Drugs v. Sebelius*, 725 F. Supp. 2d 1, 9 n.7 (D.D.C. 2010), *aff'd*, 671 F.3d 1275 (D.C. Cir. 2012) ("[T]his Court must look only at whether named and identified members of Mercury-Free—not unnamed members or organizations affiliated with Mercury-Free—meet the requisite conditions of standing.").

### 2. The Entity Plaintiffs Have Identified No Members Who Might Have Standing

It is no surprise that entities without individual members were unable to name individual members with standing. Without members of any kind, BVM has no credible claim to associational standing. The Louisiana NAACP likewise has no individual members. Even if members of local NAACP branches could be regarded as Louisiana NAACP members, it has not named any with standing. The Supreme Court's precedents "have required plaintiff-organizations to make specific allegations establishing that at least one *identified* member had suffered or would suffer harm." *Summers*, 555 U.S. at 498 (emphasis added); *see also SFFA*, 143 S. Ct. at 2158 (standing satisfied where "an organization has identified members and represents them in good faith").

7

The Louisiana NAACP has refused to disclose any information concerning branch members, and it claims it need not present their "personally identifiable information" to show standing. *See, e.g.*, Rec. Doc. 135 at 4. That position is wrong. The Supreme Court has established a "requirement of *naming* the affected members," *Summers*, 555 U.S. at 498 (emphasis added), and the Louisiana NAACP has not only chosen not to "name individual members by name," it has refused discovery on the entire subject matter. Rec. Doc. 135 at 5. The Louisiana NAACP has said there is "no case that requires" naming names, *id.*, but *Summers* literally says—to repeat—there is a "requirement of *naming* the affected members," *Summers*, 555 U.S. at 498 (emphasis added). Binding precedent does not get much clearer than that. *See also FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 235 (1990) (rejecting standing assertion because the plaintiff's evidence "fails to identify the individuals" at issue).

Other courts have noticed, holding that "[t]he general 'requirement' that standing be supported at the summary judgment stage by 'affidavits . . . *naming* the affected members' is uncontroversial," *Ranchers-Cattlemen Action Legal Fund, United Stockgrowers of Am. v. United States Dep't of Agric.*, 573 F. Supp. 3d 324, 334 (D.D.C. 2021) (quoting *Summers*, 555 U.S. at 498), and that an organization's failure "to identify a single *specific member* injured by the" challenged practice "doom[s] its representational standing claim," *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) (emphasis in original); *see also Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1009 (7th Cir. 2021) (rejecting associational standing assertion because the Court "do[es] not know . . . who these members are" whose standing was asserted); *Ouachita Watch League v. United States Forest Serv.*, 858 F.3d 539, 543 (8th Cir. 2017) (same outcome in the absence of "an identified member"); *Chamber of Commerce of U.S. v. E.P.A.*, 642 F.3d 192 (D.C.

8

Cir. 2011) (same result where plaintiff had not "identified a single member who was or would be injured"); *Comité de Apoyo a los Trabajadores Agrícolas v. Perez*, 148 F. Supp. 3d 361, 372 (D.N.J. 2015) (same ruling because the plaintiff "does not identify any specific . . . member harmed by the challenged" rule); *Do No Harm v. Pfizer Inc.*, No. 1:22-cv-07908, 2022 WL 17740157, at *6 (S.D.N.Y. Dec. 16, 2022) (same because "[a]ssociational standing requires that a plaintiff identify by name at least one member with standing"); *Pen Am. Ctr., Inc. v. Trump*, 448 F. Supp. 3d 309, 320–21 (S.D.N.Y. 2020) (rejecting the "argu[ment] that Plaintiff need not name an injured member at the pleading stage for associational standing" (internal quotation marks and citations omitted)); *Chamber of Com. for Greater Philadelphia v. City of Philadelphia*, No. 17-cv-1548, 2017 WL 11544778, at *1 (E.D. Pa. May 30, 2017) (same).[3]

