# Rebuttal Report of Sean P. Trende

in *Nairne, et al. v. Ardoin, et al.*

1. I have been asked by counsel to review the Declaration of William Cooper, dated August 11, 2023, and respond to it insofar as it critiques my previous report in this matter. Mr. Cooper's response, on my read, is confined to ¶¶50-52 of my report.

2. First, Cooper doesn't respond to the meat of my report. For example, he does not dispute that I've calculated the moment of inertia statistic correctly, nor does he dispute that the moment of inertia is a legitimate approach for calculating the compactness of a population, nor does he dispute that I have identified the most compact groups of Black residents of voting age sufficient to constitute a majority in each district. In fact, he suggests that with some more work, the "unorthodox" approach outlined may be worthy of a peer-reviewed article.

3. To the extent this is a critique, it isn't clear why this approach would be called "unorthodox." Mr. Cooper doesn't dispute that this method of measuring population compactness is among the oldest metrics for compactness in the redistricting literature. That its *application* **may** be unorthodox has nothing to do with the reliability or legitimacy of the technique itself, which is peer-reviewed and well-established.

4. With those concessions in place, Mr. Cooper simply offers legal argumentation that, in my view, is best reserved for counsel to make and judges to decide. He writes "In a Section 2 redistricting lawsuit, compactness is not measured by where part of a minority population is located in a district. Rather, it is measured based on the distribution of the entire population of the district and the district shape."

5. That is pure legal analysis; the way to measure compactness is something for the lawyers to argue and judges to decide. To the extent it is even proper for me to respond, I would simply note that the language of *Gingles* prong 1 references the compactness of the *minority population*, not the compactness of the district itself (which must simply be 'reasonably configured'). Opining on the implications of this is not something I was retained to do, nor would I be particularly inclined to do so. I was simply retained to determine whether the minority populations were reasonably compact, upon which plaintiffs' experts do not appear to engage.

6. Cooper notes that he has never been involved in a case that involves the moment of inertia approach, and that his (and my) Maptitude for Redistricting software doesn't include this metric. What of this? It's true that most litigation focuses on the compactness of the district shape. My understanding is that defendants wish to focus on the compactness of the population. My understanding is that this reflects multiple references in *Gingles*, *LULAC* and other cases to the compactness of the population. That Mr. Cooper has never been involved in a case involving population compactness has nothing to do with the proper legal standard, in my view. But that's also something, in my view, for lawyers to argue and judges to decide. At best, the only thing relevant from his opinion here is that he doesn't dispute that the MOI approach is an accepted way to measure the compactness of populations.

7. In ¶52, Mr. Cooper indirectly explains why he likely hasn't been involved in cases involving population compactness. Until fairly recently, undertaking the venture that he suggests (measuring the MOI for White and Black populations in every district in the state) would have been, as he suggests, a "monumental" project. First, shapefile data was not widely available until the 2010s. Even today, state legislative shapefiles pre-2010 can be difficult to obtain. But one can easily obtain congressional district shapefiles going back to the Founding, census shapefiles going back to the 1910s, and election return data going back decades. But this is a new development. Second, computing power has increased dramatically. Running computer simulations on a statewide basis wasn't achieved until the 1990s, and didn't become commonplace until the 2000s. Chen & Rodden ran a ground-breaking, state-of-the-art simulation in the early 2010s that produced a thousand simulated maps.

8. Today, however, my desktop computer can produce millions of simulated maps using more accurate and computationally involved techniques than those found in Chen & Rodden in a few hours. The "monumental" task Mr. Cooper describes – which would have previously been monumental indeed – would involve a few hours gathering data, a few more hours adapting the code I've written (my senate code currently takes 135 lines

2

to produce five separate analyses), and then leaving my computer to run overnight. In other words, the reason Mr. Cooper hasn't encountered this type of analysis is not that it is incorrect, it is that until relatively recently it would have been infeasible.

9. The closest Mr. Cooper comes to offering expert rebuttal testimony is his final paragraph, where he suggests that my failure to look at the MOI for all of the Black and White populations in the Enacted Plan renders my analysis "topological gobbledygook." Five-syllable words aside, this is not reasoning, it is *ipse dixit*. Mr Cooper offers no actual justification for why a proper analysis would need to do this. I struggle to imagine such a justification.

10. Perhaps under an equal protection theory one would want to see if Whites and Blacks of voting age are treated differently. In a Section 2 case, however, I'm unsure what such an endeavor would tell us. After all, most of the districts in Louisiana don't have minority populations sufficient to comprise a majority of the population in their districts, whether compact or not. The VRA also doesn't require compact White populations, nor, to my understanding, does Louisiana law. In short, undertaking the task Mr. Cooper describes would not be difficult. To my understanding of the issues in this case, however, it would not provide useful insight either.

I declare under penalty of perjury under the laws of the State of Ohio that the foregoing is true and correct to the best of my knowledge and belief. Executed on 21 Aug. 2023 in Delaware, Ohio.

_____
Sean P. Trende