IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DR. DOROTHY NAIRNE, REV. CLEE EARNEST LOWE, DR. ALICE WASHINGTON, STEVEN HARRIS, BLACK VOTERS MATTER CAPACITY BUILDING INSTITUTE, and THE LOUISIANA STATE CONFERENCE OF THE NAACP, <br><br>*Plaintiffs,* <br><br> v. <br><br> R. KYLE ARDOIN, in his official capacity as Secretary of State of Louisiana <br><br> *Defendant*. | CIVIL ACTION NO. 3:22-cv-00178 SDD-SDJ |

**PLAINTIFF'S OPPOSITION IN RESPONSE TO DEFENDANT'S MOTION TO REVIEW AND OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER DENYING DEFENDANT'S MOTION TO COMPEL**

Plaintiff Louisiana NAACP submits this memorandum in Opposition to Defendant's Motion to Review and Objections to the Magistrate Judge's Order Denying Defendant's Motion to Compel. As detailed herein, the Magistrate Judge's order denying Defendant's Motion to Compel entered on September 8, 2023, ECF No. 136 (hereinafter, the "Order"), was proper and should be sustained.

## BACKGROUND

On July 22, 2022, Plaintiffs received Defendant Ardoin's first set of discovery requests. Interrogatory No. 3 requests the identification of Louisiana NAACP members and the production of "any and all" communications between the Louisiana

1

NAACP and its members in each challenged district. ECF No. 119-3 at 11. In particular, Interrogatory No. 3 sought, in relevant part, the following information:

> As to each Louisiana State House and State Senate District at issue in the Complaint, and for each Organizational Plaintiff, state the following identifying to which district the response relates:
>
> (a) Identify the members of your organization living in each challenged district;
>
> . . .
>
> (d) identify and produce any and all communications between your organization and its members in each challenged district.

*Id.* The interrogatories define the term "identify" as follows:

> The words "identify" or "specify" as related to a person mean, in each instance, to state his or her full name, present or last known address and telephone number, date of birth, and present or last known job classification or position.

*Id.* at 4.

In its timely response to Interrogatory No. 3, Plaintiff Louisiana NAACP stated, in relevant part, as follows:

> Plaintiff further objects to Interrogatory No. 3 on the grounds that it seeks information protected by Plaintiff's and its members' First Amendment rights to freedom of speech and freedom of association.
>
> Subject to and without waiving these objections, Plaintiff responds as follows:
>
> (a) The Louisiana NAACP has approximately 5,000 members throughout the state, including Black Louisianians who are registered voters. The Louisiana NAACP has over 40 local branches comprising adult members and 16 youth and college chapters across Louisiana. Members of the Louisiana NAACP live in nearly every region of the state, including all the disputed areas in this matter—those areas where the State's enacted legislative maps dilute the voting strength of Black voters, including in Bossier, Caddo, Jefferson, St. Charles, East Baton Rouge, West Baton Rouge, Iberville, Point Coupee, DeSoto, Natchitoches, Red River, Ascension, and East Feliciana Parishes.

2

> Specifically, Plaintiff has identified members who reside in each of the districts challenged in this litigation.

ECF No. 119-4 at 8–9.

In responding to the request for communications with its members and other requests for production, Plaintiff provided responsive documents with the personally identifiable information concerning individual members redacted. Plaintiff's interrogatory responses were signed under penalty of perjury by its President, Michael McClanahan. ECF No. 119-1 at 3.

