**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

DOROTHY NAIRNE, *et al*

*versus*

R. KYLE ARDOIN, in his capacity
as Secretary of State of Louisiana

CIVIL ACTION

22-178-SDD-SDJ

**RULING**

Before the Court is a *Joint Motion for Summary Judgment*[1] filed by Defendants, R. Kyle Ardoin, in his official capacity as Secretary of State of Louisiana; Attorney General Jeff Landry on behalf of the State of Louisiana; and by the Legislative Intervenors Clay Schexnayder and Patrick Page Cortez (collectively, "Defendants").[2] Plaintiffs, Dr. Dorothy Nairne, Rev. Clee Earnest Lowe, Dr. Alice Washington, Steven Harris, the Louisiana State Conference of the NAACP, and the Black Voters Matter Capacity Building Institute (collectively, "Plaintiffs"), filed an *Opposition*,[3] and Defendants filed a *Reply*.[4] The parties also submitted supplemental briefing.[5] For the reasons that follow, the Court finds that the Defendants' *Motion* shall be DENIED.

**I.    BACKGROUND**

Plaintiffs, a group of Black Louisianans and Louisiana nonprofit organizations, filed the instant action on March 14, 2022, alleging that the 2022 redistricting plans for the Louisiana House of Representatives and State Senate unlawfully diluted their votes in

---

[1] Rec. Doc. 149.
[2] Although Defendant Secretary of State Ardoin did not join in the *Motion to Stay*, the movants aver that he was consulted and "consent[s] to the relief sought herein." Rec. Doc. 61, p. 2.
[3] Rec. Doc. 163.
[4] Rec. Doc. 180.
[5] Rec. Doc. 172; Rec. Doc. 173.

1

violation of § 2 of the Voting Rights Act of 1965 ("VRA"), 52 U.S.C. § 10301. Four Individual Plaintiffs and two Entity Plaintiffs remain in this matter. The four Individual Plaintiffs, Dr. Dorothy Nairne, Rev. Clee Earnest Lowe, Dr. Alice Washington, and Steven Harris, reside in House Districts 25, 60, 66, and 69 and Senate Districts 2, 16, and 29.[6]

Black Voters Matter Capacity Building Institute ("BVM") and the Louisiana State Conference of the National Association for the Advancement of Colored People (the "Louisiana NAACP" or "NAACP") (collectively, the "Entity Plaintiffs") serve as the two Entity Plaintiffs to this matter. The Entity Plaintiffs describe themselves as "non-profit civic engagement organizations working to empower Black political participation."[7] Defendants move for summary judgment, arguing that the Entity Plaintiffs are unable to establish standing to bring this suit.

Prior to filing the *Motion for Summary Judgment,* Defendants propounded discovery on Plaintiffs, requesting the personal identifying information of the Louisiana NAACP's members. Plaintiffs objected to Defendants' Interrogatory No. 3 for several reasons, including that it sought "information protected by Plaintiff's and its members' First Amendment rights."[8] Defendants filed a *Motion to Compel* production of the information, which was denied by Magistrate Judge Scott D. Johnson.[9] Thereafter, Defendants moved the Court for a review of the decision, claiming that the requested membership information was relevant to the determination of whether the NAACP had associational standing to pursue its claims.[10] The Court agreed that associational

---

[6] Rec. Doc. 163-1, pp. 2–3.
[7] Rec. Doc. 163, p. 4.
[8] Rec. Doc. 119-4, p. 9.
[9] Rec. Doc. 132; Rec. Doc. 136.
[10] Rec. Doc. 144.

2

standing had been challenged by Defendants and referred the Defendants' *Motion to Compel* a response to Interrogatory No. 3 back to the Magistrate Judge for reconsideration.[11] Plaintiffs were ordered to supplement the Answer to Interrogatory No. 3 by "providing both the name and address of the individual member(s) from the challenged districts that the NAACP intends to offer at trial to establish associational standing, or any other part of its claim."[12]

After Plaintiffs provided the information as ordered, the parties were permitted to file supplemental briefs relating to the associational standing issue in support or in opposition to the *Motion for Summary Judgment*.[13] Therein, Defendants argue that Plaintiffs' supplemental response to Interrogatory No. 3 is untimely, prejudicial to Defendants, and would be inappropriately considered by the Court.[14] However, given the history stated above, Defendants' insistence on supplementation of this information, and the Court's *Order* compelling disclosure of the information, the Court rejects Defendants' argument. Plaintiffs' Supplemental Response to Interrogatory No. 3 will be considered on summary judgment.

