IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DR. DOROTHY NAIRNE, REV. CLEE EARNEST LOWE, DR. ALICE WASHINGTON, STEVEN HARRIS, BLACK VOTERS MATTER CAPACITY BUILDING INSTITUTE, and THE LOUISIANA STATE CONFERENCE OF THE NAACP,<br><br>     *Plaintiffs*,<br><br>v.<br><br>NANCY LANDRY, in her official capacity as Secretary of State of Louisiana,<br><br>     *Defendant*. | Civil Action No. 3:22-cv-00178 SDD-SDJ |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SPECIAL ELECTION**

Plaintiffs submit this reply in support of their motion for special elections.

I. **The notice of appeal does not strip this Court of jurisdiction over remedial proceedings.**

All the cases Defendants cite (ECF No. 244 at 4–6) are inapposite: None holds that a district court lacks jurisdiction to engage in *remedial proceedings* pursuant to its own order while an appeal from the *merits* order is pending. All the cited cases stand for the unrelated principle that once a notice of appeal is filed, the trial court no longer has the authority to revisit the merits of its ruling or to enlarge the scope of the ordered injunctive relief. *See McClatchy Newspapers v. Cent. Valley Typographical Union*, 686 F.2d 731, 734 (9th Cir. 1982); *see also Zimmer v. McKeithen*, 467 F.2d 1381 (5th Cir. 1972) (holding after a court imposed one districting plan to remedy constitutional violations, the court could not impose a second different remedial plan while the appeal on the first remedial plan was pending).

Neither Plaintiffs' request for special elections nor the anticipated proceedings leading to adoption of new VRA-compliant House and Senate maps is involved in the current appeal. Nor do they seek to revisit or enlarge the scope of this Court's order. The only part of the order that is ripe for appeal is this Court's merits determination, which is not impacted by proceeding to the remedial phase of this case. Considering Plaintiffs' request for special elections and holding remedial proceedings to adopt new VRA-compliant House and Senate maps will do nothing to disrupt or alter the Court's merits ruling or the order enjoining use of Louisiana's current House and Senate maps in any way. Plaintiffs' request for special elections as part of the remedial phase of this case—which has not yet begun—thus cannot and does not seek to enlarge or alter any order that is currently on appeal.[1]

Defendants' misguided jurisdictional arguments are yet another delay tactic in this case. And the risk of undue prejudice imposed by delaying remedial proceedings until the conclusion of the appeal has recently been heightened, with Defendants' request to extend their deadline to file the opening brief by 60 days. *See Nairne v. Landry*, Case No. 24-30115, ECF No. 107.

*Robinson v. Ardoin* provides an example of how the district court retains jurisdiction to continue progressing through remedial proceedings while a merits appeal unfolds, so long as the case is not stayed. *See Robinson*, 37 F.4th 208, 231-32 (5th Cir. 2022) (denying motion to stay to afford additional time to enact remedial plan); *Robinson*, Nos. 22-211, 22-214, 2022 WL 2092551 at *1-2 (M.D. La. June 9, 2022) (denying motion to stay remedial proceedings pending appeal). There is no stay in place in this case, nor is there any reason to stay this case: Defendants have

---

[1] Nor can Defendants credibly argue that Plaintiffs' request for special elections enlarges the scope of the remedial proceedings that the Court ordered in its February 8, 2024 ruling. Plaintiffs have repeatedly made plain that they are seeking special elections as part of the remedy in this case since the stay in this case was lifted. *See, e.g.*, ECF 109 at 7; ECF 118 at 4.

made no showing that they are likely to succeed on the merits. Defendants suffer no irreparable harm should this court proceed to the remedial stage of this case during the pendency of the appeal. The issuance of a stay would substantially harm Plaintiffs and all Black Louisianians whose votes are diluted under the current map. And the public interest lies firmly with Plaintiffs. *See Nken v. Holder*, 556 U.S. 418, 425–26 (2009).

Finally, if this Court has any concern about its jurisdiction to issue this relief while the appeal is pending (and it should not), Federal Rule of Civil Procedure 62.1 provides an alternative path to facilitate timely relief: allowing this Court to issue an indicative ruling on whether special elections are warranted.

