on the organization's resources . . . .' Such injury must be 'concrete and demonstrable.'"[64] "Not every diversion of resources to counteract the defendant's conduct, however, establishes an injury in fact."[65]

At trial, the Court was presented with testimony that, in response to the Enacted Map, BVM diverted resources away from its core mission of expanding Black voter engagement and building capacity in partner organizations.[66] Instead, BVM launched new accountability initiatives to hold elected officials accountable to Black voters in order to counteract the map's dilutive effect.[67] The Court also heard testimony that the Enacted Map caused voter apathy, requiring BVM to devote additional staff time and resources toward convincing Black voters that their votes matter.[68] The Court finds that Black registered voters were discouraged by what they perceived as deafness to their appeals at the redistricting roadshows. This voter frustration manifested in increased voter apathy, causing BVM to divert mission-specific resources to voter retention efforts.

Following the passage of the Enacted Maps, the Louisiana NAACP also undertook additional organization and mobilization efforts to counteract the effects of the Enacted Maps on voter disillusionment, potential candidates, and funders' willingness to invest resources into Black communities in Louisiana.[69]

Plaintiffs presented testimony proving that in an effort to counteract the Enacted Maps' dilutive effect, the organizational Plaintiffs diverted resources from their core

---

[64] *Id.* (internal citations omitted).
[65] *Id.*
[66] Rec. Doc. 223, p. 164, line 22–p. 165, line 3; p. 167, line 8–p. 186, line 13; p. 201, line 20–p. 202, line 5.
[67] Rec. Doc. 223, p. 177, line 2–p. 179, line 19; Pla-207; Pla-208.
[68] Rec. Doc. 223, p. 175, lines 7–17; p. 179, line 20–p. 183, line 5.
[69] Rec. Doc. 223, p. 128, line 9–p. 131, line 20.

13

3. Dr. Alice Washington is a Black registered voter who resides in East Baton Rouge Parish and House District 66, but who would reside within the boundaries of Illustrative House District 101.[3]

4. Steven Harris is a Black registered voter and NAACP member who resides in Natchitoches Parish and House District 25, but who would reside within the boundaries of Illustrative House District 23.[4]

5. Each Individual Plaintiff currently lives in a packed or cracked district in the Enacted Map and would live in a majority-Black district in the Illustrative Plan.

6. Members of the NAACP are simultaneously members of the local NAACP branch in their area, the Louisiana NAACP, and the national NAACP.[5]

7. Louisiana NAACP members include Black registered voters whose votes are diluted in the districts in which they vote and thus have standing in their own right.[6]

8. In response to the Enacted Map, Black Voters Matter ("BVM") diverted resources away from its core mission of expanding Black voter engagement and building capacity in partner organizations.[7] BVM launched new accountability initiative to hold elected officials accountable to Black voters in order to counteract the enacted map's dilutive effect.[8]

9. Black registered voters were discouraged by what they perceived as deafness to their appeals at the redistricting roadshows. This voter frustration manifested in

---

[3] Rec. Doc. 225, p. 58, line 25–p. 59, line 14.
[4] Rec. Doc. 225, p. 49, lines 10–20.
[5] Rec. Doc. 223, p. 120, lines 2-7.
[6] Rec Doc. 224 (SEALED), p. 5, line 22–p. 31, line 12.
[7] Rec. Doc. 223, p. 164, line 22–p. 165, line 3; p. 167, line 8–p. 186, line 13; p. 201, line 20–p. 202, line 5.
[8] Rec. Doc. 223, p. 177, line 2–p. 179, line 19; Pla-207; Pla-208.