IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DR. DOROTHY NAIRNE, *et al.*, | Civil Action No. 3:22-cv-00178-SDD-SDJ |
| *Plaintiffs,* | |
| v. | Chief Judge Shelly D. Dick |
| R. KYLE ARDOIN, in his official capacity as Secretary of State of Louisiana, | Magistrate Judge Scott D. Johnson |
| *Defendant.* | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO CONFIRM THE SCOPE OF THE COURT'S INJUNCTION**

Defendant Nancy Landry, in her official capacity as Secretary of State of Louisiana (the "Secretary") files this memorandum in support of her Motion to Confirm, and in the Alternative to Stay the Court's February 8, 2024 Injunction Order, Rec. Doc. 233, as to Senate Districts 14 and 23.

**INTRODUCTION**

During the November 5, 2024 election, State Senators Cleo Fields (Senate District 14) and Jean-Paul P. Coussan (Senate District 23) were elected to other offices, and subsequently resigned from their roles as state senators effective December 31, 2024. Pursuant to Article II, Section 4(D) of the Louisiana Constitution and Louisiana Revised Statutes Section 18:601, President of the Louisiana Senate J. Cameron Henry, Jr. fulfilled his ministerial obligation to issue proclamations directing the Secretary to hold special elections to fill these seats. Conducting the elections called for in the December 11 Proclamations does not violate the Court's injunction which "prohibits the State from using H.B. 14 and S.B. 1 in the next legislative election, which is set for October 2027." [Rec. Doc. 272 at p.5]. Nor could it. Plaintiffs did not seek an injunction to prevent the Senate

President and the Secretary from conducting their constitutionally mandated duties to fill the unexpired terms of those elected under H.B. 14 and S.B. 1. Nor, under the Secretary's reading, does the Court's injunction prohibit holding such elections.

Despite all this, counsel for Plaintiffs recently sent correspondence to counsel for the Secretary (and the other Defendants) suggesting that the forthcoming elections are within the scope of the Court's injunction. This motion seeks clarification on that point and the Court's direction in ample time to ensure that voters can be represented in the upcoming legislative session. Any argument that special elections in H.B. 14 and S.B. 1 are enjoined simply seeks to expand the Court's injunction into un-litigated issues with grave consequences for the residents of Senate Districts 14 and 23. Without these special elections, hundreds of thousands of Louisianans, including those in the majority-Black Senate District 14 will lack any representation in the state Senate for the upcoming legislative session, in violation of foundational principles of democracy. As such, and for all the reasons more fully stated herein, the Secretary seeks the Court's confirmation that special elections required by the Louisiana Constitution can go forward.

## BACKGROUND

Plaintiffs filed this case on March 14, 2022.[1] [Rec. Doc. 1]. Over the next several months, discovery began and the Court entered a scheduling order contemplating a January 2023 trial date. [Rec. Doc. 66]. On August 30, 2022, the Court stayed this case until *Allen v. Milligan* was decided. [Rec. Doc. 79]. At no time between March 14 and August 30 did Plaintiffs file a motion for preliminary injunction.

After *Milligan* was decided, the Court lifted the stay in June of 2023. Plaintiffs then moved the Court for an order to expedite the case for a quick resolution of a "proposed" motion for

---

[1] The operative Amended Complaint was filed on April 4, 2022. [Rec. Doc. 14].

2

preliminary injunction that was never filed. [Rec. Docs. 83, 83-1, 89]. The Court declined that relief and set two options for the trial start date: November 6, 2023 or November 27, 2023. [Rec. Doc. 96]. Trial commenced on November 27, 2023, approximately 9 days after the November 18, 2023 statewide elections.

Throughout the case, Plaintiffs stressed that they were not making a statewide challenge. [Rec. Doc. 163-1 at p 5 ("Plaintiffs have not challenged the maps in their entirety.")]. In the same vein, Plaintiffs' trial presentation was limited to seven "areas of interest" across the state.[2] [Rec. Doc. 233 at p. 63]. Conversely, Plaintiffs never sought an injunction prohibiting special elections to fill legislative vacancies under Article III, Section 4(D) of the Louisiana Constitution (hereinafter, "Constitutional Vacancy Elections"), or argued that an injunction should be applied to any special elections to fill vacancies with unexpired terms. *See* La. Const. Art. III, §4(D) ("A vacancy in the legislature shall be filled for the remainder of the term only by election by the electors of the respective district as provided by law.").

