IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DR. DOROTHY NAIRNE, REV. CLEE EARNEST LOWE, DR. ALICE WASHINGTON, STEVEN HARRIS, BLACK VOTERS MATTER CAPACITY BUILDING INSTITUTE, and THE LOUISIANA STATE CONFERENCE OF THE NAACP,<br><br>*Plaintiffs,*<br><br>v.<br><br>R. KYLE ARDOIN, in his official capacity as Secretary of State of Louisiana<br><br>*Defendant.* | CIVIL ACTION NO. 3:22-cv-00178 SDD-SDJ |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL STAY AND IN SUPPORT OF CROSS-MOTION TO RECONSIDER THE REMEDIAL SCHEDULE**

Plaintiffs respectfully file this memorandum in opposition to Secretary Landry's motion for partial stay, *see* ECF No. 300, and in support of their cross-motion to reconsider the remedial schedule set forth in ECF No. 279.

**I.    INTRODUCTION**

Following a seven-day trial on the merits, this Court ruled that Plaintiffs satisfied their burden to prove that the 2022 Louisiana House and Senate redistricting plans unlawfully diluted the votes of Black Louisianians in specific areas of the State in violation of Section 2 of the Voting Rights Act of 1965 ("Section 2"), 52 U.S.C. § 10301. *See generally* ECF No. 233. Accordingly, this Court permanently enjoined any further elections from taking place under the statutes that created these unlawful districts. This Court's Order is unambiguous: "It is ORDERED that elections under S.B. 1 and H.B. 14 be and are hereby ENJOINED." *See* ECF No. 233 at 91.

It has now been over a year since the Court's February 2024 order enjoining S.B. 1 and H.B. 14. The Legislature has taken no steps to enact remedial maps to comply with this Court's order, despite this Court's May 2024 order requiring the State to "remain active in creating new House and Senate election maps, even amidst the appeal." ECF No. 272 at 5. As a result of the State's inaction, there were no lawful maps available for the special elections necessary to fill the two Senate seats that became vacant following the 2024 general election. *See* ECF No. 286-1. This Court ordered a limited stay of its injunction to permit special elections to fill those two vacancies. *See* ECF No. 295. And now, nearly two months later, there are no lawful maps available for the special elections necessary to fill the two House seats that became vacant following the special Senate elections.

While Plaintiffs continue to maintain that the public interest strongly supports ensuring that all voters have representation, including voters in House Districts 45 and 67, the present circumstances diverge from those created by the Senate vacancies in December 2024 in at least three ways. First, this is now the *second* time that there have been vacancies requiring elections using the unlawful maps since this Court issued the permanent injunction and set a remedial schedule culminating in an August 2025 hearing. *See* ECF No. 279. And despite the clear evidence that there is a need for new maps before the scheduled elections in 2027, the Legislature has *again* failed to act despite the foreseeability of these additional vacancies. In essence, the Legislature's own inaction has caused the circumstances that it now claims require a stay. Second, while it was clear that special elections could be conducted in time to fill the earlier vacant Senate seats for sitting in the 2025 regular session, it is not clear that it will be possible to fill these new vacancies to allow newly elected lawmakers to represent their constituencies during the session. Third, the

case is now fully submitted to the Fifth Circuit, which could imminently rule and return the mandate to this Court.

Rather than allow additional elections to take place once more under unlawful maps, this Court should expedite remedial proceedings to ensure these seats are filled under a lawful remedial map.

## II. BACKGROUND

Plaintiffs—four individual voters in Louisiana and two organizations dedicated to furthering the voting rights of Black Louisianians—initiated this action to challenge redistricting plans for the Louisiana House and Senate that created districts that dilute Black Louisianians' votes in violation of Section 2. Following a seven-day trial on the merits beginning November 27, 2023 and ending December 5, 2023, this Court ruled that Plaintiffs had met their burden of establishing that specific districts within S.B. 1 and H.B. 14 violate Section 2, and accordingly enjoined any further elections under those plans. *See generally* ECF No. 233.

