# **Exhibit 4**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SANDRA LITTLE COVINGTON, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:15-CV-399 |
| STATE OF NORTH CAROLINA, et al., | ) ) ) | |
| Defendants. | ) ) | |

**ORDER**

To assist in evaluating remedial districts drawn by the State after a number of legislative districts were held unconstitutional and to draw alternative maps for some of those districts, the Court appointed a Special Master. After considering the bill submitted by the Special Master and the Legislative Defendants' objections, the Court finds the amount of the bill to be reasonable and overrules the objections. The Special Master's work was helpful to the Court, and his fees are very reasonable, especially considering the detailed work he did on a short schedule.

**Procedural History**

In May 2015, the Plaintiffs filed suit challenging the constitutionality of nine state Senate districts and nineteen state House districts as racial gerrymanders. Doc. 1. In August 2016, this Court unanimously held that the challenged House and Senate districts were unconstitutional. *Covington v. North Carolina,* 316 F.R.D. 117, 124 (M.D.N.C.

2016). The Supreme Court summarily affirmed. *North Carolina v. Covington*, 137 S. Ct. 2211 (2017) (mem).

In August 2017, the North Carolina General Assembly enacted redistricting plans intended to remedy the constitutional violations. Doc. 184. The Plaintiffs objected to 12 of the 116 remedial districts. Doc. 187. After completion of briefing and a hearing on October 12, 2017, this Court found that 9 of these objections potentially had merit, identified specific concerns, and gave notice of its intent to appoint a Special Master to be paid by the State. Doc. 202. On November 1, 2017, the Court appointed Dr. Nathaniel Persily as Special Master. Doc. 206.

On November 14, 2017, the Special Master provided a draft plan to the parties for their comments and suggestions. Doc. 213. On December 1, 2017, the Special Master submitted his recommended remedial plans to the Court, along with a report explaining his process and why the recommended plans remedied the identified legal problems. Doc. 220. After a hearing, this Court approved the General Assembly's 2017 Plans as modified by the Special Master's recommended plans. Doc. 242.

On February 20, 2018, the Court ordered the Clerk to file the Special Master's Statement of Fees, Minute Entry 2/20/2018, which was done. Doc. 251. The Legislative Defendants object to being ordered to pay the Special Master's fees. Doc. 253. Neither the State nor the Plaintiffs filed a response or objection to the fee statement.

## Analysis and Findings

Under the Federal Rules of Civil Procedure, special masters are to be paid by one or more parties or from a fund within the court's control. Fed. R. Civ. P. 53(g). Rule

53(g) provides the Court with the discretion in deciding who should pay the Special Master. *Id.; see Moore v. Tangipahoa Par. Sch. Bd.,* 843 F.3d 198, 202 (5th Cir. 2016) (holding that "[t]he fixing of fees and costs for a special master rests within the court's discretion); *Morgan v. Kerrigan*, 530 F.2d 401, 427 (1st Cir. 1976) (noting that trial courts have "broad discretion in fixing the amount of such compensation and in determining which of the parties to charge"); *cf. Newton v. Consol. Gas Co.*, 259 U.S. 101, 104 (1922) (recognizing district court's discretion under previous rules).  If the district court allocates payment among more than one party, it must consider "the nature and amount of the controversy, the parties' means, and the extent to which any party is more responsible than other parties for the reference to a master." Fed. R. Civ. P. 53(g)(3).

Rule 53(g) itself contemplates consideration of the extent to which one party is more responsible than other parties for the reference to a master, and it is well-established that a district court can appropriately consider the fact that one party's conduct necessitated the lawsuit. *See, e.g., Gary W. v. Louisiana*, 601 F.2d 240, 246 (5th Cir. 1979) (district court does not abuse its discretion by taxing losing party with full share of the master's fee); *Morgan*, 530 F.2d at 427 (no abuse of discretion where district court determined that master was to be compensated for services by the school district against which the desegregation suit was brought); *Hart v. Cmty. Sch. Bd. of Brooklyn, N.Y. Sch. Dist. No. 21*, 383 F. Supp. 699, 767 (E.D.N.Y. 1974) (awarding costs of master against the defendant with ability to pay when school authorities, city, state, and federal agencies had supported unlawful racial segregation that required a school desegregation suit).

The Special Master in this case worked on a short time frame. There were a number of districts involved, the Court imposed significant restrictions on his work in order to insure that state policy preferences were accommodated, and the task required significant technical skill. In two weeks, the Special Master prepared a draft report so that the parties would have an opportunity to participate in his review and redrawing of districts. Just over two weeks later, the Special Master filed a clear, detailed, and thorough report which was valuable and helpful to the Court and allowed the Court to resolve the case in a prompt manner.

The Court has reviewed the Special Master's bill and finds it reasonable and, given the circumstances, well below what might have been charged. In a case involving a significantly less complicated remedial plan for a single congressional district in a neighboring state, the district court required the State to pay fees and expenses of the Special Master in the sum of $80,788.64. Order, *Personhuballah v. Alcorn*, No. 3:13-cv-678, Doc. 304 (E.D.Va. Jan. 29, 2016); *see also Personhuballah v. Alcorn*, 155 F. Supp. 3d 552, 556 (E.D. Va. 2016) (appointing special master to redraw Virginia's Third Congressional District). While the Special Master's hourly rate in *Personhuballah* was $400 per hour, Special Master's Fee Statement, *Personhuballah v. Alcorn*, No. 3:13-cv-678, Doc. 302 (E.D.Va. Jan. 12, 2016), and the Special Master here charged an hourly rate of $500 for his own time, Doc. 251 at 1, a significant amount of work was done by an associate who charged only $250 an hour. *Id.* Moreover, in the expectation that his fee will be paid within one month of the Court's order, the Special Master has agreed to waive compensation for his expenses (approximately $16,700) and to reduce his fee by

4

10 percent, meaning that his effective rate is $450 per hour. *See id.* While the defendants retained someone to review part of the Special Master's work at a lower hourly rate, the Legislative Defendants have presented no evidence that any expert with qualifications remotely approaching Dr. Persily's experience and expertise was available on short notice to conduct the necessary work in such a short time frame.

