# EXHIBIT E

FILED

2023 Sep-05 AM 08:28
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **BOBBY SINGLETON,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:21-cv-1291-AMM** |
| | ) | |
| **WES ALLEN,** *in his official* | ) | **THREE-JUDGE COURT** |
| *capacity as Alabama Secretary of* | ) | |
| *State,* *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

| | | |
|---|---|---|
| **EVAN MILLIGAN,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:21-cv-1530-AMM** |
| | ) | |
| **WES ALLEN,** *in his official* | ) | **THREE-JUDGE COURT** |
| *capacity as Alabama Secretary of* | ) | |
| *State,* *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

| | | |
|---|---|---|
| **MARCUS CASTER,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:21-cv-1536-AMM** |
| | ) | |
| **WES ALLEN,** *in his official* | ) | |
| *capacity as Secretary of State of* | ) | |
| *Alabama,* *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

Before MARCUS, Circuit Judge, MANASCO and MOORER, District Judges.

BY THE COURT:

## ORDER

On January 24, 2022, this Court preliminarily enjoined the Secretary of State from conducting elections using the 2021 congressional districting plan enacted by the Alabama Legislature ("the 2021 Plan") upon finding that the 2021 Plan likely violated Section 2 of the Voting Rights Act, 52 U.S.C. § 10301. *See Singleton* Doc. 88; *Milligan* Doc. 107; *Caster* Doc. 101. Specifically, we found that the *Milligan* and *Caster* Plaintiffs were "substantially likely to establish each part of the controlling Supreme Court test, including: (1) that Black Alabamians are sufficiently numerous to constitute a voting-age majority in a second congressional district . . .; (2) that Alabama's Black population in the challenged districts is sufficiently geographically compact to constitute a voting-age majority in a second reasonably configured district . . .; (3) that voting in the challenged districts is intensely racially polarized . . .; and (4) that under the totality of the circumstances, including the factors that the Supreme Court has instructed us to consider, Black voters have less opportunity than other Alabamians to elect candidates of their choice to Congress." *Milligan* Doc. 107 at 4–5.

This Court gave the Alabama Legislature the first opportunity to enact a remedial plan, but we notified the parties of our intent to appoint Mr. Richard Allen

as a Special Master and Dr. Nathaniel Persily as a cartographer in the event the Court was required to order its own remedial districting plan.  *See Singleton* Doc. 101; *Milligan* Doc. 129; *Caster* Doc. 119.  The parties were afforded an opportunity to object to these appointments; no party did so.  Accordingly, on February 7, 2022, the Court appointed Mr. Allen and Dr. Persily to serve as Special Master and cartographer, respectively.  *Singleton* Doc. 102; *Milligan* Doc. 130; *Caster* Doc. 120.  That same day, and before either Mr. Allen or Dr. Persily had conducted any work, the Supreme Court stayed this Court's preliminary injunction.

On June 8, 2023, the Supreme Court affirmed our preliminary injunction in all respects, *Allen v. Milligan*, 143 S. Ct. 1487, 1498 (2023), and on June 12, the Supreme Court lifted the stay, *Allen v. Milligan*, 143 S. Ct. 2607 (2023).  The Defendants then requested that the Court allow the Alabama Legislature an opportunity to enact a remedial plan before imposing court-ordered discovery and conducting a remedial hearing.  Recognizing that "[r]edistricting is never easy," *Abbot v. Perez*, 138 S. Ct. 2305, 2314 (2018), and is "primarily and foremost a state legislative responsibility," *Wesch v. Hunt*, 785 F. Supp. 1491, 1497 (S.D. Ala. 1992), *aff'd sub nom. Camp v. Wesch*, 504 U.S. 902 (1992), *and aff'd sub nom. Figures v. Hunt*, 507 U.S. 901 (1993), this Court delayed commencing remedial proceedings for thirty days to afford the Legislature that opportunity.

3

On July 21, 2023, the Legislature approved and Governor Ivey signed into law a new congressional districting map ("the 2023 Plan").  All Plaintiffs timely objected to the 2023 Plan as insufficiently remediating the likely Section 2 violation found by this Court and affirmed by the Supreme Court.  *See Singleton* Doc. 147 (objecting to the 2023 Plan on constitutional grounds only); *Milligan* Doc. 200 (objecting to the 2023 Plan on constitutional grounds and statutory grounds); *Caster* Doc. 179 (objecting to the 2023 Plan on statutory grounds only).

