**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| DR. DOROTHY NAIRNE, *et al.,* | |
| *Plaintiffs,* | |
| v. | Civil Action No. 3:22-cv-00178-SDD-SDJ |
| R. KYLE ARDOIN, in his official capacity as Secretary of State of Louisiana, | Chief Judge Shelly D. Dick |
| *Defendant.* | Magistrate Judge Scott D. Johnson |

**MEMORANDUM IN SUPPORT OF**
**JOINT MOTION TO STAY OR TO POSTPONE THE EVIDENTIARY HEARING**
**DATE AND MODIFICATION OF SCHEDULING ORDER**

Intervenor-Defendant, the State of Louisiana, by and through Attorney General Liz Murrill, Legislative Intervenors, and Defendant Nancy Landry, in her official capacity as Secretary of State of Louisiana (collectively, "Defendants"), through undersigned counsel, respectfully submit this memorandum in support of their Joint Motion to Stay or to Postpone the Evidentiary Hearing Date and For Modification of Scheduling Order for the reasons more fully expressed below.

**BACKGROUND**

The State of Louisiana has been trapped in a cycle of redistricting whiplash from the moment it enacted its redistricting plans following the 2020 Census. Multiple federal lawsuits were filed by various plaintiffs challenging the state's new congressional, State Senate, and State House plans as unlawfully diluting Black voters' voting strength in violation of Section 2 of the Voting Rights Act.

1

*Congressional Plan Litigation*

On June 6, 2022, this Court preliminarily enjoined Louisiana's original congressional redistricting plan after finding the plaintiffs were likely to prevail on their Section 2 claim, stating that "two majority-minority congressional districts that satisfy [*Thornburg v. Gingles*, 478 U,S. 30 (1986)] and respect traditional redistricting principles can be drawn in Louisiana." *Robinson v. Ardoin*, 605 F. Supp. 3d 759, 820 (M.D. La. 2022). The Court gave the Legislature approximately five legislative days to enact a remedial plan . *Robinson v. Ardoin*, 37 F.4th 208, 232 (5th Cir. 2022).

After the Fifth Circuit denied the State's request for a stay pending appeal, the State sought an emergency stay from the U.S. Supreme Court. The Supreme Court not only granted the emergency stay; it treated the State's request as an application for certiorari before judgment, granted it, and held the case pending its decision in a separate redistricting challenge brought under Section 2 of the VRA: *Milligan v Allen*. *Ardoin v. Robinson,* 142 S. Ct. 2892 (2022). After issuing its decision in *Milligan*, the Supreme Court dismissed certiorari and vacated the stay, remanding the case to the Fifth Circuit. *Id.* The Fifth Circuit then remanded the case for further proceedings ahead of the 2024 election cycle. *Robinson v. Ardoin,* 86 F. 4th 547, 601 (5th Cir. 2023). While the merits of the preliminary injunction were on appeal, this Court proceeded with an expedited hearing to determine a court-ordered redistricting map with only five weeks to prepare. *In re Landry*, 83 F.4th 300, 304 (5th Cir. 2023). As a result, the State sought a writ of mandamus from the Fifth Circuit. *Id.* The Fifth Circuit granted mandamus in part, and instructed this Court to give the Legislature a fulsome opportunity to adopt a new congressional districting plan, and, if the Legislature failed, to conduct a merits trial, and only if necessary to adopt a different districting plan for the 2024 elections. *Id.* at 307-08. This Court followed the Fifth Circuit's instructions,

giving the Legislature time to adopt a new plan, and set a trial for February 5, 2024, at the request of Plaintiffs.

Governor Landry called the Legislature into extraordinary session to conduct congressional redistricting which convened on January 15, 2024.Several days of legislative compromise followed and aimed at balancing the directives of this Court's order, the Supreme Court's latest discussion of the VRA in *Milligan*, and political dynamics among elected officials. The Legislature enacted Senate Bill 8 ("S.B. 8") – a congressional plan containing two majority-Black districts as directed by this Court – which Governor Landry signed into law on January 22, 2024.

A new set of plaintiffs (the "*Callais* Plaintiffs") challenged S.B. 8's new congressional map alleging the second majority-minority district demanded by this Court was an unconstitutional racial gerrymander. *See Callais v. Landry*, 732 F. Supp. 3d 574, 581-82 (W.D. La. 2024). The *Callais* litigation highlights the amorphous distinction between the permissible and impermissible consideration of race, leaving states caught between a rock and a hard place. A trial was held less than three months later, and on April 30, 2024, a majority of the three-judge district court panel threw out the State's new congressional plan because now the Legislature unjustifiably considered race. *Id.* at 613-14. The *Callais* court gave the State until June 4, 2024, to enact a new plan before the Court would impose its own and denied the State's request for an emergency stay, causing the State to request the same from the U.S. Supreme Court. On May 15, 2024, the U.S. Supreme Court stayed the district court proceedings pending appeal. *Robinson v. Callais*, 144 S. Ct. 1171, 1171 (2024) (Mem.).

