IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DR. DOROTHY NAIRNE, REV. CLEE EARNEST LOWE, DR. ALICE WASHINGTON, STEVEN HARRIS, BLACK VOTERS MATTER CAPACITY BUILDING INSTITUTE, and THE LOUISIANA STATE CONFERENCE OF THE NAACP,<br><br>*Plaintiffs,*<br><br>v.<br><br>NANCY LANDRY, in her official capacity as Secretary of State of Louisiana,<br><br>*Defendant.* | Civil Action No. 3:22-cv-00178 SDD-SDJ |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY OR POSTPONE THE EVIDENTIARY HEARING DATE AND MODIFICATION OF SCHEDULING ORDER**

Plaintiffs brought this lawsuit alleging that Louisiana's state legislative maps violate the Voting Rights Act back in 2022. Following a seven-day trial in November 2023, this Court issued a ruling in February 2024 confirming that Louisiana's state legislative maps are unlawful. For nearly a full year, the remedial hearing to determine what maps will remedy the harm Plaintiffs have suffered has been set to begin on August 25, 2025. Rather than presenting this Court with any remedial plan for consideration, Defendants seek, yet again, to delay this case at the eleventh hour.[1] This time, their delay threatens to push the remedial hearing in this case out as far as the summer of 2026—dangerously nearer in time to the next regularly scheduled state legislative elections in 2027. This Court should not countenance Defendants' latest stalling tactic.

---

[1] *See, e.g.*, ECF No. 92; ECF No. 101; ECF No. 107; ECF No. 184.

1

**ARGUMENT**

I. **Defendants Have Not Established That Staying or Postponing the Remedial Hearing is Warranted.**

Defendants cannot establish that the factors set forth in *Nken v. Holder*, 566 U.S. 418, 426 (2009), warrant a stay. "The first two factors of the traditional standard are the most critical," *id.* at 434, and Defendants' invocation of the Supreme Court's recent order setting *Louisiana v. Callais* for reargument at some point in its next term is inadequate to satisfy either of those critical factors.[2]

Defendants' representations of and reliance upon *Louisiana v. Callais* as a basis to stay or postpone the impending remedial hearing boil down to no more than a possibility that case *might* address an issue relevant to this one. That "mere possibility" falls short of the "strong showing" that the case law requires to satisfy the first stay factor, *Nken*, 566 U.S. at 434 (citations and quotation marks omitted), and it runs counter to the Supreme Court's repeated guidance that courts should apply the law based on existing, controlling precedent, rather than predict the direction in which the Supreme Court might take the law in future cases. *See, e.g.*, *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023); *Agostini v. Felton*, 521 U.S. 203, 237 (1997); *see also* ECF No. 135, *Robinson v. Ardoin*, No. 3:22-cv-00211 (M.D. La. May 4, 2022) ("The blow to judicial economy and prejudice to Plaintiffs that would result from granting [a stay] cannot be justified by speculation over future Supreme Court deliberations, and the Court is not persuaded that halting

---

[2] Apart from gesturing at the possible change that the *Callais* decision may bring, Defendants make no other substantive showing that they are likely to succeed on the merits in this case. That is unsurprising: Following trial, this Court found that Plaintiffs established each of the three *Gingles* preconditions under the same legal standard that the Supreme Court reaffirmed just two years ago in *Allen v. Milligan*, 599 U.S. 1 (2023), *see* ECF No. 233 at 21–75, and that, as to the totality of the circumstances, Plaintiffs established each of the relevant Senate factors on an evidentiary record that was "not meaningfully contest[ed]," *id.* at 75–88.

these proceedings to await a result that would be 'informative' is defensible."). Likewise, "simply showing some 'possibility of irreparable injury' fails to satisfy the second factor." *Nken*, 556 U.S. at 434–35 (citation omitted).

