**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

DR. DOROTHY NAIRNE, *et al.,*

                  *Plaintiffs,*

   v.

R. KYLE ARDOIN, in his official capacity as Secretary of State of Louisiana,[1] *et al.,*

                  *Defendants.*

Civil Action No. 3:22-cv-00178

Chief Judge Shelly D. Dick

Magistrate Judge Scott D. Johnson

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, FOR JUDGMENT ON THE PLEADINGS

Plaintiffs' opposition confirms that their operative Complaint (ECF 14, the "Amended Complaint") and evidence are legally deficient. The question is whether that Complaint's allegations satisfy the "update[d]" *Gingles* "framework" that now "aligns with the statutory text [of Section 2 of the Voting Rights Act] and reflects important developments since [*Gingles* was] decided … 40 years ago." *Louisiana v. Callais*, 146 S. Ct. 1131, 1157, *judgment entered,* 146 S. Ct. 1111 (2026).

Plaintiffs' core argument—that the Amended Complaint pre-satisfied *Callais*—rests on two things that pleading does not supply: trial evidence and facts Plaintiffs say they will add later. Plaintiffs identify no allegation in the Amended Complaint showing an illustrative map that, as *Callais* requires, (a) does not use race, (b) meets all legitimate State objectives, (c) reflects a party-controlled, racially polarized voting analysis, or (d) establishes "a strong inference that the State intentionally drew its districts to afford minority voters less opportunity because of their race." *Callais*, 146 S. Ct. at 1157. It does not matter that the allegations in the Amended Complaint are "insufficient," say Plaintiffs, because "the trial record" might support some hypothetical § 2 claim that does not exist but might

---

[1] The Secretary of State is now Nancy Landry, and the caption should be updated accordingly.

someday satisfy the updated *Gingles* framework. *Id.* at 2. They then ask the Court for "leave to amend their Amended Complaint to conform [their claims] to the evidence presented at trial." *Id.*

Not only is that backwards, it misses the mark. For one, no plaintiff can survive a motion to dismiss by promising to fix a deficient complaint later. For another, Plaintiffs' evidence is insufficient to support some hypothetical § 2 claim. They can prevail only if their "*evidence* supports a strong inference that the State intentionally drew its districts to afford minority voters less opportunity because of their race." *Callais*, 146 S. Ct. at 1157 (emphasis added). Their evidence is wholly inadequate. Most glaringly, their illustrative maps—both those attached to their Amended Complaint and their expert maps introduced at trial—impermissibly "use race." *Callais*, 146 S. Ct. at 1159. Those maps thus have "no value in proving [their] case." *Id.* Nor do their maps identify, much less "achieve … all the State's legitimate objectives" that is required "to 'disentangle race' from politics and other constitutionally permissible considerations." *Id.*

Any hypothetical § 2 claim is thus a re-do from soup to nuts. Plaintiffs' proposed schedule confirms as much. *See* ECF 368 at 1–2, 16–19. That is a new lawsuit that cannot proceed as a continuation of this one.

Similarly, Act 955 mooted the Amended Complaint's claims against the challenged Senate districts by superseding those districts with new ones. Plaintiffs acknowledge that Act 955 changed Districts 33, 34, and 35, which renders any injunction against the superseded map meaningless. Accordingly, the Amended Complaint should be dismissed as legally insufficient, unsupported by necessary evidence, and moot.

## ARGUMENT

### I.     THE AMENDED COMPLAINT FAILS TO STATE A CLAIM.

To establish § 2 "liability," Plaintiffs must show "a strong inference that the State intentionally drew its districts to afford minority voters less opportunity because of their race." *Callais*, 146 S. Ct.

at 1157. The Amended Complaint does not plead facts supporting that inference. And Plaintiffs' opposition to dismissal does not show otherwise. The best they can do is to point to the Amended Complaint's allegations that legislators were "aware" of demographic effects. ECF 368 at 8–9. But mere awareness does not establish "a strong inference that the State intentionally drew its districts to afford minority voters less opportunity because of their race." *Callais*, 146 S. Ct. at 1157. Nor does the Amended Complaint allege that only race and not other legitimate objectives drove the challenged lines. So "§ 2 cannot impose liability." *Id.*

The Amended Complaint's reliance on historical discrimination and socioeconomic effects likewise does not allege "present-day intentional racial discrimination regarding voting," which "must" be the "focus" of "the 'totality of the circumstances' inquiry." *Callais*, 146 S. Ct. at 1160. Plaintiffs must allege and establish "current data" or "'current political conditions' that shed light on current intentional discrimination." *Id.* Instead, they assert that legislators "cracked" former majority-Black District 23, the effect of which was to "dilute[] the voting power of Black voters." ECF 368 at 9. Even taking that effects-based allegation as true, it falls far short of a "strong inference that the State intentionally drew its districts to afford minority voters less opportunity because of their race." *Callais*, 146 S. Ct. at 1157