Binding precedent applies this rule in voting cases and cases involving the NAACP. In *Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254 (2015), a racial-gerrymandering case, the Supreme Court remanded to permit the Alabama Democratic Conference "to file its list of members" to establish standing and for adequate proceedings to permit the other side "to respond." *Id.* at 271. The Conference had shown willingness to prove standing because it "filed just such a list in [the Supreme] Court" and had been denied the opportunity to do so below by an abrupt *sua sponte* dismissal. *Id.* Here, by contrast, the Louisiana NAACP has known for months that Defendants challenge its standing, and it refused to disclose the "list of members" that carried the burden in *Alabama Legislative Black Caucus*. *Id.* Likewise, in *N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233 (5th Cir. 2010), the court rejected the NAACP's assertion of associational standing

---

[3] A minority of decisions hold that naming names is not necessary "at the pleading stage," *see, e.g.*, *Louisiana State Conf. of NAACP v. Louisiana*, 490 F. Supp. 3d 982, 1005 (M.D. La. 2020), *aff'd on other grounds sub nom. Allen v. Louisiana*, 14 F.4th 366 (5th Cir. 2021), but all decisions (at least since *Summers*) recognize that requirement at the summary-judgment stage, *see, e.g.*, *Ranchers-Cattlemen Action Legal Fund*, 573 F. Supp. 3d at 334.

9

because "there is no evidence in the record showing that a specific member of the NAACP" was harmed by the challenged zoning ordinance. *Id.* at 237. The same is true here.

The Louisiana NAACP insists it is sufficient that its president, Mr. McClanahan, represents "there *are* specific, identified members in specific districts" the Louisiana NAACP challenges. Rec. Doc. 135 at 5. But *Summers* deems any effort to establish standing "insufficient" if "it [does] not name the individuals." 555 U.S. at 498. The Louisiana NAACP will not identify the people it calls its "identified members." Doc. 135 at 5. The Court must not "accept[] the organizations' self-descriptions of their membership." 55 U.S. at 499. That is true even where "no one denies" the assertion. *Id.* Here, Defendants *do* deny the assertion as wholly insufficient. Mr. McClanahan does not have a membership list for the Louisiana NAACP and did not review a membership list prior to making assertions concerning where members live. SUMF ¶ 28. Mr. McClanahan does not know addresses of members and made his representations by eyeballing "a particular area" on a map, *id.* at ¶ 26, but Mr. McClanahan does not even know how many legislative districts Louisiana has, *id.* at ¶¶ 26–27. Mr. McClanahan simply presumed there were members in the general areas of NAACP branches. *Id.* at ¶¶ 26, 28. This Court cannot blindly accept an assumption that members of NAACP branches reside in each district challenged.

### 3. The Entity Plaintiffs Have Not Proven Standing for Members

It is not enough for an organization to identify those members whose standing it asserts. It must also "demonstrate that" they "have standing to sue in their own right." *SFFA*, 143 S. Ct. at 2141. By refusing discovery concerning its members, the Louisiana NAACP has prevented itself from proving their standing.

"[T]o demonstrate an injury in fact, a vote dilution plaintiff must show that he or she (1) is registered to vote and resides in the district where the discriminatory dilution occurred; and (2) is

10

a member of the minority group whose voting strength was diluted." *Broward Citizens for Fair Districts v. Broward Cnty.*, No. 12-cv-60317, 2012 WL 1110053, at *3 (S.D. Fla. Apr. 3, 2012); *accord Rose v. Raffensperger*, 511 F. Supp. 3d 1340, 1352 (N.D. Ga. 2021). Even if the Louisiana NAACP had established that a member of one of its branches resides in each challenged district, its evidence does not establish these other essential standing prerequisites. Mr. McClanahan does not know that each member the Louisiana NAACP relies upon is a Black registered voter. SUMF ¶ 29. And these things cannot be presumed: one need not be Black, or registered to vote, or of voting age, or a citizen to belong to an NAACP branch. *Id.* at ¶ 23. Thus, even if it could be assumed that NAACP branch members reside in each district being challenged (i.e., all of them), there is "an absence of evidence," *Celotex*, 477 U.S. at 325, to establish standing of these unnamed members.[4]