On July 20, 2023, Plaintiffs received a letter from counsel for Defendant Secretary of State Ardoin asserting a number of purported deficiencies in Plaintiff's responses. *Id.* The letter asserted, among other things, that Plaintiff's response to Interrogatory No. 3, was deficient because it "fail[ed] to identify the district-specific membership information requested." The letter contended that this information was "critical for Defendant Ardoin to adequately assess the standing of the Organizational Plaintiffs in this matter." Defendant understood that Plaintiff's response was an indication that specific individual members had been identified in each of the districts, but asserted that Plaintiff's statement "is not a sufficient response that would allow Defendant Ardoin to adequately address Louisiana NAACP's standing," and went on to contend, without any supporting legal authority, that "[i]dentification of particular members in each particular state House and Senate district challenged here is required." *Id.* at 3–4. Defendant threatened that if Plaintiff Louisiana NAACP failed to provide the information, Defendant would subpoena the individual NAACP branches throughout the state in an attempt to obtain the information from those

3

entities. Defendant also challenged eight documents produced by Plaintiff Louisiana NAACP as having "inappropriate redactions [...] of various individual identities" *Id.* at 4. Plaintiff responded to the July 20, 2023 Letter on July 25, 2023, explaining in more detail the constitutional basis for the objection to disclosure of member information and offering to meet and confer. *Id.* Plaintiffs received no response to their letter. *Id.*

On Wednesday, August 9, 2023, Plaintiff filed a Motion for Protective Order seeking to prevent disclosure of protected, personally identifiable information of its members. ECF No. 119. The motion was denied on August 17, 2023 without prejudice. ECF No. 123. In the order denying the Motion for Protective Order, the Magistrate Judge required the parties to continue meeting and conferring before 5:00 p.m. CST on Monday, August 21, 2023. *Id.* Following the order, Plaintiffs and Defendants attempted in good faith over several weeks to resolve this issue—including exchanging numerous emails with opposing counsel, drafting a proposed stipulated agreement, as well as participating in three meet and confers and two status conferences. Despite their efforts, the parties were unable to reach a resolution of their discovery dispute.

On September 1, 2023, Plaintiff provided a supplemental response to Defendant Ardoin's Interrogatory No. 3. ECF No. 135-1. The supplemental response identified, with greater specificity, districts in which NAACP members reside in the parts of the state in which the challenged 2022 redistricting dilutes the votes of Black Louisianans and where new majority-Black districts would be created in the

4

illustrative plan prepared by Plaintiffs' expert Bill Cooper. In its supplemental response to Interrogatory No. 3, Plaintiff Louisiana NAACP stated, in relevant part, as follows:

> Plaintiff has identified at least one member who resides in, among others, each of the following Louisiana Senate Districts 2, 5, 7, 8, 10, 14, 15, 17, 19, 31, 36, 38 and 39.
>
> Plaintiff has identified at least one member who lives in, among others, each of the following Louisiana House Districts: 1, 2, 3, 4, 5, 6, 7, 8, 9, 13, 22, 25, 29, 34, 35, 36, 37, 47, 57, 58, 59, 60, 61, 62, 63, 65, 66, 67, 68, 69, 70, 81, 88, and 101.
>
> Plaintiff has identified at least one member who would reside in each of the newly created majority-Black districts or the districts or the newly unpacked majority-Black districts in Bill Cooper's June 2023 illustrative plans, including, among others, illustrative House Districts 1, 3, 4, 29, 34, 38, 57, 58, 60, 61, 63, 65, 68, 69, and 101, and illustrative Senate Districts 2, 7, 15, 17, 19, 38, 39.[1]

*Id.* at 1–2. On September 1, 2023 Defendant Ardoin moved to compel a response to Interrogatory No. 3 that includes personally identifying information of NAACP members, and on September 6, 2023, Plaintiff opposed that motion. On Friday, September 8, 2023, the Magistrate Judge entered an order denying Defendant's Motion to Compel. ECF No. 136.

On September 8, Defendant took the deposition of NAACP President Michael McClanahan pursuant to Fed. R. Civ. P. 30(b)(6). Much of the questioning at the deposition probed the basis of Mr. McClanahan's knowledge that the NAACP has

---

[1] Although Plaintiffs dispute that the Louisiana NAACP is required to show individual members in every district that might be impacted by remedying the vote dilution Plaintiffs allege in order to establish associational standing, Plaintiff's supplemental discovery responses identifies districts that would be directly impacted by the reconfiguration of districts in Plaintiffs' June 2023 illustrative plans to create additional majority-Black districts in the House and Senate. It is not a list of all districts in the State of Louisiana in which Plaintiff has members.