## II.    LAW AND ANALYSIS

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[15] "When assessing whether a dispute to any material fact exists, we consider all

---

[11] Rec. Doc. 158; Rec. Doc. 159.
[12] Rec. Doc. 169, p. 2.
[13] Rec. Doc. 170.
[14] Rec. Doc. 172.
[15] Fed. R. Civ. P. 56(a).

of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[16] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[17] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[18] However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[19]

Notably, "[a] genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[20] All reasonable factual inferences are drawn in favor of the nonmoving party.[21] However, "[t]he court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[22] "Conclusory allegations unsupported by specific facts . . . will not prevent an award of summary judgment; 'the plaintiff [can]not rest on his

---

[16] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).
[17] *Guerin v. Pointe Coupee Par. Nursing Home*, 246 F. Supp. 2d 488, 494 (M.D. La. 2003) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986)).
[18] *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[19] *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Little*, 37 F.3d at 1075).
[20] *Pylant v. Hartford Life & Accident Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[21] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[22] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) (internal citations omitted).

allegations . . . to get to a jury without "any significant probative evidence tending to support the complaint."'"[23]

### B. Article III Standing

"Article III standing is a jurisdictional prerequisite."[24] If a plaintiff lacks standing to bring a claim, the Court lacks subject matter jurisdiction over the claim.[25] The party seeking to invoke federal jurisdiction bears the burden of showing that standing existed at the time the lawsuit was filed.[26] Article III of the Constitution limits federal courts' jurisdiction to certain "cases" and "controversies." "[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."[27] "One element of the case-or-controversy requirement" is that plaintiffs "must establish that they have standing to sue."[28] The United States Supreme Court has held that "the irreducible constitutional minimum of standing contains three elements":[29]

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of— the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before

---

[23] *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).
[24] *Crenshaw-Logal v. City of Abilene, Tex.*, 436 F. App'x. 306, 308 (5th Cir. 2011) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998); *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir. 1989)).
[25] *Whitmore v. Ark.*, 495 U.S. 149, 154–55 (1990); *Chair King, Inc. v. Hous. Cellular Corp.*, 131 F.3d 507, 509 (5th Cir. 1997), *abrogated by Mims v. Arrow Fin. Servs., LLC,* 565 U.S. 368 (2012).
[26] *The M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 708 (Tex. 2001); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001); *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001).
[27] *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (internal quotation marks omitted) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (internal quotation marks omitted)). *See, e.g., Summers v. Earth Island Inst.*, 555 U.S. 488, 492–493 (2009).
[28] *Raines*, 521 U.S. at 818. *See also Summers*, 555 U.S. at 492–493; *DaimlerChrysler Corp.*, 547 U.S. at 342; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).
[29] *Lujan*, 504 U.S. at 560.

the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.[30]

To establish Article III standing, an injury must be "concrete, particularized, and actual or imminent."[31] A particularized injury is one which "affect[s] the plaintiff in a personal and individual way."[32] "Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending."[33] "Allegations of *possible* future injury" do not suffice.[34]

When standing is challenged at the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice" because on a motion to dismiss, it is presumed that "general allegations embrace those specific facts that are necessary to support the claim."[35] "When the defendant moves for summary judgment because of lack of standing, however, the plaintiff must submit affidavits and comparable evidence that indicate that a genuine issue of fact exists on the standing issue."[36]

### C. Standing of Parties

Defendants question whether the four Individual Plaintiffs will be able to prove their standing at trial but do not move for summary dismissal of the Individual Plaintiffs' claims.[37] Instead, Defendants concede that the Individual Plaintiffs may proceed to trial on their claims, where they will be put to their burden of proof.[38] The question for summary