## II. Plaintiffs established the requisite evidence needed to support their motion for special elections.

Defendants' opposition selectively quotes from Commissioner Hadskey's testimony (ECF No. 244 at 3-4) and fails to provide the full picture of the evidence Plaintiffs have presented.

Plaintiffs *did* ask the questions and create the record necessary to meet their burden to show that a special election would not unduly disrupt the ordinary processes of state governance. The trial record established that Louisiana routinely conducts special elections. 2023.12.04 Certified Tr. 30:7-33:5. In fact, Commissioner Hadskey testified to administering as many as 12 elections in a single year during her tenure working in election administration. 2023.12.04 Certified Tr. 30:7–15. Commissioner Hadskey further explained that Louisiana has *plenty* of experience with both adding new election dates, and aligning new elections with pre-scheduled election dates, *id.* 31:24–32:10. [2] Louisiana also routinely adds items to the ballot and has experience with

---

[2] The Court can take judicial notice of further information confirming this point. *See* La. Sec'y of State, 2022 Elections Calendar, https://perma.cc/M4ZV-RBFF (where two election dates were added, with the accompanying primary or general election then aligned with pre-scheduled election dates); La. Sec'y of State, 2023 Elections Calendar, https://perma.cc/LNR2-DMVK (where three special election dates were added, and others aligned with pre-scheduled election dates).

3

accommodating the addition of lengthy items. Commissioner Hadskey testified that she has seen as many as 17 proposed amendments on a *single* ballot. *Id.* 33:17–18.[3] The trial record also established Louisiana already has experience conducting special elections on the same timeline as previously scheduled federal election dates, as Plaintiffs propose here, and that doing so reduces the costs and burdens of a special election. *Id.* 33:2–5. Finally, Commissioner Hadskey addressed her experience navigating shifting requirements imposed by the legislature and the governor and courts, including how her office has never failed to comply with those requirements, and how she would "always do what's legally required of [her]." *Id.* 34:17–36:4.

By establishing the frequency with which Louisiana holds special elections and Louisiana's depth of experience in holding special elections and adding items to the ballot, Plaintiffs met their burden to establish that ordering special elections would not unduly disrupt existing Louisiana processes regarding special elections.

Contrary to Defendants' suggestion: Plaintiffs did **not** take on the burden to make Defendants' **counterarguments** for them. Defendants had every opportunity to make counterarguments: Defendants have been on notice that Plaintiffs would seek special elections at least since the 30(b)(6) deposition notice served on the Secretary on August 7, 2023, which identified numerous topics related to the process for special elections. Moreover, Plaintiffs questioned the Secretary of State's corporate representative about this issue in that deposition and questioned Commissioner Hadskey about special elections during trial. Defendants asked no redirect questions about the issues they now raise without support in their opposition to Plaintiffs'

---

[3] The Court can take judicial notice of information that further confirms this point. See La. House, 2020 Proposed Constitutional Amendments, https://perma.cc/DA7C-QJVH (seven proposed amendments on 2020 ballot); La. House, 2022 Proposed Constitutional Amendments, https://perma.cc/3CU2-P636 (seven proposed amendments on 2022 ballot).

motion for special elections. Here, too, Defendants have attached no declaration from the Secretary of State's office to bolster their opposition.[4] None of those omissions by the State means Plaintiffs failed to meet their burden here. Based on the available evidence, special elections are warranted.[5]

In the event the Court believes more discovery is needed, it is not an insurmountable obstacle to obtaining timely special elections here. This Court could order the State to respond to the discovery request Plaintiffs already issued (Ex. C) by April 17, 2024, and to make a 30(b)(6) representative available for deposition during the following week, leaving the parties with ample time to submit supplemental briefing before the end of April.

### III. Plaintiffs' schedule is appropriate, and other alternatives would similarly afford the Legislature adequate time while setting special elections in November 2024.