Nor did Plaintiffs seek any information on the timing or ability for the court to enter its own order for a statewide special legislative session. During trial, Defendants called Sherri Hadskey, Commissioner of Elections for the State of Louisiana in their case in chief. Despite the Court's encouragement to cross Ms. Hadskey on election-related deadlines and Plaintiffs lodging multiple complaints as to the large volume of elections in the state, Plaintiffs refused to ask Commissioner Hadskey any specific questions on needed deadlines for any type of court or legislatively ordered special election. [Rec. Doc. 281 at 14:24-36:4; Rec. Doc. 233 at pp. 80-81].

---

[2] These include: (1) Northwest Louisiana (Bossier and Caddo Parishes); (2) Southeast Louisiana (Jefferson and St. Charles Parishes); (3) East Central Louisiana (East Baton Rouge, West Baton Rouge, Iberville, and Point Coupee Parishes); (4) Western Louisiana (De Soto, Natchitoches, and Red River Parishes); (5) Southwest Louisiana (Calcasieu Parish); (6) South Central Louisiana (Ascension and Iberville Parishes); and (7) East Central Louisiana (East Baton Rouge and East Feliciana Parishes). [*See, e.g.*, Rec. Doc. 233 at p. 63; Plts. Exhibit 1 at p. 9].

3

On February 8, 2024, the Court entered its Ruling and Order that found S.B. 1 and H.B. 14 violated the VRA and enjoined elections under S.B. 1 and H.B. 14. [Rec. Doc. 233 at p. 91]. Shortly thereafter, Plaintiffs filed a flurry of motions seeking expedited remedial proceedings and a court-ordered special legislative election to coincide with the federal elections set for November 2024. [Rec. Docs. 235, 236, 237, 254]. Around the same time, Defendants[3] filed their notices of appeal from the Court's February 8, 2024 Ruling and Order to the Fifth Circuit Court of Appeals. [Rec. Docs. 241, 242, 255][4]. Defendants also jointly filed their oppositions to Plaintiffs' motions arguing that the Court did not have jurisdiction to entertain the motions. [Rec. Docs. 244, 265, 266].

On May 3, 2024, this Court entered an Order denying Plaintiffs' Motion to Set Schedule for Remedial Proceeding and Motion for Scheduling Conference, and deferring ruling on Plaintiffs' Motion for Special Election and Expedited Briefing Schedule and Renewed Motion for Scheduling Conference after determining the Court lacked jurisdiction to order a remedial process and special election for the remedial legislative maps at that time. [Rec. Doc. 272]. In its Order, the Court recognized that it "has authority to 'preserve the status quo' while a case is pending appeal." [*Id.* at p. 4 (citing *Coastal Corp. v. Texas E. Corp.*, 869 F.2d 817, 820 (5th Cir. 1989)]. The Court further stated with respect to the February 8, 2024 Order:

> The Court finds that pursuant to its Order, the Court retains jurisdiction in that it may, and will if necessary, enforce its Order which prohibits the State from using H.B. 14 and S.B. 1 **in the next state legislative election, which is set for October 2027.**

---

[3] Defendant Nancy Landry, in her official capacity as Secretary of State of Louisiana, and Intervenor-Defendant the State of Louisiana, by and through Attorney General Elizabeth B. Murrill, filed their notices of appeal on February 19, 2024. [Rec. Docs. 241-242]. Legislative Intervenor-Defendants filed their Notice of Appeal on March 6, 2024. [Rec. Doc. 255].

[4] The parties have fully briefed the appeal in the Fifth Circuit, and oral argument has been set for Tuesday, January 7, 2024.

4

[*Id.* at p. 5 (emphasis added)].

As such, the Secretary interprets the Court's injunction to prohibit her from conducting the October 2027 regularly scheduled legislative elections under H.B. 1 and S.B. 14, unless the Court's injunction is otherwise altered by the Fifth Circuit or the Supreme Court of the United States. The Secretary does not currently understand the Court's injunction to apply to any Constitutional Vacancy Elections.