Following this Court's ruling on liability, Plaintiffs filed a motion for a special election and expedited briefing schedule on February 13, 2024. *See generally* ECF No. 237. Days later, on February 19, 2024, both Defendant Nancy Landry, in her official capacity as Secretary of State of Louisiana, and the State of Louisiana filed notices of appeal from this Court's decision. *See* ECF Nos. 241-242. Legislative Intervenors Phillip DeVillier, in his capacity as Speaker of the Louisiana House of Representatives, and Cameron Henry, in his capacity as President of the Louisiana Senate, filed their own notice of appeal on March 6, 2024. *See* ECF No. 255. Defendants, including the Secretary, subsequently opposed the motion for a special election, arguing that the filing of a notice of appeal "divest[ed] the district court of jurisdiction over the matters appealed," leaving it solely with jurisdiction "to implement or enforce" the injunction, not modify it. *See* ECF No. 244 at 5.

While this Court accepted Defendants' jurisdictional argument, *see* ECF No. 272 at 5, it also specifically and correctly held that it "retains jurisdiction in that it may, and will if necessary, enforce its Order which prohibits the State from using H.B. 14 and S.B. 1." *See id.* And this Court noted that it would "continue to require that the State remain active in creating new House and Senate elections maps, even amidst the appeal." *See id.* At a subsequent July 17, 2024 status conference, this Court further confirmed that "it has jurisdiction to move forward with [the] remedial phase" and set a remedial evidentiary hearing for August 25, 2025 at 9:00 A.M., along with discovery and motions deadlines prior to the hearing. *See* ECF No. 279. Prior to setting this schedule, the Court had emphasized that its evaluation of the "level of urgency" in determining remedial maps was driven by the fact that "the next state legislative election is not until October 2027." *See* ECF No. 272 at 7.

These circumstances changed in December 2024. Following the 2024 elections, two Louisiana senators resigned their seats effective December 31, 2024. *See* ECF No. 286-1. Normally, those vacancies would have required the President of the Senate to "issue a proclamation advising of the vacancy and ordering a special election to fill the vacancy" within ten days of the vacancy occurring, and to hold those special elections to fill those vacancies shortly after that, on dates fixed by statute. *See* La. Rev. Stat. § 18:601(A)(1); La. Rev. Stat. § 18:402(E). However, this Court's injunction properly enjoined Defendants from holding elections under S.B. 1. *See* ECF No. 233 at 91. Following motions practice, this Court ordered a limited stay of its injunction to permit special elections to fill those two vacancies. *See* ECF No. 295.

Even if the Legislature had not previously understood the danger of its inaction toward remedying the Voting Rights Act violation this Court found, the Senate vacancies made that danger unmistakably clear: even though the next *scheduled* elections were set for October 2027, vacancies

4

could—and did—create a need for elections to take place even sooner. Indeed, Plaintiffs forecast the precise scenario in which the parties now find themselves: that the Senate vacancies "demonstrate[d] that it is likely there will also be a need for special elections to fill future vacated House seats," because it was "likely that existing House members may seek to fill the two vacant Senate seats." ECF No. 90 n.1. Yet, nearly two months after those first vacancies arose, the Legislature has remained inactive. And so, predictably, the same danger looms large again. This time, there are no lawful maps available for the special elections necessary to fill the two House seats that became vacant following the special Senate elections—nor any other vacancies that could arise prior to remedial action.

### III. ARGUMENT

Given the Legislature's refusal to act, this Court should expedite the remedial schedule to balance the public interest in ensuring all voters have representation against avoiding further harm. As explained in Plaintiffs' prior motion, the public interest strongly supports ensuring that all Louisianians have representation in the Louisiana House. *See* ECF No. 290. Accordingly, the upcoming vacancies should be filled expeditiously, and well before the currently scheduled August 2025 remedial hearing. *See* ECF No. 279. At the same time, the public interest also supports filling these vacancies under lawful remedial maps that comply with Section 2.