The matters at issue in this case have a high degree of public importance. Election of state legislators is a meaningful part of the civic life of citizens and the need for districts which comply with the federal and state constitutions is of obvious consequence.

Having considered the time necessarily spent by the Special Master, the thoroughness of the Special Master's services, the public importance of the matter involved, the difficulty of the issues presented, the Special Master's appreciable background and distinction, the typical hourly rate in comparable matters, and the assistance the Special Master provided to a final disposition of the issues referred to him, the Court finds that the fees and expenses requested by the Special Master are reasonable.

The Court further concludes that it is appropriate to require the State of North Carolina to pay the Special Master's fees and expenses. It was the State of North Carolina that enacted the unconstitutional districting plan in 2011 that necessitated this lawsuit and the need for a remedial redistricting process. It was the State of North Carolina which enacted remedial plans which gave rise to serious questions about their constitutionality and as to whether they were, in fact, remedial. The Plaintiffs bear no responsibility for the need for a Special Master, and it would be unfair to require them to pay for the services of a Special Master when it was the State's actions that led to the

5

need for those services. Indeed, the Advisory Committee Note to Rule 53 specifically indicates that "parties pursuing matters of public interest, for example, may deserve special protection" when it comes to deciding responsibility for payment of the Special Master's fees.

### The Legislative Defendants' Objections.

The Legislative Defendants raise four objections in their Statement of Position. Doc. 253. First, the Legislative Defendants contend that the State of North Carolina should not be responsible for Dr. Persily's fees and expenses because appointing a Special Master was "not necessary" to cure the constitutional deficiencies. Doc. 253 at 5. Specifically, they contend that this Court should have afforded the State another opportunity to remedy the unconstitutional districts and that the General Assembly could have easily provided an "alternative" districting plan by the December 1, 2017, deadline. *Id.* at 5-6. They also point out that the General Assembly could have provided an alternative plan for less than the $124,125 charged by Dr. Persily. *Id.* at 6-7.

Given that the State of North Carolina drew the original unconstitutional districts and drew the districts which had obvious problems in failing to remedy those constitutional defects, the Court was not required to rely exclusively on the State for another remedial plan. The Special Master's work here helped the Court evaluate the allegedly remedial districts drawn by the State and allowed the Court to enter a remedial order well before the filing period for the 2018 elections. The State's contention that the Special Master was unnecessary is without merit.

6

Second, the Legislative Defendants contend that the Court should apportion the Special Master's fees equally between the parties because the Supreme Court may reverse all or part of this Court's decision. Doc. 253 at 8. Even if this is so, that is not a reason to require the Plaintiffs to pay part of the expenses. It is undisputed that the State enacted unconstitutional districts in 2011, and the use of Special Masters in the remedial context is well-established as helpful to courts with the responsibility of evaluating plans by state legislatures which allegedly cure the constitutional violations. Here, the Court needed the assistance of a Special Master to determine if the State cured those constitutional violations and, if not, to provide a constitutional remedy. The Legislative Defendants also say that the Plaintiffs should pay part of the fees and expenses because at least one third-party is funding the Plaintiffs' litigation fees and expenses, *id.*, but they do not explain why this makes a difference in who should pay the Special Master's fees. The Legislative Defendants also say that the Plaintiffs are more responsible than the Legislative Defendants for the Special Master's appointment, *id.* at 9, but this argument would essentially punish the Plaintiffs for seeking to have their constitutional rights enforced by the Court.

Third, the Legislative Defendants contend that if the Court orders the State to pay the Special Master's fees and expenses, this order should be treated as an "interim allocation" because, should the State prevail at the U.S. Supreme Court, it would be unfair for the State to bear the Special Master's expenses. *Id.* at 9; *see also* Fed. R. Civ. P. 53(g)(3). While Rule 53 permits the court to make an "interim allocation" which may later "be amended to reflect a decision on the merits," *id.,* this Court has already reached

7

a decision on the merits.  Moreover, as discussed *supra*, the Special Master's assistance was helpful to the Court in evaluating the State's remedial plan, and it is not necessary that the State's remedial plan be held unconstitutional in order to require the State to pay the Special Master's fee.

Finally, the Legislative Defendants contend that if the State pays the Special Master's fees and expenses, the Special Master should be required to make all of his work product available to the public.  Doc. 253 at 10.  This issue is unrelated to the question of who should pay the Special Master.

It is **ORDERED** that the State of North Carolina is directed to render payment in the amount of $124,125 to Dr. Nathaniel Persily not later than thirty days from the date of the entry of this Order.

This the 22nd day of March, 2018.

/s/ James A. Wynn, Jr.
UNITED STATES CIRCUIT JUDGE

/s/ Thomas D. Schroeder
UNITED STATES DISTRICT JUDGE

/s/ Catherine C. Eagles
UNITED STATES DISTRICT JUDGE

8