On July 24, 2023, Dr. Persily withdrew as a cartographer.  *See Singleton* Doc. 141; *Milligan* Doc. 187; *Caster* Doc. 166.  After taking submissions for proposed cartographers from the parties, *see Singleton* Docs. 141, 150, 151; *Milligan Docs.* 187, 197, 198; *Caster Docs.* 166, 174, 175, the Court notified the parties of its intent to appoint Mr. David R. Ely as a cartographer to assist the Special Master in the performance of his duties and responsibilities, *see Singleton* Doc. 155; *Milligan* Doc. 204; *Caster* Doc. 185. The Court gave the parties an opportunity to object, *see Singleton* Doc. 155; *Milligan* Doc. 204; *Caster* Doc. 185; no party objected to Mr. Ely's appointment.

On August 8, 2023, this Court appointed Mr. Ely to assist the Special Master as a cartographer.  *See Singleton* Doc. 166; *Milligan* Doc. 226; *Caster* Doc. 196.  In the same order, we notified the parties that Mr. Allen had requested the Court to appoint a law firm to assist him in the performance of his duties, and that the Court

4

had chosen Mr. Michael Scodro and Mayer Brown LLP, his firm, to do so. The parties were given an opportunity to object to the appointment of Mr. Scodro and Mayer Brown LLP; again, no party did so.

On August 10, 2023, pursuant to Federal Rule of Civil Procedure 53(a)(2), Mr. Allen, Mr. Ely, and Mr. Scodro each filed affidavits attesting that they were aware of no grounds for their disqualification under 28 U.S.C. § 455. *See Singleton* Docs. 172, 173, 174; *Milligan* Docs. 239, 240, 241; *Caster* Docs. 204, 205, 206. Still again, no party objected. Finally, on August 14, Mr. Scodro and Mayer Brown LLP were appointed to assist Mr. Allen in the performance of his duties as Special Master. *Singleton* Doc. 183; *Milligan* Doc. 264; *Caster* Doc. 218.

On August 14, this Court conducted a remedial hearing to consider the *Milligan* and *Caster* Plaintiffs' objections to the 2023 Plan. The following day, on August 15, this Court conducted a preliminary injunction hearing to consider the *Singleton* Plaintiffs' request to preliminarily enjoin the 2023 Plan. Following those hearings, on September 5, 2023, this Court concluded that the 2023 Plan did not remedy the likely Section 2 violation found by this Court and affirmed by the Supreme Court. We, therefore, preliminarily enjoined Secretary Allen from using the 2023 Plan in Alabama's upcoming 2024 congressional elections.

"Federal-court review of districting legislation represents a serious intrusion on the most vital of local functions. It is well settled that 'reapportionment is

primarily the duty and responsibility of the State.'" *Miller v. Johnson*, 515 U.S. 900, 915 (1995) (quoting *Chapman v. Meier*, 420 U.S. 1, 27 (1975)).  However, "when those with legislative responsibilities do not respond, or the imminence of a state election makes it impractical for them to do so, it becomes the unwelcome obligation of the federal court to devise and impose a reapportionment plan pending later legislative action." *Wise v. Lipscomb*, 437 U.S. 535, 540 (1978) (opinion of White, J.) (quotation marks and citation omitted).

Accordingly, this Court **ORDERS** as follows:

1.     The Special Master and his team shall file with the Court three (3) proposed remedial plans to remedy the likely Section Two violation identified in this Court's injunction issued on September 5, 2023.  Each plan should include color maps with inset maps sufficient to clearly show the boundaries that divide political subdivisions in the state, along with demographic data for each proposed map (including population deviations of each district, Black voting-age population of each district, and any other relevant criteria).  The Special Master and his team shall file a Report and Recommendation ("R&R") along with these proposed plans that explains in some detail the choices made in each proposed plan, the differences between the proposed plans, and why each plan remedies the likely vote dilution found by this Court.  Specifically, the R&R should discuss the facts and legal analysis supporting the proposed districts' compliance with the U.S. Constitution,

the Voting Rights Act, traditional redistricting criteria, and the other criteria listed below.  The proposed plans and an accompanying R&R shall be filed on the *Singleton*, *Milligan*, and *Caster* docket sheets no later than the close of business **MONDAY, SEPTEMBER 25, 2023**.  However, if the Special Master is able to complete his task before that date, we encourage him to file those plans and an accompanying R&R as expeditiously as possible, consistent with the need for thoughtful and deliberate analysis.