The State filed its jurisdictional statement with the Supreme Court on July 30, 2024, and oral argument was held on March 24, 2025. The questions before the Supreme Court included: (1) whether the district court properly found that race predominated when the Louisiana Legislature

admitted to drawing S.B. 8 with a quota of two majority-Black districts; (2) whether S.B. 8 satisfied strict scrutiny based on the State's alleged attempts to comply with the VRA; and (3) whether the Court should rework Equal Protection jurisprudence by declaring racial gerrymandering claims non-justiciable or by revising what is necessary for a State to satisfy strict scrutiny with regards to their consideration of race. *See* Jurisdictional Statement of Appellant State of Louisiana, *Louisiana v. Callais*, No. 24-109 (filed July 30, 2024).

*Legislative Plans Litigation*

Although filed close in time to the congressional plan challenges, the challenge to the State's legislative redistricting plans in the above-titled action has progressed at a comparatively slower pace, primarily due to outstanding questions in the field of redistricting jurisprudence. Plaintiffs filed their suit on March 14, 2022, challenging the State's new State House and State Senate districts as diluting Black voters' voting strength in violation of Section 2 of the Voting Rights Act. (Rec. Doc. 1). Much like the plaintiffs in the congressional challenges, Plaintiffs here argued Louisiana's Black population was sufficient to create between six and nine additional majority-minority state House districts and three additional state Senate districts and sought a court order requiring the State to enact new plans which hit such racial quotas.

On August 30, 2022, the district court paused proceedings pending the U.S. Supreme Court's decision in *Milligan*, No. 21-1086, a then-pending case involving issues which, when decided, would directly impact the outcome of the legislative plan challenge. The Court issued its *Milligan* opinion on June 8, 2023, 599 U.S. 1 (2023), and the district court vacated its stay on this case on June 22, 2023. (Rec. Doc. 95). Following a trial held in November 2023, the district court struck down the State House and State Senate plans as violating Section 2 of the Voting Rights Act on February 8, 2024. (Rec. Doc. 233). Defendants appealed on the merits to the U.S. Court of

Appeals for the Fifth Circuit on February 22 and March 11, 2024, and oral arguments were held

on January 7, 2025. (*See* Rec. Doc. 250; *Nairne v. Landry*, No. 24-30115 (5th Cir.). A decision

remains pending.

Meanwhile, this court determined it could continue remedial proceedings and issued the

scheduling order for a remedial phase on July 17, 2024. (Rec. Doc. 279). That order scheduled the

remedial evidentiary hearing for August 25, 2025, with a pre-trial conference set for one week

before on August 18. *Id.* On May 12, the court granted the Defendants' Consent Motion to modify

the July 17, 2024, order and laid out various deadlines to govern discovery prior to the evidentiary

hearing, including a July 9, 2025, deadline for the completion of expert discovery. (Rec. Doc. 318).

## **ARGUMENT**

I.     **The Pre-Trial Conference and Remedial Evidentiary Hearing Should Be Stayed
       Pending Appeal and the Supreme Court's Decision In *Callais*.**

When assessing a stay pending appeal, a court considers four factors: "(1) whether the stay

applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the

applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will

substantially injure the other parties interested in the proceeding; and (4) where the public interest

lies." *Nken v. Holder*, 566 U.S. 418, 426 (2009) (citation omitted). These factors are not to be

applied "in rigid or mechanical fashion." *Campaign for S. Equal. v. Bryant*, 773 F.3d 55, 57 (5th

Cir. 2014). A movant "need only present a substantial case on the merits when a serious legal

question is involved and show that the balance of the equities weighs heavily in favor of granting

the stay." *United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 39 (5th Cir. 1983) (citation

omitted).

Defendants maintain that they are likely to succeed on the merits of their appeal in this

case, which is currently pending in the Fifth Circuit. Plaintiffs likely disagree. Even if this Court

is inclined to weigh the first *Nken* factor against Defendants, it is undisputed that the legal questions presented by this case are serious to the parties and people of Louisiana. The interplay between the Equal Protection Clause and Section 2 of the Voting Rights Act has long challenged courts and state legislatures across the nation as the line between permissible use of race, *see Allen v. Milligan*, 599 U.S. 1, 31-32 (2023), and "segregate[ion]" of "the races for the purposes of voting," Shaw v. Reno, 509 U.S. 630, 641 (1993), is a thin one. *See, e.g., Cooper v. Harris*, 581 U.S. 285, 329-31 (2017) (Alito, J., concurring in part). Without knowing the Supreme Court's most recent interpretation of these issues, a remedial phase built upon potentially outdated concepts could be antithetical to the United States Constitution and require a do-over, confusing voters and wasting judicial resources in the process. Such action is unnecessary when the next legislative elections in Louisiana are not until 2027.