Moreover, Defendants' representations about the purported impact *Callais* could have on this case are peculiar in more ways than one. To be sure, on June 27, 2025, the Supreme Court restored *Callais* to its calendar for reargument next term. *Louisiana v. Callais*, 145 S. Ct. 2608 (2025). To date, though, the Supreme Court has given no indication of why it set the case for reargument, nor—contrary to Defendants' suggestion—has it specified which if any additional questions it wants the parties to address in supplemental briefing. *Id.*[3] It is entirely speculative to suppose that any such additional concerns of the Supreme Court would impact this case in any way, particularly given the substantive differences between the cases. *Callais* involves the merits of a Fourteenth Amendment racial gerrymandering challenge to a congressional redistricting map passed by the state of Louisiana. The impending August 25, 2025 hearing before this Court, in contrast, involves the remedial phase of a Voting Rights Act challenge to Louisiana's state legislative maps, in which Plaintiffs are the only party who have submitted any map for the Court's consideration as a remedy. Moreover, as it currently stands, *Callais* deals with a legislatively redrawn map that departed from the maps considered in the prior VRA litigation. There is no indication that *Callais* will have any bearing on maps drawn as part of a Section 2 remedial process, particularly when the remedial districts before this court are substantially identical to those in the illustrative maps this court considered at trial.

---

[3] Indeed, the only representation the Court has made about the questions to date is: "In due course, the Court will issue an order scheduling argument and specifying any additional questions to be addressed in supplemental briefing." *Louisiana v. Callais*, 145 S. Ct. 2608 (2025).

3

Reading Defendants' nebulous assertions that *Callais* might "dramatically reshape the field of redistricting law as it stands today," ECF No. 335-2 at 6, one might also miss that several of the parties in this case—the State of Louisiana, Dorothy Nairne, Alice Washington, Clee Earnest Lowe, and the Louisiana State Conference of the NAACP—are also parties in the consolidated *Callais* cases, and that every one of them has argued *against* "dramatically reshaping the field of redistricting law" in that case. *Id.* No party in this case has argued in the *Callais* litigation that Louisiana's consideration of race in drawing the congressional maps in the wake of *Robinson* was improper, nor have they advocated for a higher bar on the use of race in remedying vote dilution in violation of Section 2. To be sure, Defendants have made numerous arguments in *this case* that this court's application of Section 2 to the state's legislative districts was erroneous and unconstitutional. But as Louisiana itself argued in *Callais*, neither the constitutionality of Section 2 nor the propriety of its application in Louisiana are at issue in *Callais*. *See* Heritage Reporting Corp., Tr. of Oral Arg. in *Louisiana v. Callais* at 10–12, https://www.supremecourt.gov/oral_arguments/argument_transcripts/2024/24-109_kifl.pdf (last visited July 25, 2025). Thus, whatever issues *Callais* may ultimately address, they are unlikely to overlap with the issues currently under review by the Fifth Circuit. It is especially difficult to see, then, the irreparable harm that would result from permitting the hearing to proceed.

The timing of Defendants' motion is also fatal to their harm argument. To the extent *Callais* implicates the remedial process in this case, that was true when *Callais* was filed, it was true when the Western District of Louisiana issued its decision invalidating the state's remedial map in April 2024, and it was true when the Supreme Court noted probable jurisdiction over the case in November 2024. *Louisiana v. Callais,* 145 S. Ct. 434 (2024). Yet through all those events, Defendants have never sought a stay of this case pending the conclusion of the *Callais* proceedings.

4

The *Callais* reargument order offers no new basis for the Defendants' claim of irreparable harm. The Supreme Court has offered no explanation for why it has set reargument and has not yet ordered any supplemental briefing or identified any supplemental questions for the parties. There is no more reason to believe that *Callais* will implicate this case today than there has been since it was filed. The only difference is that Defendants now face the impending prospect that this Court will impose a remedy for their violation of Section 2, and they are once again grasping at straws to delay that outcome.

Moreover, the Supreme Court's reargument order came out weeks ago, prior to completion of expert discovery. Despite Defendants' newly expressed desire for another round of discovery after the Supreme Court issues its decision in *Callais* (ECF No. 335-2 at 9–10), Defendants have likewise never sought to stay remedial-phase discovery in this case, which ran from March through July of 2025. In that time, Plaintiffs have submitted remedial plans and all parties have collectively submitted seven expert reports. Even in the two weeks since the Supreme Court restored *Callais* to its argument calendar, four depositions and the close of expert discovery took place before Defendants sought any postponement or stay. Having waited to seek a stay until the complete record was built, Defendants have not indicated any sufficiently important reason to prevent this Court from considering the evidence the parties have already amassed. Nor have Defendants indicated how, despite having already proceeded through an appellate oral argument on the merits of this case and the close of remedial-phase discovery, significant harm would result from their additional participation in a two- to three-day evidentiary hearing.