The Amended Complaint does not allege that the Legislature's political objectives were subordinate to race. The thrust of Plaintiffs' case is that additional majority-Black districts were available but not adopted. *See* ECF 14 at ¶¶ 3, 8. But proving that "the State *could* create an additional majority-minority district" does not prove "that the State's failure to do so violated § 2 of the Voting Rights Act." *Callais*, 146 S. Ct. at 1159. Section 2 does not require maximizing majority-minority districts. *See Johnson v. De Grandy*, 512 U.S. 997, 1026 (1994). To plausibly allege a § 2 claim, Plaintiffs must plausibly allege that an additional majority-minority district could be created (1) without "us[ing]

3

race as a districting criterion," and (2) that "meet[s] all the State's legitimate districting objectives." *Callais*, 146 S. Ct. at 1159. The Amended Complaint does not do that.

There is no reason to think that allowing Plaintiffs to amend their complaint again would produce anything different. If there were evidence showing "a strong inference that the State intentionally drew its districts to afford minority voters less opportunity because of their race," *Callais*, 146 S. Ct. at 1157, Plaintiffs would have alleged as much in their Amended Complaint and would have made that evidence part of "the extensive trial record in this case." ECF 368 at 2. Even before *Callais*, intentional discrimination was a stronger § 2 claim than disparate-impact discrimination. The fact that "it is hard to find pertinent evidence relating to intentional present-day voting discrimination" in how the Legislature drew the current legislative districts "is cause for celebration." *Id.* at 1160. Plaintiffs' allegations and evidence are insufficient to establish § 2 liability, and the Court either should render judgment for Defendants or dismiss the case.

## II. THE TRIAL RECORD CANNOT AND DOES NOT SAVE THE LEGALLY INSUFFICIENT COMPLAINT.

### A. Plaintiffs' Maps Have "No Value" Because They Use Race as a Districting Criterion.

Again, under *Callais*'s updated "first *Gingles* precondition," Plaintiffs "cannot use race as a districting criterion." *Callais*, 146 S. Ct. at 1159. Instead, they must show a reasonably configured, race-neutral illustrative map that satisfies the State's legitimate objectives. *Id.* As a matter of law, the Amended Complaint fails to satisfy the first *Gingles* precondition. It alleges that black voters could form a majority in three new Senate districts and six to nine new House districts and attaches maps that "accomplish this goal." ECF 14 ¶¶ 100–01*;* ECF 368 at 15. Those maps use race and thus have "no value in proving a §2 plaintiff's case." *Callais*, 146 S. Ct. at 1159. Maps that "produce an additional majority-minority district only by using race … shed[] no light on whether the State acted unconstitutionally by not adopting such a map." *Id.* It is legally irrelevant whether the State failed to

adopt a race-based map that "would be unconstitutional if [the] State engaged in such mapmaking."
*Id.*

Plaintiffs say the Court can ignore the maps attached to the Amended Complaint in favor of their experts' trial maps. Not so. Federal Rule of Civil Procedure 15 allows another amendment of their Amended Complaint "to conform [it] to the evidence" only "to raise an *unpleaded* issue." Fed. R. Civ. P. 15(b)(2) (emphasis added). Their maps are not an "unpleaded issue." *Id.* The law has always required them to plead maps. *See Fairley v. Hattiesburg*, 584 F.3d 660, 669 (5th Cir. 2009) ("[T]o establish the first *Gingles* precondition, plaintiffs typically have been required to propose hypothetical redistricting schemes and present them to the district court in the form of illustrative plans [because they] bear the burden of proof in a VRA case."). The maps Plaintiffs pled are legally insufficient under *Callais*.

Even if Plaintiffs could essentially swap their experts' trial maps for the maps they pled, their experts' maps do not help them. On the first *Gingles* precondition, race also impermissibly infects Plaintiffs' expert's maps as Defendants explained on appeal. *See* Secretary's Opening Br. 27–46, *Nairne v. Landry*, No. 24-30115 (5th Cir. July 17, 2024), ECF 193 (explaining all the ways Cooper's maps use race).

### B.  Plaintiffs Have Failed to Provide Maps Meeting the State's Non-Racial Goals.

Plaintiffs also have not met "their burden" on the first *Gingles* precondition for another reason—"they did not provide an illustrative map that [meets] all the State's nonracial goals." *Callais*, 146 S. Ct. at 1161; *see Allen v. Milligan*, 599 U.S. 1, 20 (2023). Plaintiffs must plead and prove facts supporting a race-neutral alternative that meets those objectives. They have not done so.