### B.  The Entity Plaintiffs Do Not Have Standing in Their Own Right

The Entity Plaintiffs also do not have standing in their "own right." *SFFA*, 143 S. Ct. at 2157. First, they cannot identify any injury-in-fact to themselves caused by the challenged redistricting scheme. Second, even if they could, organizations do not have statutory standing under VRA Section 2, which protects the rights of voters, not of corporate entities.

#### 1.  The Entity Plaintiffs Lack Article III Standing

To establish standing in their own right, the Entity Plaintiffs must demonstrate a "concrete and demonstrable injury to the organization's activities," not "simply a setback to the organization's abstract social interests." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379

---

[4] Any effort to introduce evidence concerning members would be improper and prejudicial, given that the Louisiana NAACP refused discovery on this subject matter on grounds of First Amendment privilege. The Louisiana NAACP cannot use privilege "as both a sword and a shield," *Nguyen v. Excel Corp.*, 197 F.3d 200, 207 n.18 (5th Cir. 1999), and any information it might provide would fall squarely within discovery requests, such that late and selective disclosure would violate Rule 37.

11

(1982). In the present posture, they "must point to specific summary judgment evidence showing that [they] [were] 'directly affected' by" the challenged redistricting plans. *ACORN*, 178 F.3d at 357. An organization may do this "by showing that it had diverted significant resources to counteract the defendant's conduct." *N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233, 238 (5th Cir. 2010). Here, the summary-judgment record does not contain "any concrete or identifiable resources that" the Entity Plaintiffs "could reallocate to other uses, if Louisiana were to" implement redistricting plans with new majority-minority districts. *ACORN*, 178 F.3d at 360.

For the Louisiana NAACP, Mr. McClanahan testified that the organization felt compelled "to shift" its "action plan" after the Louisiana Legislature's plan included fewer majority-minority districts than it hoped, SUMF ¶¶ 30–31, choosing "not to spend" in some places and "to double up" in others, *id.* at ¶ 31. But that is not enough to establish injury. It describes "routine" strategic "activities" of an advocacy group that must, in all events, decide where to focus resources. *See N.A.A.C.P.*, 626 F.3d at 238. Moreover, this testimony identifies no cost increase that is "concrete or identifiable" and diverts resources from other activities. *ACORN*, 178 F.3d at 360. Mr. McClanahan could identify neither specific resources diverted because of the challenged plans nor an event the Louisiana NAACP wanted to conduct that the maps thwarted. SUMF ¶ 32; *see Texas State LULAC v. Elfant*, 52 F.4th 248, 253 (5th Cir. 2022) (reversing finding of standing where the evidence "fail[ed] to link any diversion of resources specifically to" the challenged law). The evidence shows (at most) a shift, which includes cost savings in some cases that is consistent with overall net cost reduction. And, to the extent the Louisiana NAACP claims injury from reduced excitement of Black voters, *see, e.g.*, SUMF ¶ 30, that "simply" describes "a setback to the organization's abstract . . . interests." *Havens Realty*, 455 U.S. at 379.