5

members in the districts identified in the supplemental interrogatory response, and NAACP's counsel permitted Mr. McClanahan to freely answer those questions. However, counsel instructed Mr. McClanahan not to answer questions that sought privileged personally identifying information of individual Louisiana NAACP members, which defense counsel posed repeatedly, despite the fact that mere hours earlier, the Magistrate Judge had issued a decision denying Defendant's motion to compel this sensitive information and making clear that it was protected by the First Amendment. Ex. A (Michael McClanahan Dep. Tr. Excerpts) at 61:14–94:19.

## ARGUMENT

### I.     Legal Standard

Rule 72(a) of the Federal Rules of Civil Procedure permits a court to review the ruling of a magistrate judge on a non-dispositive matter only to determine whether it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *see* 28 U.S.C. § 636(b)(1)(A); *Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir. 1995). "It is well established that with regard to discovery disputes, the Magistrate Judge is afforded broad discretion, and [his] rulings will be overturned only if such discretion is abused." *DirecTV, Inc. v. Brady*, No. Civ.03-1450, 2005 WL 256465, at *1 (E.D. La. Jan. 31, 2005); *Exxon Corp. v. St. Paul Fire & Marine Ins.*, 903 F. Supp. 1007 (E.D. La. 1995).

Under this deferential standard, a magistrate judge's decision must be affirmed unless "on the entire evidence [the court] is left with a definite and firm conviction that a mistake has been committed." *Blackmon v. Bracken Constr. Co.*, No. 18-00142, 2021 WL 3824819, at *1 (M.D. La. Aug. 26, 2021) (quoting *Ordemann v. Unidentified Party*, No. 06-4796, 2008 WL 695253, at *1 (E.D. La. Mar. 12, 2008); *See*

6

*also United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948) ("A finding is 'clearly erroneous' when […] the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.") "Similarly, a magistrate judge's order is 'contrary to law' only if it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Blackmon v. Bracken Constr. Co.*, 2021 WL 3824819, at *1 (citation omitted).

The party challenging the magistrate's actions has the burden of showing that the magistrate's ruling was clearly erroneous or contrary to law. *See, e.g., Johnston v. Dillard Dep't Stores, Inc.*, 152 F.R.D. 89 (E.D. La. 1993). For the reasons discussed below, Defendant has failed to meet this burden here.

## II. Defendant Does Not Challenge the Magistrate Judge's Determination That the Interrogatory is Overly Broad.

The Magistrate Judge based his decision denying Defendant's Motion to Compel on two independent grounds, either of which would be sufficient on its own to support the denial. First, the Court held that the state had not shown a need for the information sufficient to overcome the First Amendment interests of the NAACP and its members. Second, the Court held that the request as written was overly broad because it sought personally identifying information beyond what was necessary to assess standing and it sought this information with respect to every member in every district at issue in the litigation when associational standing requires only one member who would have standing to maintain each of the claims for relief asserted in the complaint, and on that basis, the Court held that it would not compel a response *even if* the state had established a need. In his Motion to Review, Defendant does not

7

even discuss this second ground for the Magistrate Judge's decision, let alone challenge it. On that basis alone, the Motion for Review must be denied, and this Court need not even address Defendant's challenge to the Magistrate Judge's determination with respect to Defendant's need for the information. As explained below, however, the Magistrate Judge also correctly determined that there is no valid basis for seeking the personal information of NAACP members, much less such a strong need for the information that it can overcome the members' First Amendment protected associational rights.

### III. The Magistrate Judge Correctly Determined That the Defendant Has Not Established a Need for NAACP Members' Personal Information.

Contrary to Defendant's assertions, the Order does not contain incorrect factual statements and thus is not clearly erroneous or contrary to the law. The Magistrate Judge found that "[t]he NAACP also maintains that it has produced all evidence it intends to rely on for associational standing" and that "Defendant has not provided any reason to justify its request for the name, address, age, phone number, and occupation of every single member in every challenged district." ECF No. 136 at 2–3.[2] In considering the evidence on the record, it is clear that the Order correctly applies the law and thus the Magistrate Judge's ruling should be affirmed.