---

[30] *Id.* at 560–61 (internal citations and quotation marks omitted).
[31] *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010).
[32] *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018) (quoting *Lujan*, 504 U.S. at 560 n.1).
[33] *Lujan*, 504 U.S. at 564 n.2 (internal quotation marks omitted).
[34] *Whitmore v. Ark.*, 495 U.S. 149, 158 (1990) (emphasis added).
[35] *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 357 (5th Cir. 1999) (quoting *Meadowbriar Home for Child., Inc. v. Gunn*, 81 F.3d 521, 529 (5th Cir. 1996); *Lujan,* 504 U.S. at 561).
[36] *Id.* (quoting *Cramer v. Skinner,* 931 F.2d 1020, 1025 (5th Cir. 1991)).
[37] Rec. Doc. 149-1, p. 17.
[38] *Id.*

6

judgment, therefore, is whether the Entity Plaintiffs, BVM and the NAACP, have standing to proceed.

When a plaintiff is an organization, "the standing requirements of Article III can be satisfied in two ways. Either the organization can claim that it suffered an injury in its own right or, alternatively, it can assert 'standing solely as the representative of its members.'"[39] Organizational and associational standing are alternative paths for the plaintiff organization to satisfy Article III standing. For example, "[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members."[40] A plaintiff's specific claims determine which one type of standing must be satisfied, as it depends on who suffered the injury alleged and what relief is sought.[41] Here, Plaintiffs concede that BVM does not have associational standing. Therefore, the Court will begin its analysis by assessing the associational standing of the NAACP.

### a. *Associational Standing of NAACP*

An organization has the associational standing necessary to bring suit on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."[42] Because the organization's members should

---

[39] *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (quoting *Warth v. Seldin*, 422 U.S. 490, 511 (1975)).
[40] *Warth v. Seldin*, 422 U.S. 490, 511 (1975).
[41] *Warth*, 422 U.S. at 515 ("whether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind.").
[42] *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 344 (1977).

7

otherwise have standing to sue in their own right, "[t]he association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit."[43] The relief sought, such as a declaration, injunction, or other form of prospective relief, also must be for "the benefit of those members of the association actually injured."[44] Defendants do not challenge the second and third elements of associational standing, and the Court finds that the Louisiana NAACP satisfies those elements.[45]

Turning to the first element, Defendants claim the NAACP is unable to prove that its members would have standing to sue because the NACCP does not have "individual members." Rather, Defendants claim the Louisiana NAACP's members are local NAACP affiliate branches, which are separate legal entities.[46] In response, Plaintiffs point to the testimony and declaration of Louisiana NAACP President Michael McClanahan to explain that individuals join a local NAACP affiliate branch, and, in turn, the local branches make up the Louisiana NAACP.[47] Plaintiffs further claim that per the NAACP's bylaws, individuals become national NAACP members when they join a local branch.[48]

---

[43] *Hunt*, 432 U.S. at 342 (quoting *Warth*, 422 U.S. at 511).
[44] *Warth*, 422 U.S. at 515.
[45] *See Hancock Cnty. Bd. of Sup'rs v. Ruhr*, 487 F. App'x. 189, 197 (5th Cir. 2012) ("Maintaining proportional districts, protecting the strength of votes, and safeguarding the fairness of elections are surely germane to the NAACP's expansive mission."). *See also Consumer Data Indus. Ass'n v. Tex. through Paxton*, 21-51038, 2023 WL 4744918, at *4 n.7 (5th Cir. July 25, 2023) ("Participation of individual members generally is not required when the association seeks prospective or injunctive relief, as opposed to damages.").
[46] Rec. Doc. 149-1, p. 7.
[47] Rec. Doc. 163-1, p. 11.
[48] Rec. Doc. 163-1, p. 11.

The Fifth Circuit has expressed that courts should "not exalt form over substance" when assessing membership for associational standing.[49] Accordingly, the individuals who make up the branches of the Louisiana NAACP can be said to be "members" of the NAACP for purposes of associational standing. This leaves the question of whether the members would otherwise have standing to sue in their own right.