Defendants repeatedly cite the *In re Landry* mandamus panel in resisting Plaintiffs' proposed schedule. That panel pointed to Alabama's post-*Milligan* process as an example of "an adequate opportunity to accomplish a redistricting compliant with final judgment," highlighting

---

[4] That obfuscation is part of a pattern. Plaintiffs tried to glean answers to their questions about special elections, including the timeline and possible burdens in discovery at Commissioner Hadskey's deposition as the Secretary's corporate representative. *See* Hadskey Dep. Tr. at 56:8-57:4; 60:20-61:17, 86:4-9, 87:25-88:6 (attached as Exhibit A). As Plaintiffs' counsel represented at trial (in the quote Defendants excerpted in their brief, ECF No. 244 at 3): Commissioner Hadskey clearly did not know the answers, even though the topic had been noticed. *See* Dep. Notice (attached as Exhibit B). After the deposition testimony proved vague and insufficient on these items, Plaintiffs served additional discovery requests on this issue (attached as Exhibit C). The State never responded to those requests, claiming they were untimely even though they were served imminently following Commissioner Hadskey's deposition and before the discovery deadline.

[5] The State's purported policy interests also fall flat when weighed against the harm to Plaintiffs and voters here. The State's purported interest in holding off-cycle elections is suspect—this Court just explained this policy "breeds voter fatigue and confusion, which is amplified in poor and under educated communities" in its Senate Factors discussion (ECF No. 233 at 80-81) —and cannot outweigh the ongoing harm that inaction inflicts on voters. And special elections will not disrupt any state policy on term limits. Article III, § 4(E) of the Louisiana Constitution definitively resolves how to address term limits when less than a full term is served: no person who has been elected to serve as a member of the House or Senate "for more than two and one-half terms" in three consecutive terms can be elected for the succeeding term. Because state legislative terms are four years, holding a special election in November 2024 ensures no one elected in 2023 would have served a half term, so the time served under the unlawful map wouldn't count against anyone's limit.

that the court afforded the legislature six weeks from the Supreme Court's remand. 83 F.4th 300, 306 (5th Cir. 2023) ("the Alabama court on remand from the Supreme Court afforded the state an adequate opportunity to accomplish a redistricting compliant with final judgment.").

That very example undercuts Defendants' argument in two core ways. *First*, those six weeks were not measured by session weeks. *Milligan* came down on June 8, 2023; the Governor called a special session on June 27, 2023; the special session began on July 17, 2023; and the legislature passed a new map on July 21, 2023—in just *one week* of session. *See Singleton v. Allen*, No. 2:21-CV-1291-AMM, 2023 WL 5691156, at *2 (N.D. Ala. Sept. 5, 2023); https://perma.cc/D4F9-78VJ. *Second*, that six-week period measures from the date of the Supreme Court's order remanding to the date the map was passed (June 8 to July 21), not the date of the three-judge panel's scheduling order. Here, that means the clock starts from this Court's merits decision on February 8, 2024, making March 21, 2024 the six-week mark.

This Court still has time to order a schedule that would adhere to the timeline followed by the Alabama court in *Milligan* and allow remedial proceedings to conclude before the end of May 2024. Plaintiffs attach a proposed schedule (attached as Exhibit D) that gives the Legislature more than *ten* weeks from the date of the decision to pass new House and Senate maps. And, because Plaintiffs' proposed remedial maps and supporting expert reports were all served on Defendants as of March 19, 2024 (consistent with Plaintiffs' previous representation to this Court), Plaintiffs' proposed schedule provides Defendants with more than seven weeks from the receipt of Plaintiffs' proposed remedial maps and supporting expert reports to mount their defense to those maps. Plaintiffs' proposed schedule would permit new maps to be in place by end of May, which would give Louisiana ample time to implement the maps for use in the November 2024 election.

Finally, even if the schedule slips beyond the dates Plaintiffs propose in Exhibit D, holding remedial proceedings on an expedited basis can still provide Plaintiffs with meaningful relief, including in the form of special elections. November 2024 special elections would provide the most appropriate relief to Plaintiffs while imposing the least disruption on the State, but Defendants' efforts to stall proceedings until November special elections would no longer be possible does not foreclose the option of holding special elections on a later date. If proceedings are ultimately more prolonged than Plaintiffs have proposed here, there is also a December election on the calendar. La. Sec'y of State, 2024 Elections Calendar, https://perma.cc/J53M-X98C. And the State frequently holds *additional* special elections: consider, for example, the January 14 *and* February 18 special elections held in the beginning of 2023. La. Sec'y of State, 2023 Elections Calendar, https://perma.cc/LNR2-DMVK. Any of these elections would be sufficiently in advance of the 2025 General Session to seat the new legislators, in advance of the start of that session on April 14, 2025. La. Legis., Future Session Info, https://perma.cc/65MU-HQJC.