Relevant to this issue, two currently serving state senators were elected to higher office in the November 2024 elections. State Senator Cleo Fields is a Black Democrat who has represented Louisiana Senate District 14 ("SD14") at various points in time over the last two decades. Most recently, he was re-elected to a four-year term to run from 2024 through 2028. SD14 is a long-standing majority-Black district in Louisiana, located entirely within East Baton Rouge Parish. It is undisputed that no individual plaintiff, nor any member identified for standing purposes by the Louisiana NAACP, resides in SD14. [Rec. Doc. 234 at 1-2]. Though Plaintiffs claim that their illustrative districts "directly implicate" SD14, Rec. Doc. 163-1 at p. 5, evidence presented at trial shows that the enacted and proposed illustrative versions of SD14 are almost identical. Dr. Handley determined pursuant to her effectiveness scores that both districts are 100% effective, meaning the Black-preferred candidate won 100% of the time in SD14 and illustrative SD14. [Plts. Ex. 1 at p. 21]. The Black Voting Age Population ("BVAP") of enacted SD14 is 58.00%. [Rec. Doc. 234 at ¶24]. In order to make a new majority-Black illustrative SD17, Plaintiffs' Expert William Cooper adjusted the BVAP of illustrative SD14 to 58.08%. [Plts Ex. 47 – Exhibit J-1 to William Cooper Report]. Furthermore, the Court's February 8, 2024 Order did not find SD14 to be packed or cracked. [*See* Rec. Doc. 233 at pp. 28-29]. On November 5, 2024, Senator Fields was

5

elected to the 6th Congressional District under the remedial congressional plan passed by the Legislature in light of *Robinson v. Ardoin*.

Also on November 5, 2024, State Senator for Senate District 23 ("SD23"), Jean-Paul P. Coussan, was elected to serve as the commissioner for District 2 on the Public Service Commission. SD23 is anchored in Lafayette Parish and has a BVAP of 12.81%. [Plts Ex. 33 – Exhibit H-1 to William Cooper Report]. It is undisputed that no individual plaintiff, nor any member identified for standing purposes by the Louisiana NAACP, resides in SD23. [Rec. Doc. 234 at 1-2]. Plaintiffs do not claim that any of their illustrative district implicate SD23. [Rec. Doc. 163-1 at p. 5]. SD23 is also not within any of the "Areas of Interest" studied by Dr. Handley, and the Court did not find SD23 to be packed or cracked in its February 8, 2024 Order. [Rec. Doc. 233 at 28-29, 63].

Because of their elections to higher office, both Senator Fields and Senator Coussan submitted resignation letters to Intervenor-Defendant J. Cameron Henry Jr., President of the Louisiana State Senate, resigning their state senate seats effective December 31, 2024. Attached as **Exhibit 1** are true and accurate copies of the resignation letters.  In light of the vacancies in SD14 and SD23 due to the resignation of Senator Fields and Senator Coussan, President Henry issued proclamations pursuant to Louisiana R.S. § 18:601 on December 11, 2024 that authorizes, directs, and empowers the Secretary of State and other officials to conduct Constitutional Vacancy Elections in Senate Districts 14 and 23.  True and accurate copies of these proclamations are attached as **Exhibit 2**.  The proclamations fix the date of the primary for Saturday, February 15, 2025, and the general election for Saturday, March 29, 2025. *Id.*

The date of these elections is no accident. The Louisiana Constitution prescribes when the Legislature is in session. For a regular session in an odd-numbered year, the Legislature must

convene at 12:00p.m. on the second Monday in April and adjourn no later than 6:00pm on the sixtieth calendar day after commencement. *See* La. Const. Art. II, §2(a)(4)(a). Thus the 2025 Regular Session of the Louisiana Legislature will convene at 12:00p.m. on April 14, 2024. Unless a Constitutional Vacancy Election is held, residents of SD14 and SD23 will not have representation in the Louisiana Senate for the 2025 Regular Session.

Neither the Secretary nor any State official has any intention to violate the Court's injunction and, to reiterate, believe the contemplated special elections are fully permitted by the Court's injunction. To ensure clarity and to seek relief from the injunction if necessary out of an abundance of caution, the Secretary brings the present motion.