To balance these competing interests, this Court should expedite the remedial process. The existing remedial schedule was based on the circumstances as they existed at the time the schedule was issued. Defendants argued, and this Court accepted, that the next state legislative elections would take place in October 2027 absent the Court's injunction. *See* ECF No. 272 at 7; ECF No. 244 at 2, 15, 21 (arguing that a more expedited remedial schedule was "unnecessary . . . given that the next legislative elections are not until 2027"). But circumstances have changed significantly, sharply raising the "level of urgency" for these remedial proceedings and warranting

reconsideration of this Court's prior schedule. *See* ECF No. 272 at 7. This Court has clearly already allowed "a reasonable period of time . . . to address the Court's findings and implement State House and Senate election maps that comply with § 2 of the Voting Rights Act." *See* ECF No. 233 at 91. This Court afforded the Legislature significantly more time than other courts usually permit states to enact remedial plans. *See, e.g.*, *North Carolina v. Covington*, 585 U.S. 969, 971 (2018) (state legislature given a month to enact a remedial plan); *Robinson v. Ardoin*, 86 F. 4th 574, 601 (5th Cir. 2023) (two months); *Thomas v. Bryant*, 919 F. 3d 298, 312-13 (5th Cir. 2019) (19 days). Louisiana had until "the conclusion of the 2024 Regular Legislative Session . . . to enact VRA-compliant State House and Senate maps" before setting the remedial schedule. *See* ECF No. 272 at 10. And yet, "[n]o new redistricting plans were passed for the House or Senate in response to this Court's February 8, 2024, injunction." *See* ECF No. 273 at 1. An expedited remedial process has become necessary to timely fill the upcoming vacancies in the Louisiana House under lawful maps because the Legislature has failed to "remain active in creating new House and Senate elections maps . . . amidst the appeal." *See* ECF No. 272 at 5. The Legislature should not be allowed to flout this Court's February 8, 2024 injunction and then benefit from the natural consequences of its own inaction by repeatedly obtaining partial stays as foreseeable vacancies arise in the Legislature.

As this Court has already explained, the Legislature has already had ample time and opportunity to pass new House and Senate maps that comply with this Court's February 8, 2024 order. ECF No. 284 at 23:19-2.[1] Counsel for Legislative Intervenors has likewise already conceded

---

[1] The Fifth Circuit has held up Alabama's post-*Milligan* process as an example of "an adequate opportunity to accomplish a redistricting compliant with final judgment," highlighting that the court afforded the legislature six weeks following the Supreme Court's remand. *In re Landry*, 83 F.4th 300, 306 (5th Cir. 2023). That six-week period was measured from the date of the Supreme

6

that the Legislature "took their opportunity seriously and they could not meet it." ECF No. 284 at 23:6-15. Thus, Plaintiffs maintain that expediting the remedial hearing (following motions and discovery deadlines to be set by this Court or the magistrate judge) is proper, feasible, and best serves the public interest. Accordingly, Plaintiffs request that the Court reconsider its previously issued schedule, *see* ECF No. 279, and order a more expedited remedial process at the earliest available date.[2]

Plaintiffs agreed with Defendants that the public interest strongly supports that the voters and residents of Senate Districts 14 and 23 should not go without representation and are mindful that this Court entered a partial stay of its injunction to permit special elections to fill the recent Senate vacancies. Plaintiffs, however, maintain that filling the current House vacancies under lawful maps better balances the equities, particularly where there is little chance of the special election occurring in time to seat the new representatives for the full legislative session.

These House vacancies, which have arisen months after the Senate vacancies, present different circumstances. Because the recent Senate vacancies occurred in December 2024, there was time to call a special election to fill those vacancies before the start of the next legislative session, which is set to begin on April 14, 2025. *See* La. State Legislature, 2025 Session Information, https://legis.la.gov/legis/home.aspx. In contrast, there has not yet been any indication that special elections will be held in time to fill the newly vacated seats before the upcoming

---

Court's order (which affirmed the three-judge panel order that had been stayed pending the appeal), not from the three-judge panel's later-in-time scheduling order. Here, this Court has afforded the legislature 47 weeks from the date of the merits order—and, indeed, 24 weeks from this Court's order setting a remedial hearing—to pass maps that comply with this Court's order.

[2] Alternatively, if this Court is not inclined to reschedule the remedial hearing, Plaintiffs maintain their earlier position that the only alternative is a partial stay of this Court's injunction. Absent an expedited remedial process, a partial stay should be limited to special elections to fill the current House vacancies in HD 45 and HD 67.

legislative session, which is now only seven weeks away.[3] Indeed, based on the currently scheduled elections—the next of which are scheduled for May 3, 2025 and October 11, 2025—it is not clear whether any representative elected in a special election would be seated before the end of the legislative session, particularly if runoff elections are needed.[4] That potential delay weakens the support for staying the injunction rather than allowing the remedial proceedings to take place and filling the seats under lawful maps.