2.      Each of the three proposed plans shall:

a.      Completely remedy the likely Section 2 violation identified in this Court's order of September 5, 2023.  Each map shall remediate the essential problem found in the 2023 Plan – the unlawful dilution of the Black vote in Alabama's congressional redistricting regime.  To that end, each proposed map shall "include[] either an additional majority-Black congressional district, or an additional district in which Black voters otherwise have an opportunity to elect a representative of their choice."  *Milligan* Doc. 107 at 5.

b.      Comply with the U.S. Constitution and the Voting Rights Act.

c.      Comply with the one-person, one-vote principle guaranteed by the Equal Protection Clause of the Fourteenth Amendment, based on data from the 2020 Census.  Any remedy shall ensure that one person's "vote in a

7

congressional election" is as "nearly as is practicable . . . worth as much as another's." *Wesberry v. Sanders*, 376 U.S. 1, 7–8 (1964). When a State designs a districting plan, the Supreme Court has "explained that the 'as nearly as is practicable' standard does not require that congressional districts be drawn with 'precise mathematical equality,' but instead that the State justify population differences between districts that could have been avoided by 'a good-faith effort to achieve absolute equality.'" *Tennant v. Jefferson Cnty. Comm'n*, 567 U.S. 758, 759 (2012) (citation omitted). But court-ordered plans must comply even more strictly with the principle of one-person, one-vote "in the absence of significant state policies or other acceptable considerations that require adoption of a plan with so great a variance." *Chapman*, 420 U.S at 24. To that end, the Special Master and his team must ensure that "there are no *de minimis* population variations, which could practicably be avoided, but which nonetheless meet the standard of Art. I, § 2 without justification." *Karcher v. Daggett*, 462 U.S. 725, 734 (1983). Any "showing required to justify population deviations [shall be] proportional to the size of the deviations." *Larios v. Cox*, 300 F. Supp. 2d 1320, 1356 (N.D. Ga.) (three-judge court), *aff'd*, 542 U.S. 947 (2004).

d. Respect traditional redistricting principles to the extent reasonably practicable. Ordinarily, these principles "[i]nclud[e] compactness,

8

contiguity, respect for political subdivisions or communities defined by actual shared interests, incumbency protection, and political affiliation." *Ala. Legislative Black Caucus v. Alabama*, 575 U.S. 254, 272 (2015) (quotation marks and citations omitted). That said, the Alabama Legislature has substantially more discretion than does this Court in drawing a remedial map: state legislatures may consider political circumstances that courts may not. *See, e.g.*, *Upham v. Seamon*, 456 U.S. 37, 42 (1982) (per curiam); *Connor v. Finch*, 431 U.S. 407, 414–15 (1977); *Wyche v. Madison Parish Police Jury*, 635 F.2d 1151, 1160 (5th Cir. 1981). In other words, "in the process of adopting reapportionment plans, the courts are 'forbidden to take into account the purely political considerations that might be appropriate for legislative bodies,'" such as incumbency protection and political affiliation. *Larios v. Cox*, 306 F. Supp. 2d 1214, 1218 (N.D. Ga. 2004) (three-judge court) (quoting *Wyche*, 635 F.2d at 1160). Thus, consistent with these limitations, the Special Master shall consider traditional redistricting criteria, such as compactness, contiguity, respect for political subdivisions, and maintenance of communities of interest.

3.     The Special Master and his team may consider, as background, among other things, the eleven illustrative plans submitted by the *Milligan* and *Caster* Plaintiffs; the remedial maps submitted by the *Singleton* Plaintiffs (known as the

"Whole County Plans"); and the 2021 Plan and the 2023 Plan, which were both found to likely violate Section 2. They may also consider the Reapportionment Committee Redistricting Guidelines, which were adopted by the reapportionment committee in drawing both the 2021 Plan and the 2023 Plan, and which this Court approved of in its preliminary injunction order, and the findings adopted by the Alabama Legislature in fashioning the 2023 Plan. Finally, the Special Master and his team may consider all the record evidence received in the first preliminary injunction hearing conducted by this Court in January 2022, as well as the record evidence received by this Court at the remedial hearing conducted on August 14, 2023, and the record evidence received by this Court at the preliminary injunction hearing conducted on August 15, 2023.