The majority's June 27, 2025, re-argument order provided no explanation of the specific jurisprudential struggles before the Justices in *Callais*, but the Court will be issuing a scheduling order presenting several additional questions to be addressed in supplemental briefing. While we may not know how the Justices will ultimately resolve them, these questions nevertheless provide key insights into which issues the Justices are particularly concerned with – and they indicate that *Callais* is poised to dramatically reshape the field of redistricting law as it stands today.

Furthermore, all parties will be irreparably injured if the remedial phase continues without the guidance of the Fifth Circuit's opinion in this case, where Defendants appealed this court's assessment of racial predominance and whether Plaintiffs seek unconstitutional extra-proportionality. Appellant's Br., *Nairne v. Landry*, No. 24-30115, D.E. 193 at *29-31. Indeed, the issue in this case's remedial phase and *Callais* are the same: the extent to which race can be used in the drawing of district lines when attempting to remedy a potential Voting Rights Act violation.

All parties will be irreparably injured by proceeding with a remedial decision with outstanding issues, directly on point, still pending in the appellate courts. *See Clark v. Landry,* No. 3:86-cv-00435, Dkt. 752 (M.D. La. July 17, 2025) (granting a stay in a similar case because "the prejudice suffered by Defendants in having a decision rendered using a standard that has a significant potential to change following a decision in *Callais*").Moreover, Defendants will be especially harmed due to the voter confusion that holding a remedial hearing will cause voters while the merits-opinion is still on appeal and given the ongoing uncertainty regarding the fate of Louisiana's congressional plan. And, with over two years before the next legislative elections, there is plenty of time to afford Plaintiffs' relief in the unlikely event that they ultimately prevail on the merits.

II.     **In The Alternative, The Pre-Trial Conference and Remedial Evidentiary Hearing Should Be Postponed by One Year.**

In the alternative, Defendants respectfully request this Court modify its July 17, 2024, scheduling order to postpone both the pre-trial conference and remedial evidentiary hearing by up to one year pending the U.S. Supreme Court's issuance of its final decision in *Callais*.

Scheduling orders can be modified if good cause is shown under Fed. R. Civ. P. 16(b)(4). "There are four relevant factors for determining whether good cause exists: (1) the explanation for the failure to timely [comply with the scheduling order]; (2) the importance of the [modification]; (3) potential prejudice in allowing the [modification]; and (4) the availability of a continuance to cure such prejudice." *Springboards To Educ., Inc. v. Houston Indep. Sch. Dist.*, 912 F.3d 805, 819 (5th Cir. 2019), *as revised* (Jan. 29, 2019), *as revised* (Feb. 14, 2019). All four factors support good cause to modify the remedial scheduling order here.

The absence of a remedial legislative plan from the Louisiana State Legislature by the date of the evidentiary hearing does not reflect a willful failure to comply with this Court's order, but

rather from a lack of clarity regarding how to satisfy the Court's objectives without exposing the State to additional liability under the Equal Protection Clause. Far from unfounded, the State of Louisiana has just experienced what it fears will happen here in the saga over their congressional plans. Faced with an order to redraw their congressional map with an explicit number of additional majority-minority districts included, the State did so, only for that remedial plan to be immediately challenged as unconstitutional. With the Supreme Court's decision in *Callais* set to clarify how courts should evaluate such plans, the State has acted prudently in deferring legislative action until that guidance is available to be incorporated.

The second factor, the importance of the modification, is plainly satisfied. As explained *supra*, charging blindly toward remedial legislative plans based on the same process and understanding of redistricting jurisprudence that produced the contested remedial congressional plan would likely be an exercise in futility. Without sufficient time to receive and incorporate the lessons and guidance from the impending *Callais* decision, Louisiana would undoubtedly face a renewed round of lawsuits challenging their remedial legislative plans as racial gerrymanders and, despite years of litigation, the State would be back at square one. Delaying the evidentiary hearing and related deadlines not only helps ensure the remedy in this case will comply with current law, it will better serve judicial economy than engaging in another round of avoidable litigation.