As for the third and fourth *Nken* factors, postponing the remedial hearing until after the Supreme Court issues its decision in *Callais* would be prejudicial and run counter to the public interest because it would needlessly threaten Plaintiffs' ability to obtain relief in advance of the

5

next regularly scheduled state legislative elections. The Supreme Court's next term ends in the summer of 2026. If a remedial hearing does not begin until the summer of 2026, then even if this Court orders a remedial plan expeditiously, less than a year will likely remain for the Secretary to implement the new maps before the candidate qualifying deadline for the state legislative elections. This risk of a time crunch for successful implementation of new maps before the 2028 Legislative session[4] is only compounded by Defendants' opposition to a special master who could help facilitate this Court's efficient development of a remedial plan.[5] And the timeline set out here does not even account for the additional possibility that Defendants may pursue additional appeals or offer up new justifications for delay following this Court's order issuing a remedial plan.

Undoubtedly, looking so far into the future involves predictions and uncertainty. But that uncertainty about whether it will be possible to implement any remedy before the 2027 elections is wholly unnecessary. It would be obviated if this Court proceeds with the scheduled hearing on August 25, 2025 and orders maps that the Secretary can prepare for implementation well in advance of 2027. Any harm to Defendants that will result from participating in a two- to three-day hearing is vastly outweighed by the Plaintiffs' and the public's interest in avoiding the needless risk that Black Louisianians' votes will be unlawfully diluted for another four years.

This Court should also decline to exercise its discretion to postpone the remedial hearing. For the reasons stated herein, Plaintiffs disagree that Defendants' speculation about what the Supreme Court's forthcoming decision in *Callais* might hold amounts to "good cause," and

---

[4] Of course, the delay Defendants seek would also almost certainly make it impossible for Plaintiffs to seek special elections for the remaining legislative sessions before 2028.

[5] If the Court is inclined to grant a stay of the remedial proceeding, Plaintiffs would ask the Court to reconsider Plaintiffs' special master motion and set a schedule for the special master process to take place during the pendency of *Callais* litigation so that a map can be in place in time for the 2027 legislative session.

maintain that any possible risk that *Callais* impacts the legal standard at issue here is outweighed by the risk of harm that delay will inflict on Plaintiffs and other Black Louisianians whose votes are at risk of being unlawfully diluted in yet another legislative cycle. Plaintiffs likewise disagree with Defendants' assessment that they are likely to prevail before the Fifth Circuit in reversing this court's injunction. Plaintiffs therefore oppose any postponement of the remedial hearing at this time. But if the Court disagrees with Plaintiffs and is inclined to grant Defendants' request for postponement, particularly for the year-long period Defendants are seeking, Defendants' repeated assurance that "there is plenty of time to afford Plaintiffs' relief" amounts to a waiver of any *Purcell* arguments arising from the implementation of remedial state legislative maps following any postponed remedial hearing. *See* ECF No. 335-2 at 7; *see also id.* at 6, 8 (similar).

## II.     This Court Should Deny Defendants' Untimely Request for Additional Discovery.

If the Court disagrees with Plaintiffs and is inclined to grant Defendants' request for postponement, the Court should deny Defendants' request for additional discovery. ECF No. 335-2 at 9–10.

As an initial matter, Defendants incorrectly rely upon the Federal Rule of Civil Procedure 15(a)(2) standard for leave to amend a pleading. ECF No. 335-2 at 9 (citing Fed. R. Civ. P. 15(a)(2)). This is wrong both because an expert report is not a pleading, *see* Fed. R. Civ. P. 7(a), and because any modification of a scheduling order requires a showing of "good cause," as Defendants elsewhere acknowledge. ECF No. 335-2 at 7 (citing Fed. R. Civ. P. 16(b)(4)); *see Douglas v. Wells Fargo Bank, N.A.*, 992 F.3d 367, 373 (5th Cir. 2021). As explained *supra*, Defendants cannot show any good cause to amend the scheduling order to reopen expert discovery based on a hypothetical future change of law that may never occur.