The Amended Complaint does not allege that its maps satisfy the State's non-racial objectives. It says only that more majority-black districts could have been drawn while considering Joint Rule 21 and "traditional redistricting principles." ECF 368 at 15. That omits the State's non-racial goals and

other actual considerations reflected in the enacted lines. Plaintiffs confirm that omission. They call the State's political goals "hypotheses" because they are not listed in Joint Rule 21, and they say any dispute over the State's goals belongs at trial. ECF 368 at 15–16. But it is Plaintiffs' "burden" to plead and prove maps satisfying the State's non-racial goals. *Callais*, 146 S. Ct. at 1161; *see Bethune-Hill v. Va. State Bd. of Elections*, 580 U.S. 178, 189–90 (2017). They have done neither.

The trial record reinforces their pleading deficiency. Cooper testified that he focused on areas with high or growing Black Voting-Age Population (BVAP) and did not move lines to improve compactness or reduce political-subdivision splits. ECF 225 at 88−89, 61. His plans repeatedly produced barely majority-BVAP districts—nine of fourteen Senate districts were between 50% and 53% BVAP—and stitched together dispersed Black populations across parish and municipal lines. ECF 198-11 at 42, ECF 198-21 at 37−41, 97−111. Barber's simulations found that Cooper's Senate plan split 61 parishes and 35 municipalities, compared with medians of 34 and 22, and that several regional configurations were statistical outliers. ECF 198-19 at 21, 59−62. Those facts do not show a race-neutral, reasonably configured alternative that satisfies the State's objectives, so amending the Amended Complaint would be futile.

### C. Plaintiffs Fail to Disentangle Race from Partisanship.

Under *Callais*, the second and third *Gingles* preconditions require Plaintiffs to provide an analysis controlling for party affiliation and to show racial bloc voting that cannot be explained by partisan affiliation. 146 S. Ct. at 1159–60. That inquiry is not satisfied by statewide racial voting percentages that track party preference. But that is all the Amended Complaint alleges—that voting in Louisiana is "highly polarized along racial lines." ECF 14 ¶¶ 3, 117, 122 (citing statewide elections in which approximately 95% of Black voters and 80% of white voters supported opposing candidates). The Amended Complaint does not even identify the candidates' party affiliations, much less allege

that the purported polarization persists after controlling for partisan preference. Plaintiffs simply have not alleged the party-controlled, district-relevant facts required by *Callais*.

Plaintiffs respond that their experts supplied the missing intra-party analysis at trial. That response confirms the facial defect. To survive a Rule 12 motion to dismiss, evidence outside the pleadings cannot supply missing allegations. *See Belk v. Entergy La., LLC*, 2022 U.S. Dist. LEXIS 209284, *9 (2022).

Even if it could, however, the trial evidence Plaintiffs invoke does not cure the problem. *See* 146 S. Ct. at 1161–62 (holding the *Robinson* plaintiffs failed "their burden on the second and third *Gingles* preconditions" because their evidence showed "that black and white voters consistently supported different candidates, but their analysis did not control for partisan preferences"). Dr. Handley did not conduct a district-specific functional analysis or identify the BVAP level at which each district would become effective; she analyzed seven geographic areas instead. ECF 214 at 207, ECF 198-83 at 7; ECF 198-102 at 29, 43. Solanky's rebuttal identified allocation errors, including precinct estimates that exceeded total turnout, which undermine the district-level estimates. ECF 198-23 at 5−12. In short, Plaintiffs have failed both to allege and prove facts satisfying the "updated *Gingles* framework." *Callais*, 146 S. Ct. at 1161. For that reason alone, the Court should render judgment for Defendants or dismiss the case.

### D.  Plaintiffs' Senate Claims Are Moot.

Plaintiffs acknowledge that Act 955 "chang[es] senate districts 33, 34, and 35." ECF 368 at 20. And they agree that those superseding districts govern all appointments and elections and that the challenged districts will not be used in future elections. Yet they say their claims are not moot because they "are not challenging Senate Districts 33, 34, and 35." *Id.* At minimum, that disclaimer mandates dismissal of all claims against senate districts 33, 34, and 35 and vacatur of the injunction against elections in those districts.

That outcome is additionally warranted because Plaintiffs have not established their standing in the changed districts. Vote-dilution injury is district-specific, so a plaintiff must show residence in a district where they allege their votes were cracked or packed. *Gill v. Whitford*, 585 U.S. 48, 66–69 (2018); *Harding v. Cnty. of Dallas*, 948 F.3d 302, 307 (5th Cir. 2020). Plaintiffs continually bear the burden of showing that they and their identified organizational members reside in and are harmed by those districts. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (citing *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008)). Any challenge to the post-Act 955 districts would require proof tied to those districts, not generalized proof about the superseded map. Plaintiffs have not carried that burden, and their claims against the changed districts must be dismissed and the injunction against elections in those districts vacated.