12

For BVM, its Senior State Organizer, Omari Ho-Sang, cited harm from "the redistricting takeover and mobilization" BVM organized when the Louisiana Legislature was deliberating over redistricting plans, but before the challenged plans were adopted. SUMF ¶ 16. BVM has "made no showing that these . . . costs are fairly traceable to any of the conduct by Louisiana that [BVM] claims in its complaint is illegal." *ACORN*, 178 F.3d at 359. These expenses were undertaken before the challenged plans became law, so, if the Legislature had selected BVM's desired plan, those same costs would still have been spent. BVM cannot claim injury from legislative deliberations, and, like the "monitoring" and "litigation" costs found non-cognizable in *ACORN*, *see id.* at 358–59, the costs of lobbying the Legislature for a different outcome cannot be regarded as injuries from the enacted plans, *see N.A.A.C.P.*, 626 F.3d at 238 ("lobbying activities" not cognizable injury-in-fact); *US Inventor Inc. v. Vidal*, No. 21-40601, 2022 WL 4595001, at *5 (5th Cir. Sept. 30, 2022) (similar). Moreover, the redressability element is not satisfied because a favorable ruling would not reverse those one-time expenditures for pre-enactment activities.

### 2. The Entity Plaintiffs Lack Statutory Standing

Even if the Entity Plaintiffs could show Article III standing in their own right, they lack a private right of action under Section 2 in their own right. They are not minority voters. Insofar as they sue in their own right, they claim Louisiana's redistricting plans harm their financial and strategic goals. Those are not VRA injuries, and the VRA does not remedy them.

a. "Statutory rights and obligations are established by Congress, and it is entirely appropriate for Congress . . . to determine in addition, who may enforce them and in what manner." *Davis v. Passman*, 442 U.S. 228, 241 (1979). Accordingly, courts must "determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses [that] particular plaintiff's claim." *Lexmark Int'l, Inc. v. Static Control Components,*

13

*Inc.*, 572 U.S. 118, 127 (2014). The Court is therefore "tasked with determining whether" the Entity Plaintiffs have "standing to sue under the substantive statute." *Cell Sci. Sys. Corp. v. Louisiana Health Serv.*, 804 F. App'x 260, 262 (5th Cir. 2020); *accord Superior MRI Servs., Inc. v. All. Healthcare Servs.*, Inc., 778 F.3d 502, 506 (5th Cir. 2015).

Those courts that have found a private cause of action under VRA Section 2 have located it in Section 3, which states that "an aggrieved person" may "institute[] a proceeding." 52 U.S.C. § 10302(a). *See Roberts v. Wamser*, 883 F.2d 617, 621 & n.12 (8th Cir. 1989); *Alabama State Conf. of Nat'l Ass'n for the Advancement of Colored People v. Alabama*, 949 F.3d 647, 651 (11th Cir. 2020), *vacated* 141 S. Ct. 2618 (2021); *cf. Morse v. Republican Party of Virginia*, 517 U.S. 186, 233 (1996).[5] An "aggrieved person" is one "suffering from an infringement or denial of legal rights," *Aggrieved*, Webster's Third New International Dictionary of the English Language, Unabridged (1971), and Section 2 forbids the "right . . . to vote" from being infringed on "account of race or color," 52 U.S.C. § 10301(a). Because a "person" in this context must be "an individual human being," *Kumar v. Frisco Indep. Sch. Dist.*, 476 F. Supp. 3d 439, 460 (E.D. Tex. 2020) (citation omitted), Section 2 can be read to authorize suit only by "voters" alleging "infringement of the right to vote on account of race." *Roberts*, 883 F.2d at 621.

In *Roberts*, the Eighth Circuit rejected a claim by a candidate for office who sought redress for "the loss of the votes that he claims he would have received if not for the allegedly disproportionate difficulties of black voters in coping with" the challenged electoral mechanism.

---

[5] One recent decision holds that Section 2 contains no private right of action. *Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*, 586 F. Supp. 3d 893, 905–24 (E.D. Ark. 2022), *appeal pending* No. 22-1395 (8th Cir.). This Court, however, has disagreed, and the question is pending in the Fifth Circuit. *See Robinson v. Ardoin*, 605 F. Supp. 3d 759, 818–19 (M.D. La.), *appeal pending*, 22-30333 (5th Cir.). Defendants will renew their broader argument that Section 2 contains no private right of action at any trial, as appropriate. For the limited purposes of this motion, Defendants assume *arguendo* that Section 2 contains a private right of action. The problem is that the Entity Plaintiffs do not fall within such a private right.