---

[2] Defendants also dispute the Magistrate Judge's finding that there has been no challenge to associational standing. Even if that contention were correct, for the reasons explained below, the Defendant has failed to establish that the names, addresses, birth dates, and employment details of any individual member are necessary for it to maintain its challenge standing, and the Magistrate Judge's order must be sustained.

8

A. <u>Plaintiff Intends to Rely Only on Non-Privileged Information to Establish Standing.</u>

The record does not show that the "Louisiana NAACP intends to put forth additional, undisclosed evidence at trial relating to its members' identities and the alleged harm those individuals purportedly suffered." ECF No. 144-1 at 9. Throughout this process, the Louisiana NAACP has consistently maintained that it intends to rely on the testimony of its President, Mr. McClanahan. ECF No. 135-1; ECF No. 135 at 5; ECF No. 119-1 at 1–2; Sept. 1, 2023 Status Conf. Tr. at 11:15–14:21. As Defendant states, "Plaintiffs have maintained that President McClanahan will testify at trial regarding the purported harm suffered by Louisiana NAACP's members." ECF No. 144-1 at 8–9. However, Defendant incorrectly suggests that Plaintiff intends to elicit testimony revealing the names, or addresses, or birth dates of individual members whose identities were never disclosed in discovery.[3] ECF No. 144-1 at 9. Plaintiffs have been consistent that they believe they can establish associational standing based on Mr. McClanahan's personal knowledge of individual members and which districts they reside in, which he can testify to without disclosing the personal information of those members. *E.g.*, Sept. 1, 2023 Status Conf. Tr. at 40:6-8, 43:8-15.

---

[3] Defendants have asserted that Plaintiffs seek a trial by ambush, in which legions of NAACP members would suddenly waive their associational privilege and appear at trial. ECF No. 144-1 at 8–9. Plaintiffs have stated that they are not currently seeking waivers from any individual members and would not seek such waivers unless the court orders the NAACP to produce members' personally identifying information. Sept. 1, 2023 Status Conf. Tr. at 40:6-8; *see also id.* at 34:11-13 ("[Counsel for Plaintiff] has very clearly stated repeatedly that their proposal is not designed to allow them to ambush you."). Moreover, as the Magistrate Judge observed, even if Plaintiffs attempted to offer such evidence, it would be unlikely the court would admit it. *Id.* at 33:16-19.

9

Defendant attempts to paint this as a selective waiver, claiming that Plaintiff protects some privileged information while revealing others, using privilege as a "sword and a shield." ECF No. 132-1 at 6–7. This is untrue. As stated, Plaintiff has already provided *non-privileged* evidence that is sufficient to meet the burden of proof for associational standing—specifically, Mr. McClanahan's personal knowledge of members who reside in specific districts. Defendants have had ample opportunity to probe the basis of Mr. McClanahan's knowledge, and they have done so. Likewise, they were free to take the deposition of the individual plaintiffs, but they chose not to. The reliance on non-privileged information on a topic concerning which privileged information may also exist is not a selective waiver. *Cf.*, *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 273 F.R.D. 367, 368 (S.D.N.Y. 2010) ("Defendants did not . . . waive their attorney-client privilege by having one of their attorneys testify at deposition about non-privileged communications, or by summarizing in 'conclusory and unrevealing terms' certain advice or impressions of their counsel.").

B. <u>Defendant Has Not Established a Need for NAACP Members' Personally Identifying Information.</u>

The Magistrate Judge correctly found that Defendant failed to provide "any reason to justify its request for the name, address, age, phone number, and occupation of every single member in every challenged district." ECF No. 136 at 3. Defendant asserts that to show that Plaintiff Louisiana NAACP has members that would have standing in their own right, Plaintiff must establish that it has a member in every challenged district. Whether or not that is a correct statement of the law, it still does

10

not establish that the personally identifiable information of those members must be disclosed or offered into evidence.