The injury-in-fact inquiry requires the Plaintiffs to show the existence of at least one NAACP member who is a black registered voter residing in each dilutive district that could be redrawn into a new majority-black district. At the time the *Motion for Summary Judgment* was filed, Plaintiffs had not disclosed the personally identifiable information of the individual members to confirm they suffered a cognizable injury-in-fact as a result of the challenged maps. However, they have since disclosed such information for ten NAACP members.[50] Defendants argue the disclosures are insufficient because, as they aver, Plaintiffs are essentially challenging all 105 state House and 39 state Senate Districts, yet "no evidence demonstrates that at least one identified member can claim vote dilution in each challenged district."[51] Defendants are laboring under a misapprehension of the law.

In the context of a vote dilution claim under Section 2, the relevant standing inquiry is not whether Plaintiffs represent every single district in the challenged map but whether Plaintiffs have made "supported allegations that [they] reside in a reasonably compact area that could support additional [majority-minority districts]."[52] The Fifth Circuit in

---

[49] *Friends of the Earth, Inc. v. Chevron Chem. Co.*, 129 F.3d 826, 828 (5th Cir. 1997) (citing *Hunt*, 432 U.S. at 345.
[50] Rec. Doc. 173-1.
[51] Rec. Doc. 149-1, p. 6.
[52] *Pope v. Cnty. of Albany*, 1:11-CV-0736 LEK/CFH, 2014 WL 316703, at *5 (N.D.N.Y. Jan. 28, 2014). *See also Perez v. Abbott*, 267 F. Supp. 3d 750, 775 (W.D. Tex. 2017), *aff'd in part, rev'd in part and remanded*, 138 S. Ct. 2305 (2018) (three-judge panel holding that "plaintiffs who reside in a reasonably compact area

*Harding v. County of Dallas, Texas*, explained that, "[i]n vote dilution cases, the 'harm arises from the particular composition of the voter's own district, which causes his vote—having been packed or cracked—to carry less weight than it would carry in another, hypothetical district.'"[53] Plaintiffs herein have pled such harm and supported the claims with summary judgment evidence. Eight of the individuals identified in the Plainitffs' Supplemental Response (those residing in HD 1, 25, 60, 65, and 68 and in SD 8, 17, and 38) reside in districts in which the Black population has allegedly been "cracked" by being dispersed "into districts in which they constitute an ineffective minority," while two (those residing in HD 34 and 101) reside in districts in which the black population has allegedly been "packed" by being "concentrat[ed] into districts where they constitute an excessive majority."[54] Either form of vote dilution is an injury sufficient to establish standing.

As the Fifth Circuit counsels, "[t]hat is enough."[55] Accordingly, the Court rejects Defendants' argument that the members of the NAACP, and therefore the organization itself, lacks standing. Having found that the Plaintiffs have sufficiently shown standing exists as to the NAACP, the Court turns to whether BVM has standing to proceed.

### b. *Organizational Standing of BVM*

An organization "can establish standing in its own name if it 'meets the same standing test that applies to individuals.'"[56] The organizational Plaintiffs must demonstrate the same "injury-in-fact," traceability, and redressability required of individual plaintiffs. The Fifth Circuit has held that nonprofit organizations can suffer an Article III injury when

---

that could support an additional minority opportunity district have standing to pursue § 2 claims, even if they currently reside in an opportunity district").
[53] *Harding v. Cnty. of Dallas, Tex.*, 948 F.3d 302, 307 (5th Cir. 2020).
[54] Rec. Doc. 173, p. 4. *See Thornburg v. Gingles*, 478 U.S. 30, 46 n.11 (1986).
[55] *Harding*, 948 F.3d at 307.
[56] *OCA-Greater Hous. v. Tex.*, 867 F.3d 604, 610 (5th Cir. 2017) (quoting *Fowler*, 178 F.3d at 356).

a defendant's actions frustrate their missions and force them to "divert [ ] significant resources to counteract the defendant's conduct."[57] Organizational standing based on resource diversion arises when "the defendant's conduct significantly and 'perceptibly impair[s]' the organization's ability to [conduct] its 'activities—with the consequent drain on the organization's resources . . . .' Such injury must be 'concrete and demonstrable.'"[58] "Not every diversion of resources to counteract the defendant's conduct, however, establishes an injury in fact."[59]