\* \* \*

The harm to Plaintiffs and voters wrought by delay or denial of special elections is profound. The sitting Legislature was elected under violative maps. And with every day that passes, the sitting Legislature—some of whom may not be in office under other, compliant maps—takes actions that could impact the lives of all Louisianans for years (possibly even decades) to come. For example, the sitting Legislature is currently considering H.B. 800, a bill that calls for a constitutional convention where delegates—including all of the current members of the Louisiana legislature elected using the illegal maps at issue—will rewrite the Louisiana State Constitution, the current version of which has been in place for over a century. Absent special elections, Plaintiffs

(and all voters harmed by the illegal maps) may be subject to laws and even a new state *constitution* drafted by a legislature that does not represent them.

Each and every day that these illegal maps remain in place—and the Legislature elected under them remains in office—is harmful to Plaintiffs, and expedient remedial proceedings are necessary to ensure that Plaintiffs' fundamental rights to vote are honored.

Date: April 9, 2024

Respectfully submitted,

*/s/ Megan C. Keenan*

Leah Aden (admitted *pro hac vice*)
Stuart Naifeh (admitted *pro hac vice*)
Victoria Wenger (admitted *pro hac vice*)
NAACP Legal Defense & Educational Fund
40 Rector Street, 5th Floor
New York, NY 10006
laden@naacpldf.org
snaifeh@naacpldf.org
vwenger@naacpldf.org

I. Sara Rohani (admitted *pro hac vice*)
NAACP Legal Defense & Educational Fund
700 14th Street, Suite 600
Washington, DC 20005
srohani@naacpldf.org

John Adcock (La. Bar No. 30372)
Adcock Law LLC
Louisiana Bar No. 30372
3110 Canal Street
New Orleans, LA 701119
jnadcock@gmail.com

Michael de Leeuw (admitted *pro hac vice*)
Amanda Giglio (admitted *pro hac vice*)
Robert Clark (admitted *pro hac vice*)
Cozen O'Connor
3 WTC, 175 Greenwich St.,

Megan C. Keenan (admitted *pro hac vice*)
Sarah Brannon (admitted *pro hac vice*)*
American Civil Liberties Union Foundation
915 15th St. NW
Washington, DC 20005
sbrannon@aclu.org
mkeenan@aclu.org

Sophia Lin Lakin (admitted *pro hac vice*)
Dayton Campbell-Harris (admitted *pro hac vice*)*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
slakin@aclu.org
dcampbell-harris@aclu.org

T. Alora Thomas-Lundborg (admitted *pro hac vice*)
Daniel J. Hessel (admitted *pro hac vice*)
Election Law Clinic
Harvard Law School
6 Everett Street, Ste. 4105
Cambridge, MA 02138
tthomaslundborg@law.harvard.edu
dhessel@law.harvard.edu

Nora Ahmed

8

| | |
|---|---|
| 55th Floor<br>New York, NY 10007<br>MdeLeeuw@cozen.com<br>AGiglio@cozen.com<br><br>Josephine Bahn (admitted *pro hac vice*)<br>Cozen O'Connor<br>1200 19th Street NW<br>Washington, D.C. 20036<br>JBahn@cozen.com | NY Bar No. 5092374 (admitted *pro hac vice*)<br>Pronouns: she, her, hers<br>ACLU Foundation of Louisiana<br>1340 Poydras St, Ste. 2160<br>New Orleans, LA 70112<br>Tel: (504) 522-0628<br>nahmed@laaclu.org<br><br>Ron Wilson (La. Bar No. 13575)<br>701 Poydras Street, Suite 4100<br>New Orleans, LA 70139<br>cabral2@aol.com<br><br>**Practice is limited to federal court.* |

*Attorneys for Plaintiffs*

9