## **ARGUMENT**

"The right to representation in government is the central pillar of democracy in this country." *Rossito-Canty v. Cuomo*, 86 F. Supp. 3d 175, 183 (E.D.N.Y. 2015). Following the resignation of Senators Fields and Coussan, the constituents of SD14 and SD23 respectively will be left without representation, unless the Secretary conducts the special elections set forth by Senate President Henry's December 11, 2024 proclamations. Ex. 2. Leaving hundreds of thousands of Louisianans without representation would violate the very principles of federalism that our country was founded upon. *See Rossito-Canty,* 86 F. Supp. 3d at 181 (noting that "[t]here is a *fundamental and inalienable right of representation* under our system of government—a right that denied was a large factor in starting our revolution of 1776." (*emphasis* added)). And while states have "wide discretion" with how to fill vacant offices, *see Rodriguez v. Popular Democratic Party,* 457 U.S. 1 (1982); *United States v. Classic,* 313 U.S. 299 (1941); *Valenti v. Rockefeller,* 292 F. Supp. 851 (S.D.N.Y. 1968), *aff'd,* 393 U.S. 404 (1969), state elected officials may not drag their

7

feet in fulfilling their duty to conduct speedy elections[5] to fill vacancies. *See e.g. id* (ordering injunctive relief to ensure that a special election was scheduled by the governor); *Jackson v. Ogilvie*, 426 F.2d 1333 (7th Cir. 1970) (reversing and remanding for an order requiring the governor to call for special election); *American Civil Liberties Union v. Taft*, 385 F.3d 641 (6th Cir. 2004) (holding that the governor's refusal denied ACLU members the right to vote and equal protection under the Fourteenth Amendment); *Judge v. Quinn*, 624 F.3d 352 (7th Cir. 2010) (affirming order requiring the governor to hold special election to fill vacancy); *Fox v. Paterson*, 715 F. Supp. 2d 431 (W.D.N.Y. 2010) (issuing an order requiring the governor to call for a special election to fill vacancy).

Here, Senate President Henry complied with his constitutional and statutory duty to call for Constitutional Vacancy Elections to fill the vacancies in SD14 and SD23. *See* La. Const. Art. III, §(4)(D); La. R.S. §18:601. This duty is part of Louisiana's "constitutional responsibility for the establishment and operation of its own government." *Gregory v. Ashcroft*, 501 U.S. 452, 462 (1991). Likewise, the Secretary intends to comply with her constitutional duty to carry out these special elections, and believes, based on the Court's prior orders, that holding these Special Elections is still in compliance with this Court's rulings. However, out of an extreme abundance of caution, the Secretary seeks confirmation of her interpretation of this Court's orders.

I.      **The Court's Orders Allow for the Secretary to Conduct Special Elections**

On May 3, 2024 this Court issued an order (the "May 3 Order") clarifying the scope of the Court's jurisdiction after its February 8, 2024 injunction and denying Plaintiffs' request to conduct statewide special legislative elections in November of 2024. [Rec. Doc. 272]. In that order, the

---

[5] A speedy election pursuant to Senate President Henry's proclamations is especially warranted where, missing even a portion of the legislative session would be harmful to the residents of SD14 and SD23 because all new legislative matters must be introduced or received by 6:00 pm on the 10th calendar day of the session which would be April 24, 2025. *See e.g.* La. Const. Art. II, §2(4)(a).

Court held that while a notice of appeal generally divests the district court of its jurisdiction over aspects of the case involved in an appeal, it maintains jurisdiction to resolve issues not involved in the appeal, to make clerical corrections, or to "preserve the status quo." [*Id.* at p. 4 (citing *Farmhand, Inc. v. Anel Eng'g Indus., Inc.,* 693 F.2d 1140, 1145 (5th Cir. 1982); *Coastal Corp. v. Texas E. Corp.,* 869 F.2d 817, 820 (5th Cir. 1989))]. Specifically, the Court held that it retained jurisdiction to "enforce its Order which prohibits the state from using H.B. 14 and S.B. 1 **in the next state legislative election, which is set for October 2027**." [Rec Doc 272 at p. 5 (**emphasis added)**]. Here, the Constitutional Vacancy Elections the Secretary intends to conduct are not the next regularly scheduled cycle of legislative elections referenced in the May 3 Order. Rather, these Constitutional Vacancy Elections are designed to fill the currently unexpired terms of Senators Fields and Coussan to ensure that their constituents have representation moving forward.