Moreover, when the Court issued the currently scheduled August 2025 remedial hearing, s*ee* ECF No. 279, the briefing and oral argument for the pending appeal in this matter had not yet been scheduled. All briefing and the oral argument on the appeal in this matter have now been completed. *See* ECF No. 296, *Nairne v. Landry*, Case No. 24-30115 (reflecting that oral argument was heard on January 7, 2025). While the timing and, of course, the outcome of the appeal is still unknown, progress on the appeal process increases the likelihood that a decision will issue soon. Plaintiffs, therefore, request that the Court reconsider its earlier ruling and expedite the remedial process so that remedial maps can be available immediately if Plaintiffs prevail.

## IV.   CONCLUSION

WHEREFORE, for these reasons and any others apparent to this Court, Plaintiffs respectfully request that the Court set a scheduling conference to address a new, more expedited schedule for selecting remedial maps.

---

[3] Plaintiffs' counsel inquired as to the date of the special election that Defendant seeks, but counsel for Secretary Landry was unable to provide a date, stating: "The dates for the election are set by the official proclamation issued by the Legislature, so the Secretary does not currently have clarity on the dates."

[4] Louisiana law requires at least twenty days between when the votes in the initial election are counted and date of the runoff election. *See* La. Rev. Stat. § 42:1360.

Date: March 5, 2025

Stuart Naifeh*
Victoria Wenger*
Colin Burke*
NAACP Legal Defense & Educational Fund
40 Rector Street, 5th Floor
New York, NY 10006
laden@naacpldf.org
snaifeh@naacpldf.org
vwenger@naacpldf.org
cburke@naacpldf.org

I. Sara Rohani*
NAACP Legal Defense & Educational Fund
700 14th Street, Suite 600
Washington, DC 20005
srohani@naacpldf.org

Michael de Leeuw*
Amanda Giglio*
Cozen O'Connor
3 WTC, 175 Greenwich St., 55th Floor
New York, NY 10007
MdeLeeuw@cozen.com
AGiglio@cozen.com

Josephine Bahn*
Cozen O'Connor
1200 19th Street NW
Washington, D.C. 20036
JBahn@cozen.com

Robert S. Clark*
Cozen O'Connor
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
robertclark@cozen.com

Ron Wilson (La. Bar No. 13575)
701 Poydras Street, Suite 4100
New Orleans, LA 70139
cabral2@aol.com

Respectfully submitted,

*/s/ John Adcock*
John Adcock
Adcock Law LLC
Louisiana Bar No. 30372
3110 Canal Street
New Orleans, LA 701119
jnadcock@gmail.com

*/s/ Megan C. Keenan*
Megan C. Keenan*
Sarah Brannon*
American Civil Liberties Union Foundation
915 15th St. NW
Washington, DC 20005
sbrannon@aclu.org
mkeenan@aclu.org

Sophia Lin Lakin*
Dayton Campbell-Harris*†
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
slakin@aclu.org
dcampbell-harris@aclu.org

T. Alora Thomas-Lundborg
Daniel J. Hessel
Election Law Clinic
Harvard Law School
6 Everett Street, Ste. 4105
Cambridge, MA 02138
tthomaslundborg@law.harvard.edu
dhessel@law.harvard.edu

Nora Ahmed
ACLU Foundation of Louisiana
1340 Poydras St, Ste. 2160
New Orleans, LA 70112
Tel: (504) 522-0628
nahmed@laaclu.org

*Attorneys for Plaintiffs*
*\* Admitted pro hac vice.*
*† Practice is limited to federal court.*

9

## CERTIFICATE OF SERVICE

I certify that on March 5, 2025, this document was filed electronically on the Court's electronic case filing system on behalf of all parties. Notice of the filing will be served on all counsel of record through the Court's system. Copies of the filing are available on the Court's system.

*/s/ Megan C. Keenan*
Megan C. Keenan (admitted *pro hac vice*)
American Civil Liberties Union Foundation
915 15th St. NW
Washington, DC 20005
mkeenan@aclu.org

*Counsel for Plaintiffs*