4. The Special Master and his team shall not engage in any *ex parte* communications with any of the parties or their counsel, but they may engage in *ex parte* communications with the Court as the need may arise.

5. Pursuant to Federal Rule of Civil Procedure 53(c)(1), the Special Master is authorized to issue appropriate orders as may be reasonably necessary for him to accomplish his task within the time constraints imposed by this Order, and the time exigencies surrounding these proceedings. He is directed to invite submissions and comments from the parties and other interested persons, hold a hearing as may be necessary to reasonably assist him in developing and presenting

10

three remedial plans to this Court, and take such testimony as he may deem necessary.

6.  The Special Master and his team shall maintain orderly files consisting of all documents submitted to them by the parties and any written orders, findings, and recommendations.  All other materials relating to their work shall be preserved until relieved of this obligation by the Court.  The Special Master and his team should preserve all datasets used in the formulation of redistricting plans, and any drafts considered but not recommended to the Court in their native format.

7.  To facilitate the work of the Special Master and his team:

a.  Defendants are **ORDERED** to notify the Special Master, Mr. Ely, and the Special Master's team in writing, no later than **12:00 pm Central Daylight Time on September 6, 2023**, whether they have a Maptitude license to make available to the Special Master and his team for their use in this case, or whether it will be necessary for them to acquire one for that purpose (the cost of which ultimately will be taxed to Defendants).

b.  Defendants are **ORDERED** to provide the Special Master, Mr. Ely, and the Special Master's team, no later than **12:00 pm Central Daylight Time on September 6, 2023**: (i) the block equivalency files for the 2023 Plan, the 2021 Plan, and the 2021 Plan's predecessor (the plan described in the preliminary injunction order of January 24, 2022, as "the 2011 congressional

11

map"); (ii) shapefiles for Alabama's municipalities and current voting districts (precincts); and (iii) a shapefile reflecting the location of the current residence of each of Alabama's current members of the United States House of Representatives.

      c.     The *Milligan*, and *Caster* Plaintiffs are **ORDERED** to provide the Special Master, Mr. Ely, and the Special Master's team, no later than **12:00 pm Central Daylight Time on September 6, 2023**: (i) the block equivalency files for the remedial maps offered by the *Milligan* Plaintiffs in connection with their claims under the Voting Rights Act (the plans that are referred to in the preliminary injunction order of January 24, 2022, as the "Duchin plans" and the "Hatcher plan"); and (ii) the block equivalency files for the remedial maps offered by the *Caster* Plaintiffs in connection with their claim (the plans that are referred to in the preliminary injunction order of January 24, 2022, as the "Cooper plans").

8.     All reasonable costs and expenses incurred by the Special Master and his team, including reasonable compensation for those persons and any assistants they have retained, shall (subject to the approval of this Court) be paid by the State of Alabama. The Special Master and his team shall take special care to protect against unreasonable expenses. The Special Master and his team are authorized to

hire research and technical assistants and to purchase any software reasonably necessary to perform the duties and responsibilities of the Special Master.

9.    After the Special Master has filed three proposed maps and an accompanying R&R in each of the *Singleton*, *Milligan* and *Caster* docket sheets, and has promptly served a copy on each party, pursuant to Federal Rule of Civil Procedure 53(e), the parties and all interested persons shall have three (3) days from the date the proposed maps and R&R are entered to file any written objections with this Court.

10.   If a hearing on objections is necessary, the Court has provisionally reserved **TUESDAY, OCTOBER 3, 2023**, commencing at 9:00 am Central Daylight Time, for an **IN-PERSON** public hearing in the Special Proceedings Courtroom of the Hugo L. Black United States Courthouse in Birmingham, Alabama.

**DONE** and **ORDERED** this 5th day of September 2023.

**STANLEY MARCUS**
UNITED STATES CIRCUIT JUDGE

**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE

**TERRY F. MOORER**
UNITED STATES DISTRICT JUDGE

14