The third factor, the potential for prejudice if the modification is allowed, is also satisfied. A continuance to consider the U.S. Supreme Court's latest insights on the murky waters of redistricting jurisprudence is a minimal delay considering this Court has previously paused proceedings in this case for nearly a year on the exact same basis – to await the Supreme Court's decision in *Milligan*. No Parties would be harmed by this continuance, the litigation has already spanned more than 2 years, and the next legislative elections are over two years away. Taking an

additional time at the district court level will help ensure a proper outcome. Furthermore, given the likelihood that the remedy desired by plaintiffs here – legislative plans with specific numbers of additional majority-minority districts – will almost surely be challenged as unconstitutional after being enacted, a delay to allow the Louisiana Legislature to properly incorporate *Callais* best serves the interests of Plaintiffs as well.

Finally, the fourth factor, the availability of a continuance to cure such prejudice, is clearly met. By delaying the evidentiary hearing and related deadlines, this Court can help prevent the State's remedial legislative plans from suffering the same fate as its remedial congressional plan and avoid wasting the State's, the Court's, and the plaintiffs' time and resources on yet another round of multi-year redistricting litigation.

### III.    Revised Expert Reports.

Additionally, Defendants request this Court grant leave for the Parties to obtain and submit revised expert reports in light of the U.S. Supreme Court's eventual *Callais* decision, which is poised to materially alter the legal framework governing this litigation, should there be changes to the current legal structure governing Plaintiffs' claims. Under the current schedule, the Parties' deadline for completing expert discovery was set for July 9, 2025 – several weeks before the end of the Supreme Court's 2024-2025 term. (Rec. Doc. 318). With *Callais* now set to be decided sometime during the 2025-2026 term, the analysis and conclusions provided in the Parties' expert reports regarding the proper remedial measures to be taken in this case will fail to incorporate the high court's latest redistricting guidance.

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave," and states the court "should freely give leave when justice so requires." Given the inevitable appellate review that the remedial legislative redistricting plans to emerge from this court will face, in addition to the significant

likelihood of future litigation challenging them, it best serves all Parties and the Court to have

these remedial proceedings be informed by and aligned with the latest jurisprudence. Since this

Court has already recognized as much when it paused proceedings for nearly a year pending the

U.S. Supreme Court's *Milligan* decision, (*See* Rec. Doc. 79), a similar delay for the exact same

purpose is more than appropriate.

## CONCLUSION

For these reasons, Defendants respectfully request that this Court stay the August 18, 2025,

pretrial conference and the August 25, 2025, remedial evidentiary hearing pending decisions in

*Callais* and the Fifth Circuit's opinion on the merits of this case or, in the alternative, postponing

the same by up to one year pending the U.S. Supreme Court's decision in *Callais*; and grant leave

to the Parties to obtain and file revised expert reports in advance of the evidentiary hearing.

Respectfully submitted, this the 21st day of July, 2025.

By: _/s/ Elizabeth B. Murrill_____
Elizabeth B. Murrill (LSBA No. 20685)
Louisiana Attorney General
Carey Tom Jones (LSBA No. 07474)
Amanda M. LaGroue (LSBA No. 35509)

Office of the Attorney General
Louisiana Department of Justice
1885 N. Third St. Baton Rouge, LA 70804
(225) 326-6000 phone
(225) 326-6098 fax
murrille@ag.louisiana.gov
jonescar@ag.louisiana.gov
LaGroueA@ag.louisiana.gov

Jason B. Torchinsky (DC Bar No 976033)*
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK, PLLC
2300 N Street, NW
Suite 643A
Washington, DC 20037
Tel: 202-737-8808

Email: jtorchinsky@holtzmanvogel.com

*Counsel for Intervenor-Defendants*

By: /s/ Phillip J. Strach
Phillip J. Strach*
        Lead Counsel
Alyssa M. Riggins*
Cassie A. Holt*
Jordan A. Koonts*
NELSON MULLINS RILEY &
SCARBOROUGH LLP
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Ph: (919) 329-3800
phil.strach@nelsonmullins.com
alyssa.riggins@nelsonmullins.com
cassie.holt@nelsonmullins.com
jordan.koonts@nelsonmullins.com

/s/ John C. Walsh
John C. Walsh, LA Bar Roll No. 24903
Brooke R. Ydarraga, LA Bar Roll No. 41000
SHOWS, CALL & WALSH, L.L.P.
628 St. Louis St. (70802)
P.O. Box 4425
Baton Rouge, LA 70821
Ph: (225) 346-1461
Fax: (225) 346-1467
john@scwllp.com
brooke@scwllp.com
*\* Admitted pro hac vice*

*Counsel for Defendant Nancy Landry, in her official capacity as Secretary of State of Louisiana*

## CERTIFICATE OF SERVICE

I certify that on July 21, 2025, this document was filed electronically on the Court's

electronic case filing system. Notice of the filing will be served on all counsel of record through

the Court's system. Copies of the filing are available on the Court's system.


/s/ Jason B. Torchinsky
Jason B. Torchinsky