It is impossible to reconcile Defendants' newly expressed position that the expert reports in the remedial phase of this case should account for any change *Callais* might make to the

7

governing legal standard with the fact that Defendants mustered no objection to the expert discovery period that just took place between March and July of 2025. That entire remedial discovery period began and ended while *Callais* was pending before the Supreme Court, and the parties exchanged expert reports well in advance of the end of the Supreme Court's most recent term when *Callais* was expected to be decided. *See supra* at 5.

Even setting aside the laches problem with Defendants' new request that the expert reports should account for the Supreme Court's eventual decision in *Callais*, their ask is plainly premature without knowing whether *Callais* will have any impact on the governing legal standard and, if so, the extent of such impact. Defendants implicitly admit as much, asking for leave to submit revised expert reports "should there be changes to the current legal structure governing Plaintiffs' claims"—an event that has not yet occurred and may never occur. ECF No. 335-2 at 9. If this Court is inclined to consider Defendants' request for additional discovery, it should do so following the issuance of *Callais*, and only after the parties have an opportunity to brief whether and to what extent more discovery is warranted.

## CONCLUSION

This Court should deny Defendants' request to stay or postpone the August 25, 2025 remedial hearing and Defendants' request to reopen expert discovery.

Date: July 25, 2025

Stuart Naifeh\*
Victoria Wenger\*
Colin Burke\*

Respectfully submitted,

*/s/ John Adcock*
John Adcock
Adcock Law LLC
Louisiana Bar No. 30372

8

NAACP Legal Defense & Educational Fund
40 Rector Street, 5th Floor
New York, NY 10006
laden@naacpldf.org
snaifeh@naacpldf.org
vwenger@naacpldf.org
cburke@naacpldf.org

I. Sara Rohani*
NAACP Legal Defense & Educational Fund
700 14th Street, Suite 600
Washington, DC 20005
srohani@naacpldf.org

Michael de Leeuw*
Amanda Giglio*
Cozen O'Connor
3 WTC, 175 Greenwich St., 55th Floor
New York, NY 10007
MdeLeeuw@cozen.com
AGiglio@cozen.com

Josephine Bahn*
Cozen O'Connor
1200 19th Street NW
Washington, D.C. 20036
JBahn@cozen.com

Robert S. Clark*
Cozen O'Connor
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
robertclark@cozen.com

Ron Wilson (La. Bar No. 13575)
701 Poydras Street, Suite 4100
New Orleans, LA 70139
cabral2@aol.com

3110 Canal Street
New Orleans, LA 701119
jnadcock@gmail.com

*/s/ Megan C. Keenan*
Megan C. Keenan*
Sarah Brannon*
American Civil Liberties Union Foundation
915 15th St. NW
Washington, DC 20005
sbrannon@aclu.org
mkeenan@aclu.org

Sophia Lin Lakin*
Dayton Campbell-Harris*†
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
slakin@aclu.org
dcampbell-harris@aclu.org

T. Alora Thomas-Lundborg
Daniel J. Hessel
Election Law Clinic
Harvard Law School
6 Everett Street, Ste. 4105
Cambridge, MA 02138
tthomaslundborg@law.harvard.edu
dhessel@law.harvard.edu

Nora Ahmed
ACLU Foundation of Louisiana
1340 Poydras St, Ste. 2160
New Orleans, LA 70112
Tel: (504) 522-0628
nahmed@laaclu.org

*Attorneys for Plaintiffs*
* *Admitted pro hac vice.*
† *Practice is limited to federal court.*

## CERTIFICATE OF SERVICE

I certify that on July 25, 2025, this document was filed electronically on the Court's electronic case filing system on behalf of all parties. Notice of the filing will be served on all counsel of record through the Court's system. Copies of the filing are available on the Court's system.

*/s/ John Adcock*
John Adcock
Adcock Law LLC
Louisiana Bar No. 30372
3110 Canal Street
New Orleans, LA 701119
jnadcock@gmail.com

*/s/ Megan C. Keenan*
Megan C. Keenan*
American Civil Liberties Union Foundation
915 15th St. NW
Washington, DC 20005
mkeenan@aclu.org

*Counsel for Plaintiffs*