More fundamentally, a case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 85 (2013). In the redistricting context, when a State enacts a new map that supersedes the challenged map and the challenged map will not be used in future elections, any decision on the prior map's lawfulness has no legal effect, and the claims should be dismissed as moot. *See Gill v. Linnabary*, 63 F.4th 609, 613 (2023). That is precisely what occurred here. Act 955 superseded the senate districts established in SB1. Any injunction against elections under SB1's senate districts is unnecessary and has no legal effect because those districts no longer govern elections.

Plaintiffs cite *Perez v. Texas* and *Franciscan Alliance, Inc. v. Becerra* for the proposition that a case is not moot when subsequent legislation is "substantially similar" to the challenged law. ECF 386 at 20. That is true as far as it goes. But in *Perez*, the new law perpetuated the alleged violation. *See Perez v. Texas*, 970 F. Supp. 2d 593, 602 (W.D. Tex. 2013) (explaining that "many of the alleged violations of the Voting Rights Act and the Constitution in the 2011 plans persist in the 2013 plans"). And *Franciscan Alliance* held the challenge moot because the new regulation did not do so. *Franciscan All., Inc. v. Becerra*,

47 F.4th 368, 374 (5th Cir. 2022). Here, Plaintiffs have not alleged—and cannot allege—that Act 955 perpetuates any purported § 2 violation in the senate districts because Plaintiffs disclaim challenging the districts Act 955 changed. That renders this case moot.

### E. Plaintiffs' Request for Leave to Amend Confirms the Amended Complaint Fails to State a Claim.

Plaintiffs' request for leave to amend (again) confirms the facial defect. They say that, if the Court finds the Amended Complaint insufficient, they should be allowed a second amended complaint, new illustrative maps, and additional evidence. ECF 368 at 1–2, 16–19. That is not a showing that they have stated a claim for relief. That is a new lawsuit, which Plaintiffs could have already filed. Nothing is stopping them from doing so. As for this case, however, Plaintiffs' pleadings and evidence are wholly insufficient under *Callais*, and Defendants are entitled to dismissal or judgment in their favor.

If the Court disagrees and grants Plaintiffs leave to amend a second time, that leave should be limited and conditional. Plaintiffs should be allowed to file one new complaint by a date certain that alleges on its face race-neutral illustrative maps satisfying all the State's legitimate objectives, a party-controlled, district-specific, racially polarized voting analysis, current factual allegations supporting a strong inference under *Callais*, and facts identifying which plaintiff or member resides in and is harmed by each challenged district. After that pleading is filed, Defendants are entitled to test those allegations with another motion to dismiss. Only if the Court denies that motion should it permit discovery or new evidence. Otherwise, Plaintiffs' proposed schedule improperly converts their request to conform their Complaint to the evidence already in the record into a new lawsuit.

### CONCLUSION

The Court should grant Defendants' Motion and dismiss the Amended Complaint with prejudice for failure to state a claim or, alternatively, render judgment for Defendants. At minimum, the Court should dismiss claims concerning the superseded Senate districts as abandoned or moot (or

both), dismiss any claims for which Plaintiffs have not established district-specific standing, and vacate the injunction in those districts.

Dated: August 13, 2026

NANCY LANDRY
Louisiana Secretary of State

/s/ *Jennifer Bollinger*
Jennifer Bollinger
La. Bar Roll No. 32349
Executive Counsel
Secretary of State Nancy Landry
8585 Archives Ave.
Baton Rouge, LA 70809
Telephone: (225) 362-5101
Jennifer.bollinger@sos.la.gov

John C. Walsh
Louisiana Bar Roll No. 24903
SHOWS, CALI & WALSH, L.L.P.
628 St. Louis St.
P.O. Box 4225
Baton Rouge, LA 70821
Telephone: (225) 346-1461
Facsimile: (225) 346-5561
*john@scwllp.com*

*Counsel for the Secretary of State*

Respectfully submitted,

ELIZABETH B. MURRILL
Attorney General of Louisiana

MORGAN BRUNGARD (LA 40298)
Deputy Solicitor General

CAREY TOM JONES (LA 07474)
Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
Louisiana Department of Justice
1885 N. Third St.
Baton Rouge, LA 70804
(225) 324-9866
BrungardM@ag.louisiana.gov

/s/ *Jason B. Torchinsky*
JASON B. TORCHINSKY*
Holtzman Vogel Baran
Torchinsky & Josefiak PLLC
2300 N. Street NW, Suite 643
Washington, DC 20037
(540) 341-8808
jtorchinsky@holtzmanvogel.com
*Admitted pro hac vice*

*Counsel for the State of Louisiana*

10