14

883 F.2d at 621. Other courts have followed suit. Claims by candidates have failed, *Oh v. Philadelphia Cnty. Bd. of Elections*, No. 08-cv-0081, 2008 WL 4787583, at *7 (E.D. Pa. Oct. 31, 2008); *White-Battle v. Democratic Party of Virginia*, 323 F. Supp. 2d 696, 703 (E.D. Va. 2004), *aff'd*, 134 F. App'x 641 (4th Cir. 2005), as have claims by local governments resisting statutes governing their elections, *Conway Sch. Dist. v. Wilhoit*, 854 F. Supp. 1430, 1433 (E.D. Ark. 1994); *City of Baker Sch. Bd. v. City of Baker*, No. 06-cv-937, 2007 WL 9702694, at *2 (M.D. La. Jan. 12, 2007), as did the claim of a white voter asserting he "votes in lockstep with minority groups in all elections," *Vaughan v. Lewisville Indep. Sch. Dist.*, 475 F. Supp. 3d 589, 595 (E.D. Tex. 2020). Similarly, the Supreme Court in *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170 (2011), held that statutory standing under Title VII of the Civil Rights Act for a "person claiming to be aggrieved" does not include "any person injured in the Article III sense." *Id.* at 176. Instead, a plaintiff must be "an employee" of the defendant and a "victim" of a Title VII violation. *Id.* at 178; *see Simmons v. UBS Fin. Servs., Inc.*, 972 F.3d 664, 668 (5th Cir. 2020) (rejecting statutory standing under Title VII because the plaintiff "was not" an "employee" of the defendant).

      b.      As in *Roberts*, the Entity Plaintiffs do not "claim that [their] right to vote has been infringed because of [their] race." 883 F.2d at 621. Nor could they. The Entity Plaintiffs are non-profit corporations that have neither a race nor voting rights. They contend that different redistricting plans would permit them to spend resources differently and—maybe—preserve resources for other purposes. Even if those injuries were sufficient under Article III, they are no different from the benefits VRA enforcement might confer on candidates who might receive votes from minorities, white voters who share minority voting preferences, or local governments that object to state laws potentially overridden by the VRA. No Entity Plaintiff is an "aggrieved person"

15

in the relevant sense of suffering abridgement of personal voting rights on account of race or language-minority status.

To be sure, organizations might sometimes satisfy the standards to bring claims for members, who might in turn establish Article III standing, *SFFA*, 143 S. Ct. at 2157, and thereby qualify for the Section 2 right of action, *Roberts*, 883 F.2d at 621. This alignment of individual and associational standing explains why organizations may often bring voting-rights claims. But, as discussed, neither Entity Plaintiff can establish standing for members for three independent reasons. *See supra* § A.1, A.2, and A.3. As a result, the Entity Plaintiffs are left to claim injuries to themselves, as organizations. Their ostensible positions that those injuries may be vindicated by Section 2 ignores the "unlikelihood that Congress meant to allow all factually injured plaintiffs to recover" under Section 2. *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 266 (1992); *see also Thompson*, 562 U.S. at 176 (rejecting the argument that "the aggrievement referred to" in Title VII of the Civil Rights Act "is nothing more than the minimal Article III standing"). As shown, the term "aggrieved person" embraces "minority voters," *Roberts*, 883 F.2d at 621, not corporate persons who do not and cannot claim denial of the right to vote because of race.

c. "[B]ackground principles" that inform the private-right analysis confirm that statutory standing is absent in this case. *See Lexmark*, 572 U.S. at 129.