On the contrary, Plaintiff is only required to proffer sufficient evidence to establish that "at least one identified member had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). Again, Plaintiff has done so: Plaintiff's Supplemental Interrogatory Response states that there *are* specific, identified members in specific enacted districts that are reconfigured in Mr. Cooper's illustrative map to create additional majority-Black districts. ECF No. 135 at 5. That is information Louisiana NAACP President Michael McClanahan can testify to at trial based upon his personal knowledge. Defendants have had the opportunity to test the basis for that knowledge at Mr. McClanahan's deposition, and they may use that information to challenge the sufficiency of Plaintiff's standing evidence at trial.

Moreover, Defendants have failed to explain how they would use personally identifiable information of NAACP members to further test the associational standing of the NAACP if it were provided to them. There is no need for individual members to testify or otherwise participate in the lawsuit. *See Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977). And indeed, Defendant disclaimed any intent to take the depositions of individual members, and they have identified no other way they would verify that the individuals they ask Plaintiff to identify are bona fide NAACP members or how they would verify the individuals reside in a challenged district. In the end, they would have to take Mr. McClanahan's word for it that the named individuals are who Mr. McClanahan says they are, that

11

they live where Mr. McClanahan says they live, and that they really are members of the NAACP. But Mr. McClanahan has already given his word under penalty of perjury that there are specific members who he has identified who live in the specific districts identified in the supplemental interrogatory response. Defendants have identified nothing in the personally identifiable information of members that would render that evidence more probative or reliable than it already is or that would allow Defendants to test the basis of Mr. McClanahan's knowledge any more than they have already done.[4]

### IV.  The Order Is Consistent with Legal Precedent.

Defendant asserts, without evidence, that the Order "fails to conduct any balancing test to determine whether Louisiana NAACP or its members would suffer a substantial restraint on their First Amendment associational rights." ECF No. 144-1 at 13. In fact, the Order itself states that Defendant failed to make any "showing to overcome Plaintiff's First Amendment objections." ECF No. 136 at 3. Moreover, a balancing of the interests here shows clearly that Defendants cannot establish a need for individual NAACP members to be named that would be sufficient to overcome First Amendment privilege.

As courts have repeatedly recognized, the identity of Plaintiff's members is protected by the "associational and privacy rights guaranteed by the First and Fourteenth Amendments." *Hastings v. Ne. Indep. Sch. Dist.*, 615 F.2d 628, 631 (5th

---

[4] Defendant asserts that the need for members' birthdates is to allow them to distinguish between, for example, John Smith Jr. and John Smith Sr., but they fail utterly to explain how knowing whether the NAACP claims the elder or the younger John Smith as a member would better allow them to challenge the NAACP's associational standing.

12

Cir. 1980); *see NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 462 (1958) ("compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association"); *Hastings*, 615 F.2d at 631–33 (compelled disclosure exposed members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility and abridged plaintiffs' associational and privacy rights under the First and Fourteenth Amendments).

In *NAACP*, the Supreme Court recognized an associational privilege under the First Amendment because public disclosure of membership lists "entail[s] the likelihood of a substantial restraint upon the exercise by [a party's] members of their right to freedom of association." 357 U.S. at 462. Based on this associational privilege, courts in this Circuit have routinely granted protection to membership lists of advocacy organizations. *See, e.g., Young Conservatives of Texas Found. v. Univ. of N. Texas*, No. 4:20-CV-973-SDJ, 2022 WL 2901007, at *4 (E.D. Tex. Jan. 11, 2022) (recognizing the First Amendment right to the confidentiality of membership lists); *League of United Latin Am. Citizens v. Abbott*, No. EP-21-CV-00259-DCG-JES-JVB, 2022 WL 2806850, at *3 (W.D. Tex. July 18, 2022) (granting plaintiffs "leave to pseudonymously identify members of their organizations that they allege have suffered the requisite harm"); *Hastings*, 615 F.2d at 632–33 (reversing discovery sanctions for failure to disclose labor union membership lists); *cf. Gibson v. Fla. Legis. Investigation Comm.*, 372 U.S. 539, 542–44 (1963) (denying state legislative committee subpoena for NAACP branch's membership list on First and Fourteenth

13

Amendment grounds where a representative of the NAACP had answered questions based on his own personal knowledge of branch's members).