BVM's Senior State Organizer Omari Ho-Sang submitted a declaration explaining that BVM's "core mission is to expand Black voter engagement and increase power in marginalized, predominantly Black communities."[60] BVM "works primarily in Black communities and other communities of color that face unique barriers to voting" and "focuses on removing those barriers and increasing voter registration and turnout."[61] The organization seeks to accomplish its "core mission" by "providing voter education and encouragement, advocating for policies to expand voting rights and access, and providing assistance and financial grants that enable its partner organizations to engage in on-the-ground efforts to mobilize voters."[62]

Ho-Sang submits that when the Legislature first introduced the challenged maps, "BVM shifted its efforts from educating and mobilizing voters and building capacity in its community partners toward redistricting education and advocacy around S.B. 1 and H.B. 14."[63] Defendants argue that the harm suffered by BVM in the form of its "redistricting

---

[57] *N.A.A.C.P. v. City of Kyle, Texas*, 626 F.3d 233, 238 (5th Cir. 2010).
[58] *Id.* (internal citations omitted).
[59] *Id.*
[60] Rec. Doc. 163-4, p. 2.
[61] Rec. Doc. 163-4, pp. 2–3.
[62] *Id.* at 3.
[63] Rec. Doc. 163-4, p. 6.

11

takeover and mobilization" efforts only occurred when the Louisiana legislature was deliberating over the redistricting plans of S.B. 1 and H.B. 14, but before the challenged plans were adopted.[64] In other words, Defendants argue that BVM cannot show the harm it suffered resulted from the enactment of the allegedly unlawful maps because the same costs would have been expended had the legislature ultimately selected BVM's desired plans instead of the plans it now challenges.

However, BVM alleges that the harm it suffers is ongoing. Specifically, the non-profit organization claims that as long as the allegedly unlawful maps remain in place, BVM will need to continue diverting resources away from its core activities. The organization claims that it will instead need to focus its efforts on engaging with elected officials that represent black voters in the allegedly packed and cracked districts and convincing black voters who believe the maps dilute their voting power that their votes still matter. While the enactment of S.B. 1 and H.B. 14 are undeniably at odds with the mission of BVM, "the presence of a direct conflict between the defendant's conduct and the organization's *mission* is necessary—though not alone sufficient—to establish standing."[65]

The Fifth Circuit instructs that "concrete evidence" is required to show an organization's diversion of resources is a direct response to a defendant's challenged actions in order to satisfy the injury, traceability, and redressability prongs of Article III standing.[66] For instance, the organizational plaintiff in *Association of Community Organizations for Reform v. Fowler* challenged Louisiana's alleged lack of compliance

---

[64] Rec. Doc. 149-1, p. 13.
[65] *Fowler*, 178 F.3d at 361.
[66] *Tex. State LULAC v. Elfant*, 52 F.4th 248, 255 (5th Cir. 2022), *cert. denied sub nom. Tex. State Lulac v. Torres*, 22-809, 2023 WL 6377790 (U.S. Oct. 2, 2023).

12

with the National Voter Registration Act ("NVRA"), which required the state to facilitate voter registration at public aid offices.[67] Concrete evidence was presented showing that the organization had to concentrate its efforts in areas where households had low rates of voter registration by regularly conducting registration drives in "welfare waiting rooms, unemployment offices, and on Food Stamp lines."[68] The court found that this detailed showing was sufficient evidence that the organization had "expended resources registering voters in low registration areas who would have already been registered if [Louisiana] had complied with the [public aid] requirement under the NVRA."[69]

Notably, the Fifth Circuit also counsels that, "[n]ot every diversion of resources to counteract the defendant's conduct, however, establishes an injury in fact."[70] The court explained that "[t]he mere fact that an organization redirects some of its resources," for instance, to litigation and legal counseling, in response to actions or inactions of another party "is insufficient to impart standing upon the organization."[71] In *NAACP v. City of Kyle, Tex.*, the Fifth Circuit found that the Home Builders Association of Greater Austin ("HBA") did not have organizational standing in a Fair Housing Act case where it alleged injury based on a new city housing ordinance because the HBA failed to allege how the activities it undertook in response to the challenged ordinance "differ[ed] from the HBA's routine lobbying activities."[72]