Moreover, Plaintiffs did not directly challenge either SD14 or SD23 in this suit, and no plaintiff resides in either district. In fact, SD14 as drawn is a majority-Black district with a BVAP of 58%, which Plaintiffs own expert Dr. Lisa Handley found to be effective 100% of the time. [Plts. Ex. 1 at p. 21; Plts. Ex. 47 – Exhibit J-1 to William Cooper Report]. It would be the antithesis of the relief Plaintiffs sought in this case, (that the Court subsequently granted on February 8, 2024) to expand opportunities for Black voters to elect their candidates of choice, to now refuse to allow the residents of SD14 *any* representation at all. In fact, while there is very little benefit to Plaintiffs in enjoining the Constitutional Vacancy Elections, there is a very real and imminent public harm to the residents of SD14 and SD23, who will be left without representation in the Louisiana State Senate absent a Constitutional Vacancy Election. This Court's injunction surely cannot be read to deprive Louisianans of representation, especially since these Constitutional Vacancy Elections would only fill an unexpired term, subject to any future remedial orders that

9

this Court may enter in the future and the current appeals process. *See* Louisiana R.S. §18:601. Because this Court has the power to maintain the status quo, it should enter an order clarifying that the Secretary may conduct the Constitutional Vacancy Elections as scheduled by Senate President Henry's proclamations.

**II.    Enjoining These Elections would be an Expansion of the Injunction and Would Cause Harm to the State.**

It is undisputed that the Court did not find that either SD14 or SD23 were packed or cracked, and no plaintiff resides in either district. It is likewise undisputed that, despite complaints about Louisiana's many elections, Plaintiffs never sought an injunction that extended to the eventuality of special elections to fill vacancies after a member of the legislature resigns, as is the case here. Plaintiffs had ample opportunity to question Commissioner of Elections Sherri Hadskey at trial on a variety of election related matters, including what would happen if a legislator resigned or his or her seat otherwise became vacant in the middle of his or her term. But Plaintiffs failed to ask Ms. Hadskey any question of the sort. This is, in all respects, exactly like Plaintiffs failure to ask Ms. Hadskey any questions about the timing or problems with holding a statewide special election in November of 2024, which this Court already concluded would "inappropriately enlarge the scope of its Order." [Rec. Doc. 272]. This scenario is no different—Plaintiffs failed to address Constitutional Vacancy Elections at trial and expanding the Court's injunction to cover them would inappropriately enlarge its Orders.

Moreover, Louisiana has "a constitutional responsibility for the establishment and operation of its own government, as well as the qualifications of an appropriately designated class of public office holders." *Gregory v. Ashcroft*, 501 U.S. 452, 462 (1991); *see* U.S. Const. Art. IV, §4. As such, Louisiana, through its elected officials, enacted laws for how to fill mid-term vacancies in the Louisiana Legislature. Any intrusion into that process would result in a substantial

intrusion into state sovereignty by denying the state its ability to carry out its own form of self-governance and allow its people the right to choose new representation. *See Maryland v. King*, 133 S. Ct. 1, 3 (2012) ("Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."). This harm, which could only be effectuated should the Court not allow the Secretary to carry out her constitutional duties, along with the clear harm to the residents of SD14 and SD23 who would lack representation, would be a clear impermissible enlargement of the Court's existing injunction. *See Zimmer v. McKeithen*, 467 F.2d 1381 (5th Cir. 1972); *McClatchy Newspapers v. Cent. Valley Typographical Union*, 686 F.2d 731, 734 (9th Cir. 1982).

**III.    In the Alternative, a Partial Stay as to SD14 and SD23 is Warranted.**

In the Alternative, should the Court disagree with the Secretary's interpretation of the Court's February 8, 2024 Injunction Order, Rec. Doc. 233, the Secretary respectfully requests the Court stay in part the injunction as to these Constitutional Vacancy Elections in SD14 and SD23.