First, the Supreme Court has directed courts to "presume that a statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'" *Id.* (citation omitted); *see also Thompson*, 562 U.S. at 176–78 (construing the term "aggrieved" to incorporate a zone-of-interest test). Here, the statute the Entity Plaintiffs sue under is named the *Voting* Rights Act, not the Non-Profit Resources Conservation Act. Its "purpose . . . is to protect minority voters," *Roberts*, 883 F.2d at 621, and it guarantees "the right of any citizen of

16

the United States to vote," regardless of "race or color," 52 U.S.C. § 10301(a). It "requires no guesswork" to see that corporate entities seeking cost reduction are not within the zone of interests. *Lexmark*, 572 U.S. at 131.

Second, courts must "generally presume that a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute." *Id.* at 132. The standard is not met "if the harm is purely derivative of 'misfortunes visited upon a third person by the defendant's acts.'" *Id.* (quoting *Holmes*, 503 U.S. at 268). In this case, the Entity Plaintiffs' alleged harms are remote and derivative. They allege that the VRA condemns a supposedly adverse effect of redistricting plans on the ability of Black voters to elect their preferred candidates. The supposed impact on Entity Plaintiffs' operating costs is, at most, incidental to that injury allegedly imposed on others. *See Holmes*, 503 U.S. at 269–70.

   **C. This Case Can Proceed to Trial—At Most—on Four House Districts**

This case may proceed to trial only as to districts where Individual Plaintiffs reside and where they can establish the elements of standing. As noted, the Individual Plaintiffs live in four house districts, HD25, HD60, HD66, and HD69 and four senate districts, SD2, SD5, SD16, and SD29. SUMF ¶¶ 4–6. Assuming these Individual Plaintiffs "'set forth' by affidavit or other evidence 'specific facts'" demonstrating they are Black registered voters in these districts, that the districts confer an injury-in-fact upon them, and that they would likely reside in a majority-minority district in a new plan, then they may proceed to trial as to those districts. *Lujan*, 504 U.S. at 561 (citation omitted). Defendants do not concede the Individual Plaintiffs can make these showings and put them to their proof. Notably, SD2, SD5, and SD29 are majority-minority districts, SUMF ¶ 6, so it is difficult to see how the Individual Plaintiff residents of those districts

17

could create a triable fact question of standing. *See Gill*, 138 S. Ct. at 1932 (finding plaintiff able to elect preferred candidate in his own district lacked standing).

In all events, the Individual Plaintiffs do not have standing to challenge any district where they do not live. As discussed, voting-rights plaintiffs have standing "only with respect to those legislative districts in which they reside." *North Carolina v. Covington*, 138 S. Ct. 2548, 2553 (2018); *Gill*, 138 S. Ct. at 1929–30. Thus, the Individual Plaintiffs cannot assert injury from any other districts. Because the Entity Plaintiffs lack standing of any kind, trial can be had only as to the (at most) districts where Individual Plaintiffs reside and establish the predicates of Article III standing.

## CONCLUSION

For these reasons, Defendants respectfully request that their Motion for Summary Judgment be granted and Plaintiffs' Amended Complaint, Rec. Doc. 14, be dismissed in its entirety for lack of standing, with prejudice, or for other such relief as this Court deems just and fair.

Respectfully submitted, this the 6th day of October, 2023.

          */s/ Phillip J. Strach*
          Phillip J. Strach*
             *Lead Counsel*
          Thomas A. Farr*
          John E. Branch, III*
          Alyssa M. Riggins*
          Cassie A. Holt*
          **NELSON MULLINS RILEY &**
          **SCARBOROUGH LLP**
          301 Hillsborough Street, Suite 1400
          Raleigh, North Carolina 27603
          Ph: (919) 329-3800
          phil.strach@nelsonmullins.com
          tom.farr@nelsonmullins.com
          john.branch@nelsonmullins.com
          alyssa.riggins@nelsonmullins.com
          cassie.holt@nelsonmullins.com