To show that the First Amendment privilege against disclosure of membership lists applies, a party "need only demonstrate an objectively reasonable probability that disclosure of the information may expose its 'members to economic reprisal, loss of employment, threat of physical coercion, [or] other manifestations of public hostility." *Young Conservatives of Texas Found.*, 2022 WL 2901007, at *2 (citations omitted). The threatened harm need not rise to any particular level of severity. For example, in *Bright Response, LLC v. Google Inc.*, the court found the privilege applied to prevent disclosure of Google's lobbying activities because disclosure of those activities threatened to chill the company's First Amendment rights. No. 2:07CV371, 2009 WL 10741629, at * 1 (E.D. Tex. Sept. 29, 2009).

Here, Plaintiff Louisiana NAACP's interest in the confidentiality of its membership is at minimum as strong as in the many other contexts where this First Amendment right has been protected. As explained in the declaration of Louisiana NAACP President Michael McClanahan, Louisiana NAACP leadership and members have been harassed, threatened, and retaliated against due to their affiliations with the NAACP. Declaration of Michael McClanahan ¶¶ 4–11, ECF No. 135-2. Mr. McClanahan has received hate mail and intimidating letters that threaten the membership broadly due to their affiliation with a racial justice organization. *Id.* ¶ 8–11. Disclosure of members' identities and private information could induce them to withdraw from their membership in the organization and discourage others from

14

joining. *Id.* ¶ 12. Subjecting Louisiana NAACP members to the risk of such reprisals through the public disclosure of their personally identifiable information would impede the Louisiana NAACP's work, including advocacy efforts on sensitive issues. *Id.* Furthermore, Plaintiff's members are not themselves party to this lawsuit and therefore have not consented to public disclosure of their personally identifying information. Compelled disclosure here will harm Plaintiff's ability to engage in advocacy, as involuntary disclosure of member information will discourage current and prospective members from engaging with the Louisiana NAACP.[5]

Once the party asserting the privilege makes "a *prima facie* showing that it applies, then the burden shifts to the party seeking the information to demonstrate a compelling need for the information and that the information cannot be obtained from other sources." *Bright Response*, 2009 WL 10741629, at * 1 (citations omitted). To balance the substantial restraint on associational rights against the interest in disclosure, courts typically apply a balancing test of certain factors, including: "(1) the importance of the information sought to the issues in the case, (2) the availability of the information from alternative sources, (3) the substantiality of the First Amendment interests at stake, and (4) whether the request is carefully tailored to avoid unnecessary interference with protected activities." *Young Conservatives of Texas Found. v. Univ. of N. Texas*, No. 4:20-CV-973-SDJ, 2022 WL 2901007, at *3

---

[5] Defendant contends that these risks can be mitigated through an attorneys'-eyes-only designation and filing under seal, but as Mr. McClanahan's declaration makes clear, NAACP members have been targeted by government as well as private actors.

15

(E.D. Tex. Jan. 11, 2022) (internal citations omitted). A balancing of the interests here demonstrates that Defendants cannot make such a showing.

As explained above, the only need Defendant has identified for seeking this information is to "assess [Plaintiff's] standing" to assert the causes of action outlined in the complaint on behalf of its members. However, the names and other personal information of individual members is not required to establish associational standing. Rather, Plaintiff must proffer sufficient evidence to establish that "at least one identified member had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). While some language in *Summers* might suggest that a plaintiff must name names to establish associational standing, *Summers* does not go so far. The issue in *Summers* was not whether the members with sufficiently concrete harms had been named, but whether such members could be identified at all beyond a mere probability that they existed. 555 U.S. at 497–99 (rejecting a test that would rely on a statistical probability that at least one member would be harmed by the challenged activity). While naming names might be one way of establishing more than the mere probability that such members exist, nothing in *Summers* requires a particular type or quantum of evidence to establish that an identifiable member has been harmed.