The allegations here, however, assert a significant redirection of the organization's routine and customary operational efforts. BVM's declaration explains that now that the

---

[67] *Ass'n of Cmty. Orgs. for Reform v. Fowler*, 178 F.3d 350, 360 (5th Cir.1999).
[68] *Id.* at 361.
[69] *Id.*
[70] *N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233, 238 (5th Cir.2010).
[71] *Id.*
[72] *Id.*

13

maps have taken effect, BVM has had to shift its efforts "toward fighting against the effects of voter dilution" in the parishes where the maps dilute the voting strength of black voters.[73] It also claims that it will devote time and resources to educating people on the redistricting process and will have to "redouble its efforts to engage Black voters and convince them that their vote matters."[74] BVM gives the specific example of diverting its resources away from its core activities and toward developing an "accountability strategy" to hold elected officials accountable, hosting a virtual freedom school to train BVM's partner organizations about how their representatives impact the community, and pushing back on harmful changes made by elected officials who do not represent BVM's communities.[75]

BVM has presented evidence demonstrating how the diversion of resources from its broader voter registration and community empowerment initiatives and toward protecting the representation and interests of its constituents "perceptibly impairs" its "mission to achieve equitable political representation for Black voters across the entire state."[76] As argued by BVM, "[i]t is the specific dedication of substantial resources to activities that were not planned and that would not be conducted but for the challenged redistricting plan that constitutes the injury, [which] is sufficient to establish injury-in-fact for standing purposes."[77] Based on the summary judgment evidence presented, BVM has raised a genuine issue of material fact that its purpose is in direct conflict with the allegedly

---

[73] Rec. Doc. 163-4, p. 7.
[74] Rec. Doc. 163-4, p. 8.
[75] *Id.*
[76] *N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233, 238 (5th Cir. 2010). Rec. Doc. 163-4, p. 8–9.
[77] Rec. Doc. 163, p. 21 (internal citations omitted).

unlawful maps. Accordingly, BVM has met the constitutional standing requirements for purposes of defeating Defendants' summary judgment *Motion*.

### c. *Statutory Standing*

Defendants claim the Entity Plaintiffs lack statutory standing to bring a challenge under § 2 of the VRA because § 2's private right of action does not extend to organizations. However, Defendants fail to cite any case in support of this position.[78] Contrary to Defendants' assertion, organizations and private parties have historically been permitted to enforce § 2 of the VRA.[79] Accordingly, Defendants' argument is without merit.

### III. CONCLUSION

For the above-stated reasons, the *Motion for Summary Judgment*[80] is hereby DENIED.

**IT IS ORDERED.**

Baton Rouge, Louisiana, this 14th day of November, 2023.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[78] Rather, Defendants rely on cases brought by candidates or local governments to argue that organizational plaintiffs are not "aggrieved persons" within the meaning of the VRA. Such cases are inapposite to the instant matter. *See* Rec. Doc. 149-1, pp. 13–17.

[79] *Veasey v. Perry*, 29 F. Supp. 3d 896, 906–07 (S.D. Tex. 2014) (citing *Crawford v. Marion Cnty. Election Bd.,* 553 U.S. 181 (2008) (Indianapolis Branch of the NAACP and the Marion County Democratic Central Committee, among other organizations, were parties to the § 2 challenge of a photo identification law); *LULAC v. Perry,* 548 U.S. 399 (2006) (LULAC challenged Texas redistricting plan under § 2); *Johnson v. DeGrandy,* 512 U.S. 997 (1994) (The State Conference of NAACP Branches sued on a voter dilution challenge under § 2); *Chisom v. Roemer,* 501 U.S. 380, 404 (1991) (the Louisiana Voter Registration/Education Crusade challenged voter dilution under § 2); *LULAC v. City of Boerne,* 675 F.3d 433 (5th Cir. 2012) (LULAC challenged voter dilution under § 2)).

[80] Rec. Doc. 149.