When assessing a stay pending appeal, a court considers four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 566 U.S. 418, 426 (2009) (citation omitted). These factors are not to be applied "in rigid or mechanical fashion." *Campaign for S. Equal. v. Bryant*, 773 F.2d 55, 57 (5th Cir. 2014). A movant "need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 39 (5th Cir. 1983) (citation omitted).

The first and third *Nken* factors favor issuance of the stay, as the pending appeal is likely to succeed on the merits with respect to SD14 and SD23, and issuance of the stay would not harm Plaintiffs. First, no Plaintiff nor disclosed member of an organizational Plaintiff resides in either SD14 or SD23. The Fifth Circuit is likely to find SD14 and SD23 are beyond this Court's jurisdiction. *Gill v. Whitford*, 585 U.S. 48, 66 (2018); *Harding v. Cnty. of Dallas*, 948 F.3d 302, 307 (5th Cir. 2020). Second, neither district was found to be cracked or packed in violation of § 2, and "a plaintiff's remedy must be 'limited to the inadequacy that produced [his] injury in fact.'" *Gill*, 585 U.S. at 66 (citation omitted). Indeed, the evidence shows that SD14 is a district in which Black voters are likely to elect their candidate of choice (including in the upcoming special election) and that SD23 would not likely become a Black opportunity district under any reasonable configuration. There is, then, no basis for an injunction against these two districts (for any election). And there is certainly no harm that would be suffered by any Plaintiff or disclosed member of an organizational Plaintiff by permitting the vacancies in SD14 and SD23 to be filled.

The fourth *Nken* factor also favors issuance of the stay, because under the unique circumstances of two State Senators resigning, there is real public harm to the residents of SD14 and SD23 if the vacancies cannot be filled via these Constitutional Vacancy Elections. Collectively, SD14 and SD23 contain approximately 245,000 residents. [Plts. Ex. 33]. Including these vacancies in the injunction would deprive those residents of any representation in the Senate for the 2025 Regular Session and thus the opportunity to have input on legislation that may be considered by the Legislature during that session. Even missing part of that session would be harmful because the Legislature's power to advance and pass legislation becomes more difficult as the session progresses. *See, e.g.,* La. Const. Art. II, §2(4)(a). On the flip side, there is little to no harm to Plaintiffs. Indeed, SD14 is a performing district according to Dr. Handley and SD23 is not

12

implicated by her analysis. Furthermore, the political balance of the Legislature would not be impacted by holding these two vacancy-filling elections. For the same reasons, it is in the public benefit to fill the vacancies created by Senator Fields and Senator Coussan's resignations in light of election to different public offices. The balance of the equities weighs heavily in favor of granting a stay.

## CONCLUSION

For all the reasons stated herein, the Court should issue an order confirming that the Secretary can conduct the Constitutional Vacancy Elections mandated by President Henry's December 11, 2024 proclamations. Should this Court disagree with the Secretary's interpretation of its previous orders, the Secretary asks in the alternative for a stay of this Court's February 8, 2024 Injunction Order as to Senate Districts 14 and 23.

Respectfully submitted this the 23rd day of December, 2024.

/s/ Phillip J. Strach
Phillip J. Strach*
   *Lead Counsel*
Alyssa M. Riggins*
Cassie A. Holt*
**NELSON MULLINS RILEY & SCARBOROUGH LLP**
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Ph: (919) 329-3800
phil.strach@nelsonmullins.com
alyssa.riggins@nelsonmullins.com
cassie.holt@nelsonmullins.com

/s/ John C. Walsh
John C. Walsh, LA Bar Roll No. 24903
John C. Conine, Jr., LA Bar Roll No. 36834
**SHOWS, CALL & WALSH, L.L.P.**
628 St. Louis St. (70802)
P.O. Box 4425

Baton Rouge, LA 70821
Ph: (225) 346-1461
Fax: (225) 346-1467
john@scwllp.com
coninej@scwllp.com
* *Admitted pro hac vice*

*Counsel for Defendant NANCY LANDRY, in her official capacity as Secretary of State of Louisiana*