|  |  |
|---|---|
|  | /s/ John C. Walsh |
|  | John C. Walsh, LA Bar Roll No. 24903 |
|  | John C. Conine, Jr., LA Bar Roll No. 36834 |
|  | **SHOWS, CALL & WALSH, L.L.P.** |
|  | 628 St. Louis St. (70802) |
|  | P.O. Box 4425 |
|  | Baton Rouge, LA 70821 |
|  | Ph: (225) 346-1461 |
|  | Fax: (225) 346-1467 |
|  | john@scwllp.com |
|  | coninej@scwllp.com |
|  |  |
|  | * *Admitted pro hac vice* |
|  |  |
|  | *Counsel for Defendant R. KYLE ARDOIN, in his official capacity as Secretary of State of Louisiana* |
|  |  |
|  | Jeff Landry |
|  | Louisiana Attorney General |
| By: /s/Michael W. Mengis | By: /s/ Jeffrey M. Wale |
| LA Bar No. 17994 | Elizabeth B. Murrill (LSBA No. 20685) |
| BAKERHOSTETLER LLP | Solicitor General |
| 811 Main Street, Suite 1100 | Shae McPhee (LSBA No. 38565) |
| Houston, Texas 77002 | Angelique Duhon Freel (LSBA No. 28561) |
| Phone: (713) 751-1600 | Carey Tom Jones (LSBA No. 07474) |
| Fax: (713) 751-1717 | Amanda M. LaGroue (LSBA No. 35509) |
| Email: mmengis@bakerlaw.com | Jeffrey M. Wale (LSBA No. 36070) |
|  | OFFICE OF THE ATTORNEY GENERAL |
| E. Mark Braden* | LOUISIANA DEPARTMENT OF JUSTICE |
| Katherine L. McKnight* | 1885 N. Third St. |
| Richard B. Raile* | Baton Rouge, LA 70804 |
| BAKERHOSTETLER LLP | (225) 326-6000 phone |
| 1050 Connecticut Ave., N.W., Ste. 1100 | (225) 326-6098 fax |
| Washington, D.C. 20036 | murrille@ag.louisiana.gov |
| (202) 861-1500 | mcphees@ag.louisiana.gov |
| mbraden@bakerlaw.com | freela@ag.louisiana.gov |
| kmcknight@bakerlaw.com | jonescar@ag.louisiana.gov |
| rraile@bakerlaw.com | lagrouea@ag.louisiana.gov |
|  | walej@ag.louisiana.gov |
|  |  |
| Patrick T. Lewis* |  |
| BAKERHOSTETLER LLP |  |
| 127 Public Square, Ste. 2000 | Jason B. Torchinsky* (DC Bar No 976033)* |
| Cleveland, Ohio 44114 | HOLTZMAN VOGEL BARAN |
| (216) 621-0200 | TORCHINSKY & JOSEFIAK, PLLC |
| plewis@bakerlaw.com | 2300 N Street, NW |
|  | Suite 643A |

19

Erika Dackin Prouty*
Robert J. Tucker*
BAKERHOSTETLER LLP
200 Civic Center Dr., Ste. 1200
Columbus, Ohio 43215
(614) 228-1541
eprouty@bakerlaw.com
rtucker@bakerlaw.com

* *Admitted pro hac vice*

*Counsel for Legislative Intervenors, Clay Schexnayder, in his Official Capacity as Speaker of the Louisiana House of Representatives, and of Patrick Page Cortez, in his Official Capacity as President of the Louisiana Senate*

Washington, DC 20037
Tel: 202-737-8808
Email: jtorchinsky@holtzmanvogel.com

Phillip M. Gordon* (DC Bar No. 1531277)*
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK, PLLC
15405 John Marshall Hwy.
Haymarket, VA 20169
Telephone: (540) 341-8808
Facsimile: (540) 341-8809
Email: pgordon@holtzmanvogel.com

*Admitted pro hac vice

4874-2379-7892 v.1