Here, Plaintiffs do not rely on the probability that one or more of their members reside in the challenged districts. Rather, Mr. McClanahan signed interrogatory responses under penalty of perjury stating that the organization had identified specific members who reside in each of the challenged districts. ECF No. 135-1. That

16

is information Louisiana NAACP President Michael McClanahan testified to during his 30(b)(6) deposition and could testify to again at trial. Ex. A (Michael McClanahan Dep. Tr.) at 94:3-8. That is sufficient to establish there are real, identified members who have suffered an injury-in-fact for standing purposes from residing in districts that dilute their right to vote. *See, e.g., United States v. Hays*, 515 U.S. 737, 745 (1995); *Shaw v. Hunt*, 517 U.S. 899, 904 (1996); *Miller v. Johnson*, 515 U.S. 900, 909 (1995). There is no need for individual members to testify or otherwise participate in the lawsuit, nor be compelled to disclose their identifying information or their association with the NAACP.

Defendant lists several websites that have information regarding NAACP members who serve as officers of the Louisiana NAACP or one of its local branches. This is irrelevant – that an officer of the organization is publicly identified does not mean that a member of the state conference who has not chosen to participate in the litigation nor consented to public identification should be named. As discussed earlier individual NAACP members have a right to have their privilege protected at their own discretion and their privilege is not waived merely because another member has chosen to waive theirs.

As the Magistrate Judge properly balanced these interests, the Order is not erroneous and is consistent with well-established legal precedent. The denial of the Motion to Compel should be sustained.

## CONCLUSION

For the foregoing reasons, Plaintiff Louisiana NAACP respectfully requests that this Court affirm the Magistrate Judge's order denying Defendant's Motion to Compel.

DATED: October 13, 2023                    Respectfully submitted,

/s/ I. Sara Rohani
I. Sara Rohani*
NAACP Legal Defense & Educational Fund
700 14th Street, Suite 600
Washington, DC 20005
srohani@naacpldf.org

John Adcock (La. Bar No. 30372)
Adcock Law LLC
3110 Canal Street
New Orleans, LA 701119
jnadcock@gmail.com

Ron Wilson (La. Bar No. 13575)
701 Poydras Street, Suite 4100
New Orleans, LA 70139
cabral2@aol.com

Leah Aden*
Stuart Naifeh*
Victoria Wenger*
NAACP Legal Defense & Educational Fund
40 Rector Street, 5th Floor
New York, NY 10006
laden@naacpldf.org
snaifeh@naacpldf.org
vwenger@naacpldf.org

Nora Ahmed (N.Y. Bar. No. 5092374)
ACLU Foundation of Louisiana
1340 Poydras St., Suite 2160
New Orleans, LA 70112
NAhmed@laaclu.org

Sarah Brannon*
Megan C. Keenan*
American Civil Liberties Union Foundation
915 15th St. NW
Washington, DC 20005
sbrannon@aclu.org
mkeenan@aclu.org

Sophia Lin Lakin*
Dayton Campbell-Harris*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
slakin@aclu.org
dcampbell-harris@aclu.org

Michael de Leeuw*
Amanda Giglio*
Cozen O'Connor
3 WTC, 175 Greenwich St., 55th Floor
New York, NY 10007
MdeLeeuw@cozen.com
AGiglio@cozen.com

T. Alora Thomas-Lundborg*
Election Law Clinic
Harvard Law School
6 Everett Street, Ste. 4105
Cambridge, MA 02138
tthomaslundborg@law.harvard.edu

Josephine Bahn**
Cozen O'Connor
1200 19th Street NW
Washington, D.C. 20036
JBahn@cozen.com

*Attorneys for Plaintiffs*
*Admitted Pro Hac Vice
**Pro Hac Vice Motion Forthcoming